IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOLENEX, LLC,                                    )
                                                 )
                         Plaintiff,              )          Civ. Action No. 13-993 (RJL)
                                                 )
                  v.                             )
                                                 )
S.M.R. JEWELL, et al.,                           )
                                                 )
                         Defendants.             )
_____)


**BRIEF OF <u>AMICI CURIAE</u> BLACKFEET HEADWATERS ALLIANCE, ET AL.,
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


Timothy J. Preso (D.C. Bar No. 456531)
Earthjustice
313 E. Main St.
Bozeman, MT 59715
T: 406.586.9699
F: 406.586.9695
E: tpreso@earthjustice.org

*Attorney for Amici Curiae Blackfeet Headwaters
Alliance, et al.*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

I.      SOLENEX FAILS TO STATE A CLAIM UNDER THE ADMINISTRATIVE
PROCEDURE ACT....................................................................................................2

II.     SOLENEX OMITS A KEY FACT FROM ITS TIMELINE ...............................................4

III.    SOLENEX FAILS IN ITS ATTEMPT TO UNDERMINE THE HISTORIC AND
CULTURAL RESOURCES AT STAKE............................................................................7

IV.    SOLENEX MISCHARACTERIZES THE BADGER-TWO MEDICINE
REGION .................................................................................................................11

V.     SOLENEX'S PROPOSED WELL DOES NOT HAVE "A VERY HIGH
POTENTIAL FOR DISCOVERY" OF OIL AND GAS...................................................13

VI.    AMICUS CURIAE MONTANA PETROLEUM ASSOCIATION'S
ARGUMENT IS UNPERSUASIVE ................................................................................15

CONCLUSION......................................................................................................................16

# TABLE OF AUTHORITIES

### FEDERAL CASES

Barlow & Haun, Inc. v. United States,
    87 Fed. Cl. 428 (Fed. Cl. 2009) ...........................................................................4

Copper Valley Machine Works, Inc. v. Andrus,
    653 F.2d 595 (D.C. Cir. 1981) ...........................................................................2,3

Norton v. Southern Utah Wilderness Alliance,
    542 U.S. 55 (2004) ..........................................................................................2,3,4

Transohio Savings Bank v. Dir., Office of Thrift Supervision,
    967 F.2d 598 (D.C. Cir. 1992) ...........................................................................4

Union Oil Co. of Calif. v. Morton,
    512 F.2d 743 (9th Cir. 1975) ...........................................................................4

### CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V ..........................................................................................4

### STATUTES AND LEGISLATIVE MATERIALS

5 U.S.C. § 706(1) ...........................................................................................1,2,3,4

16 U.S.C. § 470f ...........................................................................................1,3

28 U.S.C. § 1491(a)(1) ...........................................................................................4

30 U.S.C. § 209 ...........................................................................................1,2,3

42 U.S.C. § 4332(2)(C) ...........................................................................................3

Tax Relief & Health Care Act of 2006, Pub. L. No. 109-432, § 403, 120 Stat.
    2922 (2006) ...........................................................................................12

### REGULATIONS AND ADMINISTRATIVE MATERIALS

36 C.F.R. § 800.5 ...........................................................................................3
        § 800.6 ...........................................................................................3

40 C.F.R. § 1502.9(c) ...........................................................................................3

OTHER AUTHORITIES

Anschutz Exploration Corp., <u>Anschutz Exploration Corporation to Cease Operations and Exit Project on Blackfeet Reservation</u> (Mar. 19, 2013) .................................15

Bureau of Land Mgmt., <u>Oil and Gas Statistics by Year for Fiscal Years 1988-2013</u>, Table 14 (last updated Jan. 14, 2013), available at http://www.blm.gov/wo/st/en/prog/energy/oil_and_gas/statistics.html (last visited Aug. 29, 2014)...............................................................................................................16

U.S. Dep't of the Interior, <u>Oil and Gas Lease Utilization, Onshore and Offshore, Updated Report to the President</u> (May 2012), available at http://www.doi.gov/news/pressreleases/upload/Final-Report.pdf (last visited Aug. 29, 2014) .......................................................................................................................16

U.S. Energy Information Administration, <u>U.S. Natural Gas Wellhead Price</u> (last updated July 31, 2014), available at http://www.eia.gov/dnav/ng/hist/n9190us3a.htm (last visited Aug. 29, 2014) .......................15

U.S. Forest Serv., <u>Badger-Two Medicine—Travel Management Plan Record of Decision Map</u> (Mar. 2009).......................................................................................................13

