# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SOLENEX LLC, | ) | |
| | ) | Civil Case No. 13-00993 (RJL) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| S.M.R. JEWELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ORAL ARGUMENT REQUESTED)**

Steven J. Lechner, D.C. Bar No. AZ 0001
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
lechner@mountainstateslegal.com

Attorney for Plaintiff

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................... 1

ARGUMENT .............................................................................................. 3

I.   THIS COURT CAN REVIEW SOLENEX'S CLAIM THAT
     DEFENDANTS HAVE UNREASONABLY DELAYED LIFTING
     THE SUSPENSION ............................................................................. 3

     A.   Whether The Suspension Must Be Lifted Is Not Committed To
          Agency Discretion By Law.................................................... 3

     B.   Solenex Has Properly Stated A Claim For Unreasonable Delay
          Under *Southern Utah* .......................................................... 10

II.  TO THE EXTENT DEFENDANTS HAVE ANY ADMINISTRATIVE
     ACTION TO COMPLETE, THIS COURT CAN REVIEW WHETHER
     DEFENDANTS HAVE UNREASONABLY DELAYED COMPLETING
     THAT ACTION ................................................................................. 18

III. DEFENDANTS HAVE UNREASONABLY DELAYED LIFTING THE
     SUSPENSION AND/OR COMPLETING ANY ADMINISTRATIVE
     ACTION THAT THEY HAVE TO COMPLETE.......................................... 19

     A.   A 30-Year Delay Is *Per Se* Unreasonable ............................. 20

     B.   Defendants Have No Justifiable Excuse For Their Delay From
          1985 to 1996 ........................................................................ 23

     C.   Defendants' 18-Year (And Counting) Delay To Complete The
          NHPA Process Is Inexcusable, Violates The Energy Policy Act
          Of 2005, And Proves That Their Delay Is Unreasonable .................. 26

IV.  BECAUSE OF DEFENDANTS' UNREASONABLE DELAY, SOLENEX
     IS ENTITLED TO ITS REQUESTED RELIEF ........................................... 31

CONCLUSION.............................................................................................. 32

REQUEST FOR ORAL ARGUMENT ................................................................ 33

CERTIFICATE OF SERVICE .......................................................................... 34

## **TABLE OF AUTHORITIES**
(* denotes cases primarily relied upon)

**Page**

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)................................................................................... 3, 4

*In re Aiken Cnty.,*
    725 F.3d 255 (D.C. Cir. 2013)............................................................... 21, 31

*In re American Rivers & Idaho Rivers United,*
    372 F.3d 413 (D.C. Cir. 2004)..................................................................... 23

*Arkla Exploration Co. v. Texas Oil & Gas Corp.,*
    734 F.2d 347 (8th Cir. 1984) ........................................................... 10, 20, 26

*ATX, Inc. v. U.S. Dep't of Transp.,*
    41 F.3d 1522 (D.C. Cir. 1994) .................................................................... 24

*California Co. v. Udall,*
    296 F.2d 384 (D.C. Cir. 1961)............................................................... 10, 22

*Calvert Cliffs' Coordinating Comm., Inc. v. U. S. Atomic Energy Comm'n,*
    449 F.2d 1109 (D.C. Cir. 1971).................................................................. 18

*Chapman v. Sheridan-Wyoming Coal Co.,*
    338 U.S. 621 (1950)...................................................................................... 8

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971).............................................................................. 4, 5, 8

*In re City of Virginia Beach,*
    42 F.3d 881 (4th Cir. 1994) .................................................................. 29, 31

*Cody v. Cox,*
    509 F.3d 606 (D.C. Cir. 2007)................................................................... 4, 6

*Copper Valley Machine Works, Inc. v. Andrus,*
    653 F.2d 595 (D.C. Cir. 1981)................................................................... 7, 9

*In re Core Commc'ns, Inc.,*
    531 F.3d 849 (D.C. Cir. 2008).................................................................... 23

*Costle v. Pacific Legal Foundation,*
    445 U.S. 198 (1980).................................................................................... 14

*Cutler v. Hayes,*
    818 F.2d 879 (D.C. Cir. 1987) ............................................................................ 23

*Dayton Tire v. Sec'y of Labor,*
    671 F.3d 1249 (D.C. Cir. 2012) .......................................................................... 22

*Del-Rio Drilling Programs, Inc. v. United States,*
    46 Fed. Cl. 683 (2000) ....................................................................................... 24

*District of Columbia Fed'n of Civic Ass'ns v. Volpe,*
    459 F.2d 1231 (D.C. Cir. 1971) .......................................................................... 24

*Forest Guardians v. Babbitt,*
    174 F.3d 1178 (10th Cir. 1999) .......................................................................... 16

*Getty Oil Co. v. Clark,*
    614 F. Supp. 904 (D. Wyo. 1985) ........................................................................ 7

*Gulf Oil Corp. v. Morton,*
    493 F.2d 141 (9th Cir. 1973) .............................................................................. 15

*Harvey v. Udall,*
    384 F.2d 883 (10th Cir. 1967) .............................................................................. 8

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ..................................................................................... 4, 5, 8

*Hoyl v. Babbitt,*
    129 F.3d 1377 (10th Cir. 1997) ..................................................................... 7, 8, 9

*ICC v. Bhd of Locomotive Engineers,*
    482 U.S. 270 (1987) .............................................................................................. 5

*Independence Min. Co. v. Babbitt,*
    105 F.3d 502 (9th Cir. 1997) .............................................................................. 15

*Izaak Walton League of Am. v. Marsh,*
    655 F.2d 346 (D.C. Cir. 1981) ............................................................................ 14

*Jama v. Immigration and Customs Enforcement,*
    543 U.S. 335 (2005) ............................................................................................ 25

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of
Consular Affairs,*
    104 F.3d 1349 (D.C. Cir. 1997) ............................................................................ 5

*Lincoln v. Vigil,*
    508 U.S. 182 (1993)................................................................ 4, 5

*Lujan v. Nat'l Wildlife Federation,*
    497 U.S. 871 (1990)................................................................ 12

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988)................................................................ 27

*MCI Telecommunications Corp. v. FCC,*
    627 F.2d 322 (D.C. Cir. 1980)................................................. 22, 23

*Marathon Oil v. Lujan,*
    751 F. Supp. 1454 (D. Colo. 1990)......................................... 25

*Marathon Oil v. Lujan,*
    937 F.2d 498 (10th Cir. 1991) ............................... 15, 25, 26, 31

*Marbury v. Madison,*
    5 U.S. 137 (1803)................................................................... 4–5

*Massachusetts v. EPA,*
    549 U.S. 497 (2007)................................................................ 6

*Midwest Gas Users Ass'n v. FERC,*
    833 F.2d 341 (D.C. Cir. 1987)................................................. 23

*\*Mountain States Legal Foundation v. Andrus,*
    499 F. Supp. 383 (D. Wyo. 1980)........................................... 21

*Muwekma Tribe v. Babbitt,*
    133 F. Supp. 2d 30 (D.D.C. 2000) .......................................... 27

*N. Slope Borough v. Andrus,*
    642 F.2d 589 (D.C. Cir. 1980)................................................. 14

*\*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ............................................................ *passim*

*Orion Reserves Ltd. P'ship v. Kempthorne,*
    516 F. Supp. 2d 8 (D.D.C. 2007)............................................ 15, 32

*Orion Reserves Ltd. P'ship v. Kempthorne,*
    553 F.3d 697 (D.C. Cir. 2009)................................................. 15

*In re People's Mojahedin Org. of Iran,*
    680 F.3d 832 (D.C. Cir. 2012) ............................................................ 27

*Pillsbury Co. v. FTC,*
    354 F.2d 952 (5th Cir. 1966) ............................................................ 24

*Public Citizen Health Research Grp. v. Brock,*
    823 F.2d 626 (D.C. Cir. 1987) ............................................................ 28, 32

*Public Citizen Health Research Grp. v. Chao,*
    314 F.3d 143 (3d Cir. 2002) ............................................................ 23, 27

*Public Citizen Health Research Grp. v. Commissioner, FDA,*
    740 F.2d 21 (D.C. Cir. 1984) ............................................................ 31

*San Carlos Apache Tribe v. United States,*
    417 F.3d 1091 (9th Cir. 2005) ............................................................ 29

*Sierra Club v. Thomas,*
    828 F.2d 783 (D.C. Cir. 1987) ............................................................ 28

*Sims v. Ellis,*
    972 F. Supp. 2d 1196 (D. Idaho 2013) ............................................................ 15–16

*Sims v. Ellis,*
    972 F. Supp. 2d 1211(D. Idaho 2013) ............................................................ 16

*Smith v. Illinois Bell Tel. Co.,*
    270 U.S. 587 (1926) ............................................................ 22

*S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation &*
*Enforcement,*
    620 F.3d 1227 (10th Cir. 2010) ............................................................ 8, 14

*Stark v. Wickard,*
    321 U.S. 288 (1944) ............................................................ 5

*Sun Oil Co. v. United States,*
    572 F.2d 786 (Ct. Cl. 1978) ............................................................ 16

*\*Telecomms. Research & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ............................................................ *passim*

*Texaco Producing, Inc. v. Hodel,*
    840 F.2d 776 (10th Cir. 1988) ............................................................ 7

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ............................................................ 4

*Udall v. Tallman,*
    380 U.S. 1 (1965) ................................................................................ 9

*Union Oil Co. of California v. Morton,*
    512 F.2d 743 (9th Cir. 1975) ......................................................... 14, 16

*United Air Lines v. Civil Aeronautics Bd.,*
    198 F.2d 100 (7th Cir. 1952) ........................................................ 10, 14

*In re United Mine Workers of Am. Int'l Union,*
    190 F.3d 545 (D.C. Cir. 1999) ......................................................... 19

*Utah Int'l Inc. v. Andrus,*
    488 F. Supp. 962 (D. Utah 1979) ....................................................... 26

*Webster v. Doe,*
    486 U.S. 592 (1988) ............................................................................ 5

*Western Energy Alliance v. Salazar,*
    10-CV-237F, 2011 WL 3738240 (D. Wyo. 2011) .............................. 30

