IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOLENEX LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Case No. 13-993-RJL |
| | ) |
| S.M.R. JEWELL, Secretary | ) |
| U. S. Department of the Interior, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**FEDERAL DEFENDANTS' REPLY**

Plaintiff Solenex is the holder of an oil and gas lease issued by the United States under the provisions of the Mineral Leasing Act ("MLA"). A lease is just the first step in a process that may result in a producing well on Federal lands and the MLA is just one of the laws governing that process.  This particular lease is in an area of significant cultural and religious importance to the Blackfeet Tribe, and the Bureau of Land Management ("BLM") and the Forest Service have been working diligently to balance their responsibilities under the National Historic Preservation Act ("NHPA") with their authorities under the MLA.  Solenex asks this Court to make a determination that the MLA basically trumps the NHPA, and that the Federal agencies must proceed to allow Solenex to drill before they have complied with all applicable Federal law.[1]  There is no basis for such relief.

---

[1] In the alternative, Solenex asks the Court to order the Federal agencies to "(1) identify any and all actions that have to be completed; (2) expeditiously complete all actions; and (3) lift the suspension and allow Solenex to commence operations on July 1, 2015." Plf.'s Opp. (ECF No. 39) at 2.  Federal Defendants do not believe that Solenex is entitled to this relief as set forth in this Reply.  If the Court rules against Federal Defendants on this issue, they request an opportunity to brief remedy and provide the Court with realistic timeframes for compliance with applicable Federal laws, including the National Environmental Policy Act and the NHPA.

1

**FURTHER BACKGROUND**

Federal Defendants extensively described the complicated background and history of this lease in the opening brief. Dfs.' Br. (ECF No. 34-1) at 5-22. In sum, the lease was issued to Solenex's predecessor in interest in 1984. *Id.* at 5. In 1985, the BLM approved an application for permit to drill ("APD") an exploratory well on the lease. *Id.* There followed many years of appeals of that decision, both administrative and judicial. *Id.* at 5-8. The lease was first suspended in 1985 and the suspension was most recently renewed in 1998. *Id.* at 9

Cultural and religious issues have been raised consistently during the lifetime of the lease. *Id.* at 8. The lease is within the boundaries of the Badger-Two Medicine Traditional Cultural District ("TCD"), an area of significant cultural and religious importance to the Blackfeet Tribe. Since 1997, BLM and the Forest Service have actively worked to address cultural issues related to that area in compliance with their responsibilities under the NHPA. *Id.* at 8-22.

Since Federal Defendants filed the opening brief, the Federal agencies have continued to work on compliance with NHPA. The NHPA implementing regulations require the agency to assess adverse effects in consultation with the State Historic Preservation Officer ("SHPO"), the Tribal Historic Preservation Officer ("THPO") and any Indian tribe with historic ties to the area as well as consider any views provided by consulting parties and the public. 36 C.F.R. § 800.5. Second Declaration of Mark Bodily ("Bodily Declar. 2") (Attached as Exhibit A) at 4. To comply with this responsibility and to consider whether adverse effects could be avoided or mitigated, the Forest Service held two meetings with the consulting parties, including Solenex, on January 29, 2014 and April 3, 2014.[2] *Id.* The Forest Service also had further consultations

---

[2] The Forest Service outlined the Section 106 process for the consulting parties in a "Regulatory Compliance Process" paper provided to the consulting parties at the April 3, 2014 meeting. As explained in that document, if there is a determination that the Solenex operation will pose

with the SHPO and the THPO about the Forest Service's initial assessment of adverse effects on the TCD.  *Id.*  The SHPO and the THPO both concurred with that assessment.  *Id.* at 5.

On September 24, 2014, the Forest Service provided to the consulting parties, including Solenex, the report titled "Adverse Effects posed by Solenex LLC approved Application for Permit to Drill (APD) on the Badger-Two Medicine Traditional Cultural District (B2M TCD)."  *Id.*  The Forest Service asked for comments on the report within 30 days and encouraged any views that would help the Forest Service "develop or evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects on historic properties, per 36 C.F.R. § 800.5 and 6."[3] *Id.*

**ARGUMENT**

### A. Under § 701(a)(2) of the APA, the Action which Plaintiff Seeks to Compel is Action Committed to Agency Discretion by Law.

