**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SOLENEX LLC, | ) | Civil Case No. 13-00993 (RJL) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| S.M.R. JEWELL, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**APPENDIX
VOL. II of IV
FOREST SERVICE DOCUMENTS
(FS003001 through FS006282)**

**INDEX**

**VOLUME I**
**FOREST SERVICE DOCUMENTS**
**(FS000001 through FS002997)**

| Bates No. | Document Description |
|---|---|
| FS000001–28 (Excerpts) | APD for M-53323 well (Fina-Hall Creek) |
| FS000031–354 (Excerpts) | EA, ROD, and Finding of No Significant Impact, Hall Creek M-53323 Fina APD |
| FS000335–378 | IBLA remand of the Decision to Approve APD to BLM and FS for more analysis |
| FS001081–1108 | LCNF Plan ROD |
| FS001109–1117 | Decision Notice and Finding of No Significant Impact Reactivating APD |
| FS001118–1119 | FS letter to BLM, IBLA remand resolved |
| FS001120 | FS letter to BLM, recommend IBLA be petitioned to remand 4/13 decision to BLM for further analysis |
| FS001121 | IBLA Order remanding APD Decision |
| FS001122 | BLM confirmation of continued suspension of Fina Lease |
| FS001123 | Notice of Intent, to Amend the EIS to include Hall Creek well, published in Federal Register |
| FS001165–2145 (Excerpts) | FEIS Fina Exploratory Well |
| FS002147–2183 (Excerpts) | Forest Service and BLM ROD Fina APD M-53323 |
| FS002185–2190 | BLM letter to Fina providing APD with Conditions of Approval |
| FS002192 | IBLA Order, case remanded to BLM for further adjudication of the APD |
| FS002292–2293 | U.S. District Court, NWF et al. vs. FS Order, termination without prejudice |
| FS002294–2326 | Fina Oil and Chemical Company Exploratory Oil/Gas Well BLM ROD |
| FS002352–2353 | Secretary of Interior Babbitt Letter to Fina, Suspending Operations to June 30, 1996 |
| FS002412 | Assistant Secretary of Interior letter to Fina extending Suspension of Operations |
| FS002423–2424 | BLM letter to Fina, Suspension of Operations extended to June 30, 1998 |
| FS002425–2429 | FS letter to BLM, NRHP status of 106 process |
| FS002431–2432 | BLM letter to Fina: Suspension of Operations extended to June 30, 1998 |
| FS002438–2439 | BLM letter to Fina: Suspension of Operations extended pending conclusion of NHPA review |
| FS002768–2783 (Excerpts) | BLM letter to Honorable Richard Baker, re reinstatement of previously approved APD |
| FS002791–2792 | FS letter to Mr. Longwell, regarding NHPA |
| FS002808–2810 | FS letter to Mr. Longwell, response to 3/12 letter clarifying land use issues |
| FS002811 | FS letter to Mr. Longwell, regarding 3/15 conference call, Permit Valid, operations suspended |

| Bates No. | Document Description |
|---|---|
| FS002875 | FS letter to Mr. Longwell, accepting consulting Party request |
| FS002967–2978 (Excerpts) | FS letter to Jindal, response to letter on behalf of Mr. Longwell, explaining status |
| FS002982–2983 | FS letter to Mr. Longwell, regarding 10/28 letter status update |
| FS002989 | FS letter to Mr. Longwell, APD still suspended pending TCD ruling |
| FS002994–2995 | FS letter to Mr. Longwell, follow up 2/21 letter, timeline unavailable, alternatives to consider |
| FS002996 | Map, Hall Creek APD Alternative 5 Route A2 |
| FS002997 | Map, Badger-Two Medicine Blackfoot Traditional Cultural District |

# VOLUME II
## FOREST SERVICE DOCUMENTS
### (FS003001 through FS006282)

| Bates No. | Document Description |
|---|---|
| FS003001–3004 | FS letter to MSLF, APD still pending, Solenex can join consulting party upon TCD determination by SHPO, other options open |
| FS003005 | FS letter to Mr. Longwell, response to 6/18 letter, TCD update |
| FS003006–3007 | Longwell letter to LCNF, request for timeline, on lease development |
| FS003246–3247 | BFT letter to FS, support and request input for TCD |
| FS003442 | NRHP to FS, TCD DOE pending more information |
| FS003528–3531 | FS letter to Blackfeet Tribal Business Council, answering questions from 2/25 meeting |
| FS003590–3591 | FS letter to BFTBC, follow-up meeting, National Register documentation for the Historic District and confidentiality |
| FS003741–3744 | FS to BFT, APE Boundary |
| FS003772–3787 | NHPA Sec. 106 Review meeting for the Longwell Proposal |
| FS003802–3803 | FS email, Traditional District Boundary definition background |
| FS004000–4001 | BLM, FS map, Badger Two-Medicine |
| FS004027–4029 | Gloria Flora (Sustainable Obtainable Solutions) fax to BFTBC, recollection 1995 boundary meeting |
| FS004066–4067 | FS letter to consulting parties, consultation process suspended pending BFT evaluations |
| FS004217–4219 | FS letter to consulting parties, update on TCD |
| FS004225–4228 | BFT letter to FS, Resolution 206-2004 |
| FS004242–4245 | BFTBC to FS, Resolution No. 27-2005, B2M area |
| FS004246 | FS to Tribal Historic Preservation Officer (THPO), copy of NHRP docs |
| FS004247 | FS to Ethnoscience, NRHP docs sent to THPO |
| FS004248 | FS and Zedeno emails, B2M activities |
| FS004467 | FS letter to BFTBC, seeking concurrence determination of eligibility with THPO and SHPO |
| FS004593–4594 | FS email, Abing to Vaculik, Northwest Montana – Mountain States Legal Foundation (MSLF) letter dated 5/21/2013 Sent to Director/FS – Solenex LLC |
| FS004600–4606 | FS email, Abing to Vaculik, letter about Badger Two Medicine APD |
| FS004620 | THPO, SHPO concurrence, Badger Two Medicine TCP District: Boundary Expansion Study |
| FS004714–4725 | Attachment 4, History of Petroleum usage and drilling procedures in the Badger Two Medicine Area |
| FS004742 | Attachment 6, Map, LCNF |
| FS004743 | Attachment 7, Map, TCD |
| FS004752–4761 | Attachment Meeting Notes, Solenex and Badger-Two Medicine Consulting Party Meeting |
| FS004765–4767 | Attachment 1, Regulatory Compliance Process Solenex APD |

| Bates No. | Document Description |
|---|---|
| FS004773–4785 | Solenex LLC, B2M, TCD Consulting Party Meeting Notes |
| FS004786 | Sign In sheet/Contact Information |
| FS004826–4828 | Consulting Party Meeting, Regulatory Compliance Process – Solenex APD, LCNF 3/21/2014 |
| FS004829–4831 | Blackfeet Tribe Letter to USFS Lewis and Clark National Forest, Re: Badger Two Medicine TCD NR form and Solenex APE |
| FS004848–4849 | Consulting Party Meeting Attachment 6, B2M TCD Rationale |
| FS005235–5328 | Report on the Inadequacy of the Information and Data on which to draw a final boundary for the B2M Traditional Cultural District and the Need for Additional Research, Deward E. Walker, University of Colorado and Brian Reeves, University of Calgary for Blackfeet Tribe |
| FS005608–5631 (Redacted pages omitted) | B2M Traditional Cultural District, LCNF, Boundary Expansion Study |
| FS 005733 | Map, Extracted from B2M TCD Boundary Expansion Study |
| FS 005800 | FS email RE Revised B2M TCD report |
| FS005801–5803 | FS email Munoz Bodily RE B2M |
| FS005806 | FS email B2M TCD |
| FS005810 | FS email FW Revised B2M TCD report |
| FS005839 | Map, 20040708 TCD & well sites |
| FS005882–5884 | FS letter to NRHP, DOE forms and comments |
| FS005886–5887 | FS letter to NRHP, addressing TCD site integrity issues |
| FS005888–5889 | FS letter to NRHP, forms for TCD boundary modification |
| FS005921–5923 | NHRP to FS, comments on DOE |
| FS005924–5925 | FS letter to NRHP, DOE follow-up |
| FS006010 | FS letter to SHPO, Boundary Expansion Study attached, seeking concurrence determination of eligibility with THPO and SHPO |
| FS006271–6282 | HR 6111 title IV provision 323 sec. 403 |

**VOLUME III**
**BLM DOCUMENTS**
**(HC00072 through HC15375)**

| Bates No. | Document Description |
|---|---|
| HC000072–73 | BLM Decision re State Director Review to National Wildlife Federation |
| HC000078 | Forest Supervisor letter to BLM, notice of possible suspension |
| HC000820 | Forest Supervisor letter to BLM, request that BLM issue suspension |
| HC000825 | BLM Letter to Fina Oil and Chemical, notice of suspension |
| HC000843 | BLM Decision to Fina Oil and Chemical Co., Petrofina Delaware, Inc., and AGIP Petroleum Co., Inc., Lease Term and Rental Suspended |
| HC000849 | BLM District Manager letter  to Fina Oil and Chemical Co., re suspension |
| HC000855–856 | American Petrofina Co. of Texas letter to the BLM, re suspension |
| HC000865–866 | Assignment Affecting Record Title to Oil and Gas Lease |
| HC000884–894 | Offer to Lease and Lease for Oil and Gas |
| HC000895 | BLM Notice of Additional Requirements |
| HC000897–898 | Regional Forester letter to BLM, re effects of issuing oil and gas leases found in EA |
| HC000999–1005 | Notice of Appeal of Blackfeet Tribe to Regional Forester |
| HC001147–1148 | U.S. District Court for the District of Montana, 1996 Status Report |
| HC001152–1153 | U.S. District Court for the District of Montana, Order, Plaintiff's motion to stay proceedings is GRANTED |
| HC001162–1182 | U.S. District Court for the District of Montana, Complaint |
| HC001281 | BLM's Motion for Remand to IBLA |
| HC001705–1706 | Blackfeet Nation, Resolution No. 89-93 |
| HC001742–1743 | BLM State Director Memorandum to MIB Director, re request for Secretarial Leval Decision, Fina Oil and Chemical Company Exploratory Oil and Gas Well, ROD |
| HC002292 | BLM letter to American Petrofina Company of Texas, re addendum to EA |
| HC004131 | Blackfeet Tribe letter to FS, re comments on the Hall Creek APD EA |
| HC006653–6657 | Blackfeet Tribe Counsel letter to IBLA, re approval of APD |
| HC014126–14128 | Excerpt from Exhibit 17 |
| HC015375 | Blackfeet Tribe letter to FS, re drill site in the "Ceded Strip" |

**VOLUME IV**
**MISCELLANEOUS DOCUMENTS**

| Document Description |
| --- |
| 1980 Leasing Environmental Assessment |
| Federal Oil and Gas Lease M-53323 |
| 2014 BLM Map of Badger-Two Medicine |
| Blackfeet Resolution 94-84 |
| *Glacier-Two Medicine Alliance*, 88 IBLA 133 (1985) |
| 54 Fed. Reg. 43188 (October 23, 1989) |
| 56 Fed. Reg. 9935 (March 8, 1991) |
| 58 Fed. Reg. 7241 (Feb. 5, 1993) |
| Forest Service April 5, 2001 letter |
| Lewis and Clark Loop, Natural Gas Pipeline Project, Decision Notice and Finding of No Significant Impact |
| 2014 Forest Service Map of TCD |
| Approved APD's FY1985 through FY2013 |
| Wells Spudded on Federal Leases FY1985 through FY2013 |

FS 003001

 **United States**    **Forest**    **Lewis and Clark**    1101 15th Street North
**Department of**    **Service**    **National Forest**    Great Falls, MT 59401
**Agriculture**                                                     406 791-7700
                                                                       FAX 406 731-5302

**File Code:** 2820
**Date:** June 18, 2013

Jessica J. Spuhler
Attorney for Solenex LLC
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO 80227

Dear Ms. Spuhler;

I am in receipt of your June 12 letter in which you forwarded your May 21, 2013 letter regarding the Bureau of Land Management's (BLM) suspension of Federal Oil and Gas Lease M-53323. The lease suspension by BLM in 1998 is to remain in effect "until conclusion of the historic property review under Section 106 of the National Historic Preservation Act." This letter is to provide you an update of the status of the ongoing Section 106 process under the National Historic Preservation Act (NHPA).

The determination of the Traditional Cultural District under the Section 106 process has taken a considerable amount of work. We continue to work towards finalizing the extent of the Traditional Cultural District and a determination of its eligibility. In December 2012, the Forest Service received a final draft ethnographic report that addresses all properties in the Badger-Two Medicine area that were identified as having cultural significance to the Blackfeet Tribe. The report recommends inclusion of these properties into the previously identified Traditional Cultural District. The expansion includes all of lease M-53323. The report has been submitted to the Montana State Historic Preservation Office (SHPO) for their consensus determination of eligibility. We expect a formal response within 30 days. In addition, the Forest Service met with the Blackfeet Tribal Historic Preservation Office in May 2013 to notify them of the results of the report and will be consulting with them soon to confirm proposed boundary adjustments to the previous identified Traditional Cultural District.

We will re-engage the consulting parties, including Solenex, as part of the 106 process following the eligibility determination by the SHPO. The purpose of convening these parties is to discuss potential effects of the proposed drilling and seek possible mitigation measures, if necessary. We will plan for this to take place within 30 days of receipt of SHPO's determination.

Next, the agency would be evaluating potential effects to the Traditional Cultural District (based on the Surface Use Plan of Operations (SUPO)) and completing the NHPA Section 106 process, as well as considering other new information relevant to the decision. If our re-evaluation of the NHPA Section 106 process and any other relevant new information determines our analysis is complete, at that point we will transmit the information to BLM in order for BLM to consider its lease suspension. If it is determined that there are effects that were not considered in the original evaluation of the proposed drilling, the agencies will evaluate those impacts and determine if an additional analysis and potentially new decisions are needed prior to lifting the suspension.





MOUNTAIN
STATES
LEGAL
FOUNDATION

RECEIVED
FS...
JUN 1 4 2013
Lewis & Clark NF

2596 South Lewis Way
Lakewood, Colorado 80227
303-292-2021 • FAX 303-292-1980
www.mountainstateslegal.org

June 12, 2013

**VIA CERTIFIED U.S. MAIL-**
**RETURN RECEIPT REQUESTED – #7004 2510 0006 1985 7126**

Bill Avey
Forest Supervisor
Lewis and Clark National Forest
1101 15th Street N
Great Falls, Montana 59401

Re:   Federal Oil and Gas Lease M-53323

Dear Mr. Avey:

The enclosed letter was mailed May 21, 2013, informing you of my client, Solenex LLC's, intent to seek judicial relief for the ongoing and lengthy suspension of Federal Oil and Gas Lease M-53323.

The letter was sent to your business address, as provided on the Forest Service's website, however the letter was returned on June 12, 2013. Solenex LLC still plans to pursue judicial relief if no action has been taken to lift the suspension of Lease M-53323 within 30 days from the time the May 21, 2013, letter should have been received.

Please contact me at (303) 292-2021 if you have any questions or would like to discuss Lease M 5-3323.

Sincerely,

MOUNTAIN STATES LEGAL FOUNDATION

Jessica J. Spuhler, Esq.
Attorney for Solenex LLC

Encl.

cc:     Solenex LLC

*Fighting for individual liberty, the right to own and use property,*
*limited and ethical government, and the free enterprise system since 1977.*

FS 003003



## MOUNTAIN STATES LEGAL FOUNDATION

2596 South Lewis Way
Lakewood, Colorado 80227
303-292-2021 • FAX 303-292-1980
www.mountainstateslegal.org

May 21, 2013

**VIA CERTIFIED U.S. MAIL-RETURN RECEIPT REQUESTED**

Jamie Connell
State Director
Montana State Office
Bureau of Land Management
5001 Southgate Drive
Billings, Montana 59101
#7004 2510 0006 1985 7089

Bill Avey
Forest Supervisor
Lewis and Clark National Forest
P.O. Box 869
Great Falls, Montana 59403
#7004 2510 0006 1985 7119

       Re:    Federal Oil and Gas Lease M-53323

Dear Ms. Connell and Mr. Avey:

     I represent Solenex LLC, the owner of Federal Oil and Gas Lease M-53323.
Lease M-53323 was issued in 1982 and covers approximately 6,247.00 acres in Glacier,
County, Montana. An Application for Permit to Drill ("APD") for Lease M-53323 was
first submitted to the BLM on October 18, 1983. As you know, the BLM approved the
APD in 1983, 1985, 1987, and 1991. Each time the approval was challenged. In 1993
the BLM again approved the APD. This approval remains in place.