U.S. Forest Serv., <u>Rocky Mountain Ranger District Travel Management Plan: Record of Decision for Badger-Two Medicine</u> (Mar. 2009) ....................................................12

## INTRODUCTION

This case presents a claim by plaintiff Solenex, LLC, of agency action unlawfully withheld or unreasonably delayed concerning a suspension of operations and production applied by the federal defendants to Solenex's oil and gas lease within the Badger-Two Medicine region of the Lewis and Clark National Forest in northern Montana.  The federal defendants imposed the operative suspension in 1998 in connection with their efforts to complete a process required by section 106 of the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f—namely, the process of identifying historic and cultural resources that may be impacted by a proposed drilling project on Solenex's lease and assessing alternatives that would avoid impacts to such resources.  The suspension at issue preserves Solenex's lease from expiration during the NHPA process.  <u>See</u> 30 U.S.C. § 209 (authorizing lease suspensions and providing that "the term of such lease shall be extended by adding any such suspension period thereto").

<u>Amici curiae</u> Blackfeet Headwaters Alliance, Glacier-Two Medicine Alliance, Montana Wilderness Association, National Parks Conservation Association, and The Wilderness Society (collectively, "BHA") are non-profit organizations dedicated to the conservation of the natural and cultural environment, particularly within the Badger-Two Medicine region that is involved in this case.  BHA will leave it to the federal defendants to defend the nature and timing of the specific administrative actions supporting the challenged suspension.  BHA offers the following points and authorities to supplement the federal defendants' argument that Solenex has failed to state a legitimate claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1); to address material omissions and misstatements by Solenex; and to respond to an additional argument advanced in support of Solenex's summary-judgment motion by <u>amicus curiae</u> Montana Petroleum Association.

1

I.      **SOLENEX FAILS TO STATE A CLAIM UNDER THE ADMINISTRATIVE PROCEDURE ACT**

BHA joins the federal defendants' argument that Solenex has failed to state a claim for agency action unlawfully withheld or unreasonably delayed under the APA, 5 U.S.C. § 706(1), because Solenex has not identified a discrete, mandatory agency obligation to lift the challenged suspension of its lease, as required by Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) ("SUWA").   See Mem. of Points and Auth. in Support of Defs.' Cross-Mot. for Summary Judgment (Doc. 34-1) at 22-25.   BHA supplements the argument advanced by the federal defendants with the following points:

First, in an apparent effort to suggest that the federal defendants lack discretionary authority to suspend Solenex's lease for the purpose of evaluating and protecting environmental resources, Solenex asserts that "a suspension may be granted only 'for the purpose of encouraging the greatest ultimate recovery of' oil and gas," citing 30 U.S.C. § 209.   Mem. of Points and Auth. in Support of Pl.'s Mot. for Summary Judgment (Doc. 24-1) at 20 (emphasis added) ("Solenex Mem.").   This selective reading ignores the plain language of section 209, which provides that the Secretary of the Interior may order a suspension for the purpose of encouraging oil and gas recovery "and in the interest of conservation of natural resources."   30 U.S.C. § 209 (emphasis added).   Consistent with this statutory language, the Secretary may exercise his or her discretion to order a suspension under section 209 in the interest of ensuring adequate environmental protection.   See Copper Valley Machine Works, Inc. v. Andrus, 653 F.2d 595, 600 (D.C. Cir. 1981) ("[S]uspending operations to avoid environmental harm is definitely a suspension in the interest of conservation in the ordinary sense of the word.   And there was no indication that Congress intended that 'conservation' be given any interpretation other than its ordinary meaning.").   This includes the circumstance where, as here, suspension is

necessary to allow time for completion of environmental studies.  See id. at 600 n.7 (quoting and

discussing Interior Department memorandum that interpreted 30 U.S.C. § 209 to authorize such

suspensions).