*Wilbur v. Krushnic,*
    280 U.S. 306 (1930) .......................................................................... 15

*White v. Mathews,*
    434 F. Supp. 1252 (D. Conn. 1976) ................................................... 22

*White v. Mathews,*
    559 F.2d 852 (2d Cir. 1977) .............................................................. 22

**<u>Administrative Decisions</u>**

*Brigham Oil & Gas, LP,*
    181 IBLA 282 (2011) ......................................................................... 30

*Oil & Gas Lease Suspensions,* M-36953,
    1985 WL 57832 (1985) ........................................................................ 7

*Suspensions of Operations and Production for Coal Leases under Section 39 of the Mineral Leasing Act of 1920,* M-36958,
    1988 WL 238274 (1988) ...................................................................... 9

**Statutes**

1980 Energy Security Act,

    42 U.S.C. § 8855 ................................................................................... 21

Energy Policy Act of 2005 ("EPAct"), Pub. L. No. 109-58, 119 Stat. 594 (2005)...... 29, 30, 31

    42 U.S.C. § 15921(a) ........................................................................... 27, 30

Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*................................... *passim*

    5 U.S.C. § 551(6) ................................................................................ 13

    5 U.S.C. § 551(7) ................................................................................ 13

    5 U.S.C. § 551(13) ........................................................................ 11, 12, 13

    5 U.S.C. § 554 .................................................................................... 14

    5 U.S.C. § 555(b) ........................................................................ 3, 21, 22, 27

    5 U.S.C. § 701(a)(1) ............................................................................. 4

    5 U.S.C. § 701(a)(2) ...................................................................... 4, 8, 19

    5 U.S.C. § 702 ............................................................................. 2, 3, 11

    5 U.S.C. § 704 .................................................................................... 11

    5 U.S.C. § 706(1) ............................................................................ *passim*

    5 U.S.C. § 706(2) ................................................................................ 14

Federal Land Management and Policy Act ("FLPMA"), 43 U.S.C. §§ 1701–82........ 11, 12, 17, 21

    43 U.S.C. § 1711(a) ............................................................................. 11

    43 U.S.C. § 1714(c) ............................................................................. 21

    43 U.S.C. § 1714(d)(3) ......................................................................... 25

    43 U.S.C. § 1782(a) ............................................................................. 11

    43 U.S.C. § 1782(c) ............................................................................. 11

Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §§ 181–287 ................................ *passim*

    30 U.S.C. § 189 ................................................................................ 7

    30 U.S.C. § 209 ................................................................................ 4, 6, 7, 25

    30 U.S.C. § 226(i) ........................................................................... 7

    30 U.S.C. § 226(p)(2) ...................................................................... 21, 30

Mining and Minerals Policy Act of 1970

    30 U.S.C. § 21(a) ............................................................................ 21

Mining Law, 30 U.S.C. § 22 *et seq.* ................................................. 15

    30 U.S.C. § 29 ................................................................................ 15

National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.* .................. *passim*

National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470–470x-6 ................ *passim*

**<u>Regulations</u>**

36 C.F.R. § 800.4 ...................................................................................... 28

40 C.F.R. § 1500.1(b) ............................................................................... 29

40 C.F.R. § 1500.1(c) ............................................................................... 29

40 C.F.R. § 1500.4 .................................................................................... 29

40 C.F.R. § 1500.5 .................................................................................... 29

43 C.F.R. § 3103.4–4(a) ............................................................................ 9, 25

43 C.F.R. § 3165.1(c) ................................................................................ 16

**<u>Other Authorities</u>**

Black's Law Dictionary (9th ed. 2009) ...................................................... 10

S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945) ...................................... 5

James D. Harris, *Relative Property Interests On The Federal Oil And Gas Lease,* 2008 No. 1 RMMLF-INST Paper No. 13B ...................................... 22

Senate Subcommittee of the Committee on Interior and Insular Affairs, *The Investigation of Oil and Gas Lease Practices*, 84th Cong., 2nd Sess. 2 (1957) .......... 8

U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* (1947) ..................................................................................... 12

WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY, UNABRIDGED (2d ed. 1978) ....................................................................... 30

Plaintiff, Solenex, LLC, hereby files this combined opposition to Defendants' Cross-Motion for Summary Judgment (Docs. 33, 34-1) and reply in support of its own Motion for Summary Judgment (Docs. 24, 24-1).  Solenex also responds to the amicus curiae briefs filed by Blackfeet Headwaters Alliance, *et al.*, (collectively "Alliance") and the Blackfeet Tribe ("Tribe").  Docs. 37, 38.

## **INTRODUCTION**

Solenex is the owner of federal oil and gas lease M-53323, which was issued in 1982.[1]  In the fall of 1983, Solenex's predecessor, in full compliance with all relevant statutes and regulations, submitted an application for permit to drill ("APD") one exploratory well on M-53323.  PSOF ¶ 23.  Over 30 years have elapsed; yet the spudding of the well is no closer than it was in 1983 because of the recalcitrance of Defendants.  For the last 28 years Defendants have suspended operations and production on the lease, ostensibly so that they could comply with the procedural requirements in the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.*, and the National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470–470x-6.  Although Defendants have gone through the NEPA and NHPA processes four times and have approved the APD four times (the last approval occurring in 1993), since July 1996, Defendants have been purportedly trying to comply with the NHPA for a fifth time.  To make matters worse, before lifting the suspension, Defendants intend to perform another NEPA process.  In short, there is no end in sight for the suspension.  The only reasonable conclusion that can be drawn

---

[1] Solenex previously stated that its leased acres are "basically surrounded by the Lewis and Clark National Forest, although the Great Northern Railroad, U.S. Highway 2, and Glacier National Park form the west boundary, and private lands form part of the north boundary."  Plaintiff's Statement of Material Facts ("PSOF") ¶ 13, Doc. 24-2.  That statement is not precise.  The west boundary abuts Glacier National Park and the Great Northern Railroad and U.S. Highway 2 are actually on the leased acres.  HC00884.  Thus, Solenex has the right to the oil and gas under the portion of the transportation corridor that crosses its lease.  *Id.*

from these facts is that Defendants have no intention of ever lifting the suspension and allowing Solenex to exercise its lease rights.

On June 28, 2013, Solenex filed this case against Defendants seeking to compel agency action "unreasonably delayed" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).[2]  Specifically, Solenex asserted two claims for relief:  (1) Defendants have unlawfully delayed lifting the suspension, Complaint ¶¶ 26–34, and (2) to the extent that Defendants may have any administrative action to complete, Defendants have unlawfully delayed the completion of that action.  *Id.* ¶¶ 35–44.  Based upon the factors set forth in *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), Defendants' delay is not just unreasonable—it shocks the conscience.  Doc. 24-1 at 33–49.[3]  Accordingly, Solenex asks this Court to issue an order compelling Defendants to lift the suspension and allow Solenex to commence operations, effective July 1, 2015.  *Id.* at 50.  In the alternative, and to the extent there remains any administrative action to complete, Solenex asks this Court to order Defendants to: (1) identify any and all actions that have to be completed; (2) expeditiously complete all actions; and (3) lift the suspension and allow Solenex to commence operations on July 1, 2015.  *Id.* at 50–51.

In a desperate attempt to avoid judicial review, Defendants argue they may suspend operations and production on a federal oil and gas lease indefinitely and that a federal district court is powerless to do anything about it.  Specifically, Defendants argue that their delay is

---

[2] The APA waives any sovereign immunity Defendants may have.  5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or *failed to act* in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." (emphasis added)).

[3] The page numbers of ECF documents cited herein refer to those numbers assigned to the document by the ECF system.

unreviewable because:  (1) whether the suspension should be lifted is committed to agency discretion by law; and (2) under *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("*Southern Utah*"), Solenex has not stated a claim for unreasonable delay.  Doc. 34-1 at 22–25.  In the alternative, Defendants argue they have not unreasonably delayed because they have been "working diligently" and "have made consistent progress."  *Id*. at 25–27.

As demonstrated below, whether the suspension should be lifted is not committed to agency discretion by law because there is ample law for this Court to apply.  In addition, Solenex has properly stated claims for unreasonable delay under *Southern Utah*.  In fact, Defendants' argument that this Court is powerless to remedy Defendants' 28-year suspension would completely frustrate Congress's intent in passing the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §§ 181–287.  Finally, Defendants' excuses that they have "worked diligently" and "have made consistent progress" ring hollow considering the extraordinary length of time that has transpired.  In any event, Congress has mandated that agencies not simply "work" and make "progress," but to actually "*conclude*" matters presented to them within a reasonable time.  5 U.S.C. § 555(b) (emphasis added).

## ARGUMENT

### I.   THIS COURT CAN REVIEW SOLENEX'S CLAIM THAT DEFENDANTS HAVE UNREASONABLY DELAYED LIFTING THE SUSPENSION.

#### A.   Whether The Suspension Must Be Lifted Is Not Committed To Agency Discretion By Law.

The APA "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702 . . . ."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967).

Under the APA, this presumption may be overcome in only two circumstances.[4]  First, when the

relevant statute expressly precludes judicial review, 5 U.S.C. § 701(a)(1),[5] and second, when

agency action is committed to agency discretion by law.  5 U.S.C. § 701(a)(2).  Because Section 39

of the MLA, 30 U.S.C. § 209, allows the Secretary to suspend operations and production on federal

oil and gas leases, Defendants argue that the Secretary's failure to lift the suspension is insulated

from judicial review because such decision is committed to agency discretion by law under 5

U.S.C. § 701(a)(2).[6]  Doc. 34-1 at 22–25.  Defendants' argument is fatally flawed.

The exception to judicial review in 5 U.S.C. § 701(a)(2) for agency action "committed to

agency discretion by law" is a "narrow exception." *Citizens to Pres. Overton Park, Inc. v. Volpe*,

401 U.S. 402, 410 (1971).  "Over the years," the Court has "read [5 U.S.C. § 701(a)(2)] to preclude

judicial review of certain categories of administrative decisions that courts traditionally have

regarded as "committed to agency discretion."  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).  These

categories include:  (1) an agency's decision not to institute enforcement proceedings, *Heckler v.*

*Chaney*, 470 U.S. 821, 827–35 (1985);[7] (2) an agency's refusal to grant reconsiderations of an

---

[4] The burden of overcoming this presumption is on Defendants.  *Cody v. Cox*, 509 F.3d 606, 610
(D.C. Cir. 2007).  Moreover, Defendants must overcome this presumption by clear and
convincing evidence.  *Abbott Labs*., 387 U.S. at 141.  Defendants have not come close to
satisfying their burden of proof.