As we noted in our opening brief, the decision to lift the suspension of the APD is vested in the agencies' discretion by law, because the MLA provides that a Secretary of the Interior may issue a suspension "*whenever in his judgment* it is necessary to do so in order to promote development, or *whenever in his judgment* the lease cannot be successfully operated under the terms provided therein."  30 U.S.C. § 209 (emphasis added). Therefore, Solenex has no right of action under the judicial review provisions of the APA. ECF No. 34-1 at 22-25. In the opposition, Solenex attempts to argue that BLM has a mandatory duty to lift the suspension. ECF No. 39 at 3-18.

---

adverse effects on the TCD, the Forest Service will notify the Advisory Council and invite them to participate in the 36 C.F.R. § 800.6 "resolution of adverse effects" process which will run concurrently with an National Environmental Policy Act process.  *Id.*

[3] Solenex has requested an extension of time to respond to the report.

3

Solenex argues that the inclusion of the phrase "whenever in his judgment" in the first sentence of Section 39 of the MLA refers only to the Secretary's authority to suspend lease rental and royalty payments, whereas the Secretary's authority to suspend lease operations and production in the third sentence of Section 39 is modified only by the phrase "in the interest of conservation."[4]  ECF No. 39 at 7, citing 30 U.S.C. § 209.  Solenex concludes on this basis that the authority to suspend lease operations and production is not reserved to the Secretary's discretion, and is therefore reviewable under 5 U.S.C. § 706(1).  In effect, Solenex is arguing that the first and third sentences of the MLA must be read independently, such that the discretion afforded under sentence one does not transfer to sentence three.

Immediately following this argument, however, Solenex says that another clause in sentence one of Section 39 of the MLA—specifically, the phrase "for the purpose of encouraging the greatest ultimate recovery" of oil and gas resources—is intended to modify the Secretary's grant of authority in sentence three.  ECF No. 39 at 8.  Ironically, Solenex advocates for an integrated reading of Section 39 of the MLA when doing so supports Solenex's argument.  When such a reading frustrates Solenex's argument, Solenex contends that each sentence in Section 39 should have an independent meaning.  Solenex cannot have it both ways; construing the statute in this manner is inconsistent and impermissible.

      **B. Under § 706(1) of the APA, There is No Discrete Mandatory Duty to Lift the Suspension.**

---

[4] The phrase "in the interests of conservation" has not been construed narrowly to concern only maximizing the recovery of hydrocarbons, rather it has been interpreted to include ensuring adequate environmental protection.  *Copper Valley Machine Works Inc. v. Andrus*, 653 F. 2d 595, 600 (D.C. 1981) (holding that suspending operations to avoid environmental harm is definitely a suspension in the interests of conservation in the ordinary sense of the word.)

Under § 706(1) of the APA, Solenex must show that there is a discrete, mandatory duty to lift the suspension to successfully argue that agency action has been unlawfully withheld or unreasonably delayed. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (*SUWA*). Solenex cannot show such a mandatory duty here.

Solenex argues that lifting a suspension is an action the agency is "required to take" in the same way that issuing a decision on an APD is an action the agency is "required to take." ECF No. 39 at 14 n.13. But an APD only triggers a duty to act because it is an application, and BLM is required by 5 U.S.C. § 555(b) to respond to applications within a reasonable time. A BLM imposed suspension, by contrast, does not trigger 5 U.S.C. § 555(b).

Perhaps recognizing the flaw in its reliance on 5 U.S.C. § 555(b), Solenex also argues that the mandatory duty flows from the MLA itself. ECF No. 14-17. First, Solenex argues that the MLA does not authorize a permanent injunction. *Id.* at 14. The suspension at issue here, however is not permanent. The 1998 suspension specifically states that the suspension will only stay in effect until the conclusion of the historic property review under Section 106 of NHPA. That does not amount to a permanent suspension. *See United Airlines, Inc. v. CAB*, 198 F.2d 100, 108 (7th Cir.1952) (finding the suspension of United's certificate to serve certain cities was not permanent because the CAB acted under its power to suspend and specifically pointed out the temporary nature of the order.)