     From 1993–1996, the BLM issued a series of annual suspensions purportedly to
allow Congress time to determine whether the area in which Lease M-53323 is located
should be included in proposed wilderness legislation. Congress never acted, however,
and in 1996 and 1997 the BLM again extended the suspension for one-year terms, based
on a new theory that Lease M-53323 may be located near a potential traditional cultural
district, as that term is used in the National Historic Preservation Act ("NHPA"). In 1998
the BLM again suspended Lease M-53323, this time indefinitely, to allow a review of the

*Fighting for individual liberty, the right to own and use property,
limited and ethical government, and the free enterprise system since 1977.*

FS 003004

Ms. Connell & Mr. Avey
May 21, 2013
Page 2 of 2

area under Section 106 of the NHPA.  Evidently, the Section 106 review is still ongoing today, and Lease M-53323 has now been suspended for nearly twenty years.

Accordingly, Solenex respectfully requests that the BLM lift the suspension of Lease M-53323 and allow Solenex to exercise the rights granted to it under Lease M-53323 and the approved APD.  If the suspension is not lifted within 30 days, Solenex will seek judicial relief.

If you have any questions or wish to discuss Lease M-53323, please do not hesitate to contact me at (303) 292-2021.

Sincerely,

MOUNTAIN STATES LEGAL FOUNDATION

Jessica J. Spuhler, Esq.
Attorney for Solenex LLC

cc:      Solenex LLC

FS 003005

 **USDA**  United States | Forest | Lewis and Clark | 1101 15th Street North
Department of | Service | National Forest | Great Falls, MT 59401
Agriculture | | | 406 791-7700
| | | FAX 406 731-5302

File Code: 2820

Date: August 21, 2013

Mr. Sidney Longwell
Solenex, LLC
821 East Longview Drive
Baton Rouge, LA 70810

Dear Mr. Longwell:

The purpose of this letter is to update you on actions involving the Badger-Two Medicine
Traditional Cultural District (TCD) and next steps with regard to convening consulting parties, as
outlined in my letter to your counsel dated June 18, 2013.

We have received formal concurrence from the Montana State Historic Preservation Office
(SHPO) and the Blackfeet Tribal Historic Preservation Office (THPO) with regard to the TCD
boundary expansion. We have a consensus determination that the expanded TCD is eligible for
listing on the National Register of Historic Places. Next steps of the National Historic
Preservation Act Section 106 process entail convening consulting parties, including Montana
SHPO, the Blackfeet THPO, the Blackfeet Tribal Business Council, Glacier National Park, the
Independent Petroleum Association of Mountain States, the National Trust for Historic
Preservation, and yourself, to determine project effects of the proposed drilling and seek possible
mitigation measures, if necessary.

We will proceed to set up a meeting of consulting parties and invite you to participate in this
meeting. Please contact Robin Strathy at (406) 791-7726 to let us know of your interest and/or
availability to participate. We are more than willing to accommodate your schedule as much as
possible, along with the other consulting parties.

Thank you for your consideration and we look forward to hearing from you.

Sincerely,

WILLIAM AVEY
Forest Supervisor



Caring for the Land and Serving People

Printed on Recycled Paper

FS 003006



BATON ROUGE LA 707

16 FEB 2012  PM 3 L

USA FIRST-CLASS FOREVER

**S○LENEX** llc

821 EAST LAKEVIEW DRIVE,
BATON ROUGE, LA  70810,

Bill Avery, Supervisor

Lewis & Clark National Forest

P.O. Box 869

Great Falls, MT 59403-0869

59403+0869

FS 003007





RECEIVED
FEB 21 2012
Lewis & Clark NF

February 16, 2012

Bill Avery, Supervisor
Lewis & Clark National Forest
P.O. Box 869
Great Falls, MT 59403-0869

RE:  Federal Mineral Lease M-53323

Dear Mr. Avery:

 I would like to begin development of my above-referenced lease for which I have an Approved Permit to Drill.  Please provide a timeline that starts immediately and establishes a reasonable date when drilling can commence.

 I feel it is important to proceed with the development of this lease based on the amount of drilling activity in the area, including that on the nearby Blackfeet reservation, as well as the need to develop domestic energy resources on both public and private lands as outlined by President Obama in his State of the Union Address.

 Please note, too, that I want to develop this lease in a manner that assures the environmental and ecological well-being of the area immediately adjacent to the drill site, as well as those areas adjacent to the access road.

 I look forward to your reply.

Sincerely,

Sidney M. Longwell

cc:  The Honorable Denny Rehberg
  The Honorable William Cassidy
  Mr. Donato Judice

821 EAST LAKEVIEW DRIVE • BATON ROUGE, LOUISIANA  70810  • (225) 766-7863

FS 003246

# BLACKFEET NATION

EXECUTIVE COMMITTEE

EARL OLD PERSON, CHAIRMAN
AL POTTS, VICE CHAIRMAN
LEE WILSON, SECRETARY
ELAINE GUARDIPEE, TREASURER

P.O. BOX 850
**BROWNING, MONTANA 59417**
(406) 338-7179
FAX 338-7530

BLACKFEET TRIBAL BUSINESS COUNCIL

EARL OLD PERSON
AL POTTS
LEE WILSON
JOE McKAY
DON MAGEE
CYNTHIA KIPP
MARLENE WALTER
GEORGE RUNNING WOLF
FRANKLIN COMES AT NIGHT

December 9, 1993

John D. Gorman, Forest Supervisor
Lewis & Clark National Forest
P.O. Box 869
Great Falls, MT   59403

Dear Mr. Gorman,

Members of the Blackfeet Tribal Business Council, our Legal
Department, and other tribal departments have reviewed the report
on "Blackfeet Culture, Religion, and Traditional Practices in the
Badger-Two Medicine Area and Surrounding Mountains" prepared for
the National Forest Service by Historical Research Associates.  T.
Weber Greiser, one of the authors of the report, also met with the
Council on September 2, 1993.  Please accept this letter as the
comments of the Blackfeet Tribe on the above report.

The Blackfeet Tribal Business Council as the governing body of
the Tribe believes that traditional use, values and cultural
properties within the Badger-Two Medicine Area are best identified
by traditional Blackfeet cultural and religious leaders and
practitioners.  Appropriately, cultural and religious leaders and
practitioners were interviewed for the report, and we understand
that the Blackfoot Traditional Cultural District proposed in the
report is based on the information provided in these interviews.
While we agree with the recommendation in the report as far as it
goes, the Blackfeet Tribal Business Council believes that the
entire RM-1 Unit should be designated as a Blackfeet Traditional
Cultural District and that additional interviews should be
undertaken before the report is finalized.

Designation of a traditional cultural district in the Badger-
Two Medicine requires the most thorough and comprehensive study
that can be done, since it is likely that this will be the primary
opportunity to define the district and future additions or
modifications may be difficult to achieve.  We believe that
interviews with additional people could provide significant
information that may expand the proposed area.  Some of these
people were identified to Mr. Grieser when he met with us in
September, and we urge that they be interviewed.

FS 003247

Letter to John D. Gorman
December 9, 1993
Page 2

Although the Blackfeet Tribal Business Council supports the designation of a Blackfeet Traditional Cultural District, we want to make clear that we do not believe that such a designation, or any resulting eligibility for or listing on the National Historic Register, can or should take precedence over the Tribe's existing rights in the Badger-Two Medicine. As you know, it is the Tribe's position that it never permanently ceded this area, and its rights include, at minimum, the rights retained by the Tribe in the Agreement of September 26, 1895, approved by Congress on June 10, 1896, 20 Stat. 321. Our support for the designation of the Cultural District should not be construed as recognition of the authority of the Forest Service or any federal or state agency to ultilize the Cultural District as a means to limit, modify or diminish the Tribe's rights in the area, including those rights under the 1895 Agreement. Only the Blackfeet Tribe can determine how best to manage its rights and resources, taking into account the traditional cultural and religious significance of the area to its members.

Designation of the Cultural District does provide, however, yet additional reasons as to why oil and gas drilling permits should be denied in the Badger-Two Medicine. From the beginning, the Blackfeet Tribe has vigorously opposed the issuance of permits to drill in this area. This opposition has been based on the fact that such drilling will substantially and irrevocably interfere and conflict with the rights of the Tribe in the Badger-Two Medicine area. We believe that these reasons, along with the designation of the Blackfeet Cultural District compel the Forest Service to deny any permits to drill in this area, and we strongly urge the National Forest Service and the Department of the Interior to take steps to deny all such permits.

Please feel free to contact me for any additional information.

Sincerely yours,

Earl Old Person, Chairman
Blackfeet Tribal Business Council



FS 003442

## United States Department of the Interior

NATIONAL PARK SERVICE
P.O. Box 37127
Washington, D.C. 20013-7127

REC'D LCNF DEC 0 1 1997

IN REPLY REFER TO:
H32(2280)

NOV 2 5 1997

Ms. Gloria E. Flora
Forest Supervisor
Lewis and Clark National Forest
1101 15th Street North
P. O. Box 869
Great Falls, MT 59403

Dear Ms. Flora:

This letter responds to your May 21, 1997 request for a determination of eligibility for the Badger-Two Medicine Blackfoot Traditional Cultural District in Glacier and Pondera Counties, Montana.

The National Register has completed its substantive review of the materials submitted by your office. Prior to rendering a final decision regarding the property, we need clarification from the Forest Service concerning the intended boundaries for the determination of eligibility area. The materials provided in the Forest Service's determination of eligibility request included documentation for a large traditional cultural district--provided on the National Register Multiple Property Documentation Form--as well as individual sites related to specific topographic features, which were detailed on separate National Register registration forms. Individual boundary justifications were provided with each document.

The Forest Service's intent in providing the documentation in this manner is unclear. Is the intent of the Forest Service's determination of eligibility request to consider a single historic district as outlined by the U. T. M. coordinates provided on pages G-1 and G-2 of the multiple property documentation form, or is the request intended to consider the individual eligibility of each of the 13 discrete topographic sites? If the Forest Service's intention was to consider the former, can it be assumed that the individual forms constitute supporting documentation for the larger district? Please provide us with a recommendation and justification for the boundaries you propose.

With regard to the individual site forms there is also a question regarding the possible existence of noncontributing or modern structures within the boundaries of the described area. The USGS map detailing the *South Fork of the Two Medicine River*, for example, indicates the location of approximately 11 building or structural outlines within the boundary area identified for the traditional cultural property. The narrative description, however, makes no mention of these resources, their continued existence, or their affect on the integrity of the proposed traditional cultural property. There are a small number of undocumented resources within other resource areas as well.

We request that the Forest Service provide a boundary recommendation and justification for the determination of eligibility along with information regarding the matter of possible intrusions. Upon receipt, the National Register will complete its review. If you have any questions please contact Paul Lusignan of the National Register staff at (202) 343-1628.

Sincerely,

Patrick Andrus

Carol D. Shull
Keeper of the National Register of Historic Places
National Register, History and Education

FS 003528



| United States Department of Agriculture | Forest Service | Lewis and Clark National Forest | 1101 15th Street North P.O. Box 869 Great Falls, MT 59403-0869 406 791-7700 FAX 406 761-1972 |

**File Code:**  2820/2360/1530
**Date:**  March 5, 2002

Earl Old Person
Chairman
Blackfeet Tribal Business Council
Box 850
Browning, MT 59417

Dear Chairman Old Person:

Thank you for the time you and the Blackfeet Tribal Council spent with us at your February 19 Council meeting discussing the Badger-Two Medicine area. Those of us in attendance from the Forest Service and the Bureau of Land Management believe the meeting was very productive and will serve as a sound basis for strengthening our working partnership in the future.

The Council members had a number of valid questions regarding the potential listing of the Badger-Two Medicine Blackfoot Traditional Cultural District on the National Register of Historic Places and any effects the listing may have on use of the area by Blackfeet Tribal Members. I hope the following answers to those questions provide the council with the information you need in order to make a recommendation on whether we should proceed with a nomination to list the Badger-Two Medicine area as a traditional cultural district. Some of the questions you asked at the meeting involve legal interpretations of treaty rights about which I am not qualified to respond. If you would like to discuss those questions with our legal staff, we would be happy to provide a forum for that discussion.

1. *Who started the nomination process for the Traditional Cultural District?*

While records in our files indicate the Forest Service was interested in and studied the traditional and cultural uses of the Badger-Two Medicine as far back as the late 1970s, the question of eligibility as a Traditional Cultural District was not raised to the Keeper of the National Register of Historic Places until May of 1997 in response to a legally mandated Agency review for oil and gas proposals. The Forest Service through then Forest Supervisor Gloria Flora developed the request on eligibility in close coordination with Blackfeet Tribal Council members. The documentation was prepared by Ethnoscience, an independent contractor funded by the Forest Service. We are very interested in continuing this close coordination with the Council as we consider a potential nomination to list the district and avenues to protect the traditional values.



**Caring for the Land and Serving People**                    Printed on Recycled Paper

2. *How can we fund the important need to capture oral histories associated with the Badger-Two Medicine?*

We agree that oral histories are a very important aspect in documenting the traditional use in the Badger-Two Medicine. We are currently looking into grant opportunities and other avenues that may provide funding for future studies as Joyce Spoonhunter discussed. We may need your assistance in developing applications for these funds and will work with you to secure them.

3. *What limitations would the listing place on traditional uses of the area, such as wood gathering, by Blackfeet Tribal members?*

A "District" designation and/or National Register listing places no limitations on traditional use or reserved rights. Rather, the intent of the designation is to aid in the protection and preservation of traditional resource gathering and spiritual uses by making Agency managers aware of the important values placed on this area by the Blackfeet people. By formalizing the Traditional Cultural District, federal managers are legally bound to consider the qualities that make the district eligible to the National Register when making any decisions regarding management of the area. Too, because of the designation, the Blackfeet Tribe is afforded another avenue of involvement in the management of this land.

4. *Can the Blackfeet Tribe influence management decisions?*

As we discussed at the Council meeting, the Forest remains committed to working with the Tribe to assure that our mutual objectives for this important area of the forest are met. In a similar 1996 meeting with Gloria Flora, Joyce Spoonhunter noted that "[t]he Badger-Two Medicine sites include one of the last culturally undisturbed areas which our tribe of people can practice their creator-given way of life." It is our sincere intent to assure that your traditions and heritage are not lost as a result of any management actions taken by the Lewis and Clark National Forest.

5. *Are the mineral leases subject to a 55-year term?*

Currently the minerals are under Federal jurisdiction and we will continue to manage them under our (BLM/FS) respective authorities and consistent with any changes to the Federal law that may result from actions by Congress or the judiciary. To our knowledge, no legal determination related to a 55-year limit has been made.

To achieve our mutual objectives related to the Badger- Two Medicine area, it is important that the Forest Service and the Tribe openly communicate and share information that will lead us to the right management decisions. We recognize and respect the fact that there may be some information of such importance to Blackfeet People that it cannot be shared. In addition, we will work hard to assure that shared privileged information will be used for official purposes only and not publicly distributed. Under separate cover, I am providing you with a complete copy of the Badger Two Medicine Blackfoot Traditional Cultural District documentation. I ask that you review the material and provide us with an opinion about proceeding with listing the Badger-Two Medicine Traditional Cultural District on the National Register of Historic Places and what level of confidentiality is appropriate for the listing documentation.

Chairman Old Person

3
FS 003530

I endorse the idea raised at the council meeting that we together create a joint Blackfeet/Lewis and Clark National Forest committee to help evaluate management of the Badger-Two Medicine Area. If you agree, I will ask Forest Archaeologist Sandi French and District Ranger Michael Muñoz to work with you and your staff to form the committee. In addition, we will continue to search for ways that Blackfeet Tribal Members can help as future employees of the Lewis and Clark National Forest. Any assistance you can provide to enhance recruitment opportunities as positions become available would be appreciated.

Again, thank you for taking the time to address these important issues. I look forward to a long and prosperous partnership between the Blackfeet Tribe and the Lewis and Clark National Forest.