Second, Solenex's requested remedy in this case raises the threat of "undue judicial

interference with [an agency's] lawful discretion" that compelled the Supreme Court's narrow

construction of § 706(1) in SUWA, 542 U.S. at 66.  Solenex asks this Court to require the federal

defendants to lift the suspension on Solenex's lease by July 1, 2015.  See Solenex Mem. at 38-

39.  To do so, this Court must determine that no suspension beyond July 1, 2015, is required "in

the interest of conservation of natural resources."  30 U.S.C. § 209.  Such a determination would

necessarily require this Court to also determine for the federal defendants the timeframe and

process needed to assess and resolve any adverse effects to historic properties from Solenex's

drilling proposal as mandated by the NHPA, 16 U.S.C. § 470f; 36 C.F.R. §§ 800.5, 800.6, and to

conduct any supplemental environmental assessment or environmental impact statement ("EIS")

that may be required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §

4332(2)(C); see 40 C.F.R. § 1502.9(c).  See Decl. of Mark Bodily (Doc. 32-2) ¶ 30 (describing

remaining review process).  In short, as the Supreme Court warned in SUWA, "it would

ultimately become the task of the supervising court, rather than the agency, to work out

compliance with the broad statutory mandate."  542 U.S. at 66-67.  This is especially improper

where, as here, Congress expressly provided that the determination whether a suspension is

necessary "in the interest of conservation of natural resources" will be left to the "judgment" of

the Secretary.  30 U.S.C. § 209.

Third, rejection of Solenex's flawed APA claim does not mean, as Solenex asserts, that

"the exclusive right to drill for and develop the oil and gas granted by [Lease] M-53323 is

worthless." Solenex Mem. at 20-21. If federal agency delays in administration of Solenex's lease legitimately rise to the level of a permanent or temporary deprivation of Solenex's contractual or property rights, then the law provides Solenex with a remedy in the form of a claim for breach of contract or, possibly, a claim for just compensation under the Fifth Amendment, U.S. Const. amend. V. See Union Oil Co. of Calif. v. Morton, 512 F.2d 743, 751 (9th Cir. 1975) (stating that "an open-ended suspension" of mineral lease rights "would be a pro tanto cancellation of [the] lease"); Barlow & Haun, Inc. v. United States, 87 Fed. Cl. 428, 438 (Fed. Cl. 2009) (addressing plaintiffs' claim seeking compensation for alleged indefinite suspension of oil and gas operations on a federal mineral lease; "Ordinarily, the Government's interference with contractual rights arising under a contract with the Government will give rise to a breach of contract action, rather than a taking claim."). However, jurisdiction over any such claim would be vested in the U.S. Court of Federal Claims, rather than this Court. See 28 U.S.C. § 1491(a)(1). Solenex's invocation of alleged contractual rights in this APA case, see Solenex Mem. at 27-28, is inapposite because "the APA does not waive sovereign immunity for contract claims seeking specific relief," such as the order sought here compelling the government to perform on the lease contract. Transohio Savings Bank v. Dir., Office of Thrift Supervision, 967 F.2d 598, 613 (D.C. Cir. 1992) (emphasis original). Solenex's invocation of alleged contractual rights underscores its inability to identify a discrete, mandatory statutory or regulatory duty of the federal defendants to lift the challenged suspension, and therefore its inability to state a claim under 5 U.S.C. § 706(1). See SUWA, 542 U.S. at 64.

## II.     SOLENEX OMITS A KEY FACT FROM ITS TIMELINE

Even assuming for the sake of argument that Solenex had identified the discrete and mandatory agency duty necessary to state a claim under 5 U.S.C. § 706(1), which it has not done,

Solenex still has not demonstrated unreasonable agency delay in discharging any such duty.  In arguing to the contrary, Solenex omits a key fact from the timeline of events that it presents to this Court—the fact that the federal defendants are acting in response to a lawsuit filed by conservation and tribal interests that challenged the Forest Service and BLM's prior NHPA and NEPA review of Solenex's drilling proposal.  By employing such selective presentation, Solenex never comes to grips with the practical reality that abrupt termination of the ongoing administrative process presents its own threat of frustrating Solenex's drilling plans due to judicial enforcement of federal environmental laws.

Solenex recounts in detail the series of events involving the Assistant Secretary's approval of Solenex's application for permit to drill ("APD") in 1993, but omits any mention of the fact that this approval was challenged in federal district court in Montana on April 15, 1993, by a group of conservation organizations and Blackfeet tribal members including some of the amici submitting this brief.  See Complaint, Nat'l Wildlife Fed'n v. Robertson, Case No. CV 93-44-GF (D. Mont. Apr. 14, 1993) (HC 1162-82)[1]; see also Statement of Material Facts in Support of Pl's Mot. for Summary Judgment (Doc. 24-2) ¶¶ 60-61 (omitting mention of National Wildlife Federation lawsuit) ("Solenex Statement of Material Facts").  The complaint in that case alleged that the Assistant Secretary's approval of the APD violated a number of statutes including the NHPA, and further alleged that the U.S. Forest Service and Bureau of Land Management ("BLM") issued Solenex's underlying lease in violation of NEPA.  See Complaint, Nat'l Wildlife Fed'n, supra, at 13-14 (NEPA claim), 16 (NHPA claim) (HC 1174-75, 1177).  Because of a series of suspensions of operations and production on the Solenex lease, the Montana district court issued orders repeatedly staying proceedings in the National Wildlife

---

[1] BHA's citation to agency documents produced by the federal defendants includes their Bates-stamped page number.