[5] Defendants do not argue that judicial review is precluded under 5 U.S.C. § 701(a)(1).  In fact,
the MLA recognizes the availability of judicial review with respect to oil and gas leases.  30
U.S.C. § 226-2.

[6] Based upon their arguments that judicial review is not available under the APA, Defendants
suggest this case should be dismissed for lack of subject matter jurisdiction.  Doc. 34-1 at 25.
This suggestion, however, is refuted by Defendants themselves.  *Id*. at 1, n.1. ("the requirements
of the judicial review provisions of the APA are not viewed as jurisdictional in this circuit"
(citing *Trudeau v. FTC*, 456 F.3d 178, 184–85 (D.C. Cir. 2006)).

[7] In *Heckler*, the Court noted that "when an agency refuses to act it generally does not exercise
its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon
areas that courts often are called upon to protect."  470 U.S. at 832 (emphasis in originally).
Here, however, Defendants' failure to act prevents Solenex from exercising its valuable lease
rights.  As the Court has stressed, it is the judiciary's duty to protect those rights.  *Marbury v.*

action because of a material error, *ICC v. Bhd. of Locomotive Engineers*, 482 U.S. 270, 280–84

(1987); (3)  the Director of the CIA's decision to terminate an employee in the interests of national

security, *Webster v. Doe*, 486 U.S. 592, 599–601 (1988); and (4) an agency's allocations of funds

from a lump-sum appropriation.  *Lincoln*, 508 U.S. at 195.

Defendants' failure to lift the suspension does not fall into one of the categories of agency

action identified by the Court as being committed to agency discretion by law.  Nor could

Defendants' failure be characterized as an agency decision that has traditionally been regarded as

committed to agency discretion by law.  *See Legal Assistance for Vietnamese Asylum Seekers v.*

*Dep't of State, Bureau of Consular Affairs*, 104 F.3d 1349, 1352–53 (D.C. Cir. 1997) (ruling that

agency decisions involving complicated foreign policy matters are committed to agency discretion

by law).

The Court has also concluded that agency action is committed to agency discretion by law

in "those rare instances where 'statutes are drawn in such broad terms that in a given case there is

no law to apply."  *Overton Park,* 401 U.S. at 410 (quoting S.Rep. No. 752, 79th Cong., 1st Sess.,

26 (1945)).  "In such a case, the statute ('law') can be taken to have 'committed' the

decisionmaking to the agency's judgment *absolutely*."  *Heckler*, 470 U.S. at 830 (emphasis added).

Section 39 of the MLA, under which the suspension was issued, is not one of those statutes.

For purposes of this case, the relevant provisions of Section 39 are the first and third

sentences.  The first sentence provides:

> The Secretary of the Interior, for the purpose of encouraging the greatest ultimate
> recovery of coal, oil, gas, oil shale, gilsonite (including all vein-type solid

---

*Madison*, 5 U.S. 137, 170 (1803) ("The province of the court is, solely, to decide on the rights of
individuals . . . ."); *Stark v. Wickard*, 321 U.S. 288, 310 (1944) ("[U]nder Article III, Congress
established courts to adjudicate cases and controversies as to claims of infringement of
individual rights whether by unlawful action of private persons *or by the exertion of
unauthorized administrative power*." (emphasis added)).

hydrocarbons), phosphate, sodium, potassium and sulfur, and in the interest of conservation of natural resources, is authorized to waive, suspend, or reduce the rental, or minimum royalty, or reduce the royalty on an entire leasehold, or on any tract or portion thereof segregated for royalty purposes, whenever in his judgment it is necessary to do so in order to promote development, or whenever in his judgment the leases cannot be successfully operated under the terms provided therein. . . .

30 U.S.C. § 209.

This sentence allows the Secretary, "for the purpose of encouraging the greatest ultimate recovery" and "in the interest of conservation of natural resources," "to waive, suspend, or reduce the rental, or minimum royalty" "*whenever in his judgment* it is necessary to do so in order to promote development, or *whenever in his judgment* the lease[] cannot be successfully operated under the terms provided therein." 30 U.S.C. § 209 (all emphasis added). By focusing on the phrase "whenever in his judgment," Defendants seemingly argue that the decision to lift a suspension is committed to agency discretion by law. Doc. 34-1 at 24–25. What Defendants ignore, however, is that the first sentence of Section 39 deals with suspending rentals and royalties. 30 U.S.C. § 209. The first sentence does not deal with suspending operations and production, which is the type of suspension that Defendants have imposed all these years, and which is dealt with in the third sentence of 30 U.S.C. § 209.[8]

The third sentence of Section 39 of the MLA provides:

---

[8] Even if the first sentence applies, suspensions under that sentence are not committed to agency discretion by law. Although the phrase "whenever in his judgment" may suggest discretion, that discretion is limited by the qualifying phrases "in order to promote development" and "the lease[] cannot be successfully operated under the terms provided therein." 30 U.S.C. § 209. Because these qualifying phases supply the requisite law to apply, the Secretary's decision to suspend under the first sentence is not committed to agency discretion by law. *See Cody*, 509 F.3d at 610–11 (ruling that, although "high quality and cost-effective health care is a tricky standard for a court to apply," it is a judicially reviewable standard nonetheless) (internal quote marks omitted); *see also Massachusetts v. EPA*, 549 U.S. 497, 552–53 (2007) (Use of the word "judgment" in a statute does not confer unbridled discretion divorced from the purposes of the relevant act. "It is . . . a direction to exercise discretion within defined statutory limits.").

> In the event the Secretary of the Interior, in the interest of conservation, shall direct
> or shall assent to the suspension of operations and production under any lease
> granted under the terms of this chapter, any payment of acreage rental or of
> minimum royalty prescribed by such lease likewise shall be suspended during such
> period of suspension of operations and production; and the term of such lease shall
> be extended by adding any such suspension period thereto.

30 U.S.C. § 209.  This sentence allows the Secretary, "in the interest of conservation" to "direct" or "assent to the suspension of operations and production under any lease granted under" the MLA.

Although this sentence may suggest that the granting of a suspension of operations and production involves discretion, the exercise of that discretion is not committed to agency discretion by law.  Indeed, courts have routinely reviewed the Secretary's granting or denial of a suspension of operations and production in light the qualifying phase "in the interest of conservation."[9] *Copper Valley Machine Works, Inc., v. Andrus*, 653 F.2d 595, 600–605 (D.C. Cir. 1981) (ruling that a condition imposed at the APD stage that limited operations to winter months only effectuated a *de facto* suspension of operations and production under Section 39 of the MLA); *Getty Oil Co. v. Clark*, 614 F. Supp. 904, 915–919 (D. Wyo. 1985) (reviewing the Secretary's suspension decision to ensure that the Secretary acted "reasonable under the circumstances"), *aff'd sub nom. Texaco Producing, Inc. v. Hodel*, 840 F.2d 776 (10th Cir. 1988); *Hoyl v. Babbitt*, 129 F.3d 1377, 1382–86 (10th Cir. 1997) (reviewing whether the Secretary's denial of a suspension of

---

[9] In contrast, Section 17(i) of the MLA, which provides for suspensions of operations *or* production, contains no standards.  30 U.S.C. § 226(i) ("No lease issued under this section shall expire because *operations or production* is suspended under any order, or with the consent, of the Secretary." (emphasis added).  Yet, the Solicitor, Department of the Interior, has opined that the Secretary, in administering Section 17(i), may adopt the Section 39 standard (as was reflected in the existing regulation) or any other appropriate standard under the general authority to carry out the purposes of the MLA.  *Oil & Gas Lease Suspensions*, M-36953, 1985 WL 57832, *8 (1985); *see* 30 U.S.C. § 189 ("The Secretary of the Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of [the MLA] . . . .").  By recognizing that Section 39 contained a "standard" and that the Secretary's authority to administer the MLA was constrained by the "purposes of the MLA," the Solicitor has demonstrated that Section 39 suspensions are not committed to agency discretion by law.

a coal lease was arbitrary, capricious, otherwise not supported by law, or not supported by

substantial evidence).

In addition, the Secretary's grant or denial of a suspension of operations and production

must also be reviewed in light of the overall purpose of the MLA, which is "'to promote the

orderly development of the oil and gas deposits in the publicly owned lands of the United States

*through private enterprise*.'"  *Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967) (quoting Senate

Subcommittee of the Committee on Interior and Insular Affairs, *The Investigation of Oil and Gas

Lease Practices*, 84th Cong., 2nd Sess. 2 (1957)) (emphasis added); *see Chapman v. Sheridan-

Wyoming Coal Co.*, 338 U.S. 621, 628 (1950) (The "whole policy [of the MLA] seems to

contemplate the opening of the public domain to competitive *exploitation*." (emphasis added)).

This conclusion is clear from the Court's ruling in *Overton Park*, where the Court looked to the

overall purposes of the acts at issue, i.e., to preserve parks, to find that there was law to apply and

to conclude that the challenged agency action was not committed to agency discretion by law.  401

U.S. at 410–13; *Webster*, 486 U.S. at 600 ("Both *Overton Park* and *Heckler* emphasized that §

701(a)(2) requires careful examination of the statute on which the claim of agency illegality is

based (the Federal-Aid Highway Act of 1968 in *Overton Park* and the Federal Food, Drug, and

Cosmetic Act in *Heckler*).").  This conclusion is further supported by *Hoyl,* in which the Tenth

Circuit considered one of the goals of the MLA, as reflected in the phase "for the purpose of

encouraging the greatest ultimate recovery" and reviewed the Secretary's denial of a suspension of

operations and productions for a coal lease under a two-part test:  "a suspension must '[be] in the

interest of conservation of natural resources' and 'for the purpose of encouraging the greatest

ultimate recovery of coal . . . .'"  129 F.3d at 1385; *see S. Utah Wilderness Alliance v. Office of

Surface Mining Reclamation & Enforcement*, 620 F.3d 1227, 1231 (10th Cir. 2010).