Solenex then argues that the MLA prohibits open-ended suspension citing *Union Oil Co. of Calif. v. Morton*, 512 F. 2d 743 (9th. Cir. 1975). ECF No. 39 at 14-15. The court in *Union Oil* held that the Secretary is not authorized to issue a suspension of such severity as would amount to a Fifth Amendment. *Id.* at 751. It reasoned that the Secretary of the Interior did not process the power of condemnation under the Outer Continental Shelf Lands Act ("OCSLA")

5

because Congress had clearly intended "to distinguish policy power regulation from invasion of property rights" in the OCSLA lease at issue in that case, and thus Congress had not intended to "confer powers of condemnation upon the Secretary by implication." *Id.* The court in *Union Oil*, however, made it clear that whether a suspension amounts to a taking depends on the conditions of the suspension.[5] The court distinguished between an indefinite suspension and a temporary suspension whose termination is conditioned by the occurrence of certain future events. *Id.* It concluded that a suspension whose termination was conditioned on the occurrences of events would be a valid exercise of the Secretary's regulatory power. *Id.* In this case, the suspension is conditioned on the conclusion of the historic property review under Section 106 of NPHA and therefore, is not an indefinite suspension.

Finally, Solenex argues that that unreasonable delay cases under the Mining Law, 30 U.S.C. § 22 *et seq.*, support the argument that that lifting of the suspension is a mandatory duty. Those cases, however, are not relevant because the Mining Law requires BLM to issue a patent if the application satisfies all the statutory requirements. 30 U.S.C. § 29; *Marathon Oil v. Lujan*, 937 F.2d 498, 501 (10th Cir. 1991) (holding that the government has a non-discretionary duty to process mining claims.) Also, once the BLM finds that a patent claim complies with all the statutory requirements, the "issuance of a patent is ministerial." *High Country Citizen's Alliance v. Clarke*, 454 F.3d 1177, 1182 (10th Cir. 2006). By contrast, the MLA is silent about when a suspension should be lifted. To the contrary, the plain language of the MLA suggests that that the suspension can remain in place for as long as the underlying cause of the suspension is

---

[5] Section 5(a)(1) of the OCSLA authorizes the Secretary of the Interior to provide, "in the interests of conservation," for the "suspension of operations or production." 43 U.S.C. § 1334(a)(1). That provision0 is similar to Section 39 of the MLA. *Copper Valley Machine Works Inc.*, 653 F. 2d at 601, n.8.

present.  The BLM regulations implementing the MLA re-enforce this interpretation providing that "[s]uspensions will terminate when they are no longer justified in the interests of conservation . . . ."  43 C.F.R. § 3165.1(c).  In this case, the need for cultural resource review is ongoing, so the suspension is not unlawful.

In sum, Solenex has failed to identify a discrete, mandatory duty to lift the suspension so there is no agency action unlawfully withheld or unreasonably delayed.

### C. Under the Facts BLM and the Forest Service Have Not Unreasonably Delayed Action on the Suspension of the Lease Operations and Production.

In the opposition, Solenex merely repeats its arguments that the agencies have unreasonably delayed the lifting of the suspension and completing the NHPA process. ECF No. 39 at 19-31.  In our opening brief, we detailed why the facts do not support a finding of unreasonable delay.  ECF No. 34-1 at 25-27.  Based on new information concerning the traditional cultural importance of the area, the Forest Service began working with the Blackfeet Tribe in 1993 to define the area of religious and cultural significance to meet the requirements of the 1992 NHPA amendments and the subsequent 2001 NHPA regulations in terms of identifying the TCD.  Despite that active effort by the Forest Service, it was not until summer of 2013, after completion of the December 2012 comprehensive ethnological report, that both the SHPO and the THPO concurred in the boundaries of the TCD.  Since that time, the Forest Service has been diligently completing its responsibilities under the NHPA.  As noted above, the Forest Service has held two meetings with the consulting parties, made an initial determination under the NHPA that Solenex's operations will adversely affect the cultural resources of the TCD and asked those parties, including Solenex, for input on how to avoid, minimize, or mitigate those effects on the historic property. With a determination that the Solenex operation will pose adverse effects on the TCD, the Forest Service will notify the Advisory Council on Historic Preservation, as

required, and invite them to participate in the 36 C.F.R. § 800.6 "resolution of adverse effect" process. In sum, the Forest Service is moving expeditiously to comply with its responsibilities under NHPA and therefore, this Court should deny Solenex's motion for summary judgment.

Dated: October 24, 2014

                              Respectfully submitted,

                              SAM HIRSCH
                              Acting Assistant Attorney General

                              <u>/s/ Ruth Ann Storey</u>
                              Ruth Ann Storey
                              United States Department of Justice
                              Environment & Natural Resources Division
                              Natural Resources Section
                              P.O. Box 7611
                              Washington, D.C.  20044
                              (202) 305-0493
                              ruth.ann.storey@usdoj.gov

                              Counsel for Federal Defendants