Sincerely,

RICK PRAUSA
Forest Supervisor

Cc: Don Judice, BLM - Great Falls
    Regional Forester
    Tribal Business Council Members
    John Foss, RO
    Alan Campbell, OGC

## Montana-Wyoming Tribal Leaders Council

### TLC INFORMATION CENTER

Home
Native News
Contact Us
Upcoming Events
Trust
Native Links
Economic Development
Employment
Health Coordinator of Indian Affairs - MT
Grant Info
Government
Digital Divide
Veterans
Maps
Ancestry
Photo Gallery
Internet Project
Census Info
TLC Web Search
---------------
Northern Arapaho
Blackfeet
Crow
Chippewa Cree
Fort Belknap
Fort Peck
Little Shell
Northern Cheyenne
Salish & Kootenai
Eastern Shoshone
---------------
CLLBT Site
---------------

MT-WY Tribal Leaders Council Mission Statement

---------------

New Council Tribes Coming Soon!
---------------

### ARAPAHO BUSINESS COUNCIL

Anthony Addison, Chairman

Ben Ridgley, Co-Chairman

Samuel J. Dresser

Joseph Oldman

Nelson P. White, Sr.

Burton Hutchinson, Sr.

Arapaho Business Council

PO Box 396

Fort Washakie, WY 82514

Phone: (307) 332-6120

Fax: (307) 332-7543

**E-mail:**
Arapahotribe@hotmail.com

### BLACKFEET TRIBAL BUSINESS COUNCIL

| Earl Old Person, Chairman | tk9963@3rivers.net |
| Darrel "Gordo" Horn, Vice-Chairman | notary@3rivers.net |
| Gordon Monroe, Secretary/Treasurer | meow@3rivers.net |
| Leo Kennerly III | meow@3rivers.net |
| Titus Upham | btbc@3rivers.net |
| Clifford Tailfeathers | btbc@3rivers.net |
| James St. Goodard | snowflake@3rivers.net |
| Hugh D. Monroe | btbc@3rivers.net |
| Ervin Carlson | meow@3rivers.net |

Blackfeet Tribal Business Council

PO Box 850

Browning MT 59417

Phone: (406) 338-7276

Fax: (406) 338-7530

Tribal Secretary: Trish Kuka

**E-mail:**
btbc@3rivers.net

### CROW TRIBAL COUNCIL

Clifford Birdinground, Chairman

Vincent Goes Ahead, Vice Chairman

Larney Little Owl, Vice-Secretary

Crow Tribal Council

PO Box 159

Crow Agency, MT 59022

Phone: (406) 638-2601

Fax: (406) 638-7283

Public Relations Officer: Dennis Beaumont

### CHIPPEWA CREE BUSINESS COMMITTEE

FS 003590



| United States | Forest | Lewis and Clark | 1101 15th Street North |
|---|---|---|---|
| Department of | Service | National Forest | P.O. Box 869 |
| Agriculture | | | Great Falls, MT 59403-0869 |
| | | | 406 791-7700 |
| | | | FAX 406 761-1972 |

File Code: 1530/2360/1950
Date:    April 12, 2002

Earl Old Person
Chairman
Blackfeet Business Council
Box 850
Browning, MT 59417

Dear Chairman Old Person:

Thank you again for your time spent with us at the Blackfeet Tribal Council meeting of February 19th, regarding the Badger-Two Medicine Blackfoot Traditional Cultural District. As requested at that meeting, I followed up with a letter on March 5th to answer questions you raised. In that letter, I promised to provide you with copies of the complete National Register documentation for the Historic District, and asked for your opinion on formally nominating the District to the National Register of Historic places and any level of confidentiality you place on this material. Three copies of the National Register documentation are enclosed with this letter. I have also sent one to Joyce Spoonhunter at the Cultural office.

As you know from working with the Forest Service in developing this District context, much of the background material is already a matter of public record. The overall District boundaries do not identify individual "sites," but instead encompass the area where traditional use is documented. We believe that by redacting the specific reference to site locations and withholding the individual (internal to the district) site information from public disclosure, that all matters of confidentiality will be covered. Of course, you may choose a more liberal policy of disclosure. Please advise us of your wishes.

Under Federal regulations implementing Section 106 of the National Historic Preservation Act, we are reviewing a proposal for oil and gas drilling in Hall Creek. This proposal was formerly known as the Fina well. Fina sold their lease to Mr. Sidney Longwell. Mr. Longwell wishes to move forward with the application for permit to drill. You will remember that one of the driving forces behind the identification of the Badger-Two Medicine Traditional Cultural District was the initial inventory and analysis for the Chevron (Goat Mountain) and Fina (Hall Creek) proposals of the 1980s. Chevron (now Ocean Energy Corp.) has not moved forward on their proposal. At this time, we are proceeding with the analysis for the Fina/Longwell Application for Permit to Drill (APD). The APD is an 'undertaking' subject to review under the National Historic Preservation Act (NHPA1992 Amended). Under NHPA, federal agencies must identify historic and cultural sites, consult with others, develop an area of potential effect, assess effects and if there are adverse effects, develop mitigation measures. Under the new regulations, Tribes are specifically identified as participants in the Cultural Resource review, also known as the Section 106 Review. The Tribe is entitled to participate as a formal "consulting party" in this review process. We anticipate that you will accept this invitation and look forward to working with you in this capacity.



**Caring for the Land and Serving People**

Printed on Recycled Paper  

Chairman Old Person

2

FS 003591

Our Heritage Program manager and Joyce Spoonhunter of your Cultural office have set a meeting for the end of April to discuss the above mentioned items, and also to look over our Forest's Program of Work for 2002.  We will forward a map and project list prior to the meeting so that Joyce can initiate contacts to assist in the technical coordination, if necessary.

We appreciate your willingness to work with the Forest Service on these matters, and ask that you do not hesitate to contact us with questions or concerns.  I can be reached at 406-791-7720.

Sincerely,

RICK PRAUSA
Forest Supervisor

Enclosures

cc:  Blackfeet Cultural Office

FS 003741



| United States Department of Agriculture | Forest Service | Lewis and Clark National Forest | 1101 15th Street North P.O. Box 869 Great Falls, MT 59403-0869 406 791-7700 FAX 406 731-5302 |
|---|---|---|---|

**File Code:** 2360/2820
**Date:** August 28, 2003

Dear Floyd Heavy-Runner, Curley Bear Wagner and Joyce Spoonhunter:

We are contacting you because of your past involvement and concern with the FINA exploratory oil and gas well proposal. The leaseholder, Mr. Longwell, wants to move forward with the proposal. The Forest is conducting assessments necessary for the environmental review, including the National Historic Preservation Act Section 106 procedures.

As you know, the Badger-Two Medicine Blackfoot Traditional Cultural District has been determined eligible for listing on the National Register of Historic Places by the Keeper of the Register. We have considered this information in defining an Area of Potential Effect (APE) for the Section 106 review.

Enclosed with this letter, please find two copies of maps that depict the APE for the proposed Longwell exploratory gas well. This is the area where the Lewis and Clark Forest believes the proposed well, if drilled, will have the potential to impact traditional cultural sites; areas beyond this APE are not anticipated to be impacted by proposed drilling activities.

The formal definition of an APE, as defined at 36 CFR 800.16(d) is:

*...the geographic area or areas within which an undertaking may directly or indirectly cause alterations in the character or use of historic properties, if any such properties exist. The area of potential effects is influenced by the scale and nature of an undertaking and may be different for different kinds of effects caused by the undertaking.*

<u>Rationale for APE Boundary</u>

At this time, we consider noise, visuals, and emissions from the proposed exploratory drilling to be the primary factors in our consideration of effects to the identified traditional cultural district in the RM-1 Unit. The APE boundary was established based on preliminary analyses of the anticipated sound dispersal, fume dispersal, and visual qualities proximate to the proposed well site.

Sound dispersal was modeled by utilizing existing research data in the Blackleaf EIS produced by the BLM in 1992 and by deriving dispersal estimates utilizing the formulas contained in *Predicting IMPACT of Noise on Recreationists* by the Equipment Development Center, USDA Forest Service, San Dimas, California, 1980. Other studies were reviewed to establish an



estimated ambient noise level within the APE (*Off-Road Vehicle Sound-Level Regulation and Their Enforcement; Potential Impacts of Aircraft Overflights of National Forest System Wildernesses; and Sound Levels of Five Motorcycles Travelling Over Forest Trails Rock Creek ORV Area*).   On the basis of this research, an estimated ambient noise level of 38 dBA was established for the analysis area.  Thirty-eight dBA correlates to measurements obtained in the Scapegoat Wilderness; this estimate is considered to be lower than the actual ambient levels in the analysis area due to ATV use and the proximate travel corridor along State Highway 2 (train and motorized traffic).  Actual ambient noise level data will be collected during the summer of 2003 by a contractor using accepted sound measuring devices.

Visual impacts were assessed by generating a visible point map in GIS using the digital elevation models developed from Montana NRIS data, and by utilizing existing visual effects analyses contained in the Fina EIS.  Two maps were generated during this analysis; one that depicts visible points within a three-mile radius of the well site and one that depicts visible points relative to the established boundary of the National Register Historic District.  Assessments of visual impacts were verified during field reconnaissance conducted by the Forest Service during the summer of 2003.

The potential impacts of air borne elements were assessed in the 1990 EIS for the Proposed Oil and Gas Drilling near Badger Creek and Hall Creek.  The extension of the APE to the northeast accounts for anticipated fume dispersal (based on prevailing winds) and exceeds the one-mile dispersal of gases described in the EIS.

The APE, as defined, will be modified if valid additional information is collected, or presented, which indicates that the proposed well drilling (and associated activities) has the potential to effect portions of identified Traditional Cultural Properties.  Additional data collection will be conducted during the summer of 2003 to validate the proposed APE.

Please review the enclosed maps and let us know if you have any information that would cause the APE boundary to be modified or know of other factors associated with the exploratory drilling actions that should be considered.   Please respond to this letter by October 1, 2003, so we can continue in move forward in completing this analysis in a timely fashion.

If you have any questions regarding this letter or the enclosed material, please contact Sandra French, Forest Archeologist, at (406) 791-7742.

Sincerely,

ROLANDO ORTEGO
Forest Supervisor

Enclosures (2)

FS 003743



Proposed Exploratory Well

Proposed Access Route

Proposed Wellsite

AREA OF POTENTIAL EFFECT (APE)

Scale:



Proposed Well APE and the Traditional Cultural District

Legend

APE
Traditional Cultural District
L&C NF Boundary

Miles
0   2.5   5   10

FS 003744

FS 003772

NHPA Sec. 106 Review Meeting for the Longwell Proposal
September 15, 2003
Stage Stop Inn, Choteau, Montana
Deb Kottel – facilitator

**In attendance for consulting parties** (see attached sheet for affiliation & further contact information):

Sandi French, Allen Rowley, Robin Strathy, Mike Beckes, Rolando Ortegon, Mike Munoz, Deena McMullen, Bill Hansen, Brace Hayden, Josef Warhank, Joyce Spoonhunter, Jeri Lawrence, John Foss, Mike Smith, Allen TalksAbout, Jay St. Goddard

**Opening prayer** – Allen TalksAbout, Blackfeet Tribal Council

**Welcome & Introductions** – L&C Forest Supervisor, Rolando Ortegon
Round table introductions

## I. Background Information/Proposal History/Traditional District/Cultural Issues:

**Robin Strathy, Forest Planner** – (Speaker's notes attached) gave an overview of the history of this proposal (formerly FINA proposal). The Forest Service is now looking at new information since the 1991 decision. The determination of a cultural district is part of the new information that must be studied and disclosed.(see background section & chronology of events in notebook and speaker's notes attached)

**Sandi French, Forest Heritage Program Manager** – (Speaker's notes attached) NPS Bulletin 38 (in notebook under regulations & guidelines) gave guidance on how to determine a Cultural District. Gave a description of the Cultural District and displayed it on a map (see notebook – TCD section). It has been defined by National Register standards and the Keeper of the National Register has determined it as eligible under criteria A and B. The District is 89,376 acres in size. The Forest Service has asked the tribe if they want to nominate this District for inclusion in the National Register. Are awaiting a written response from the Tribe. (Also see speaker's notes attached)

**Joyce Spoonhunter, Blackfeet Tribe** – comment that this is only the "beginning" of consultation. The Cultural Committee was formed last November. New members on the committee weren't interviewed originally.

## II. Consulting Parties Input, Discussion and Dialogue:

**Joyce Spoonhunter, Blackfeet Tribe** – the proposed District took out a number of significant areas. Why were some areas left out? Is this because of the current use of the cattle business in the area? This area includes an important elk calving area. This area has meaning in terms of the Blackfeet way of life. There are tribal elders who can point out areas/points of importance. The elk wintering area also has cattle grazing with cattle

FS 003773

eating the grass where elk used to feed. Bears, goats and other wildlife are moving away from the reservation also because of this grazing. The Blackfeet people feel the entire Badger Two-Medicine should be included in the Cultural District. The Tribe supports the Cultural District, but not the current boundaries. When the original interviews were done with Tribal members, not all the people were interviewed that knew this area and at that time they didn't fully understand the laws. The new committee has more knowledge. Also, the lands claim issue is not yet resolved. Their committee wants to fully research this area in support of a proposal for an entire cultural landscape property. Also the Tribe wants input before the cattle grazing permits are reissued. They have oral history telling about the importance of these areas.

**Jeri Lawrence, Blackfeet Tribe** – the Tribe has reserved rights for the whole area from the 1896 agreement, not just the area described within the Cultural District boundary. You can't separate these reserved rights and cultural importance.

**Allen TalksAbout, Blackfeet Tribe** – hunting is their survival. Very concerned about cattle grazing in the area. The use of four-wheelers disturbs the wildlife. They are beginning to see the value of fencing off areas around fresh water from cattle and other animals. Only now just learning about these issues. The Tribe still claims this land. Reserved rights need to be considered. Areas of the reservation are also important in the same way as the Cultural District. Can they receive National Register designation? Who does that?

**Sandi French, Forest Service** – Why were Cultural District boundaries drawn this way? The portion of the area which is developed and in private ownership was removed after negotiations with the Keeper's office. This was done to meet the National Register "Integrity" criteria. Also, consultation with the landowners showed that they did not support having their property included in the 'district.' At the time of the original interviews with Tribal members no specific reasons or information was given to include those areas. If we have new information, boundaries can be changed. As far as designating cultural significance to reservation lands…the Blackfeet Nation can request eligibility from the Keeper on their own. Sandi will provide the name and address of the Keeper of the National Register in the Department of the Interior.

**Joyce Spoonhunter, Blackfeet Tribe** – The ranchers are subject to section 106 review also (for their grazing) since they accept government monies. Any archeologist that goes into this area always must have a Blackfeet cultural consultant with them and needs to come back to the community and interview with an appropriate elder who has knowledge of and is associated with the area being reviewed. This hasn't happened yet. No one from the Tribe went with the archeologist at that time. Dialogue should be held Nation to Nation vs. government to government.

**Mike Munoz, Forest Service** – need to keep in mind that this consultation is for the Longwell lease proposal only.

**Allen TalksAbout, Blackfeet Tribe** – when spiritual places are written about they can be desecrated. Don't want that to happen here. This can happen by both the general public wanting to go there and commercial interests. Tribe may develop an intellectual properties code to prevent these areas from being written about, etc.

**Jeri Lawrence, Blackfeet Tribe** – why wasn't this meeting held in Browning? The Tribal public is an important part of this process. This meeting should be held with the entire Council.

**Mike Beckes, Forest Service** – under Section 106 the agency can consult with "designated representatives" that is who's at the table today. The confidentiality of all of the information given to us by the Tribe is taken very seriously. There is no access for the general public to this information. It is considered "exempt" from the Freedom of Information Act. One of the main reasons the Forest Service hasn't nominated this Cultural District for inclusion in the Register is because of the National spotlight then put on it. The decision to nominate will be left up to the Tribe.

**John Foss, Forest Service** – The formal government to government consultation process will be between the Forest Service decision maker (Forest Supervisor) and the Tribal Council when the Forest Supervisor makes his final decision.