Federation case until March 10, 1997, when the court administratively terminated the case

"without prejudice to the rights of the parties to reopen the proceedings for good cause shown,

for the entry of any stipulation or order, or for any other purpose required to obtain a final

determination of the litigation."  Order, Nat'l Wildlife Fed'n v. Robertson, Case No. CV 93-44-

GF, at 1-2 (D. Mont. March 10, 1997) (FS 2292-93); see also Statement of Material Facts in

Support of Defs.' Cross-Mot. for Summary Judgment (Doc. 32-1) ¶¶ 18-20, 22 (describing stay

orders).  That order remains in effect.[2]

Although Solenex criticizes the federal defendants' decision to undertake additional

efforts to comply with the NHPA, Solenex fails to acknowledge that the defendant agencies are

acting in response to allegations in the National Wildlife Federation lawsuit that their prior

NHPA review was unlawful.  See Letter from Lesley W. Thompson, Forest Supervisor, Lewis &

Clark National Forest, to Sidney Longwell, Solenex LLC (May 27, 2011) (describing agency

response to National Wildlife Federation lawsuit) (attached as Exhibit 1-B to Solenex Statement

of Material Facts).  Further, in contending that the agencies' pending NHPA compliance

activities and associated lease suspension should be peremptorily terminated by this Court,

Solenex is effectively arguing that it would be better off if the agencies did not attempt to

address their legal vulnerability under the NHPA, thereby potentially triggering reopening of the

National Wildlife Federation case, judicial review by the Montana district court, and invalidation

of Solenex's APD based on a NHPA violation.  Solenex offers no reason for this Court to accept

---

[2] The Montana court's order further provided that the National Wildlife Federation action would
be "deemed dismissed with prejudice" if the parties did not reopen the case "for the purpose of
obtaining a final determination" within 60 days after "a determination by Congress as to whether
the properties involved in this litigation should be included in a wilderness designation for the
area."  Order, Nat'l Wildlife Fed'n v. Robertson, supra, at 2 (FS 2293).  However, Congress has
made no such determination.  See Solenex Statement of Material Facts ¶¶ 62-63 (stating that "no
action had been taken on any proposed legislation" regarding Badger-Two Medicine region).

that this alternative promises a more expeditious means of addressing Solenex's interest, or that the defendants have acted unreasonably in declining to pursue it.[3]

## III.  SOLENEX FAILS IN ITS ATTEMPT TO UNDERMINE THE HISTORIC AND CULTURAL RESOURCES AT STAKE

Solenex's proposed balancing of the competing interests in this case is flawed by an unwarranted denigration of the historic and cultural resources at stake.  See Solenex Mem. at 27 (asking Court to weigh "the competing interests at stake").  Throughout its opening summary judgment brief, Solenex attempts to paint the NHPA process underlying this case as an illegitimate attempt to stymie Solenex's mineral development right through trumped-up assertions that significant historic and cultural resources exist within the Badger-Two Medicine region, including in the area of Solenex's proposed drilling project.  See Solenex Mem. at 15, 16, 36 ("purported" Traditional Cultural District ("TCD")), 17 ("purported alleged TCD"), 23 ("suspicious NHPA process"), 34 n.29 (asserting "Tribe's change in position and new-found concern" for "alleged" TCD), 36 ("purported religious concerns").  Solenex's portrayal is refuted by the record and ultimately relies on an implausible conspiracy theory.

Contrary to Solenex's disparaging remarks, numerous authorities have investigated, documented, and certified the existence of historic and cultural resources within the Badger-Two Medicine region and their significance to the Blackfeet Tribe and the nation.  These authorities include:

---

[3] For much the same reason, Solenex fails to demonstrate agency bad faith based on nothing more than the BLM's requests for voluntary remands of agency decisions approving Solenex's APD in 1987 and 1991 after the Interior Board of Land Appeals set aside BLM's original decision to approve the APD in 1985.  See Solenex Mem. at 33.  Solenex fails to explain how BLM's stubborn adherence to decisions that the agency itself had determined were indefensible would have expedited development of Solenex's lease.