Notably, *Hoyl*'s two-part test is consistent with the Department of the Interior's interpretation of when a suspension of operations and production may be issued. *Suspensions of Operations and Production for Coal Leases under Section 39 of the Mineral Leasing Act of 1920*, M-36958, 1988 WL 238274, *3 (1988) ("The Department, with judicial approval, has construed the term 'conservation' to include *not only maximizing recovery* and avoiding or minimizing waste or loss of the leased mineral resource but also avoiding or minimizing damage to other natural resources, such as wildlife, water quality, air quality and other minerals." (emphasis added) (citing *Copper Valley*, 653 F.2d at 600)); *see* 43 C.F.R. § 3103.4–4(a) ("A suspension of all operations and production may be directed or consented to by the authorized officer only in the interest of conservation of natural resources."). As the overall purpose of the MLA and *Hoyl*'s two-part test provide ample law to apply, the Secretary's decision to suspend operations and production is not committed to agency discretion by law.

More importantly, because the Secretary's grant or denial of a suspension of operations and production is not committed to agency discretion by law, it follows that the Secretary's failure to lift a suspension is also not committed to agency discretion by law. For example, it is generally recognized that the Secretary has broad discretion in making leasing decisions under the MLA. *Udall v. Tallman*, 380 U.S. 1, 4 (1965) (even though the MLA "directed that if a lease were issued on such a tract, it had to be issued to the first qualified applicant, it left the Secretary discretion to refuse to issue any lease at all on a given tract"). Despite this broad discretion, the Secretary's decision to issue leases is subject to judicial review:

> Concededly, ["known geological structure of a producing oil or gas field"] is a broad term, and the Secretary has authority to determine its meaning. *Even so, this authority must operate within the confines of Congressional intent, not to mention common sense.* These confines were exceeded when, based on a map nearly void of pertinent information other than one-mile sections around producing wells, the Secretary [leased] valuable public resources at fire sale prices.

*Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 359 (8th Cir. 1984) (emphasis added).

Similarly, the Secretary's discretion whether to lift a suspension is "confined" by Congress's intent in passing the MLA and "common sense."  The MLA was intended to promote the development of oil and gas resources and to "obtain for the public a reasonable financial return on assets that 'belong' to the public."  *California Co. v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961).  A 28-year suspension of operations and production not only stymies the "development of oil and gas resources" and prevents any "financial return[s]" from M-53323, it has adverse consequences for all federal oil and gas lessees, and State and local communities dependent on oil and gas production from federal oil and gas leases.  *See Brief of Amicus Curiae the Montana Petroleum Association*, Doc. 31 at 4–13.  In addition, common sense suggests that "suspensions" should not last nearly three decades, but should be of a temporary nature.  BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "suspension" as "[t]he act of *temporarily* delaying, interrupting, or terminating something") (emphasis added); *United Air Lines v. Civil Aeronautics Bd.*, 198 F.2d 100, 108 (7th Cir. 1952) (indicating that a "suspension" is of a "temporary nature").  Because these factors supply requisite law to apply, the Secretary's failure to lift a suspension is not committed to agency discretion by law, and this Court can review Defendants' unreasonable delay.

**B.      Solenex Has Properly Stated A Claim For Unreasonable Delay Under**
***Southern Utah.***

In *Southern Utah*, environmental groups sought declaratory and injunctive relief for the BLM's alleged failures to protect public lands in Utah from damage caused by off-road vehicle ("ORV") use.  542 U.S. at 60.  As relevant here, the groups alleged that the BLM had violated

the "non-impairment provision" in the Federal Land Policy and Management Act ("FLPMA"),

43 U.S.C. §§ 1701–82, because ORV use purportedly made certain wilderness study areas

("WSAs") unsuitable for wilderness designation.[10]  *Southern Utah*, 542 U.S. at 60–61.  The

groups alleged that a court could remedy this purported failure to act under 5 U.S.C. § 706(1).

*Id*. at 61.

Because the groups characterized their claim as a failure to act, the Court began its

analysis by "considering what limits the APA places on judicial review of agency inaction."  *Id*.

at 61.  Noting that the judicial review provisions of the APA "all insist upon an 'agency action,'

either as the action complained of [5 U.S.C. §§ 702 and 704] or as the action to be compelled [5

U.S.C. § 706(1),]" the Court explored the definition of "agency action" in the APA, which

provides: "'agency action' includes the whole or a part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, or failure to act . . . ."  5 U.S.C. § 551(13).

As this definition begins with five categories of agency decisions or outcomes that constitute

"discrete agency actions," the Court concluded that "failure to act" meant the failure to take one

of these "discrete agency actions," or their equivalents.[11]  *Id*. at 62–63 ("The important point is

---

[10] FLPMA provides that the Secretary "shall review those roadless areas of five thousand acres or more and roadless islands of the public lands, identified during the inventory required by [43 U.S.C. § 1711(a)] as having wilderness characteristics . . . and shall from time to time report to the President his recommendation as to the suitability or nonsuitability of each such area or island for preservation as wilderness."  43 U.S.C. § 1782(a).  "During the period of review of such areas and until Congress has determined otherwise, the Secretary shall continue to manage such lands according to his authority under this Act and other applicable law in a manner *so as not to impair the suitability of such areas for preservation as wilderness*, subject, however, to the continuation of existing mining and grazing uses and mineral leasing in the manner and degree in which the same was being conducted on October 21, 1976 . . . ."  43 U.S.C. § 1782(c) (emphasis added).

[11] As noted by the Court, limiting judicial review "to discrete agency action" precludes "broad programmatic attack[s]" where plaintiffs seek "'*wholesale* improvement'" of an agency's administration of a statutory program "'by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made.'"

that a 'failure to act' is properly understood to be limited, as are the other items in § 551(13), to a

*discrete* action.") (emphasis in original).

The Court continued on to conclude that the authorization to compel agency action

unlawfully withheld in 5 U.S.C. § 706(1) could only apply to agency "action legally *required*."

*Southern Utah*, 542 U.S. at 63 (emphasis in original).  This conclusion was based upon

"traditional practice" prior to passage of the APA:

> [T]he APA carried forward the traditional practice prior to its passage, when
> judicial review was achieved through use of the so-called prerogative writs-
> principally writs of mandamus under the All Writs Act, now codified at 28 U.S.C.
> § 1651(a). . . .  As described in the Attorney General's Manual on the APA . . . §
> 706(1) empowers a court only to compel an agency "to perform a ministerial or
> non-discretionary act," or "to take action upon a matter, without directing *how* it
> shall act."

*Southern Utah*, 542 U.S. at 63–64 (quoting Attorney General's Manual on the Administrative

Procedure Act 108 (1947) (emphasis in original)).  Thus, in sum, the Court ruled "a claim under

[5 U.S.C. § 706(1)] can proceed only where a plaintiff asserts that an agency failed to take a

*discrete* agency action that it is *required to take*."  *Id*. at 64 (all emphasis in original).

Applying this test, the Court easily rejected the environmental groups' argument that by

permitting ORV use in WSAs, the BLM unlawfully withheld agency action, i.e., unlawfully

withheld implementation of FLPMA's non-impairment provision.[12]  *Southern Utah*, 542 U.S. at

---

*Southern Utah*, 542 U.S. at 64 (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 891
(1990) (emphasis in original)).  Solenex is not seeking "wholesale improvement" in the way
Defendants administer the MLA.  Instead, Solenex is seeking to compel discrete action regarding
a single APD that has been gathering dust in Defendants' offices for over 30 years.

[12] In contrast to the unreasonable delay claims asserted by Solenex, the claims asserted in
*Southern Utah* all involved action that was alleged to be unlawfully withheld.  Accordingly, the
Court did not specifically address the "unreasonable delay" prong of 5 U.S.C. § 706(1), other
than to assert that "a delay cannot be unreasonable with respect to action that is not required."
*Southern Utah*, 542 U.S. at 63, n.1.  As demonstrated below, Defendants lack discretion to
permanently suspend operations and production and, thus, lifting the suspension is agency action

65–67.  Although the Court recognized that the non-impairment provision was a statutory requirement, the Court recognized that "it leaves BLM a great deal of discretion in deciding how to achieve it" and it "assuredly does not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of ORV use."  *Id.* at 66.  The Court further elaborated that to enforce a broad, statutory mandate—the non-impairment provision—under 5 U.S.C. § 706(1), would impermissibly interject the judiciary into the day-to-day operations of a land management agency:

> The principal purpose of the APA limitations we have discussed—and of the traditional limitations upon mandamus from which they were derived—is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve.  If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

*Id.* at 66–67.

Based upon *Southern Utah*, Solenex has stated a claim for relief under 5 U.S.C. § 706(1) vis-à-vis the lifting of the suspension.  First, lifting the suspension would be one of the discrete agency actions (or their equivalents) listed in 5 U.S.C. § 551(13).  *See Southern Utah*, 542 U.S. at 61–63.  Solenex submits that lifting the suspension would be an "order" (or its equivalent), which is the end result of a formal or informal "adjudication."  5 U.S.C. § 551(6) (defining "order" to mean "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing"); 5 U.S.C. § 551(7) (defining "adjudication" to mean an "agency process for the

_____

that Defendants are required to take, making Defendants' delay reviewable under the "unreasonable delay" prong of 5 U.S.C. § 706(1).

formulation of an order"); 5 U.S.C. § 554 (setting forth requirements for formal adjudications);

*Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 361, n.37 (D.C. Cir. 1981) (indicating that

"informal adjudication" refers to a residual category including all agency actions that are not

rulemaking or formal adjudications); *see S. Utah Wilderness Alliance*, 620 F.3d at 1231–32

(characterizing a suspension under 30 U.S.C. § 209 as an "order"); *see also Union Oil Co. of

California v. Morton*, 512 F.2d 743, 751–52 (9th Cir. 1975) (suspension decisions under Outer

Continental Shelf Lands Act ("OCSLA") are subject to judicial review under 5 U.S.C. § 706(2)).