**Jay St. Goddard, Blackfeet Tribe** – The history of past agreements with the Government is that they haven't been followed. We need to negotiate Nation to Nation. This is a big issue. The history of what has happened before is a big issue. There are still many unanswered questions. The Blackfeet have been pushed into the most unproductive lands and now the government wants something from this land too and is pushing all past agreements aside. Tribal members can't put their own cattle in that area (Badger 2-Med). The permitting process for wood gathering, a reserved right, is a hinderance. The next meeting for this process should be at the Blackfeet conference room.

**Sandi French, Forest Service** – Tribal representatives are wanted and welcome to go on surveys in the area. This has been expressed in our letters and dialogue with the Tribe. We are bound by regulation to follow the NHPA Section 106 process. All confidential information that is gathered as a result of these reviews is kept locked up. Many of the summary reports are of a more public nature. They do not disclose site-specific information.

### III.  Section 106 – Procedural Overview – Regulations:

**Mike Beckes, Forest Service** (see regulations section of notebook and process chart )

Recent amendments/regulations were mapped and graphically displayed by a group of Forest Service cultural people (copies handed out). These are the 36 CFR800 regulations issued by the Advisory Council on Historic Preservation. On the left side of the chart the

**Jeri Lawrence, Blackfeet Tribe** – How can we be working off research from 10 years ago?  The interviews are no longer valid, need to update the information before the APE is finalized.

**Deena McMullen, IPAMS** – If the Tribe changes what the Cultural District looks like (boundaries) will this process start again?  Also will grazing and oil and gas be affected by the Cultural District differently?  How would activity proceed inside a Cultural District?

**Mike Beckes, Forest Service** – Activities are not precluded within a Cultural District. However, the existence of a Cultural District becomes a major consideration in how activities are implemented and what's approved.  If the boundaries of the District are changed, the process won't start again.

**Brace Hayden, Park Service** – If new wells or additional activity is proposed, how does that fit into the Section 106 review?

**Robin Strathy, Forest Service** – Subsequent additions would be handled under a new, separate analysis and would require new consultation.  The process would start again at that point.

**Joyce Spoonhunter, Blackfeet Tribe** – from a Tribal perspective, each new action is looked at separately.

**Bill Hansen, Longwell Representative** – Sidney Longwell is sensitive to the Tribal needs and understands the frustration with the "red tape" process.  He's been going through this process for 20 years now.  There are mitigation measures built into the permit.

**Joyce Spoonhunter, Blackfeet Tribe** – Can the Forest Service give the cattle ranchers this same information also for grazing on private land?  Can stipulations be built into grazing leases?  The Tribe would like to address these issues when the grazing leases are reissued.

**Sandi French, Forest Service** – handed out copies of the stipulations/mitigations attached to the original approval from the EIS.

## IV.  Definition of the Area of Potential Effect:

**Sandi French**  (see notebook under Proposal and Effects and also Speaker's notes attached)

Need to remember that we are working through the 106 process for one particular undertaking only.  The information gathered here will be part of the cultural review; the results of the cultural review are entered into the Supplemental Information Report (SIR).

FS 003776

The SIR determines whether or not a Supplemental Environmental Impact Statement is required.

The proposal map in the notebook is from the 1985 EA. This is the same project that was carried forward into the 1990/1991 EIS. The proposal hasn't changed. Mitigation included in the EIS was designed for a variety of resource issues, including cultural resources. The Blackfeet Reserved Rights were considered at this time.

The roadway, well pad and a buffer 200' wide was originally reviewed for cultural resources. This was cleared as "no potential effect" at that time. The section 106 process has been reopened now for further review in light of the new Badger Two-Medicine Blackfoot Traditional Cultural District. The Cultural District was designated as significant because of the continued cultural use and the spirits residing in the area. The current proposal is not within the District, but is nearby. So close that the Forest Service felt we must reopen the 106 process.

This past summer the Forest Service completed field reconnaissance in the vicinity of the proposal. The Forest Archeologist previously involved (Richard Newton) was detailed to assist the Forest in the 106 process. His research has identified three main ways that the cultural district might be affected by the nearby project. These elements are visual, atmospheric and audible. These potential effects were initially modeled as to where you could see the well from (not accounting for vegetative screening). The noise produced and emissions were researched. All have been aggregated into one APE and are displayed on the map in the notebook.

The Forest Service has entered into a contract to measure what noise currently exists in the area. A Seattle based company got the contract. The results of this study will factor into the APE. The FS is considering an emissions modeling study.

Individuals involved during the summer reconnaissance did lots of looking and listening. Areas both within and outside of the Cultural District were checked. The initial APE was sent to consulting parties. The State Historic Preservation Office (SHPO) commented. The SHPO had no information to discount the APE, but deferred to the Blackfeet Tribe to provide any input.

**Joyce Spoonhunter, Blackfeet Tribe** – The original map of the Cultural District that was sent to the Tribe had no break.

**Sandi French, Forest Service** – This break was because the District went through a "developed" area and thus didn't meet the integrity standard. The Forest Service met with the private landowners in this area and they were not supportive of their lands being included in the Cultural District. Because of this, that portion was dropped in negotiations with the Keeper's office.

**Mike Munoz, Forest Service** – How does the new information being gathered dovetail with the Supplemental Information Report?

FS 003777

**Sandi/Robin, Forest Service -** The new information will help us define the APE to be analyzed. Also the new information will be fed into the cultural resource portion of the environmental review.

The cultural issue is only one of many issues being looked at in the environmental review. Because of the length of time since the original decision was made we're required to look at new information or changed conditions.

**Brace Hayden, Park Service** – Does the SIR have scoping?

**Robin Strathy, Forest Service** – No, there is only an internal review required. If new information is found during the preparation of the SIR, then we'll be presenting that information to the public.

**Joyce Spoonhunter, Blackfeet Tribe** – The Tribe can't comment either way on the proposal until they do their review. The Forest Service or whoever is developing the project would need to incur the cost of them completing this study. There is a need to protect what's left of the Blackfeet way and Blackfeet ownership. We need to consider the history of the Tribe. At one time the Tribe wasn't allowed to go off the reservation onto these lands. We are dealing with traditional Blackfeet laws as well as Blackfeet laws. The tribe will need to completely research the grazing issues before commenting.

**Mike Smith, National Trust for Historic Preservation** – why was the whole road not included in the APE?

**Sandi French, Forest Service** – the portion of road that currently exists is not included. The portion that is proposed for new construction was included.

**Joyce Spoonhunter, Blackfeet Tribe** – need to remember that the Tribal Committee voted not to extend any roads in the Travel Plan meeting.

**Sandi French, Forest Service** – that is understood. Because this was a previously existing proposal which included a road, we are required to review it. It is a separate proposal from travel planning.

**Robin Strathy, Forest Service** – under the current decision, the road wasn't to be a public road, it was only to be open for use by the company and to be reclaimed later.

**Joyce Spoonhunter, Blackfeet Tribe** – once a road is put in, it will be used by snowmobilers from the West side to violate an area closed to motorized use.

**Mike Beckes, Forest Service** – this proposed road corridor will be resurveyed. The road is gated where it crosses private land and the Company will have a security person on site during drilling to prevent violations.

**Jeri Lawrence, Blackfeet Tribe** – the APE is not accurately reflected. The past research is not accurate. Only 45 Tribal members were interviewed at that time. More people should have been interviewed. In addition, the wrong people were interviewed. For these reasons the Tribe doesn't consider the research valid. This legal opinion was given to the Tribal Council and the Council sent a letter to the Forest Service stating this.

**Joyce Spoonhunter, Blackfeet Tribe** – the Tribal standing didn't change. The Cultural District should be increased. There is a boundary marker on a tree on the Flathead Forest near Elk Mountain from 1906 showing a boundary of the Blackfeet Reservation. There are still people on the reservation who can take you there and show this to you. This boundary issue is still unresolved.

**Allen TalksAbout, Blackfeet Tribe** – there will be more new information about the South Fork Two Medicine (specifically the area that was removed from the Traditional Cultural District).

## V.  Wrapup/Input From the Public & Others

**Input from Public and Others** – None.

**Joyce Spoonhunter, Blackfeet Tribe** – We now have the proper people on the Council to deal with this matter. We may not have the needed information, but we will provide it to the Forest Service when we get it.

**Rolando Ortegon, L&C Forest Supervisor** – Thanks all parties for their participation. All consulting parties have been working on this project for a very long time. Today's meeting was meant to focus on this particular project.

The Consulting Parties have now been informed and dialogue has taken place regarding our initial internal findings on Historic and Cultural findings and the Area of Potential Effect (APE) for the Longwell Proposal. It is now the burden of the Consulting Parties to respond if they wish to bring:

1. substantive comments to our attention.
2. supporting data of those comments.

This information will need to be provided to the Forest Service within 45 days, by November 1. Anyone can submit written comments or additional information.

Everyone at the meeting today will receive a summary of the meeting. All should review the summary and add clarification or put the information in their own words.

**Jay St. Goddard – Tribal Chair** – Thank you for the invitation to this meeting and thank you to all for being there. The process shouldn't have gotten this far. There are still many years of unsettled issues in that territory. He is hopeful that the Forest Service

FS 003779

will look at their data as strongly as they have looked at ours.  Please mail meeting summary to the Chairman's Office.

## VI.  Clarifications

**APE** – is the area where effects from development of a project could impact the Cultural District.  The area drawn on the map is preliminary and could change if new information is provided.

**Cultural District** – was found eligible for inclusion in the National Register of Historic Places by the "Keeper".  The boundaries can be adjusted if new supporting information can be provided.   Requires sound historic information to change.  If this information is provided, the Forest Service would take the request back to the "Keeper".  Regarding the gap along the river – we can't nominate someone's private property without their agreement.

FS 003780

## ATTACHMENT 1

Sign In Sheet/Contact Information for Longwell Section 106 Consultation meeting:

| Name | Representing | Phone/E-mail |
| --- | --- | --- |
| John Foss | USFS, Regional Office | (406)329-3348 |
| Josef Warhank | SHPO | (406)444-0388<br>jwarhand@state.mt.gov |
| Mike Munoz | USFS, Rocky Mtn. RD | (406)466-5341 |
| Mike Beckes | USFS, Regional Office | (406)329-3654 |
| Robin Strathy | USFS, L&C Forest SO | (406)791-7726 |
| Allen Rowley | USFS, L&C Forest SO | (406)791-7719] |
| Rolando Ortegon | USFS, L&C Forest SO | (406)791-7720 |
| Bill Hansen | Sidney Longwell | (406)452-6783<br>wbhansen@mcn.net |
| Deena McMullen | IPAMS | (303)623-0987<br>dmcmullen@ipams.org |
| Randall Weeks | Davis, Gibson & Stobbs | (303)892-7358<br>randall.weeks@dgslaw.com |
| Sonja Lee | Great Falls Tribune | (406)791-1471<br>tribcity@sofast.net |
| Brace Hayden | Glacier National Park | (406)888-7913<br>brace_hayden@nps.gov |
| Wendy C. Maples | USFS, Rocky Mtn. RD | (406)466-5341 |
| Mike Smith | National Trust for Historic Preservation | (202)588-6031<br>mike_smith@nthp.org |
| Dan Carney | Blackfeet Fish & Game | (406)338-7207<br>dcarney@3rivers.net |
| Ron Hecker | USFS, Rocky Mtn. RD | (406)466-5341 |

FS 003781

| Mark Good | Montana Wilderness Assn. | (406)453-9434 mwacent@wildmontana.org |
| Jay St. Goddard | Blackfeet Tribe | (406)338-7276 |
| William A. TalksAbout | Blackfeet Tribe | (406)338-7531 |
| Jeri Lawrence | Blackfeet Tribe | (406)338-7522 notearsjl@hotmail.com |
| Joyce Spoonhunter | Committee Blackfeet | (406)338-5802 tl_spoon@yahooo |
| Sandra French | USFS L&C Forest SO | (406) 791-7742 |

FS 003782

ATTACHMENT 2

**Hall Creek Exploratory Proposal – Background (Robin Strathy – Speaker's notes)**

**Main points in history**

> ➢ Fina lease issued 6/1/82, prior to development of the Lewis and Clark Forest Plan (released June 1986).

> ➢ The Forest conducted an environmental assessment and recommended the BLM to approve the drilling proposal in 1985. The BLM approved the drilling application. Ten appeals were filed and the decision was remanded to the agencies for additional analysis. Although points of appeal and remand were resolved by the agencies, in the meantime, Chevron had submitted a drilling application in the same geographic area. The agencies decided to combine the analysis of both proposals into an EIS.

> ➢ The analysis of both the Chevron and Fina proposals included addressing the procedural requirements of Section 106 of the NHPA. Mitigation measures designed to minimize noise and visual were specified. A Working Group was formed by the Blackfeet Cultural Committee to discuss items of significance to Blackfeet traditionalists with representatives from the L&C and Flathead Forests. The Lewis and Clark Forest completed a social analysis in which interviews with Blackfeet traditionalists and others were conducted to provide information on traditional uses in the Badger-Two Medicine area and issues/concerns associated with the drilling proposal. At the time of the decision on the proposal, no sites or properties considered eligible for listing on the National Register of Historic Places had been identified.

> ➢ In February 1991, a decision was made to approve a single exploratory well at the Fina (Hall Creek) location. The ROD states that a decision on the Chevron proposal would not be issued until all necessary evaluations and consultations under Section 106 and the AIRFA were completed.

> ➢ 51 appeals of the decision were filed. The decision was upheld by the Forest Service Regional Forester and the Asst. Secretary of Interior.

> ➢ An ethnographic overview of the Badger-Two Medicine area was conducted by Historical Research Associates in November 1991. This overview was completed in 1993 and identified potential traditional cultural sites that could be defined by a district.

> ➢ In April of 1993, the National Wildlife Federation and 6 other groups filed a complaint on the Hall Creek approval in U.S. District Court. This case is still pending.

FS 003783

➢ Since the decision to approve the Fina (Hall Creek) location, a number of moratoriums on drilling at the site, or other legislative actions resulting in staying the drilling, were imposed.  Currently, the terms of the lease have been suspended pending evaluation of traditional cultural concerns and the effects of the drilling proposal on the traditional cultural district.

➢ In July of 2000, Fina transferred the lease back to Sidney Longwell.  Sidney expressed an interest in pursuing drilling at the Hall Creek location.

➢ Meanwhile, since about 1998, the Forest had been preparing the record identifying a potentially eligible property for review and concurrence by the Keeper of the National Register.  The Keeper issued a determination of eligibility of the TCD in January 2002.

➢ Currently, the Forest is conducting a review of new information or changed circumstances since approval of the drilling to determine if this information has a bearing on the 1991 decision.  Parallel to that process is this review of possible effects of the action to the TCD.

FS 003784

- ◆ Negotiations with the Keeper continued through 2001...with a final Determination rendering the 89,376 acre Badger-Two Medicine Blackfoot Traditional Cultural District "eligible" to the National Register of Historic Places on January 31, 2002.

- ◆ In February, the Agency met with the Tribal Council to present the 'determination of eligibility.' In subsequent meetings with members of the Council, they expressed a desire to formally nominate the District to the National Register of Historic Places. The Agency will move forward with the nomination with a letter of support or resolution from the Tribe. In the meantime, as outlined in the regulations, the Agency treats a property (or in this case a district) that is eligible to the 'register,' no differently than if it were 'listed.'

- ◆ Meanwhile, in 2000 and early 2001, there were two noteworthy developments. As Robin mentioned, the Fina Lease was transferred to Mr. Longwell and he expressed an interest in moving forward with the permit to drill; and, the final regulations implementing Section 106 Review according to the 1992 NHPA Amendments were published*. It is these two things that bring us all to the table today.

\* Mike Beckes, our Regional Heritage Program Manager will discuss these in greater detail after the Break

\*\* To explain further: The Traditional District is a discontiguous district, meaning that there are one or more parcels separate from the rest. This is not entirely uncommon. In this case, the original recommendation by the contractor (HRA) connected the two parts by way of a thin strip along the South Fork of the Two-Medicine river. The Keeper pointed out, during review, that integrity had been compromised in this area, due to development of private lands. Consultation with the private landowners showed that they were not supportive of the National Register status...something that could complicate future 'listing' of the District. At this point in the definition of the District, Gloria went to the Tribe...and this alteration (e.g. dropping of the segment of S. Fk. Two-Med, through private) was supported. A large addition on the west side of the Traditional District, in the vicinity of Lee Creek, was later agreed upon for inclusion by the Keeper and the Agency.