- The July 1993 report by Sally T. Greiser and T. Weber Greiser on "Blackfoot Culture, Religion, and Traditional Practices in the Badger-Two Medicine Area and Surrounding Mountains" (FS 4951-52), which identified significant cultural resources primarily in the southern portion of the Badger-Two Medicine region.

- The May 1997 submission by the U.S. Forest Service of a formal determination of eligibility for the original Badger-Two Medicine Blackfoot Traditional Cultural District under the NHPA (FS 5882-84).

- The January 2002 determination by the Interior Department's Keeper of the National Register that the original Badger-Two Medicine Blackfoot Traditional Cultural District is eligible for listing in the National Register of Historic Places (FS 5942-58).

- The March 2006 study by Maria Zedeno of the University of Arizona entitled "Badger-Two Medicine Traditional Cultural District, Montana, Boundary Adjustment Study" (FS 5466-5605), which began to assess the cultural import of areas omitted from the original Traditional Cultural District.

- The January 2007 report by Zedeno and John R. Murray entitled "Blackfeet Sacred Site Protection Along the Birch Creek Watershed, Lewis and Clark National Forest, MT" (FS 5606), and 2008 report by Zedeno and Murray entitled "Blackfeet Sacred Land Recovery Project" (FS 5607), which continued this assessment.

- The December 2012 report by Zedeno and Murray entitled "Badger-Two Medicine Traditional Cultural District, Lewis & Clark National Forest, Montana, Boundary Expansion Study" (FS 5608-5731), which examined and evaluated the previous studies and documented significant cultural resources located in, among others, the northern portion of the Badger-Two Medicine region.

- The July 2013 determination by the State of Montana's Historic Preservation Officer that a proposed northward expansion of the boundaries of the Badger-Two Medicine Blackfoot Traditional Cultural District satisfies professional standards and relevant guidance from the National Park Service (FS 4620).

- The February and March 2014 certifications by the State of Montana and Blackfeet Tribe's Historic Preservation Officers that the proposed boundary expansion of the Badger-Two Medicine Blackfoot Traditional Cultural District met all applicable requirements for registering properties in the National Register of Historic Places (Decl. of Mark Bodily (Doc. 32-2) Attachment B).

- The May 2014 determination by the Interior Department's Keeper of the National Register that the expanded Badger-Two Medicine Blackfoot Traditional Cultural District is eligible for listing in the National Register of Historic Places (Decl. of Mark Bodily (Doc. 32-2) Attachment C).

In the face of these expert studies and official certifications, Solenex's principal basis for disparaging the historic and cultural values of the Badger-Two Medicine region is its observation that initial cultural resource surveys and reports in 1983, 1985 and 1991 did not identify any such resources in the area of Solenex's proposed drill site. See Solenex Statement of Material Facts ¶¶ 25, 30, 47. However, the record establishes that these early cultural assessments were "later questioned by Blackfeet traditionalists." U.S. Forest Serv. & BLM, Final EIS for Exploratory Oil and Gas Wells, Proposed Oil and Gas Drilling near Badger Creek and Hall Creek, at IV-152 (Oct. 1990) ("1990 EIS") (FS 1517). These traditionalists were initially "reluctant to discuss any specific potential effects caused by the project to the practice and belief in their traditional religion." BLM, Fina Oil & Chem. Co. Exploratory Oil/Gas Well, Fed. S. Glacier No. 1-26,

Record of Decision, at 15 (Jan. 1993) (FS 2313).  That initial reluctance was overcome

beginning in 2003 when, during the process of NHPA consultation on Solenex's proposed

drilling project, knowledgeable tribal members assigned to a Cultural Committee reviewed the

original Traditional Cultural District boundary and concluded that "significant areas" had been

omitted.  Notes of NHPA Sec. 106 Meeting for the Longwell Proposal (Sept. 15, 2003), at 1 (FS

3772-73).  As they pointed out, "[w]hen the original interviews were done with Tribal members,

not all the people were interviewed that knew this area and at that time they didn't fully

understand the laws.  The new committee has more knowledge."  Id. at 2 (FS 3773).  Their

response triggered preparation of the large body of later ethnographic work detailed above that

did identify cultural resources in the area of Solenex's proposed drill site with a level of

evidentiary support that satisfied the U.S. Forest Service, the Montana State Historic

Preservation Officer, and the Interior Department's Keeper of the National Register.  Such

documented resources include numerous locations associated with culturally important spiritual

and historic figures of the Blackfeet Tribe as well as areas of longstanding use over many

generations for traditional ceremonies, gathering of medicinal and ceremonial plants, and a

variety of spiritual activities.  See Determination of Eligibility, Nat'l Register of Historic Places

(Jan. 2002) (FS 5944-52); Decl. of Mark Bodily (Doc. 32-2) Attachment C (2014 National

Register of Historic Places eligibility determination).  Solenex's citation of outdated reports

offers no reason to doubt these expert findings.