      Second, lifting the suspension is an action that Defendants are "required to take."[13]  The

suspension of operations and production has lasted over 28 years and there is no end in sight.  In

granting the Secretary the authority to issue suspensions, Congress did not confer authority on the

Secretary to suspend operations and production permanently because that would frustrate the very

purpose of the MLA.  *See N. Slope Borough v. Andrus*, 642 F.2d 589, 608 (D.C. Cir. 1980)

("'pumping oil'" and not simply "'leasing tracts'" is the aim of Congress's mineral leasing policy);

*see also* HC00885 (Section 2(j) of the Solenex's lease provides that any suspension of operations

would be "temporary").  A permanent suspension would also violate the plain meaning of the word

"suspension."  *Cf. United Air Lines*, 198 F.2d at 108 (The power to "'suspend' does not include the

power to 'revoke.'").  Indeed, a permanent suspension would exceed the Secretary's authority

under the MLA.  *See Union Oil*, 512 F.2d at 750–51 ("We therefore conclude that an open-ended

suspension of the right granted [a lessee under the OCSLA] . . . would be a pro tanto cancellation

---

[13] For the last 18 years, Defendants have imposed a suspension of operations and production to
prevent the exercise of rights under the approved APD while they purportedly attempt to comply
with the NHPA.  In essence, the failure to lift the suspension has the same effect as the failure to
act on the APD, i.e., a permit application.  The failure to act on a permit application is clearly
subject to judicial review under 5 U.S.C. § 706(1).  *Castle v. Pacific Legal Foundation*, 445 U.S.
198, 220, n.14 (1980) (noting that a permit applicant can seek judicial review under 5 U.S.C. §
706(1) for "prolonged agency inaction").

of its lease[,]" which would effectuate a taking, and thus would be "unauthorized and beyond the

Secretary's power."); *Gulf Oil Corp. v. Morton*, 493 F.2d 141, 146–49 (9th Cir. 1973) (an OCSLA

lease contemplates and requires drilling so that repeated suspensions would at some point become

unlawful).  Therefore, because Defendants lack the authority to permanently suspend operations

and production, lifting the suspension is action that Defendants are "required to take."[14]

This conclusion is supported by unreasonable delay cases under the Mining Law, 30

U.S.C. § 22 *et seq.*  The Mining Law requires the Secretary to issue a patent upon a mining

claimant's satisfaction of certain statutory requirements and the filing of a patent application.  30

U.S.C. § 29.  Although the Secretary may have some discretion in determining whether the

mining claimant has satisfied the statutory requirements, the Secretary has no discretion to refuse

to process the application.  Indeed, as explained by the Ninth Circuit:

> Although the parties dispute whether the Secretary's inaction involves a
> discretionary or ministerial act, we are not convinced that a decision on that issue
> is dispositive of this case because, at some level, the government has a general,
> non-discretionary duty to process the [mineral patent] applications in the first
> instance.  *See Marathon Oil v. Lujan*, 937 F.2d 498, 501 (10th Cir.1991) (citing
> *Wilbur v. Krushnic*, 280 U.S. 306, 319 (1930)).  In other words, even if the acts
> were discretionary, the Secretary cannot simply refuse to exercise his discretion.

*Independence Min. Co. v. Babbitt*, 105 F.3d 502, 507, n.6 (9th Cir. 1997); *Orion Reserves Ltd.*

*P'ship v. Kempthorne*, 516 F. Supp. 2d 8, 12 (D.D.C. 2007) ("Administrative agencies cannot

decide which duties to perform and which duties to ignore, rather they must perform the duties

which Congress intends them to perform.  Here, the Department and BLM have a Congressional

duty to process oil shale . . . patent applications.") (internal citation omitted) *appeal not*

*considered by* 553 F.3d 697 (D.C. Cir. 2009); *see Sims v. Ellis*, 972 F. Supp. 2d 1196, 1203–08

---

[14] Because Defendants are required to lift the suspension, whether they have unreasonably
delayed in doing so involves the merits, and not whether Solenex has stated a claim for relief
under 5 U.S.C. § 706(1).

(D. Idaho 2013) (finding unreasonable delay under *TRAC* and ordering the Secretary to complete

the processing of the plaintiff's patent application in 30 days), *reconsideration denied*, 972 F.

Supp. 2d 1211 (D. Idaho 2013).

Accordingly, although the Secretary may have some discretion as to whether to impose a

suspension, at some point in time the Secretary has a non-discretionary duty to lift that

suspension.  *See Union Oil*, 512 F.2d at 750–51 (ruling that a permanent suspension would be

"unauthorized and beyond the Secretary's power"); *cf. Sun Oil Co. v. United States*, 572 F.2d 786,

801 (Ct. Cl. 1978) (It is an implied condition of every contract with the government that neither

party will do anything to prevent, hinder or delay contract performance.)[15]  Solenex submits that,

after 28 years, the Secretary's non-discretionary duty to lift the suspension has now arrived.[16]

Defendants try to avoid this conclusion by arguing that the Secretary's ability to suspend

leases under Section 39 involves the "same type of 'broad statutory mandate' that the Supreme

Court found was not reviewable" under 5 U.S.C. § 706(1) in *Southern Utah*.  Doc. 34-1 at 25.

Defendants are comparing apples to oranges.

---

[15] The Alliance criticizes Solenex's citation to contract principles by arguing that contract claims
seeking specific relief may not be raised under the APA.  Doc. 37 at 8.  Solenex, however, cites
those principles only to demonstrate that the Secretary does not have unbridled discretion to
avoid lifting the suspension and that Defendants' delay is unreasonable.

[16] The Alliance argues that this Court cannot order the suspension lifted without determining
whether doing so is in the "interest of conservation."  Doc. 37 at 7.  The APA requires that a
reviewing court "*shall* . . . compel agency action . . . . unreasonably delayed . . . ." 5 U.S.C. §
706(1) (emphasis added).  "[W]hen a statute uses the word 'shall,' Congress has imposed a
mandatory duty on the subject of the command."  *Forest Guardians v. Babbitt*, 174 F.3d 1178,
1187 (10th Cir. 1999).  Thus, if this Court determines that Defendants have unreasonably
delayed, the Court may order them to lift the suspension.  Moreover, a finding that Defendants
have unreasonably delayed would strongly suggest, if not prove, that the suspension is not in the
"interest of conservation," but simply to prevent the exercise of lease rights and the recovery of
natural resources in violation of Congress's intent.  *See* Doc. 24-1 at 44–49 (demonstrating
Defendants' bad faith).  Therefore, lifting the suspension would serve the interest of the United
States.  43 C.F.R. § 3165.1(c) ("Suspensions will terminate when they are no longer justified in
the interest of conservation, *when such action is in the interest of the lessor*, or as otherwise
stated by the authorized officer in the approval letter.") (emphasis added).

In *Southern Utah*, the Court rejected the environmental groups' claim under 5 U.S.C. § 706(1) because FLPMA's non-impairment provision did not mandate the "total prohibition of ORV use" in the WSAs.  542 U.S. at 65–66.  In contrast, as demonstrated above, the MLA does mandate that the suspension ultimately be lifted.  Moreover, whether Defendants have unreasonably delayed in lifting the suspension is a very distinct inquiry that will not require this Court to oversee the day-to-day operations of Defendants.  *See id*. at 66–67.  Finally, not only is the Secretary's duty to lift the suspension nothing like the unreviewable non-impairment provision in FLPMA, it is also nothing like the other broad, statutory mandates that the Court suggested would be unreviewable under 5 U.S.C. § 706(1):

> To take just a few examples from federal resources management, a plaintiff might allege that the Secretary had failed to "manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance," or to "manage the [New Orleans Jazz National] [H]istorical [P]ark in such a manner as will preserve and perpetuate knowledge and understanding of the history of jazz," or to "manage the [Steens Mountain] Cooperative Management and Protection Area for the benefit of present and future generations."  16 U.S.C. §§ 1333(a), 410bbb-2(a)(1), 460nnn-12(b).  The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA.

*Southern Utah*, 542 U.S. at 67 (alterations in original).

Accordingly, Solenex has stated a claim for relief under 5 U.S.C. § 706(1) because Defendants have failed to take a discrete agency action that they are required to take.  *See Southern Utah*, 542 U.S. at 64.

**II.    TO THE EXTENT DEFENDANTS HAVE ANY ADMINISTRATIVE ACTION TO COMPLETE, THIS COURT CAN REVIEW WHETHER DEFENDANTS HAVE UNREASONABLY DELAYED COMPLETING THAT ACTION.**

In its second claim for relief, Solenex alleges that, to the extent that Defendants have administrative action to complete, Defendants have unreasonably delayed in completing that action.  Complaint ¶¶ 34–44.  Defendants do not dispute these allegations because they argue that the reason they have not lifted the suspension is because they still have to complete the NHPA process, which they have been working on for 18 years, and that they may have to conduct a fifth NEPA process.[17]  *See* Defendants' Statement of Material Facts ("DSOF") ¶ 93, Doc. 32-1.  Solenex submits that these purported administrative actions are simply convenient excuses to prevent Solenex from exercising its lease rights.  Indeed, prior to the APD being approved for the fourth time in 1993, Defendants had completed four extensive NEPA processes, which included compliance with the NHPA each time.  In short, by 1993, Solenex's APD had become the most studied APD in the history of the on-shore leasing program.  Be that as it may, even if Defendants are taken at their word, this Court may review whether Defendants have unreasonably delayed completing the NHPA and/or NEPA processes.  *See Calvert Cliffs' Coordinating Comm., Inc. v. U. S. Atomic Energy Comm'n*, 449 F.2d 1109, 1111 (D.C. Cir. 1971) (ruling that it is the judiciary's duty "to see that important legislative purposes, heralded in the halls of Congress, are not lost or misdirected in the vast hallways of the federal bureaucracy").

---

[17] It took Defendants an average of 23 months to complete the four previous NEPA processes. PSOF ¶¶ 23, 31, 33, 38, 42, 50, 54, 58.  Defendants indicate that they will not begin their fifth NEPA process until January 2015, at the earliest.  PSOF ¶ 111; FS004826–27.  Not only is Defendants' lack of urgency disturbing, it shows that Defendants cannot hope to have their fifth NEPA process completed before the end of 2016, at the earliest.