FS 003785

**ATTACHMENT 4**

**The Area of Potential Effect (APE)**
**Longwell Consultation – Speaker's Notes – Sandra French**

♦ For those of you not previously involved with NHPA Section 106 review, the "area of potential effect" or A.P.E. may have at first, seemed a strange term when you received the consultation letter a couple of months ago (refer to notebook for copy).

♦ The well-site and road that were permitted in the 1985 EA, and again in the 1991 EIS/ROD, (shown on map in notebook), continue to be the 'proposal' or 'undertaking' as described under NHPA Section 106.   The permitted action consists of a "single exploratory (wildcat) well.  The ROD specifically states that any subsequent development would undergo additional environmental review (Copies on table for reference).

♦ The Area of Potential Effect under previous Section 106 Reviews was the roadway and the well pad with a buffer (200' wide).  This area was cleared through the process, with SHPO agreement.  No significant archaeological or historic properties were found.  (Recall mention of SHPO agreement this a.m. for cultural properties to be treated as 'discovered during implementation.)

♦ Now that the significant (e.g. eligible) Traditional Cultural District has been defined, we have re-opened the Section 106 Process to review this property in light of the original (but not-yet-implemented) proposal.  (See map in notebook)

♦ The Badger-Two Medicine Blackfoot Traditional Cultural District is eligible to the National Register of Historic Places under Criterion A and B.

♦ The District is near the proposal (1-2 miles)…but does not overlap with the proposed ground disturbance or physical movement of supplies or machinery.   To Cultural Resource Managers, this is "too close for comfort."  Given the nature of the property, a more thorough assessment of effect is needed.

♦ In order to continue with this assessment, the Forest Service detailed former Forest Archaeologist Richard Newton to assist in the Section 106 review.  Richard worked with the Forest to review documentary evidence, initiate the round-up of consulting parties, answer Congressional Inquiries, conduct research and reconnaissance, outline the initial "Area of Potential Effect" and begin the studies to refine the APE (Reference map in notebook).

♦ As mentioned in the letter of 8/15/03, our research has identified three (3) main ways that a Traditional Cultural District might be affected by nearby well-drilling.  These are outlined in the regulations at 36CFR800.5(2)(v) as the "introduction of visual, atmospheric or audible elements that (could) diminish the integrity of the property's significant historic features.  In this case, the significant features would include those

outlined under Criterion A: as continued traditional use and Criterion B: the presence of spirits.

◆ We asked Richard to draw and initial "Area of Potential Effect" for the proposal. In doing this, he reviewed data in the EIS on visuals, noise and emissions. Current GIS technology (computer modeling) was used to provide a preliminary viewshed, that is…where could the well be seen from. This preliminary model was based on topography/landform and 100' elevation at well. It did not account for vegetative screening of timber.

◆ Richard researched and calculated what might be the noise produced and emissions dispersed from the well, based on local conditions and topography. His rationale is summarized in the APE letter. The resulting overlay of potential impacts was aggregated into the APE as depicted on the map.

◆ Since site-specific research for ambient (existing) noise is not available, the Agency has contracted for a professional "noise study" relative to this project. This study will produce a model and report, specific to the current proposal.

◆ Too, because the proposal is somewhat dated, we anticipate that drilling technology has changed and emissions are better understood. We are seeking to update our data for the actual machinery that might be used and duration of activity. This is where representatives from IPAMS or Mr. Longwell can provide information. The Forest Service is hoping to contract for a modelled and report on the emissions (particulate, odors or any safety concerns).

◆ This summer, Forest Service heritage program managers conducted reconnaissance survey on the Two Medicine Ridge and in the South Fork Two Medicine Canyon. (3D Topographic map). The Two Medicine Ridge forms the primary topographic feature that separates the proposal from the Cultural District. We looked from high peaks on the ridge toward the proposed well location to see if it was visible. We looked for 'evidence' of cultural use. We listened for the regularly scheduled train that passes through the Highway 2 corridor north of the proposed well. In some places we put part of the group in the District, and part outside, for these observations (noise, visuals, wind direction). All of this information factored into the initial A.P.E.

◆ According to the regulations, the A.P.E. is defined by the Agency in consultation with S.H.P.O. The SHPO has responded to our outline with a letter stating that they have "no information to discount…unless the Blackfeet have some."

◆ As mentioned in the meeting invitation letter (reference front of notebook) we are seeking perspectives on anticipated effects and asking you to bring forward any new, pertinent information regarding the proposal. We do not anticipate a final APE until results of the professional 'modeling' contracts and are factored in (probably January at least).

FS 003787

♦ As consulting parties, you will be notified when we move forward with the A.P.E. and assess effects.  (Reference Regs. 36CFR800.4 and 26CFR800.5).

FS 003802

 **Sandra French**
09/29/2003 11:47 AM

To: Rolando Ortegon/R1/USDAFS@FSNOTES, Allen Rowley/R1/USDAFS@FSNOTES, Mike Beckes/R1/USDAFS@FSNOTES, Richard E Newton/R3/USDAFS@FSNOTES, Michael A Munoz/R1/USDAFS@FSNOTES
cc: (bcc: Sandra French/R1/USDAFS)
Subject: Traditional District Boundary definition - Some Background

FYI and some background on the Badger-Two Medicine Traditional Cultural District.   The following information is from the Determination of Eligibility correspondence file. I've highlighted references to Tribal input, and provided some context as to each of the letters.  I can provide the letters for your review, if you'd like.

On May 21, 1997, the Forest Service submitted the first Traditional District documentation to the Keeper of the National Register.  The Agency requested a determination of eligibility.'  The cover letter from then-Forest Supervisor, Gloria Flora reads, in part:

...*Please note that the District boundary described in the enclosed documentation represents the Forest Service position and is based on accumulated field work and data from consultants. Several groups, including the Pikuni Traditionalists (also known as the Brave Dog Society), oppose the Forest Service boundary designation. Their belief is that the entire Rocky Mountains, including the Badger-Two Medicine area, are sacred and should be managed for traditional cultural values.

The position of the Pikuni Traditionalists was supported in a 1993 letter to the Forest Service where the Tribal Council of the Blackfeet Tribe stated that the entire RM-1 Management Unit (which encompasses the Badger-Two Medicine Area) should be designated as a Traditional Cultural District. I have continually consulted with the Blackfeet Tribal Government regarding the management of the Badger-Two Medicine Area and during a meeting between the Tribal Council, the Honorary Council (Elders), and myself in February 1997 they gave their support for the current boundary proposal...*

After receiving the Keeper's response and questions, the Forest Supervisor sent a letter on March 4, 1998, proposing modification of the district to drop the private lands along the South Fork Two Medicine River. In tribal support of that change she states:

...*To expedite the review process, I have discussed the proposed modifications with the Blackfeet Tribal Council and received their support for the proposed changes on February 23, 1998.  If you would like more information regarding this meeting, please call me at (406-791-7700).

My staff is currently modifying the National Register forms to reflect the proposed changes...*

On January 31, 2000, the new Forest Supervisor, Rick Prausa forwarded the amended National Register forms to the Keeper's office.   On April 5, 2001, the same documentation was re-mailed, as it was discovered that not all of the 2000 documentation reached the Keeper's office.

The Keeper responded with additional questions, including the appropriateness of including the discontiguous section of District along the South Fork Two Medicine River.   The Agency reviewed the files and responded to the Keeper's office with an amended record.   The cover letter reads in part:

*...Consultation with the Blackfeet Tribe prior to the 2000 DOE Amendment verified that a discontiguous unit in this part of the District was appropriate...

...we considered your view regarding inclusion of the area on the western edge of the District, between Lee Creek and Sidney Creek.... Though not specifically indentified in the oral histories or other information, the area is within the viewshed of...an important vision questing property within the Cultural District...in remote country...contain(ing) resources and characteristics identified as important to traditional use....including it would be consistent with the treatment of similar areas on the south end of the District....*

The final Determination of Eligibility, based on this information, was signed as "eligible to the National Register" by the Keeper on January 31, 2002.

FS 003803

----->----->----->----->----->----->----->

Sandra French
Forest Archaeologist
Lewis and Clark National Forest

Phone:  406-791-7742  FAX:  406-731-5302
sandrafrench@fs.fed.us
<-----<-----<-----<-----<-----<-----<-----<



FS 004000

## BADGER
## TWO-MEDICINE

Last Updated 12/02/03

- Indian Reservation Lands
- National Forest Lands
- National Park Service Lands
- Federal Minerals - Leased
- Federal Minerals - Unleased
- P&A – No Shows
- Proposed Wells
- Badger Creek UA
- Proposed Access Road
- Blackfeet Cultural District

LOCATION MAP - MONTANA

The Federal minerals shown here are only those leased and unleased lands associated with the Badger Two-Medicine Area. No warranty is made by the BLM for the use of the data for purposes not intended by the BLM.



FS 00402 7/41

## Sustainable Obtainable Solutions

406-495-9661                    P.O. Box 1424
406-495-9662 (fax)              Helena, MT  59624

## URGENT

This is a fax for  **John Murray & Jeri Lawrence**

Whose fax number is      **406-338-7530**

Gloria Flora sent you this on...

**Thursday, January 08, 2004  11:00AM**

There should be **3** pages, including this cover sheet.

Hello John and Jeri,

As Jeanne Whiteing has told you, I'm sending you this letter to document my recollections of the final meeting I had with the Tribal Business Council regarding going ahead with the request for eligibility determination for the Traditional Cultural District in the Badger-Two Medicine.

I wanted to be sure that it was clearly understood that the Council agreeing to go ahead with the determination did not mean that they thought the boundaries were accurate and complete as submitted.  They clearly didn't.

If I can be of further help, let me know.  I will be on the road shortly after you receive this and out of my office until Monday, but I can be reached at any time on my cell phone, 406-459-3486.

I look forward to working with you in the future.

*A non-profit organization dedicated to sustaining public lands and the communities that depend on them.*

FROM :                                FAX NO. :                      Jan. 08 2004 12:05PM  P2
                                                                                FS 004028

## Sustainable Obtainable Solutions

406-495-9661                P.O. Box 1424
406-495-9662 (fax)          Helena, MT  59624

January 8, 2004

Mr. Jay St. Goddard
Blackfeet Tribal Business Chairman
P.O. Box 850
Browning, MT   59417

Dear Chairman St. Goddard,

I recently spoke with Attorney Jeanne Whiteing about the history of the Badger-Two Medicine proposed Traditional Cultural District boundaries.  If you recall, I served as the Forest Supervisor on the Lewis and Clark National Forest from June of 1995 to June of 1998.  I participated in several discussions with various members of the Blackfeet Nation and the Tribal Business Council on this issue.

The proposal to study the potential for designation of a Traditional Cultural District had its roots in the Forest Service failure to adequately analyze the cultural significance of the Badger-Two Medicine for the Environmental Impact Statement on the proposed Fina and Chevron exploratory drilling proposals in 1992.  The Forest Service contracted with an anthropology team to conduct interviews and field investigation to gather data and document the cultural importance of the area to the Blackfeet.  The team came up with significant data and the resultant information was organized into a proposal for a determination of eligibility for the designation of parts of the Badger-Two Medicine as a Traditional Cultural District.

I wanted to share with you my recollections from the final meeting in February of 1997 between the Tribal Business Council, chaired by Chief Earl Old Person, and a group of Elders.  Chief Old Person provided the translation for the Elders as we discussed the rationale for the boundaries.  There were no formal notes taken at this meeting.

The purpose of the meeting was to gain concurrence from the Blackfeet Nation to proceed with the submission of the eligibility determination request to the Keeper of the National Register of Historic Places.

I distinctly remember that the Council in general and the Elders in particular were not comfortable with the notion of a convoluted boundary that did not include the entirety of the Badger-Two Medicine.  From my limited cultural knowledge, I concurred that somewhat arbitrary boundaries was obviously an antithesis to the cultural concept of all lands being sacred; one cannot draw a line on the ground and say "This side is sacred, but that side is not."

I shared my understanding of how the boundaries were developed.  They were based on interviews and field reviews looking for indicators of culturally-based historical uses.  Those indicators were mapped and grouped.  If there were large gaps or areas with few known indicators, that area was not included inside the boundary.  I stressed that this was not

*A non-profit organization dedicated to sustaining public lands and the communities that depend on them.*
*100% recycled paper*

necessarily fully accurate, but was the best that the researchers could develop based on the knowledge that was shared with them.

The Elders pointed out that not all information was shared, especially that of a spiritual nature, and that in many cases it should not be shared. I concurred.

I stated that this process, based on white society's interpretation of native culture, was essentially a bureaucratic method of identifying culturally significant lands. But this was a way for the Blackfeet to have a higher degree of legally-supported control over activities in the Badger-Two Medicine. I suggested that, in the context of the Blackfeet's continuing concern that the Badger-Two Medicine was part of the ceded strip and did not legally belong to the Forest Service, having a greater legal foothold prior to proving that ownership was better than status quo.

We did discuss that there was a second decision point in the future. If there was a positive determination, the Blackfeet Council could decide whether or not to proceed with the actual listing. I had assumed at the time that objections could be raised and more information brought to light that could affect the boundaries or process. I do not recall whether I stated that aloud.

We worked together for several hours going over details of the proposal. The Council and the Elders concluded that indeed some recognition, even if it was incomplete and inaccurate was better than rejecting the process out of hand.

Chief Earl Old Person's closing statement to me is engraved in my memory, for the power that it bestowed and trust that it implied. When I asked his final decision, he said, "Do what you think is in the best interest of the Blackfeet Nation."

I believed that it was best to proceed with the determination of eligibility based on the boundaries that the cultural resource specialists had suggested that to the best of their knowledge covered documentable traditional sites. I fully understood that the Blackfeet Council and Elders believed the whole area should be included (albeit willing to exclude private lands) but were concurring because this would begin the formal recognition process of the significance and potentially the ownership of this very special land.

If you have any questions, please feel free to contact me.

Sincerely,

Gloria E. Flora
Executive Director

*A non-profit organization dedicated to sustaining public lands and the communities that depend on them.*
*100% recycled paper*

FS 004066



| United States Department of Agriculture | Forest Service | Lewis and Clark National Forest | 1101 15th Street North P.O. Box 869 Great Falls, MT 59403-0869 406 791-7700 FAX 406 731-5302 |

File Code: 2360
Date: February 6, 2004

Dear Consulting Party:

This letter is to provide you with an update on the Longwell drilling proposal in Hall Creek, located in the Badger Two Medicine. Under the NHPA Section 106, the Forest Service has done a preliminary review of the information requested of all parties on September 15, 2003 and subsequent correspondence. The primary items under consideration include the eligible Traditional Cultural District (TCD), and the Area of Potential Effect (APE) associated with the proposed Longwell exploratory well.

The additional input received was deemed substantive and relative to the issues at hand. Supplementary evidence indicated that the National Forest lands north of the eligible TCD may be the subject of traditional cultural use sufficient enough to warrant further evaluation. Before any assessment of effects can commence, issues associated with the TCD and APE must be finalized. Any modifications to the TCD must be judged against the National Register of Historic Places criterion and associated documentation must meet the Secretary of Interior's Standards. This procedure may necessitate ethnographic research (e.g. oral histories and testimony of Blackfeet Elders, Traditionalists), further in-depth review of newly highlighted documentary sources, and possible associated archaeological survey.

The target of the investigation will be National Forest lands on the north end of the currently identified TCD, in keeping with the site-specific Section 106 review for the Longwell proposal. In this manner, our focus will be to address the question as to whether or not significant historic properties exist within the APE for the Longwell proposal. The study will be tailored to provide this information in the most expeditious manner, respecting Tribal culture and the rights of the Leaseholder.

I will be suspending the Section 106 consultation process while we work with the Blackfeet Tribe on these evaluations. It is anticipated that this follow-up work will take us into next calendar year. This time takes into account the needs to acquire funding, prepare contract estimates/award, field season and follow tribal protocols for gathering this data.



Caring for the Land and Serving People

Printed on Recycled Paper

FS 004067

Once completed, findings will be presented to the Keeper of the National Register for their determination. This office will notify the consulting parties when the time is ready to resume the NHPA Section 106 review process. Thank you for your participation as a consulting party.