Equally meritless is Solenex's attempt to exploit a Blackfeet Tribal Business Council

resolution from 1983 that proclaimed the tribe's desire to secure mineral rights within the

Badger-Two Medicine region.  See Solenex Statement of Material Facts ¶ 29; Solenex Mem. at

11.  Solenex offers this resolution to demonstrate the tribe's alleged duplicity, see Solenex Mem.

at 34 n.29, but ignores the fact that the 1983 resolution was superseded in February 1993 by a

strongly worded resolution of the Tribal Business Council opposing any oil and gas development

in the Badger-Two Medicine region that continues to reflect the tribe's position to this day.  See

Resolution No. 89-93, Blackfeet Nation (Feb. 4, 1993) (HC 1705-06).

In sum, Solenex's citation of outdated and superseded documents fails to undermine the

important historic and cultural resources that are at stake in this case.  Further, to accept

Solenex's position, this Court would have to conclude that the U.S. Forest Service, Blackfeet

Tribe, independent ethnographers, Montana State Historic Preservation Officer, and the Keeper

of the National Register of Historic Places all conspired together over a period of more than a

decade—through numerous federal and state Executive Branch administrations and tribal

governments of varying political persuasions—to deprive Solenex of its mineral lease rights by

intentionally falsifying a finding of significant cultural resources in the Badger-Two Medicine

region.  According to Solenex, this conspiracy to deny its mineral lease rights extended even

further to encompass former Montana Senator Max Baucus, who introduced a bill—S. 853—to

preserve the Badger-Two Medicine region as wilderness, and former Interior Secretary Bruce

Babbitt, who suspended Solenex's lease in deference to this proposed legislation.  See Solenex

Mem. at 23 n.17 ("S. 853 and Secretary Babbitt's suspension were simply ploys to delay the

exercise of the rights granted under M-53323").  As demonstrated above, the record offers no

support for these implausible allegations.

## IV.    SOLENEX MISCHARACTERIZES THE BADGER-TWO MEDICINE REGION

Solenex's proffered balancing of the competing interests in this case is further flawed

because Solenex mischaracterizes the environmental quality of its proposed drill site and the

Badger-Two Medicine region.  Solenex inaccurately claims that the proposed drill site is situated

in an already "roaded area" subject to "automobile traffic" and "snowmobiling" and that the Badger-Two Medicine region is "not suitable for wilderness designation." Solenex Statement of Material Facts ¶ 27.

In fact, Solenex's proposed drill site is located three miles into the backcountry of a region that the U.S. Forest Service recently described as "wild" and "remote." See U.S. Forest Serv., Rocky Mountain Ranger District Travel Management Plan: Record of Decision for Badger-Two Medicine, at 9 (Mar. 2009) ("Travel Plan ROD") (attached as Preso Decl. Attachment 1); see also Decl. of Mark Bodily (Doc. 32-2) Attachment C (2014 National Register eligibility determination describing Badger-Two Medicine Blackfoot Traditional Cultural District as a "remote wilderness area"). Named for the two waterways—Badger Creek and the Two Medicine River—that wind through the area after originating in the snowfields along Montana's Continental Divide, the Badger-Two Medicine region "is adjacent to Glacier National Park on the northwest boundary and borders both the Great Bear Wilderness and the Bob Marshall Wilderness on the south." Travel Plan ROD at 10. According to the Forest Service, "[i]t is a magnificent area to enjoy solitude, wildlife viewing, hiking, hunting, fishing, stock use, snowshoeing and cross-country skiing," and sustains abundant elk as well as rarer species such as grizzly bears, lynx, wolves, and wolverines. Id. at 10, 18-21.