First, assuming Defendants have to complete the NHPA and/or NEPA processes, whether they complete those processes is certainly not committed to agency discretion by law.  Thus, 5 U.S.C. § 701(a)(2) does not prevent this Court from reviewing whether Defendants' delay in completing those processes is unreasonable.  Second, because completing any NHPA and/or NEPA processes would be agency action that Defendants are required to take, *Southern Utah* does not prevent this Court from reviewing whether Defendants' delay is unreasonable.  542 U.S. at 64; *see id*. at 72–73 (implying that an agency's failure to complete a NEPA process may be reviewable under 5 U.S.C. § 706(1) if the agency is under an obligation to comply with NEPA).  Accordingly, neither 5 U.S.C. § 701(a)(2) nor *Southern Utah* preclude this Court from reviewing whether Defendants have unreasonably delayed completing any remaining administrative action.

## III. DEFENDANTS HAVE UNREASONABLY DELAYED LIFTING THE SUSPENSION AND/OR COMPLETING ANY ADMINISTRATIVE ACTION THAT THEY HAVE TO COMPLETE.

Whether a delay is unreasonable is generally judged by application of the six *TRAC* factors, which are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir.1999) (quoting *TRAC*, 750 F.2d at 80 (citations omitted)).  As previously demonstrated, all six *TRAC* factors

prove that Defendants have unreasonably delayed in either lifting the suspension or completing any administrative action that remains.  Doc. 24-1 at 33–49.

Defendants do not specifically address Solenex's analysis and application of the *TRAC* factors.[18]  Instead, Defendants simply suggest that Solenex's analysis is based upon a "selective recitation of the facts," without disputing any of those facts.  Doc. 34-1 at 26.  Defendants also claim that they "have worked diligently" and "have made consistent progress up to and including the present time."  Doc. 34-1 at 26.  Defendants' claims of "diligence" and "consistent progress" ring hollow and are poor excuses for their delay.

### A.    A 30-Year Delay Is *Per Se* Unreasonable.

In the fall of 1983, and in full compliance with all relevant statute and regulations, Solenex's predecessor submitted the APD at issue in this case.  PSOF ¶ 23.  Over 30 years has passed and the proposed well has not been spudded solely because of Defendants' delay.[19]  In

---

[18] As previously demonstrated, application of the *TRAC* factors prove that Defendants' delay is unreasonable in light of: (1) the "rule of reason;" (2) Congress's intent in passing the MLA; (3) the interests at stake; (4) the lack of any competing priorities for Defendants; and (5) Defendants' bad faith.  Doc. 24-1 at 34–49.  Because Defendants failed to specifically address these factors in their response, it would be improper for Defendants to try to do so in their reply.  On the other hand, the Alliance tries to turn the *TRAC* analysis into a balancing test, under which their so-called "competing interest" in preservation must be considered.  Doc. 37 at 1, 11–15.  As to "competing interests," the *TRAC* analysis considers only the plaintiff's interests versus the agency's competing duties, which may justify the delay or be affected by an order compelling agency action.  *TRAC*, 750 F.2d at 80.  The Alliance's preservation interest plays no role in the *TRAC* analysis.  In fact, that ship has largely sailed because the Alliance failed to assert its preservation interest before the lease was issued.  PSOF ¶¶ 5–12.

[19] The Alliance tries to justify Defendants' 30-year delay because the proposed well is an exploratory well.  Doc 37 at 17–19.  This argument borders on the frivolous.  In passing the MLA, Congress necessarily sought to facilitate exploration.  Indeed, it goes without saying that, at the time of the MLA, most of the oil and gas fields on the public lands had not been discovered.  Congress also provided an incentive for exploratory drilling by offering leases in unexplored areas on a non-competitive basis.  *See generally, Arkla Exploration*, 734 F.2d at 349 (explaining that leases for lands within a "known geological structure of a producing oil and gas field" must be leased on a competitive basis).  In any event, Defendants have admitted that the area of Solenex's lease has a very high potential for the discovery of oil and natural gas.  PSOF ¶

passing the MLA, Congress intended the Secretary to expeditiously process all APDs.  *See Mountain States Legal Foundation,* 499 F. Supp. at 392 ("The Secretary of the Interior must administer the Mineral Leasing Act so as to provide some incentive for, and to promote the development of oil and gas deposits in all publicly-owned lands of the United States through private enterprise."); 42 U.S.C. § 8855 ("It is the intent of Congress that the Secretary of Agriculture shall process applications for leases of National Forest System lands and for permits to explore, drill, and develop resources on land leased from the Forest Service, notwithstanding the current status of any plan being prepared under [the National Forest Management Act of 1976].");  30 U.S.C. § 226(p)(2) (requiring the BLM to process an APD in thirty days or provide to the lessee "a list of actions that need to be taken by the agency to complete compliance with applicable law together with timelines and deadlines for completing such actions.").  Needless to say, Defendants' delay is completely frustrating Congress's intent in passing the MLA.[20]  *See In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013) ("[F]ederal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress.").

In addition, the APA mandates that agencies expeditiously complete their tasks.  5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties . . . and within a

---

26 ("The USGS has estimated that as much as a billion barrels of undiscovered crude oil and 25 trillion cubic feet of natural gas may be recovered from the Montana portion of the Overthrust Belt."); *see Mountain States Legal Foundation v. Andrus*, 499 F. Supp. 383, 386 (D. Wyo. 1980) ("Estimates of the potential of the northern extension of the Overthrust Belt through western Montana for undiscovered recoverable oil and gas resources have been as high as 10 billion barrels of oil and 100 trillion cubic feet of natural gas.").

[20] Defendants' delay also frustrates Congress's intent in passing FLPMA because it constitutes a *de facto* withdrawal of the 6,247 acres embraced within Solenex's lease.  *See Mountain States Legal Foundation*, 499 F. Supp. at 390–397 (Secretary's failure to act on pending lease applications effectuated a *de facto* withdrawal in violation of the Secretary's limited withdrawal authority in Section 204(c) of FLPMA, 43 U.S.C. § 1714(c)); *see also* 30 U.S.C. § 21(a) (Congress stressing that it is in the country's best interest to "foster and encourage private enterprise in . . . the orderly and economic development of domestic [oil and gas] resources").

reasonable time, each agency shall proceed to conclude a matter presented to it."); *Dayton Tire v. Sec'y of Labor*, 671 F.3d 1249, 1252 (D.C. Cir. 2012) ("The [APA] obligates an agency 'to conclude a matter presented to it' 'within a reasonable time.'  5 U.S.C. § 555(b).").  An agency's mandate to expeditiously complete its tasks is especially strong when contract and property rights are at stake, as they are in this case.  James D. Harris, *Relative Property Interests On The Federal Oil And Gas Lease,* 2008 No. 1 RMMLF-INST Paper No. 13B ("A federal oil and gas lease is both a conveyance of an interest in land (a leasehold interest) and a contract.  It gives rise to two sets of rights and obligations—those arising by virtue of the transfer of an interest in land, and those existing by virtue of the parties' express agreements in the deed or lease."); *see Smith v. Illinois Bell Tel. Co*., 270 U.S. 587, 590–92 (1926) (ruling that unreasonably protracted agency proceedings can be a denial of property without due process); *White v. Mathews*, 434 F. Supp. 1252, 1261 (D. Conn. 1976), *aff'd*, 559 F.2d 852, 858–60 (2d Cir. 1977) ("When the government does not act with reasonable promptness, those claiming [benefits] . . . are required to bear an unreasonable delay and suffer unwarranted deprivation of that which is lawfully theirs."); *MCI Telecommunications Corp. v. FCC*, 627 F.2d 322, 341 (D.C. Cir. 1980) (The "delay in the resolution of administrative proceedings can also deprive regulated entities, their competitors or the public of rights and economic opportunities without the due process the Constitution requires.").[21]

---

[21] Because Solenex's valuable contract and property rights are at stake, the Alliance argues that Solenex's sole remedy for Defendants' unreasonable delay is to seek monetary relief under the Tucker Act in the Court of Federal Claims.  Doc. 37 at 8.  This is a ridiculous argument that Defendants are not even willing to make.  In passing the MLA, Congress intended to "obtain for the public a reasonable financial return on assets that 'belong' to the public[,]" through private investment, such as Solenex is willing to make if Defendants ever lift the suspension.  *See California Co.*, 296 F.2d at 388.  Congress's intent can be fully realized by an appropriate order in this case, which would avoid needlessly passing the cost of Defendants' unreasonable delay onto the taxpayers.

The most important *TRAC* factor indicates that "the time agencies take to make decisions must be governed by a 'rule of reason.'" *TRAC*, 750 F.2d at 80; *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (noting that the "rule of reason" is the most important *TRAC* factor ). As previously demonstrated, a 30-year delay is unconscionable and unreasonable as a matter of law. Doc. 24-1 at 34–36. This is especially true considering that "a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004); *see Midwest Gas Users Ass'n v. FERC*, 833 F.2d 341, 359 (D.C. Cir. 1987) ("[T]his court has stated generally that a reasonable time for an agency decision could encompass 'months, occasionally a year or two, but not several years or a decade.'" (quoting *MCI*, 627 F.2d at 340)). No fathomable "rule of reason" can justify a 30-year delay.[22] *Pub. Citizen Health Research Grp. v. Chao*, 314 F.3d 143, 153–59 (3d Cir. 2002) ("*Chao*") (finding nine-year (and counting) delay unreasonable and noting that no court had reviewed a similar-length delay without compelling action).

**B.     Defendants Have No Justifiable Excuse For Their Delay From 1985 to 1996.**

Although Defendants have the burden to proving that their delay is reasonable, *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987), they make only a token effort. For example, Defendants try to blame the 8-year delay from 1985 to 1993 on the administrative appeals that were filed regarding their approval of the APD in 1985, 1987, and again in 1991. Doc. 34-1 at

---

[22] On October 11, 2001, in response to a congressional inquiry, the BLM advised: "[w]e recognize that environmental reviews, and administrative and judicial review processes have extended resolution of action on Mr. Longwell's APD *way beyond any reasonable time line*." FS002775–76 (emphasis added). The BLM further advised: "[w]e realize that an attempt to reach closure on this case has taken many years and share Mr. Longwell's frustration with the *extraordinary delays* involved in the process." *Id.* (emphasis added). Despite this 2001 admission, Defendants have extended their "extraordinary delay" an additional thirteen years and there is still no end in sight!