Sincerely,

ROLANDO ORTEGON
Forest Supervisor

cc: D1, Blackfeet Culture Director, ACHP

FS 004217



| United States Department of Agriculture | Forest Service | Lewis and Clark National Forest | 1101 15th Street North P.O. Box 869 Great Falls, MT 59403-0869 406 791-7700 FAX 406 731-5302 |

**File Code:** 2360
**Date:** August 5, 2004

Dear Consulting and Interested Parties:

You are receiving this letter because you have provided input under the National Historic Preservation Act Section 106 process for the Longwell drilling proposal in Hall Creek.

As stated in the Forest Supervisor's letter of February this year, the Agency suspended active consultation toward finalizing the area of potential effect and the assessment of potential effects for this project, to pursue further investigation of the boundaries of the Traditional Cultural District (TCD). This step is necessary to determine whether or not the TCD overlaps with the proposal, and which level of effect is appropriate for discussion, when consultation resumes. The additional investigation, also known as the "identification of properties" under Section 106, is the result of information brought forward by the Blackfeet Tribe and others earlier this year.

There have been a number of developments since the February Section 106 update, and I thought it timely to provide this information for the interested and consulting parties:

- The Forest Service has secured funding to complete the additional investigation. Ethnographic and archaeological research contracts have been let. The Army Corps of Engineers (ACOE) is managing the ethnographic research project; the Forest Service is handling the archaeology inventory.
- Science Applications International Corporation (SAIC) is under contract as the Principal investigating firm for the ethnography work. SAIC has secured Dr. Maria Zadeno of the University of Arizona as the professional ethnographer. The Blackfeet Tribe, through contract with the Blackfeet Community College, is being hired to select and facilitate the participation of the Blackfeet Elders, provide access to Tribal archives, and to work with Dr. Zadeno in the research.
- The archaeology inventory is a sample survey within the initial area of potential effect to determine if site types and patterns identified in recent Glacier Park surveys exist in this part of the Badger-Two Medicine area. The contractor for this work is currently being selected.

We expect a final product from this research by early next summer and, depending on the results, will move forward with the appropriate step(s) of Section 106 review.



**Caring for the Land and Serving People**

Printed on Recycled Paper

Consulting and Interested Parties                                      FS 00422

There have been some developments in consulting party positions that are noteworthy for future contacts:

- I am the new Lewis and Clark National Forest Supervisor.   My name is Leslie W. Thompson. Please call me 'Spike.'
- Mr. Steven DelSordo is the new Department of Agriculture liaison to the Advisory Council on Historic Preservation (ACHP).  All agriculture agencies; including the Forest Service, now consult with the ACHP directly through Mr DelSordo at ACHP headquarters in Washington, DC.
- The Blackfeet Tribe has designated a Tribal Historic Preservation Officer and is actively seeking *formal* THPO status for their Nation.  John Murray is the THPO.  He has been assigned to this project.

The Blackfeet Tribe has recently elected three new Council members, a new Chairman and Vice Chair.  The new Chairman is Allen Talks About; the Vice Chairman is Pat Thomas.  (Pat is also a new Council member.)

Perhaps your group or designated contact has changed as well.  We'll update the records as we receive new information from you.  Thank you for your participation.

Sincerely,

*Lesley W. Thompson*

LESLEY W. THOMPSON
Forest Supervisor

FS 004219

Allen Talks About, Chairman
Blackfeet Business Council
Box 850
Browning, MT  59417

Montana Preservation Alliance
516 North Park Street, Suite A
Helena, MT  59601

Keeper of the National Register of
Historic Places, Carol Shull
1849 C St NW Room NC 400
Washington, DC  20240

Superintendent
Glacier National Park
West Glacier, MT  59936

Gloria Flora
6189 Birdseye Road
Helena, MT  59601

Mike Smith
Natl. Trust for Historic Preservation
1785 Massachusetts Ave NW
Washington, DC  20036

Senator Conrad Burns
Attn: Larry Anderson
Box 7729
Missoula, MT  59807

Sidney Longwell
Longwell Investments
821 East Lakeview Drive
Baton Rouge, LA  70810

Jay Vest
Department of American Indian
Studies
Box 1510
Pembroke, NC 28372-1510

Deena McMullen
Independent Petroleum Association
620 Denver Club Building
518 17th Street
Denver, CO  87202-4167

Montana Wilderness Association
Rocky Mountain Front Office
Box 37
Choteau, MT  59422

Mark Baumler, PhD
Montana State Historic Presv Officer
Box 201202
Helena, MT  59620-1202

Sally Thompson, Ph.D
Anthropological Consultant
3742 Rattlesnake Drive
Missoula, MT  59802

ACHP
Attn: Alan Stanfill
12136 W Bayaud Ave Rm 330
Lakewood, CO  80228

Duard Walker, Jr. Ph.D
Walker Research Group
Box 4147
Boulder, CO  80306-4147

Others, BLM (Great Falls), RMRD

Barney Reeves, Ph.D.
University of Calgary
Calgary, Alberta, Canada T2E 7L4

Tribal Historic Preservation Officer,
John Murray
Box 850
Browning, MT  59417

Badger-Two Medicine Committee
c/o Keith Tatsey
Box 850
Browning, MT  59417

National Park Conservation Assoc
Attn:  Steven Thompson
Box 4485
Whitefish, MT  59937

US Representative Richard Baker
House of Representatives
341 Cannon House Office Bldg
Washington, DC  20515-1806

Edited August 2004

08/10/2004 12:21 FAX 1 406 338 7206     BLKT PLANNING AND DEV     ☑001

FS 004225



# BLACKFEET NATION
## PLANNING & DEVELOPMENT DEPARTMENT
### P.O. Box 2809
### Quarters 108 N. Government Square
### Browning, MT 59417

### Fax Transmittal Form

To:  Name: _Sandra French_     From: _John Murray_

Organization/Dept.: _LCWF_     Name:

Phone Number:                   Phone: 406-338-7181

Fax Number:                     Fax: 406-338-7206

                                Email:

☑ Urgent                        Date Sent: _8 10 04_
☐ For Review                    Time Sent: _12:15 PM_
☐ Please Comment                No. of pages, including cover page:
☐ Please Reply                  _4_

Message: _Here it is..._

FS 004226

# BLACKFEET NATION
## PLANNING & DEVELOPMENT DEPARTMENT
### P.O. Box 2809
### Quarters 108 N. Government Square
### Browning, MT 59417

## Fax Transmittal Form

To:

Name: David Rice

Organization/Dept.: Army Corps...

Phone Number: 206 764 3654

Fax Number: 206 764.4470

From:

Name: John Murray

Phone: 406-338-7181

Fax: 406-338-7206

Email:

☒ Urgent
☐ For Review
☐ Please Comment
☐ Please Reply

Date Sent: 8-10-04
Time Sent: 12:10 PM
No. of pages, including cover page:
3

Message:

Dr. Rice:

The Resolution (attached) was officially numbered a short while ago.

In a conversation with one of the elders, I was told that plants are gathered on a seasonal basis. One in particular dries up early and the stalk could blow away.

I am very concerned that we may be repeating what happened to the Griezer & Griezer Report. In fact, one of the weaknesses to the report we questioned was the short amount of time allowed to do the study.

I think some discussion needs to take place regarding an extension to the study at BCC.

cc: Sandra French, LCNF,     406 731 5302 (FAX)
    Jeanne Whiting, W&S       303 444 2865 (FAX)

08/10/2004 12:21 FAX 1 406 338 7206     BLKT PLANNING AND DEV                    ☑003

FS 004227

# BLACKFEET NATION
### P.O. Box 850 ~ Browning, Montana 59417
### (406) 338-7521 ~ Fax (406) 338-7530

**EXECUTIVE COMMITTEE**                                    **BLACKFEET TRIBAL BUSINESS COUNCIL**

William A. Talks About, Chairman                                       William A. Talks About
Pat Thomas – Vice Chairman                                               James St. Goddard
Fred Guardipee – Secretary                                                      Pat Thomas
Joe A. Gervais - Treasurer                                                     Earl Old Person
                                                                                      Fred Guardipee
                                                                                      Betty N. Cooper
                                                                                       Hugh Monroe
                                                                                         Pat Schildt
                                                                                      Jay St. Goddard


## RESOLUTION

No.  #206-2004

**WHEREAS,**   The Blackfeet Tribal Business Council is the duly constituted governing body
within the exterior boundaries of the Blackfeet Reservation; and

**WHEREAS,**   The Blackfeet Tribal Business Council has been organized to represent, develop
and advance the views, interests, education and resources of the Blackfeet Indian
Reservation; and

**WHEREAS,**   the Blackfeet Tribal Business Council is charged with the responsibility of
protecting and preserving the resources of the Blackfeet Tribe; and

**WHEREAS,**   The Blackfeet Tribe in opposing the oil and gas well in the Lewis and Clark
National Forest originally known as the Fina well and now referred to as the
Longwell well; and

**WHEREAS,**   In comments to the Forest Service on the Potential Area of Effect of the well, the
Tribe took the position that additional work needed to be done to define a
Traditional Cultural District under the National Historic Preservation Act; and

**WHEREAS,**   The Forest Service agreed to undertake an additional study to define a Traditional
Cultural District, and further work on approving the Longwell well have been
suspended until the additional study is completed; and

**WHEREAS,**   Designated of the ceded lands within the Lewis and Clark National Forest as a
Blackfeet Traditional Cultural District would provide additional protection from
the development of lands in the Forest; and

**WHEREAS,**   A scope of work has been prepared which proposes a contract with Science
Applications International Corporation (SAIC) which will undertake the principal
ethnographic work through Dr. Maria Zedeno of
the University of Arizona, and will prepare the necessary documentation for
nomination of the area as a Traditional Cultural District, and

08/10/2004 12:22 FAX 1 406 338 7206      BLKT PLANNING AND DEV                                    ☒004

FS 004228

Page 2
Resolution No. #206-2004

**WHEREAS,** The scope of work also proposes a Tribal component which will facilitate the work of SAIC and Dr. Zedeno through the selection of tribal elders and others for interviews by Dr. Zedeno, through the facilitation of field trips for the study, and to undertake such other necessary work in support of the project; and

**WHEREAS,** The Tribal component is proposed to be funded by the Forest Service through the Blackfeet Community College which will administer the funding and direct the project; and

**WHEREAS,** The Badger-Two Medicine Committee, the Tribal Historic Preservation Officer and Blackfeet Community College Staff have met and worked out their respective roles in the project, and have also met with Dr. Zedeno, a representative of the Forest Service, and the contracting officer to coordinate the various aspects of the project; now

**NOW THEREFORE BE IT RESOLVED:**

1. That the Blackfeet Tribal Business Council hereby approves the additional study to more specifically define a Traditional Cultural District in the Badger-Two Medicine as proposed in the scope of work which is attached hereto.

2. The Blackfeet Tribal Business Council hereby approves the Blackfeet Community College as the Tribal entity to direct and coordinate the Tribal component of the project through a contract funded by the Forest Service.

ATTEST                                      **THE BLACKFEET TRIBE OF THE**
                                            **BLACKFEET INDIAN RESERVATION**

Fred Guardipee, Secretary                   William Allen Talks About, Chairman

**CERTIFICATION**

I hereby certify that the foregoing Resolution was adopted by the Blackfeet Tribal Business Council in a dully called, noticed and convened ___Special___ Session, assembled the __2nd__ day of __August__, 2004, with __nine__ (9) members present to constitute a quorum, and with a vote of __nine__ (9) for and __zero__ (0) opposed.

(SEAL)

Fred Guardipee, Secretary

REC'D LCNF NOV 1 2 2004

# BLACKFEET NATION

FS 004242

### P.O. BOX 850  BROWNING, MONTANA 59417
### (406) 338-7521  FAX (406) 338-7530

**EXECUTIVE COMMITTEE**

William "Allen" Talks About, Chairman
Patrick "Pat" Thomas, Vice-Chairman
Fred Guardipee, Secretary
Joe A. Gervais, Treasurer

**BLACKFEET TRIBAL BUSINESS COUNCIL**

William "Allen" Talks About
Betty N. Cooper
Fred Guardipee
Hugh Monroe
Earl Old Person
Patrick Schildt, Jr.
Jay St, Goddard
James St. Goddard
Patrick "Pat" Thomas

November 9, 2004

Leslie "Spike" Thompson, Supervisor
Lewis & Clark National Forest
U.S. Forest Service
P.O. Box 869
Great Falls, MT  59403

Dear Mr. Thompson:

First, I want to thank you and your staff for coming here to Browning to meet with the Blackfeet Nation. I felt the meeting was extremely productive and encouraging.  In light of the Travel Plan meeting set for next Wednesday, I am enclosing Blackfeet Tribal Business Council Resolution # 27-2005 adopted yesterday, November 8, 2004. *Mr. Thompson, this is the official position of the Blackfeet Tribal Business Council representing the Blackfeet Nation.*

However, as I mentioned above, I am very encouraged to proceed into the future on a Government-to-Government relationship. If you should need to bring any issues(s) to the table for mutual agreement, I can accommodate such a request. I am hoping your office can do likewise.

The Blackfeet Tribe desires to complete a Management Plan for the Badger Two Medicine. This can be accomplished in a number of ways, but in cooperation with Lewis & Clark National Forest ought be one of the items for discussion. This is where I see the Blackfeet Tribal Business Council revisiting the Tribe's Position in a year or two. (mutually, I'm hoping)

Thank you, Mr. Thompson.

Sincerely yours,

William "Allen" Talks About
Chairman

cc:     All council
        R.Manna



# BLACKFEET NATION

FS 004243

## P.O. BOX 850 BROWNING, MONTANA 59417
### (406) 338-7521  FAX (406) 338-7530

**EXECUTIVE COMMITTEE**

WILLIAM "ALLEN" TALKS ABOUT – CHAIRMAN
PATRICK THOMAS – VICE CHAIRMAN
FRED GUARDIPEE – SECRETARY
JOE GERVAIS – TREASURER

**BLACKFEET TRIBAL BUSINESS COUNCIL**

WILLIAM "ALLEN" TALKS ABOUT
PATRICK THOMAS
FRED GUARDIPEE
JAY ST. GODDARD
JIMMY ST. GODDARD
HUGH MONROE
EARL OLD PERSON
PATRICK SCHILDT
BETTY COOPER

## RESOLUTION

No. 27–2005

WHEREAS. The Blackfeet Tribal Business Council is the duly constituted governing body within the exterior boundaries of the Blackfeet Indian Reservation, and

WHEREAS, The Blackfeet Tribal Business Council has been organized to represent, develop, protect, and advance the views, interests, education, and resources of the Blackfeet Indian Reservation, and

WHEREAS, The Blackfeet Tribal Business Council is empowered to negotiate with the Federal Government on behalf of the Tribe by Article VI, Section 1(a) of the Constitution of the Blackfeet Tribe, and

WHEREAS, By Agreement with the U.S. Government in 1895-6 29 Stat. 321, 353, the Blackfeet Tribe reserved certain rights in the land which is now the North Geographic Unit of Lewis and Clark National Forest-Badger Two Medicine area, and

WHEREAS, The United States Forest Service is presently proposing a Travel Management Plan for the Badger Two Medicine area and is seeking comment from the Blackfeet Tribe, now

THEREFORE BE IT RESOLVED, AS FOLLOWS:

1) That the Blackfeet Tribal Business Council has adopted the following recommendations regarding Lewis and Clark National Forest's Travel Plan for the Badger Two Medicine area:

   a) No Motor Cycles, ATVs, or any other Motor Vehicle should be allowed in the Badger Two Medicine area.

FS 004244

Page 2- Resolution No: 27-2005
Recommendations to Lewis & Clark National Forest
Regarding Badger Two Medicine area

b) No Snow Mobiles should be allowed in the Badger Two Medicine area.

c) All roads in the Badger Two Medicine area should be closed (logging, seismic, and motorized roads).

d) The Blackfeet Tribe requests the entire Badger Two Medicine area be nominated to the National Registry of Historic Places as a Blackfeet Traditional Cultural District and an Ethnographic Cultural Landscape.

e) The Blackfeet Tribe requests that the Badger Two Medicine be set aside as a separate designation in Lewis and Clark National Forest's Travel Plan.

f) The Blackfeet Tribal Business Council requests a supplemental Environmental Impact Study and/or the 106 Process be conducted on the Badger Two Medicine area.

g) The Blackfeet Tribal Business Council requests that all grazing units within the Badger Two Medicine area be discontinued due to overgrazing of the natural calving and nesting areas; the continued degradation of the water quality, the destruction of the natural plant community, and disruption of the natural migration process.