Recognizing the significance of the area's natural values, Congress in 2006 enacted Public Law 109-432, permanently withdrawing an area inclusive of the Badger-Two Medicine region from future mineral leasing and offering existing oil and gas lease holders such as Solenex tax incentives to retire their leases. See Tax Relief & Health Care Act of 2006, Pub. L. No. 109-432, § 403, 120 Stat. 2922 (2006) (FS 6271-79). Although the Forest Service did not recommend the Badger-Two Medicine area for wilderness designation in the 1986 Lewis and

Clark National Forest Land and Resource Management Plan, see Solenex Statement of Material

Facts ¶ 27, this decision was based on "the rights retained by the Blackfeet Tribe in the

Agreement of 1896," not any determination that the area's natural values were undeserving of

protection.  U.S. Forest Serv., Lewis & Clark Nat'l Forest Plan, Record of Decision, at 14 (June

1986) (FS 1095).

In attempting to paint a different picture of this region, Solenex again relies on outdated

materials.  Solenex relies on a 1985 environmental assessment to claim that its proposed drill site

is subject to automobile traffic and snowmobiling.  Solenex Statement of Material Facts ¶ 27

(citing FS 129).  There is no automobile route to Solenex's proposed drill site, but regardless this

document is irrelevant; the Forest Service issued a decision in March 2009 prohibiting motorized

vehicle use, including automobiles, off-road vehicles, and snowmobiles, across nearly all of the

Badger-Two Medicine region, including Solenex's proposed drill site, for the purpose of

preserving the area's extraordinary non-motorized recreational values.  See Travel Plan ROD at

4-5, 9-10 (Ex. 1); U.S. Forest Serv., Badger-Two Medicine—Travel Management Plan Record of

Decision Map (attached as Preso Decl. Attachment 2).  More vividly refuting Solenex's

characterization, the photograph of the proposed Solenex drill site submitted in support of

BHA's September 26, 2013 motion to intervene in this case (filed as Exhibit 12-6 in support of

that motion (Doc. 9-13) and resubmitted in support of this brief as Preso Declaration Attachment

3) conclusively shows that the area is not "roaded" or otherwise developed, as Solenex claims.

Solenex Statement of Material Facts ¶ 27.

## V.   SOLENEX'S PROPOSED WELL DOES NOT HAVE "A VERY HIGH POTENTIAL FOR DISCOVERY" OF OIL OR GAS

In addition to erroneously denigrating the cultural and environmental interests at stake in

this case, Solenex overstates the likely economic importance of its proposed oil and gas well in

the Badger-Two Medicine region.  See Solenex Mem. at 28-30.  Solenex claims that "[t]he area

of the proposed well site has a very high potential for discovery of natural gas and a somewhat

lesser potential for discovery of oil."  Solenex Statement of Material Facts ¶ 26; see also Solenex

Mem. at 1 (claiming proposed well would access "an extremely promising geologic structure").

Solenex relies on the fact that its proposed well would be sunk into a geologic feature known as

the Western Overthrust Belt, see Solenex Statement of Material Facts ¶ 26, but even so the BLM

has concluded that the likelihood that the proposed well "will be a 'dry hole' ranges from 84:1 to

98:1," 1990 EIS at IV-1 (FS 1366).  According to the BLM, the probability that the test well

would "lead to additional producing wells is about 1 percent."  Id.  Further, although Solenex

trumpets the "economic interest" of local workers "because of the high-paying jobs" that would

be associated with its proposed well-drilling project, Solenex Mem. at 29, the BLM calculated

that "there would be less than a one percent increase in earnings" in local communities if

Solenex's drilling project were to move forward, 1990 EIS at IV-156 (FS 1521).

 The BLM's predictions have been bolstered by recent oil and gas exploration work

conducted on portions of the nearby Blackfeet Reservation.  Solenex submitted, as Exhibit 1-C to

its Statement of Material Facts, a brochure describing oil and gas development activities on the

Reservation.  As this brochure explains, three companies—Rosetta Resources, Newfield

Exploration, and Anschutz Exploration Corporation—recently conducted extensive oil and gas

exploration in the area, having leased more than 1 million acres on the Reservation and in the

surrounding Alberta Basin.  See Bob Just, et al., Oil and Gas Development Opportunities on the

Blackfeet Indian Reservation, Montana, at 1-5 (attached as Exhibit 1-C to Solenex Statement of

Material Facts).  Despite devoting significant resources toward extensive oil and gas exploration,

all three companies have since withdrawn from the Reservation because further development

activities were not economically viable.  Id. at 1; see Anschutz Exploration Corp., Anschutz

Exploration Corporation to Cease Operations and Exit Project on Blackfeet Reservation (Mar.

19, 2013) (attached as Preso Decl. Attachment 4).