26.   What Defendants failed to acknowledge is that it was their own negligence and/or

incompetence that precipitated those administrative appeals.  If Defendants had simply

performed their statutory duties correctly in the first place, there would have been no reason for

administrative appeals to be filed, for the approvals of the APD to be reversed, or for Defendants

to voluntarily request remands so they could correct their own mistakes.[23]  *See* PSOF ¶¶ 32–33,

38–42, 49–55.  Thus, contrary to their suggestion, Defendants have no one but themselves to

blame for these 8 years of delay.  *See Del-Rio Drilling Programs, Inc. v. United States*, 46 Fed.

Cl. 683, 689 (2000) (The government is asking this court "to punish plaintiffs for the

government's failure to abide by its own record keeping requirements; we see no legal or

equitable reason to do so.  The regulation is directed at what the agency should do for its own

record keeping purposes.  *The government cannot create a defense based on its own neglect*."

(emphasis added)).

Defendants also try to justify their three-year delay from 1993 to 1996 because the one-

year suspensions issued in 1993–1995 were in aid of proposed legislation.[24]  Doc. 34-1 at 7–8.

---

[23] That Defendants had to basically start from scratch each time their approval of the APD was
rejected (either by the IBLA or voluntarily) disproves their suggestion that they have been
making "consistent progress."

[24] The June 1993 suspension was particularly egregious because the APD has just been approved
for the fourth time in January 1993, when the Assistance Secretary signed the Record of
Decision.  PSOF ¶¶ 57–60.  In fact, the BLM had specifically asked for secretarial-level approval
because of the unreasonable delay that had already occurred.  HC001742–73 ("The decisions
concerning the Fina well *have been delayed long enough*.  A timely resolution would benefit all
parties involved, including the applicant, the Federal government, the appellants *and the
American taxpayers*." (all emphasis added)).  That the June 1993 suspension occurred after a
change in administrations (PSOF ¶ 61) and under congressional pressure (FS006076–80),
suggests that the suspension was not "in the interest of conservation," but for improper political
purposes.  *Cf. ATX, Inc. v. U.S. Dep't of Transp.*, 41 F.3d 1522, 1527 (D.C. Cir. 1994) ("An
administrative adjudication is 'invalid if based in whole or in part on [congressional] pressures.'"
(quoting *District of Columbia Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246 (D.C. Cir.
1971); *Pillsbury Co. v. FTC*, 354 F.2d 952, 963–65 (5th Cir. 1966) (the appearance of bias

There is nothing in the MLA or its implementing regulations that allow the Secretary to suspend operations and production in aid of proposed legislation. *Compare* 30 U.S.C. § 209 and 43 C.F.R. 3103.4-4(a) *with* 43 U.S.C. § 1714(d)(3) (Granting the Secretary authority to withdraw less than 5,000 acres "for a period of not more than five years to preserve such tract for a specific use then under consideration by the Congress."). Because 43 U.S.C. § 1714(d)(3) demonstrates that Congress knows how to authorize the Secretary to act in aid of proposed legislation, that a similar authority was not provided to the Secretary in the MLA indicates that no such authority exists. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere . . . that it knows how to make such a requirement manifest."). As the suspensions from 1993 to 1996 were unlawful, the concomitant 3-year delay was *per se* unreasonable. *See Marathon Oil v. Lujan*, 751 F. Supp. 1454, 1462–64 (D. Colo. 1990) (the Secretary's unlawful moratorium on the processing patent applications for oil shale mining claims constituted unreasonable delay), *aff'd in relevant part Marathon Oil,* 937 F.2d at 501.

Defendants and the Alliance also suggest that a lawsuit over Defendants' 1993 approval of the APD somehow excuses a portion of Defendants' delay. Doc. 34-1 at 26; Doc. 37 at 8–11. That lawsuit was filed on April 14, 1993. Less than two months later, the Secretary suspended operations and production in aid of proposed legislation, PSOF ¶ 61, and shortly thereafter the case was stayed. Nothing of substance ever happened in that case, and it was administratively terminated on March 10, 1997. How the simple filing of a lawsuit, in which the merits were never addressed, could provide a justification for even a portion of Defendants' delay is

caused by congressional interference violates the due process rights of parties involved in judicial or quasi-judicial agency proceedings).

mystifying.  *Arkla Exploration*, 734 F.2d at 358 (the "fear of being sued is no excuse for a failure

to implement Congressional intent" in passing the MLA); *cf. Utah Int'l Inc. v. Andrus*, 488 F.

Supp. 962, 974 (D. Utah 1979) (Department of the Interior's nine-year delay in processing a

lease application not unreasonable in light of "court injunctions and other factors beyond the

Department's control.").  Indeed, if that lawsuit had merit, one would have thought Defendants

would have made some effort to correct their alleged mistakes.  Yet, it appears that Defendants

merely sat idly by for three years hoping Congress would pass some sort of legislation.  Of

course, waiting for legislation that may never be passed is not a legitimate excuse for agency

delay.[25]  *See Marathon Oil*, 937 F.2d at 501 (ruling the Secretary cannot refuse to process a

mineral patent application because he was waiting for regulations to be promulgated).

### C.   Defendants' 18-Year (And Counting) Delay In Completing The NHPA Process Is Inexcusable, Violates The Energy Policy Act Of 2005, And Proves That Their Delay Is Unreasonable.

Defendants largely ignore their delay from 1983 through 1996, and argue that that since

the 1996 suspension they "have worked diligently to carry out their Section 106 consultation

responsibilities under the NHPA and have made consistent progress up to and including the

---

[25] The order administratively terminating the case provided that it was: "without prejudice to the right of the parties to reopen the proceedings for good cause shown . . . .  If, within SIXTY (60) days of a determination by Congress as to whether the properties involved in this litigation should be included in a wilderness designation for the area, the parties have not reopened for the purpose of obtaining a final determination herein, *this action shall be dismissed with prejudice*." FS002292–93 (emphasis added).  Congress's refusal to designate wilderness in the intervening 17 years indicates that Congress has determined that the area should not be designated as wilderness.  *See* FS001095 (Forest Service explaining why the area is not suitable for wilderness designation because of the Tribe's reserved right to cut and remove timber).  Thus, Solenex submits that the case has been dismissed with prejudice.  Even if that case is not deemed dismissed with prejudice, the plaintiffs would be hard pressed to show that good cause exists for reopening it after it has been closed for 17 years.  Accordingly, that lawsuit is essentially meaningless for purposes of this case, and certainly does not justify Defendants' use of the archived pleadings in that case as a pretext for their delay.  *See* Doc. 24-2 at 40.

present time."[26]  Doc. 34-1 at 26.  On its face, a delay of 18 years (and counting) belies

Defendants' assertions that they "have worked diligently" and "have made consistent

progress."[27]  *See In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837–38 (D.C. Cir. 2012)

(2-year delay to comply with remand order unreasonable); *Muwekma Tribe v. Babbitt*, 133 F.

Supp. 2d 30, 36–37 (D.D.C. 2000) (ruling a 4-year delay was unreasonable).  Indeed, complying

with the NHPA is not that difficult, especially considering that it is merely a procedural statute.[28]

*See* Doc. 24-1 at 17–20.  Even if compliance were difficult, it would not justify an 18-year (and

counting) delay.[29]  *See Chao,* 314 F.3d at 156 ("[W]e conclude that scientific uncertainties and

technical complexities, while no doubt considerable, can no longer justify" the nine-year delay.);

---

[26] The 1996 and 1997 suspensions were for one year each and were purportedly issued so that Defendants could complete the NHPA process.  The 1998 suspension, which is currently in effect, "will remain in effect until conclusion of the historic property review under Section 106 of the [NHPA]."  FS002438.  Defendants seemingly criticize Solenex for not appealing or challenging the 1998 suspension.  DSOF ¶ 24.  Yet, Fina was the lessee and operator in 1998.  DSOF ¶ 13.  In any event, by suggesting that an appeal or challenge was available, Defendants concede that suspensions are not committed to agency discretion by law.

[27] In any event, "making consistent progress" is not what Congress had in mind when it mandated "each agency shall proceed *to conclude a matter* presented to it" "within a reasonable time[.]"  5 U.S.C. § 555(b) (emphasis added).  Putting Defendants' 18-year (and counting) delay in the best light suggests that they are "making consistent progress" at a snail's pace.

[28] Defendants argue that the delay can be blamed on their attempt to "balance their responsibilities" under the NHPA with their authorities under the MLA.  Doc. 24-1 at 2.  There is no "balancing" involved; the NHPA is simply a procedural step that Defendants must complete "expeditiously," so that Congress's intent in passing the MLA may be fulfilled.  42 U.S.C. § 15921(a).  To the extent there is any "balancing" is involved, Defendants did not begin doing so until June 2014 (*see* DSOF ¶ 92), i.e., 18 years into the latest NHPA process.

[29] The Tribe seemingly tries to defend the delay based on Defendants' attempt to accommodate their religious beliefs.  Doc. 38 at 6–10.  A delay accommodates nothing; it impermissibly gives the Tribe control of lands that belong to the public.  *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 447–53 (1988).  Moreover, not all tribal members consider the area to be of religious significance.  *See* March 28, 1988 letter from William F. Big Spring, Sr. to Senator Melcher:  "The approximately 309 signers of [the 1895] Agreement, of which my father, Big Spring, was one, did not consider this land (the Ceded Strip) as sacred, as some of my people are now claiming . . . .  It seems like not only my Tribe but all Tribes in general are preying on the people of the United States to gain rights they were not granted either by Treaties or Agreement."  A copy of this letter is attached hereto as Exhibit 1.