ATTEST:                           BLACKFEET TRIBE OF THE
                                  BLACKFEET INDIAN RESERVATION


*Fred Guardipee*                  *William A. Talks About*
Fred Guardipee, Secretary         William A. Talks About, Chairman

FS 004245

Page 3- Resolution No: __27–2005__
**Recommendations to Lewis & Clark National Forest
Regarding Badger Two Medicine area**

## CERTIFICATION

I hereby certify that the foregoing resolution was adopted by the Blackfeet Tribal Business Council in a duly called, noticed, and convened __Regular__ Session assembled for business the __8th__ day of __November__, 2004, with __Six__ ( __6__ ) members present to constitute a quorum and by a vote of __Six__ ( __6__ ) **FOR**, __Zero__ ( __0__ ) **AGAINST**, and __Zero__ ( __0__ ) **ABSTAINING**.

**(CORPORATE SEAL)**

_Fred Guardipee_

Fred Guardipee, Secretary

FS 004246



| | | | |
|---|---|---|---|
| **United States Department of Agriculture** | **Forest Service** | **Lewis and Clark National Forest** | **1101 15ᵗʰ Street North**<br>**P.O. Box 869**<br>**Great Falls, MT 59403-0869**<br>**406 761-7700**<br>**FAX 406 761-1972** |

**File Code:** 2360

**Date:** December 1, 2004

John Murray
Tribal Historic Preservation Officer
Blackfeet Planning and Development
Box 2809
Browning, MT  59417

Dear Mr. Murray:

Our Heritage Program Office recently received a call from Blain Fandrich of Ethnoscience in Billings, Mt.  Mr. Fandrich was one of the original preparers of the National Register forms for the Badger-Two Medicine Blackfoot Traditional Cultural District (under contract to the Forest Service).  Earl Old Person had contacted Ethnoscience to request a copy of the documentation. Blain, in turn, had contacted us.

You will find a current copy of the National Register documentation enclosed.  The original set, submitted to the Keeper of the National Register, contained numerous 7.5' topographic maps and black and white aerial photographs.  We do not have a ready means to copy these items with the detail necessary.   In the interest of getting this package on its way, we have chosen to instead include a smaller scale map.  The final determination of the Keeper, dated 1/31/2002, is also attached.

Please see that this package is forwarded to Mr. Old Person. Thank You.

Sincerely,

LESLIE W. THOMPSON
Forest Supervisor

Cc:  Blain Fandrich
Enc.



FS 004247



| United States | Forest | Lewis and Clark | 1101 15th Street North |
| Department of | Service | National Forest | P.O. Box 869 |
| Agriculture | | | Great Falls, MT 59403-0869 |
| | | | 406 761-7700 |
| | | | FAX 406 761-1972 |

**File Code:** 2360
**Date:** December 1, 2004

Blain Fandrich
Ethnoscience
4140 King Ave. E.
Billings, MT 59101

Dear Mr. Fandrich:

This letter is in response to your recent telephone inquiry to our Heritage Program Office.  In your November 18, 2004 call, you forwarded a request from Earl Old Person of the Blackfeet Tribe, for the National Register documentation forms for the Badger-Two Medicine Blackfoot Traditional Cultural District.  You also requested a copy of the Keeper of the National Register's comments on the original submittal.

We forwarded the District documentation to Mr. Old Person today.  You will find a copy of the cover letter enclosed.  The Keeper's 1997 comments, based on the original submittal which you helped to prepare, are also attached.  Continued research has resulted in two boundary adjustments to the original submittal.  The Keeper provided an eligibility determination on 1/31/2002 (copy attached).  We continue to conduct research in the area, based on 2003 input from the Blackfeet Tribe.

Thank you for your continued interest.

Sincerely,

LESLIE W. THOMPSON
Forest Supervisor

Cc:  Blackfeet THPO
Enc.



Caring for the Land and Serving People

Printed on Recycled Paper

FS 004248



Sara A Scott/R1/USDAFS
12/02/2004 01:29 PM

To   Sandra French/R1/USDAFS@FSNOTES

cc

bcc

Subject   Fw: B2M activities

attached is report (unofficial for internal use only) from Maria.

Sara Scott, Archaeologist/Interpretive Specialist
Lewis and Clark National Forest/Helena National Forest
2880 Skyway Dr.
Helena, Mt 59602
(406) 495-3741
e-mail: sascott01@fs.fed.us
----- Forwarded by Sara A Scott/R1/USDAFS on 12/02/2004 01:28 PM -----



Nieves Zedeno
<mzedeno@email.arizona.ed
u>

12/02/2004 12:22 PM

To   sascott01@fs.fed.us

cc

Subject   B2M activities

Hi Sara, here is the unoficial progress report. After this report was
completed I did go to back to Montana and Alberta where I conducted
additional interviews and conducted archival research.

Let me know if you need anything else. Maria Nieves Zedeno

b2m progress.doc

FS 004467



| United States Department of Agriculture | Forest Service | Lewis and Clark National Forest | 1101 15th Street North Great Falls, MT 59401 406 791-7700 FAX 406 731-5302 |
|---|---|---|---|

File Code: 1560/2360
Date: June 7, 2013

Willie A. Sharp, Jr.
Chairman
Blackfeet Tribal Business Council
1 Agency Square
P.O Box 850
Browning, MT 59417

RE: Badger-Two Medicine Traditional Cultural District, Lewis & Clark National Forest, Montana: Boundary Expansion Study (R2011011500052)

Dear Mr. Sharp,

Attached is the "Badger-Two Medicine Traditional Cultural District, Lewis & Clark National Forest, Montana: Boundary Expansion Study" by Maria Nieves Zedeno and John R. Murray for your review and comment. The Lewis & Clark National Forest has reviewed and accepted the report as adequate to document traditional Blackfeet use of the Badger-Two Medicine area and agrees with the recommended boundaries to be included in the Traditional Cultural District.

The study recommends adding three parcels of the upper reaches of South Fork Two Medicine River, Mowitch Basin, Middle and South Forks of Birch Creek, and Beaver Lake to the Badger-Two Medicine Traditional Cultural District which was previously determined as eligible for inclusion in the National Register of Historic Places by the Keeper in 2002. We propose seeking a concurrence determination of eligibility with your Tribal Historic Preservation Officer (THPO) and with the Montana State Historic Preservation Officer (SHPO). If any of the concurring parties desire to seek the formal eligibility determination of the Keeper of the National Register of Historic Places, we are certainly willing to do so.

In light of recent interest for mineral exploration in the area and for the implications that those activities could have on the proposed boundary expansion of the Traditional Cultural District, we ask for your prompt reply and comments on the attached study. If you have any questions, please feel free to contact the Forest Tribal Liaison and District Ranger, Mike Munoz, at 406-466-5341, or the Forest Archaeologist, Mark Bodily, at 406-791-7742.

Sincerely,

Nancy Pack

WILLIAM AVEY
Forest Supervisor

cc: Michael A Munoz, Mark Bodily, John Murray



Caring for the Land and Serving People

Printed on Recycled Paper

FS 004593

| | |
|---|---|
| **From:** | Abing, Timothy -FS |
| **To:** | Vaculik, Leslie -FS |
| **Subject:** | RE: Northwest Montana -- Mountain States Legal Foundation Letter dated 5-21-2013 Sent to State Director/Forest Service - Solenex LLC |
| **Date:** | Friday, May 24, 2013 10:25:43 AM |

Is there any institutional knowledge at the Forest level to prepare a proper reply?  If I ask your boss for your help, would you be willing to help out coordinating the Forest response (if OGC thinks it wise to do so) with BLM?

Tim Abing

Acting Assistant Director – Leasable Minerals

USDA Forest Service Washington Office

Minerals & Geology-Centralized National Operations

Phone: 303-275-5250

Cell: 303-709-8892

---

**From:** Vaculik, Leslie -FS
**Sent:** Thursday, May 23, 2013 4:51 PM
**To:** Abing, Timothy -FS
**Cc:** Rusho, Nancy -FS
**Subject:** FW: Northwest Montana -- Mountain States Legal Foundation Letter dated 5-21-2013 Sent to State Director/Forest Service - Solenex LLC

I suggest a draft response be put together working with the Lewis & Clark (probably Robin Strathy) and BLM.  OGC should be part of the review in light of the past litigation concerning this APD. Who will be working on it?

Leslie Vaculik - Petroleum Engineer

USDA Forest Service - Minerals & Geology Management

Central National Operations - Private Minerals

e-mail lvaculik@fs.fed.us

(406) 329-3592

**From:** Laborda, Pascual [mailto:plaborda@blm.gov]
**Sent:** Thursday, May 23, 2013 3:02 PM
**To:** Abing, Timothy -FS; Vaculik, Leslie -FS
**Subject:** Northwest Montana -- Mountain States Legal Foundation Letter dated 5-21-2013 Sent to State Director/Forest Service - Solenex LLC

FYI (scanned) and Heads Up!-

The Mountain States Legal Foundation just submitted a letter dated May 21, 2013 to both the BLM Montana State Director (Jamie Connell) and the Lewis and Clark National Forest, Forest Supervisor (Bill Avey) (enclosed) on behalf of their client, Solenex, LLC, requesting that the BLM lift the suspension on Federal Oil and Gas lease no. M-53323, and allow Solenex, LLC to exercise the rights granted to it under  the lease and approved APD.  If the suspension is not lifted within 30 days, Solenex, LLC will seek judicial relief.  This is the old "Fina" well as we all recognize and Mr. Sidney Longwell.

FS 004594

Later!

**Pascual "Pas" R. Laborda**
Section Chief/Supv. Petroleum Engineer
Bureau of Land Management
Montana State Office
Reservoir Management and Operations Section
5001 Southgate Drive
Billings, Montana  59101-4669
(406) 896-5102
(406) 896-5292 Fax
E-Mail Address: plaborda@blm.gov

This E-mail contains proprietary information and may be confidential.  If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited.  If you received this message in error, please delete it immediately.

FS 004600

| | |
|---|---|
| **From:** | Abing, Timothy -FS |
| **To:** | Vaculik, Leslie -FS |
| **Subject:** | RE: Letter about Badger-Two Medicine APD |
| **Date:** | Wednesday, May 29, 2013 8:30:27 AM |

Aye, there's the rub...applying NSO mitigation to an older lease that provides for surface occupancy.

Tim Abing

Acting Assistant Director – Leasable Minerals

USDA Forest Service Washington Office

Minerals & Geology-Centralized National Operations

Phone: 303-275-5250

Cell: 303-709-8892

**From:** Vaculik, Leslie -FS
**Sent:** Wednesday, May 29, 2013 7:54 AM
**To:** Ihle, Beth -FS; Abing, Timothy -FS
**Subject:** FW: Letter about Badger-Two Medicine APD

Leslie Vaculik - Petroleum Engineer

USDA Forest Service - Minerals & Geology Management

Central National Operations - Private Minerals

e-mail lvaculik@fs.fed.us

(406) 329-3592

**From:** Davis, Carl M -FS
**Sent:** Tuesday, May 28, 2013 1:04 PM
**To:** Vaculik, Leslie -FS; Bain, George M -FS; Kirchhoff, Maureen J -FS; Rusho, Nancy -FS; Abing, Timothy -FS; Everett, Christine R -FS
**Cc:** Strathy, Robin -FS; Bodily, Mark -FS
**Subject:** RE: Letter about Badger-Two Medicine APD

Thanks Leslie: As far as heritage goes: the Traditional Cultural Property (TCP) study to determine National Register eligibility of the district is done (late fall, 2012), including the delineation of TCP boundaries.  The LC/HNF Forest Archaeologist, Mark Bodily, is now addressing several boundary questions resulting from that study, including the inclusion of a small part of the Flathead NF, as requested by the leadership team.  The boundaries have been discussed with the Blackfeet, who concur with boundaries as presently defined (they would like to include more but will tackle this at some future point).

I am hopeful that the forest will be able to submit the ethnographic/TCP report to the Montana SHPO and the Keeper of the National Register of Historic Places in the very near future.  Mark and I believe that the SHPO and Keeper will concur with the determination of National Register eligibility (DOE) in accordance with the National Historic Preservation Act (NHPA).  The study was completed by Dr. Maria Zedeno with the University of Arizona, who is a well respected anthropologist who has worked closely with the Blackfeet on this and other projects.

FS 004601

As far as the well goes, given the likely event that the area will be determined National Register-eligible, the question (strictly comes how to mitigate the impacts of well development under NHPA and 36 CFR 800.  As outlined by Robin, off-site drilling and other methods might be pursued.  I know that you know all this, just want to be sure everyone is on the same page.

Carl

---

**From:** Vaculik, Leslie -FS
**Sent:** Tuesday, May 28, 2013 9:33 AM
**To:** Bain, George M -FS; Kirchhoff, Maureen J -FS; Davis, Carl M -FS; Rusho, Nancy -FS; Abing, Timothy -FS; Everett, Christine R -FS
**Subject:** Letter about Badger-Two Medicine APD

This is a note from Pas Laborda, MT BLM State Office, he summarizes the situation in the attached Solenex letter.

*"FYI (scanned) and Heads Up!-*

*The Mountain States Legal Foundation just submitted a letter dated May 21, 2013 to both the BLM Montana State Director (Jamie Connell) and the Lewis and Clark National Forest, Forest Supervisor (Bill Avey) (enclosed) on behalf of their client, Solenex, LLC, requesting that the BLM lift the suspension on Federal Oil and Gas lease no. M-53323, and allow Solenex, LLC to exercise the rights granted to it under  the lease and approved APD.  If the suspension is not lifted within 30 days, Solenex, LLC will seek judicial relief.  This is the old "Fina" well as we all recognize and Mr. Sidney Longwell."*

Robin Strathy, FS L&C, and Don Judice, BLM Great Falls, are working to update the attached briefing paper.  Then there will be discussions about what to put in the response.

I just want you to be aware of the issue.

Leslie Vaculik - Petroleum Engineer
USDA Forest Service - Minerals & Geology Management
Central National Operations - Private Minerals
e-mail lvaculik@fs.fed.us
(406) 329-3592

---

**From:** Strathy, Robin -FS
**Sent:** Friday, May 24, 2013 2:42 PM
**To:** Ihle, Beth -FS; Vaculik, Leslie -FS; Bodily, Mark -FS
**Cc:** djudice@blm.gov; Cunningham, Dave -FS; Strathy, Robin -FS
**Subject:** RE: B2M

Ok, I did find some correspondence in the database.  We replied to Sidney's January 2011 letter (on April 8, 2011) and the Region responded on May 6, 2011  and provided him a redacted ethnographic report and steered him to contact the Tribe directly for any reports they contracted and paid for.  In

FS 004602

addition, on May 27, 2011 we replied to an April 2011 letter from Mr. Longwell (I do not have a copy of the April letter) and reiterated that the APD would remain in suspension until a determination of eligibility was completed and reviewed by the SHPO and we received their concurrence or additional comments.  In that letter, we also suggested there were alternatives Mr. Longwell could pursue in the meantime, including drilling from adjacent private land outside the TCD).  In addition, we asked if he was amenable to considering a lease exchange and that we could help outline the steps and engage other agencies that would facilitate that approach.  We also reminded him of the provisions in the 2006 Tax Relief Bill that he could take advantage of.  So those may be actions we can include in the briefing paper as far as additional notification to Mr. Longwell.

There's also correspondence dated June 2011 replying to Dave Galt with MT Petroleum Assoc regarding his request for status of the Longwell lease, with essentially the same information as what we provided Sidney in April.

I'll try to work this info into the briefing paper.


Robin Strathy
Planning/Budget Staff Officer
Lewis and Clark and Helena Forests
(406) 791-7726


---

**From:** Strathy, Robin -FS
**Sent:** Friday, May 24, 2013 12:30 PM
**To:** Avey, William -FS; Ihle, Beth -FS; Vaculik, Leslie -FS; Bodily, Mark -FS
**Cc:** djudice@blm.gov; Munoz, Michael A -FS; Barclay, Eric -FS; Strathy, Robin -FS
**Subject:** FW: B2M

FYI.  I visited with Leslie Vaculik in the RO about this and Don and I will work on updating the briefing paper and sharing with the RO.  Leslie was then going to ensure OGC was aware of MSLF's intention to seek judicial relief.