## VI.   AMICUS CURIAE MONTANA PETROLEUM ASSOCIATION'S ARGUMENT IS UNPERSUASIVE

The brief submitted by amicus curiae Montana Petroleum Association ("MPA") in

support of Solenex's summary judgment motion generally echoes Solenex's arguments

erroneously alleging unreasonable delay and overstating the economic importance of Solenex's

drilling project, which BHA has rebutted above.  In addition, MPA claims that this case reflects

"a disturbing trend that has sharply limited oil and gas activity and production from federal

lands," and offers various statistics in an effort to illustrate this alleged trend.  Brief of Amicus

Curiae MPA in Support of Pl.'s Mot. for Summary Judgment (Doc. 31) at 2, 6-8 ("MPA Amicus

Br.").  MPA's brief omits important facts and ultimately fails to demonstrate the "disturbing

trend" that it alleges.

MPA points to statistics indicating a decline in oil and gas leasing and drilling permits on

federal lands in recent years.  See id. at 6-8.  MPA claims that such statistics demonstrate that oil

and gas development on federal lands is "unwelcome."  Id. at 8.  However, MPA ignores larger

economic forces underlying the asserted trends.  Most significantly, the annual average price of

natural gas at the wellhead in the United States plummeted from a high of $7.33 per thousand

cubic feet in 2005 to $2.66 per thousand cubic feet in 2012.  See U.S. Energy Information

Administration, U.S. Natural Gas Wellhead Price (last updated July 31, 2014).[4]  Not

surprisingly, given these market conditions, the amount of federal acreage sought for leasing by

oil and gas companies also declined over this period—for example, the acreage that industry

---

[4] Available at http://www.eia.gov/dnav/ng/hist/n9190us3a.htm (last visited Aug. 29, 2014).

entities nominated to the Interior Department for leasing in the lower-48 United States declined by 65 percent from 2006 to 2012.  See BLM, Oil and Gas Statistics by Year for Fiscal Years 1988-2013, Table 14 (last updated Jan. 14, 2013) ("BLM Statistics").[5]  Similarly, the number of drilling permits requested by oil and gas companies in the United States dropped by 59 percent between 2006 and 2011.  See U.S. Dep't of the Interior, Oil and Gas Lease Utilization, Onshore and Offshore, Updated Report to the President, at 14 (May 2012) ("Oil and Gas Lease Utilization").[6]  In sum, although MPA presents data indicating recent declines in federal leasing and drilling permits, it fails to note that oil and gas companies recently have requested fewer leases and drilling permits from the federal government.

Further, although MPA decries a decline in drilling permits, see MPA Amicus Br. at 8, it fails to acknowledge that oil and gas companies continue to hold approximately 7,000 approved drilling permits that they have chosen not to develop, see Oil and Gas Lease Utilization, at 12; BLM Statistics, Table 13.  Similarly, although MPA criticizes reduced levels of federal oil and gas leasing, it fails to acknowledge that, "[a]s of March 31, 2012, approximately 56 percent (20.8 million acres) of total onshore acres under lease on public lands in the Lower 48 States were conducting neither production nor exploration activities."  Oil and Gas Lease Utilization, at 12. Accordingly, to the extent that MPA's allegation of a "disturbing trend" is even relevant to the Court's resolution of this case, it is unwarranted and unpersuasive.

## CONCLUSION

For the foregoing reasons, amici curiae Blackfeet Headwaters Alliance, Glacier-Two Medicine Alliance, Montana Wilderness Association, National Parks Conservation Association,

---

[5] Available at http://www.blm.gov/wo/st/en/prog/energy/oil_and_gas/statistics.html (last visited Aug. 29, 2014).

[6] Available at http://www.doi.gov/news/pressreleases/upload/Final-Report.pdf (last visited Aug. 29, 2014).

and The Wilderness Society respectfully request that this Court deny Solenex's motion for

summary judgment.

      Respectfully submitted this 2nd day of September, 2014.

                                        */s/ Timothy J. Preso*
                                        Timothy J. Preso (D.C. Bar No. 456531)
                                        Earthjustice
                                        313 E. Main St.
                                        Bozeman, MT 59715
                                        T: 406.586.9699
                                        F: 406.586.9695
                                        E: tpreso@earthjustice.org

                                        *Attorney for Amici Curiae Blackfeet Headwaters*
                                        *Alliance, et al.*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

                                          */s/ Timothy J. Preso*
                                          Timothy J. Preso