*Sierra Club v. Thomas*, 828 F.2d 783, 799 (D.C. Cir. 1987) ("Given the complexity of the issues facing EPA [in administering the Clean Air Act] and the highly controversial nature of the proposal, *agency deliberation for less than three years* . . . can hardly be considered unreasonable.") (emphasis added).  It strains credulity to believe that Congress, in passing the NHPA, intended agencies to spend almost two decades trying to comply with that statute for what is a routine undertaking, i.e., the drilling of one exploratory well.  *See Pub. Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 627 (D.C. Cir. 1987) (per curiam) ("*Brock*") ("Although the courts must never forget that our constitutional system gives the Executive Branch a certain degree of breathing space in its implementation of the law, we cannot countenance maneuvering that merely maintains a facade of good faith compliance with the law . . . .").

 Defendants try to justify their delay by suggesting they worked hard in 1997–2002, attempting to get a determination of eligibility from the Keeper for the original traditional cultural district ("TCD").  Doc. 34-1 at 26.  To the extent Defendants seek to cast blame on the Keeper for this delay, the Keeper is a Defendant.[30]  Complaint ¶ 11.  In any event, a determination of eligibility from the Keeper was not necessary in order for Defendants to complete the NHPA process.  Doc. 24-1 at 46, n.28 (citing 36 C.F.R. § 800.4).  Thus, Defendants simply wasted all those years.[31]

---

[30] As previously demonstrated, the delay in getting that eligibility determination was caused by Defendant Forest Service's laziness or incompetence.  PSOF ¶¶ 64–77.

[31] Defendants also brag about the new determination of eligibility they secured for the enormously expanded TCD.  Doc. 34-1 at 20–21, 26–27; Doc. 32-2 at 9–10.  Again, securing this determination was not necessary to complete the NHPA process and shows Defendants were purposefully devoting resources away from the NHPA process to further delay completion of that process.

Defendants also try to justify their delay by pointing to the four studies their contractors completed between 2006 and 2012.[32]  Doc. 34-1 at 26.  All of these studies were not necessary to complete the NHPA process.  Doc. 24-1 at 46–47.  Indeed, Congress did not pass the NHPA so Defendants could use it as a pretext to generate study after study at taxpayer expense and, thereby, delay action in the hope that Solenex would go away.  *See In re City of Virginia Beach*, 42 F.3d 881, 885–86 (4th Cir. 1994) ("In the ordinary course of events, the bureaucracy of government . . . should not occupy so long a period that delay itself becomes a defeating factor. It goes without the need of citation that a material aspect of any just determination is that the decisional process not be unduly protracted." (internal citation omitted)).  Indeed, this conclusion is supported by the regulations implementing NEPA, of which the NHPA is a "close statutory analog."  *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005); *see* 40 C.F.R. § 1500.1(c) ("Ultimately, of course, it is not better documents but better decisions that count.  NEPA's purpose is *not to generate paperwork*—even excellent paperwork—but to foster excellent *action*.") (all emphasis added); *id*. § 1500.1(b) ("Most important, NEPA documents must concentrate on the issues that are truly significant to the action in question, *rather than amassing needless detail*."); *id*. § 1500.4 ("[a]gencies shall reduce excessive paperwork"); *id*. § 1500.5 ("[a]gencies shall reduce delay").

Moreover, since 2005, Defendants have been under a non-discretionary duty to "ensure expeditious compliance" with both the NHPA and NEPA.  Congress passed the Energy Policy

---

[32] Defendants also bemoan that they did not receive the last study from their contractors until December 12, 2012.  Doc. 34-1 at 26.  Congress charged Defendants—not contractors—with complying with the NHPA.  Thus, Defendants have to bear the responsibility for any delays caused by their contractors' lassitude.  This is especially true considering that the Tribe was one of the contractors.  Doc. 34-1 at 13; PSOF 86.  The Tribe's involvement suggests a conflict of interest because its current position is to oppose drilling in the area, but to encourage it on the Reservation.  PSOF ¶ 109.

Act of 2005 ("EPAct"), Pub. L. No. 109-58, 119 Stat. 594 (2005), in part, to further facilitate oil

and gas production from the public lands. *Western Energy Alliance v. Salazar*, 10-CV-237F,

2011 WL 3738240, *2 (D. Wyo. 2011).  For example, to guarantee timely action on all APDs,

Congress mandated that the Secretary of the Interior and the Secretary of Agriculture "ensure

expeditious compliance" with all applicable environmental and cultural resources laws.  42

U.S.C. § 15921(a).  In passing EPAct, Congress also amended the MLA to impose statutory time

deadlines on the BLM relating to the processing of APDs.  Specifically, 30 U.S.C. § 226(p)(2)

requires the BLM to process an APD in thirty days or provide to the lessee "a list of actions that

need to be taken by the agency to complete compliance with applicable law together with

timelines and deadlines for completing such actions."  This amendment to the MLA reflects the

importance Congress placed on the timely processing of APDs:

> [C]ompliance with the non-discretionary duty to act on an APD within 30 days of
> receipt of a complete APD was considered by Congress to be critical to ensuring a
> greater degree of predictability in APD processing, in order that the operator
> could appropriately plan its drilling activity, thereby, inter alia, satisfying
> contractual commitments to rig operators and others, preventing drainage from
> adjacent lands, and ensuring the viability of affected private and Federal leases.

*Brigham Oil & Gas*, *LP*, 181 IBLA 282, 287 (2011) (internal quotations omitted).

Defendants have violated EPAct in two respects.  First, since EPAct was passed in 2005,

Defendants have yet to complete the NHPA process that is purportedly necessary before they can

lift the suspension and allow Solenex to exercise its rights under the approved APD.  Nine years

(and counting) is not "expeditious."  WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY,

UNABRIDGED 644 (2d ed. 1978) (defining "expeditious" to mean "efficient and speedy; prompt;

quick").  Second, Defendants have not provided Solenex with "a list of actions that need to be

taken by the agency to complete compliance with applicable law together with timelines and

deadlines for completing such actions[,]" 30 U.S.C. § 226(p)(2), despite Solenex's repeated

requests.  PSOF ¶¶ 89–93; *see In re City of Virginia Beach*, 42 F.3d at 885–86 (A four and one-half year delay "alone" "demand[s] an agency response.").  In fact, Defendants have not even acknowledged the duties imposed on them by EPAct.  Instead, Defendants are brazenly "defying a law enacted by Congress." *In re Aiken Cnty*., 725 F.3d at 266–67.

As the foregoing demonstrates, Defendants "have proffered no justifiable explanation for their intransigence." *Marathon Oil*, 937 F.2d at 501.  Accordingly, this Court should rule that Defendants' 18-year (and counting) delay is unreasonable as a matter of law. *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin*., 740 F.2d 21, 34 (D.C. Cir. 1984) ("In some circumstances agency delay may be so egregious that it constitutes unreasonable delay for APA purposes as a matter of law.").

## IV.  BECAUSE OF DEFENDANTS' UNREASONABLE DELAY, SOLENEX IS ENTITLED TO ITS REQUESTED RELIEF.

Based upon Defendants' unreasonable delay, Solenex has asked for an order compelling Defendants to immediately lift the suspension and allow Solenex to commence operations under its approved APD, effective July 1, 2015.  Doc. 24-1 at 50.  Postponing the effective date is necessary because, under the approved APD, operations may only be conducted from July 1 through November 30.  PSOF ¶¶ 21, 58.  In the alternative, and to the extent there remains any administrative action to complete, this Court should order Defendants to:  (1) identify any and all actions that have to be completed; (2) expeditiously complete all actions; and (3) lift the suspension and allow Solenex to commence operations on July 1, 2015.  Doc. 24-1 at 50–51.

Solenex further asks that this Court order the Secretary of the Interior and the Secretary of Agriculture to jointly issue the decision lifting the suspension and allowing operations to commence. *Id*. at 51.  This will prevent Solenex from being further delayed by administrative

appeals.  *Id*.  Finally, Solenex asks that this Court retain jurisdiction over this matter until

Solenex is able to exercise its lease rights.  *Id*.

Defendants have not objected to any of Solenex's requested relief.  Instead, Defendants

simply argue that this case should be dismissed or, in the alternative, that this Court should find

Defendants' delay reasonable.  Doc. 34-1 at 27–28.  Because Defendants have no objection, if

this Court determines that Defendants' delay justifies the exercise of this Court's equitable

powers, this Court should grant the appropriate requested relief.[33]  5 U.S.C. § 706(1) ("The

reviewing court shall . . . compel agency action . . . unreasonably delayed . . . ."); *see Orion*

*Reserves*, 516 F. Supp. 2d at 16 ("When confronted with the task of awarding appropriate relief,

a court has broad equitable powers.  The breadth of this power allows a court to award such

equitable relief as it deems appropriate even without a finding of unreasonable delay." (citations

omitted)).

## CONCLUSION

In the words of the D.C. Circuit:

> [W]e have seen it happen time and time again, that [agency] action . . . all too
> easily becomes hostage to bureaucratic recalcitrance, factional infighting, and
> special interest politics.  *At some point, we must lean forward from the bench to*
> *let an agency know, in no uncertain terms, that enough is enough.*

*Brock*, 823 F.2d at 627 (emphasis added).  As Solenex has demonstrated, that "point" has arrived

and this Court should grant summary judgment in favor of Solenex and deny Defendants' cross-

motion for summary judgment.

---

[33] Solenex anticipates that Defendants may request additional briefing on the appropriate relief
after a decision on the merits.  Solenex submits that Defendants have waived their right to brief
what relief may be appropriate and any request to do so in the future would be just another delay
tactic.

## REQUEST FOR ORAL ARGUMENT

Solenex respectfully requests oral argument on the pending cross-motions for summary judgment.  Although the length of Defendants' delay speaks volumes, Solenex believes oral argument will be beneficial to this Court.

DATED this 22nd day of September 2014.

Respectfully submitted,

MOUNTAIN STATES LEGAL FOUNDATION

/s/ Steven J. Lechner
Steven J. Lechner, D.C. Bar No. AZ 0001
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
lechner@mountainstateslegal.com

Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2014, I electronically filed the foregoing using this Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and service will be accomplished by this Court's CM/ECF system.

/s/ Steven J. Lechner
Steven J. Lechner