The last letter we received from Sidney Longwell (leaseholder) was in January 2011 in which he requested copies of the FS and Blackfeet-contracted ethnographic studies and a timeline that "established a reasonable date by which I can commence drilling."  I do not have a copy of any reply in the files, but was thinking Alex was spearheading that at the time.  Mark, are you aware of any response we might have provided? Or have we had any subsequent dialogue with the tribe in regard to this drilling proposal?  Otherwise, there may not be much with which to update the briefing paper.  Maybe several of us can visit next week when more folks are around!


Robin Strathy
Planning/Budget Staff Officer
Lewis and Clark and Helena Forests

FS 004603

(406) 791-7726

**From:** Judice, Donato [mailto:djudice@blm.gov]
**Sent:** Friday, May 24, 2013 10:47 AM
**To:** Strathy, Robin -FS; Avey, William -FS
**Subject:** B2M

Attached is both the letter we received from the Mountain States Legal Foundation, along with the BLM Briefing Paper. Let me know if the briefing paper is up to date.

Thank you!
...Don

Donato J. Judice
Oil and Gas Field Manager
Bureau of Land Management
HiLine District
Great Falls Field Office
1101 15th Street North
Great Falls, MT  59401
406-791-7789  office
406-731-5303  fax
406-217-7617  BlackBerry
djudice@blm.gov

FS 004604



# MOUNTAIN STATES LEGAL FOUNDATION



2596 South Lewis Way
Lakewood, Colorado 80227
303-292-2021 • FAX 303-292-1980
www.mountainstateslegal.org

May 21, 2013

## VIA CERTIFIED U.S. MAIL-RETURN RECEIPT REQUESTED

Jamie Connell
State Director
Montana State Office
Bureau of Land Management
5001 Southgate Drive
Billings, Montana 59101
#7004 2510 0006 1985 7089

Bill Avey
Forest Supervisor
Lewis and Clark National Forest
P.O. Box 869
Great Falls, Montana 59403
#7004 2510 0006 1985 7119

Re:   Federal Oil and Gas Lease M-53323

Dear Ms. Connell and Mr. Avey:

I represent Solenex LLC, the owner of Federal Oil and Gas Lease M-53323. Lease M-53323 was issued in 1982 and covers approximately 6,247.00 acres in Glacier County, Montana. An Application for Permit to Drill ("APD") for Lease M-53323 was first submitted to the BLM on October 18, 1983. As you know, the BLM approved the APD in 1983, 1985, 1987, and 1991. Each time the approval was challenged. In 1993 the BLM again approved the APD. This approval remains in place.

From 1993–1996, the BLM issued a series of annual suspensions purportedly to allow Congress time to determine whether the area in which Lease M-53323 is located should be included in proposed wilderness legislation. Congress never acted, however, and in 1996 and 1997 the BLM again extended the suspension for one-year terms, based on a new theory that Lease M-53323 may be located near a potential traditional cultural district, as that term is used in the National Historic Preservation Act ("NHPA"). In 1998 the BLM again suspended Lease M-53323, this time indefinitely, to allow a review of the

*Fighting for individual liberty, the right to own and use property,
limited and ethical government, and the free enterprise system since 1977.*

FS 004605

Ms. Connell & Mr. Avey
May 21, 2013
Page 2 of 2

area under Section 106 of the NHPA.  Evidently, the Section 106 review is still ongoing today, and Lease M-53323 has now been suspended for nearly twenty years.

Accordingly, Solenex respectfully requests that the BLM lift the suspension of Lease M-53323 and allow Solenex to exercise the rights granted to it under Lease M-53323 and the approved APD.  If the suspension is not lifted within 30 days, Solenex will seek judicial relief.

If you have any questions or wish to discuss Lease M-53323, please do not hesitate to contact me at (303) 292-2021.

Sincerely,

MOUNTAIN STATES LEGAL FOUNDATION

Jessica J. Spuhler, Esq.
Attorney for Solenex LLC

cc:     Solenex LLC

FS 004606

## BADGER-TWO MEDICINE APPLICATIONS FOR PERMIT TO DRILL (APDS)

**SUMMARY:**
The BLM and Forest Service are reviewing a drilling proposal at the former Fina exploratory drilling site in the Lewis and Clark National Forest. Sidney Longwell now holds the lease on which the Fina Oil and Chemical Company first proposed an exploratory well in 1983. The proposed well is located at the northern edge of the Lewis and Clark National Forest in the Hall Creek drainage in an area known as the Badger-Two Medicine.

The BLM decides whether or not to approve drilling applications on federal leases. On national forest land, however, the Forest Service has primary responsibility for surface-related issues while the BLM has primary responsibility for "down hole" issues.

The drilling application for the well site was approved in 1991 after the Forest Service conducted several environmental analyses; an environmental assessment (EA) was completed in 1985 and a final environmental impact statement (EIS) was completed in 1990. The National Wildlife Federation and six other groups sued the Forest Service. The drilling approval and lawsuit were suspended while the Forest Service gathered information and analyzed the cultural and religious significance of the area to Native American tribes. About 90,000 acres of the Badger-Two Medicine were identified as a traditional cultural district (TCD) and as having traditional cultural importance to the Blackfeet Tribe. In January 2002, the keeper of the National Register of Historic Places determined this site as eligible for listing. The proposed drilling site is located roughly two miles north of the current district boundary.

**BACKGROUND:**
In light of these findings, the Forest Service initiated an environmental review of new information gathered since the original drilling approval and a concurrent National Historic Preservation Act Section 106 review. The environmental review focuses on whether the new information has bearing on the decision to approve the drilling and whether the new information requires a revision, correction, or supplement to the previous EIS. The Section 106 consultation assesses the effects on significant cultural properties and the mitigation needed, if any, to protect the cultural resource values.

The Section 106 consultation drew the Montana State Historic Preservation Officer, Blackfeet Nation, National Trust for Historic Preservation, Glacier National Park, the leaseholder (Longwell), and the Independent Petroleum Association of Mountain States into the proceedings. It has sparked attention from groups and individuals involved in earlier disputes and legal actions, as well as the Advisory Council on Historic Preservation.

During consultation, the Blackfeet Tribe and others brought forward information related to the TCD and its boundaries. This information was significant enough to trigger the need for additional data collection by the Forest Service to address the appropriate boundaries for the TCD. This data collection, primarily in the form of ethnographic study, has been completed. The peer-reviewed, final ethnographic report, assisted by the Blackfeet Tribe, has been accepted by the Forest Service. The report recommends that additional lands to the north of the TCD be included in the district. The proposed well site is now within the area proposed for inclusion. The Blackfeet Tribe contracted with the same ethnographer to complete an ethnographic review of the remaining Forest Service lands in the southern portion of the Badger-Two Medicine. That report has also been finalized and recommends inclusion of the lands into the TCD. No formal nomination of any lands to the National Historic Register has taken place.

The Devon Operating Company has a pending APD (a lease formerly held by Chevron) nearby in the Goat Mountain Area that will require a similar review.

**PUBLIC INTEREST:**
Public interest is very high. National organizations are involved, and decisions occasionally get statewide attention. Demonstrations of opposition were staged in Great Falls and Missoula, Mont., following the 1993 decision to approve the APD. U.S. Senator Max Baucus, D-Montana, introduced legislation into the 109th Congress for a permanent withdrawal of the federal minerals in an area inclusive of the Badger-Two Medicine. The president approved the legislation on December 20, 2006, under Public Law 109-432. The legislation does not affect the APD; however, if the leaseholder elects to relinquish the lease, the permanent withdrawal will be enacted.

The Blackfeet Nation does not support oil and gas development in the Badger-Two Medicine area and believes that any development may affect the TCD in ways that cannot be mitigated. Legal action against the Forest Service seems likely on this project. Section 106 requires that the process continue as long as the proposal is active. This process is ongoing.

**CONTACT:**
Don Judice, Great Falls Oil and Gas Field Manager (406) 791-7789

FS 004620

**Big Sky. Big Land. Big History.**
**Montana**
**Historical Society**

RECEIVED

JUL 2 3 2013

Lewis & Clark NF

*Historic Preservation*
*Museum*
*Outreach & Interpretation*
*Publications*
*Research Center*

Monday, July 22, 2013

RECEIVED

AUG 2 2013

Lewis & Clark NF

WILLIAM AVEY
FOREST SUPERVISOR
LEWIS AND CLARK NF
1101 15th ST NORTH
GREAT FALLS MT 59401

**CONCURRENCE**
*Thai Murray, THPO*
Blackfeet THPO
Blackfeet Tribe
8/1/2013

RE: Badger Two Medicine TCP District: Boundary Expansion Study (R2011011500052)

Dear Supervisor Avey:

Thank you for requesting our concurrence regarding the proposed expansion of the boundaries for the previously determined eligible Badger Two Medicine TCP district. We concur the work meets professional standards and TCP guidance from the NPS. We believe the study adequately documents traditional cultural associations and continuing use among the expanded areas and the Blackfeet Nation.

Sincerely,

Stan Wilmoth, Ph.D.
State Archaeologist/Deputy, SHPO

225 North Roberts Street
P.O. Box 201201
Helena, MT 59620-1201
(406) 444-2694
(406) 444-2696 FAX
montanahistoricalsociety.org

FS 004714

RPM Geologic

# History of Petroleum usage and drilling procedures in the Badger Two Medicine Area



**Principal types of natural gas traps**

gas

oil

cap rock

water in reservoir rock

gas

pinchout reservoir

fault reservoir

lithologic variation reservoir

gas

sand

fault

gas

water

© 2011 Encyclopædia Britannica, Inc.

Presented by:

Joseph Large

President RPM Geologic LLC

FS 004715

# History of Petroleum Related Activity

- Pre 1900's - Many reports of Local natives collecting oil from seeps to be used in medicines and as antiseptics and for trade with other tribes and traders

- Early settlers collected oil from seeps in region for lubricating axels on wagons and for burning

- 1901- first oil well drilled in Montana at Kintla Lake.  Now part of Glacier Park but originally part of the "Ceded Strip"

- 1905-1906  2 wells drilled along the railroad line in the establishment of Lubec inside the boundaries of the ceded strip.  Newspapers report  flares lighting up train cars several hundred feet away

- Between 1954 and 2013 there have been at least 19 wells drilled on the Blackfeet Reservation within 7 miles of the Badger Two Medicine Area (see page 3)

- 1963- Phillips Petroleum Company Drills the Kiyo 1 and Kiyo 1a

- 1962 Montana Power emplaces a natural gas pipeline (Kalispel Line) across edge of Badger 2 medicine area. (see page 4)

- Between 1960 and 1980  hundreds of miles of seismic lines were run in the seeded strip by multiple companies.  Some of these roads are still in existence and designated as "Jeep Trails" (see page 4)

- 2004 Montana power runs second pipeline parallel to Kalispel Line. Accepted USDA Forest service study declared  A "finding of no significant impact" (FONSI) and "will have no adverse effect on any known or listed or eligible historic places"



FIGURE 10

HALL CREEK A.P.D.

EXISTING TRANSPORTATION SYSTEM

FEDERAL HIGHWAY SYSTEM

FOREST DEVELOPMENT ROAD

FOREST DEVELOPMENT TRAIL

PRIMITIVE ROAD

PIPELINE CORRIDOR

ROAD CLOSURE DEVICE

— Burlington Northern

— Jeep Trail / N Primative Road

FS 004717

FS 004718

# Modern drilling Techniques

There are many worries and misconceptions concerned with drilling that should be addressed

FS 004719

# Drilling Fluid and Reserve Pits

One major concern of people involving the drilling process is contamination from improperly designed or damaged reserve pits. Using a closed drilling system eliminates this problem.

Closed drilling systems allow the drilling fluids to stay contained within a tank system. Cuttings are put through a centrifuge to remove drilling fluid from their surface and are then transported and buried at an approved location.

This eliminates any chance of drilling fluid saturating the ground and creating a contamination or polluting situation





FS 004720

# Pump Jacks and Visual Pollution

When the words "well site" are evoked immediately people think of pump jacks and lines of huge tanks. Those are a reality on *oil* well sites but not on *gas* well sites. Gas will be our primary objective in this drilling project. There is little evidence of the presence of oil in the immediate area but significant evidence of gas deposits.

Gas well sites do not have the equipment necessary for liquid production and storage. All that will be present is a small cleared area with a gas wellhead with 2 lines that go into the ground and connect ultimately to the nearby gas pipeline.





FS 004721

# Issues related to Hydraulic Fracturing

## "Fracking"

Hydraulic fracturing is a process designed to allow recovery of gas and oil resources from oil or gas bearing shales that are difficult to drill directly into because of their tendency to become unstable.

It is very unlikely that we will utilize this technique because we are not drilling shales but searching for natural occurring traps in limestones created by tectonic thrusting. Essentially mother nature has already done the fracking for us

Also because will be targeting deep hydrocarbon traps vertical wells will be the primary drilling style used. If horizontal wells are drilled they will be extremely short horizontal legs





# Future contamination from drilling [FS 004722]

Future contamination of the area due to the gas production is always a concern. Many steps are taken during the drilling process and completions to prevent this.

1. Before any drilling is done a conductor pipe is set ~30' deep and cemented in place

2. Fresh water is used for drilling the first 1000_ feet and then that is isolated by steel surface casing which is cemented in place.

3. After drilling is completed intermediate casing is run down to the top of the target formation and cemented in place

4. Finally, production casing is run through the target formation and perforated to allow gas to flow into the well and to surface

5. By the time the gas gets to within 1000' of surface it is separated from the ground water by 7 layers of steel and concrete ~8" thick





FS 004723

# In Conclusion

RPM Geologic has no interests in destroying pristine wilderness or wiping out anything of historical significance. Drilling In this area does neither. There are hundreds of years of history of industrial and commercial activity in the area. Previous activity has included trading of seepage oils, prospecting, mining, well drilling and homesteading. Present activities include well drilling, railroad lines, highways, gas pipelines, high energy transmission and communications lines and towers.

As stated in a formal letter to Phillip Roy of Browning Montana from Kenneth W Weyers , Forest Supervisor of Lewis & Clark national Forest (May 1983) *"Opening the lands to mineral entry was the primary purpose of the purchase and the purchase agreement specifically opens land to occupation, location and purchase under mineral law"*

We wish to develop a friendly working relationship with both the Forest Service and other government agencies as well as the Blackfoot Reservation. We will be willing to discuss possibilities of concessions for wildlife migration, seasonal cultural activities and educational programs.



Williston North Dakota has become the standard imagery when the words *oil and gas drilling* are heard. This program will in no way emulate or represent the environmental damage done by the unprecedented activity occurring in the Williston basin. The scope of work and area of possible production in the ceded strip is orders of magnitude smaller than that in the Williston Basin





FS 004724





All photos taken from Sidney Longwell's lease area Oct 2013



FS 004725



## Badger-Two Medicine Traditional Cultural District
## Solenex LLC APD and Area of Potential Effect



| | |
|---|---|
| ⬛ TCD_Boundary | **Project Name: B2M-TCD Boundary Expansion Study** |
| 🔲 Solenex APE | **Project Number: R2011011500052** |
| | **Legal Location: T30N R13W Section 23 (Representative)** |
| | **Quad Name: Summit, MT (Representative)** |
| | **Lewis & Clark National Forest, Rocky MountainRD** |
| | **Mark Bodily, 1/28/2014** |

```
0        2.75      5.5              11
                                    Miles
```
1:250,000

mbodily 1/29/2014



FS 004743

mbodily 1/28/2014

**Solenex LLC APD and Area of Potential Effect**
**Badger-Two Medicine Traditional Cultural District**



| | |
|---|---|
| Solenex APE | |
| TCD_Boundary | |
| Proposed Access Route | |
| Proposed Well Site | |

**Project Name: B2M-TCD Boundary Expansion Study**
**Project Number: R2011011500052**
**Legal Location: T30N R13W Section 23 (Representative)**
**Quad Name: Summit, MT (Representative)**
**Lewis & Clark National Forest, Rocky MountainRD**
**Mark Bodily, 1/28/2014**



0    0.425    0.85    1.7
                              Miles
1:39,117