Steven J. Lechner, D.C. Bar No. AZ 0001
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOLENEX LLC, | ) |
|  | ) |
| Plaintiff, | ) Civil Case No. 13-00993 (RJL) |
|  | ) |
| v. | ) |
|  | ) |
| S.M.R. JEWELL, *et al*., | ) |
|  | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSED SCHEDULE FOR COMPLETING AGENCY ACTION UNLAWFULLY DELAYED**

### INTRODUCTION

On July 27, 2015, this Court ruled that Defendants' 29-year delay was unreasonable as a matter of law:

> [S]ince the APD was first approved in 1985, the lease has been suspended for more than 29 years! No combination of excuses could possibly justify such ineptitude or recalcitrance for such an epic period of time.
>
> Under the APA, administrative agencies have a *duty* to decide issues presented to them within a reasonable time, 5 U.S.C. § 555(b), and reviewing courts have a *duty* to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.

> § 706(1) …. By any measure, defendants' 29- year delay in reviewing plaintiffs suspended lease, and reaching a final determination, is "unreasonable delay" within the meaning of the APA.

Dkt. # 52 at 2 (all emphasis in original) (footnote omitted).[1]  Based upon this ruling, this Court granted summary judgment in favor of Solenex and ordered Defendants to submit, within 21 days, "a schedule for the orderly, expeditious resolution of the decision whether to lift the suspension on [Solenex's] lease." *Id*. at 5.

On August 17, 2015, Defendants submitted their proposed schedule. Dkt. # 53. Seeking to further perpetuate their unlawful delay, Defendants have proposed a schedule that will prevent Solenex from drilling for at least another 2 years, if ever. Making matters worse, because Defendants have proposed that the decision-making be made by subordinate agencies, Solenex is sure to be subjected to administrative appeals that will take years to complete. In short, Defendants' proposed schedule, if approved, will add years to the nearly three-decade delay. Accordingly, as demonstrated below, this Court should reject Defendants' proposed schedule.

**I.   DEFENDANTS' SUGGESTION THAT SOLENEX'S LEASE MAY BE CANCELLED IS JUST A PRETEXT FOR FURTHER UNLAWFUL DELAY**.

Defendants state that the Forest Service will make a recommendation to the Bureau of Land Management ("BLM") as to whether lease cancellation should be pursued by October 31, 2015. Dkt. # 53 at 1–2. Defendants further state that the BLM will decide whether to initiate proceedings for cancellation of the lease by November 30, 2015. *Id*. at 2. If the BLM decides to initiate proceedings for cancellation of the lease, Defendants state that the BLM will complete those proceedings by March 30, 2016. *Id*. Defendants' suggestion that Solenex's lease may be cancelled and their purported schedule for doing so is just a pretext for further unlawful delay.

---

[1] Page citations are to the page numbers assigned to the document by this Court's CM/ECF system.

2

The authority Defendants' cite for the proposition that they may cancel Solenex's lease is 43 C.F.R. § 3108.3(d). Dkt. # 53 at 2. This regulation provides in its entirety: "Leases shall be *subject to cancellation* if improperly issued."[2]  43 C.F.R. § 3108.3(d) (emphasis added). The BLM issued Solenex's lease in 1982. Dkt. # 52 at 2. For Defendants to suggest that—after 33 years—they do not know whether the lease was improperly issued is simply astonishing. This is especially true considering Defendants have expended perhaps millions of taxpayer dollars over the last three decades studying the APD and approving the APD four times. Assuming Defendants are not as incompetent as they portray themselves, Defendants' suggestion that they may cancel Solenex's lease must be a pretext for further unlawful delay.

In addition, nothing in either the Mineral Leasing Act ("MLA"), 30 U.S.C. §§ 181–287, or 43 C.F.R. § 3108.3(d) suggests that the Forest Service has the authority to recommend lease cancellation. Under 43 C.F.R. § 3108.3(d), only the BLM may cancel a lease, and only if the lease was improperly issued and the BLM is not barred from doing so. In short, the Forest Service has no role in lease cancellation under 43 C.F.R. § 3108.3(d). Thus, Defendants' suggestion that the Forest Service needs essentially two months to make an irrelevant decision is a pretext for further unlawful delay.

Similarly, Defendants' suggestion that the BLM needs three months, until November 30, 2015, to decide whether to initiate proceedings for cancellation of the lease is spurious. Again, the lease was issued over 33 years ago. The BLM should have investigated whether the lease was improperly issued before it expended all the time and money studying the APD and approving the APD four times. At a minimum, if the BLM honestly believes that the lease may have been

---

[2] The plain language of this regulation indicates that an improperly issued lease is not void *ad initio*, but merely subject to cancellation. This means that estoppel and other equitable, legal, and contractual principles may bar the BLM from cancelling an improperly issued lease.

improperly issued it should have investigated that issue between the time when Solenex filed suit in June 2013, and when this Court granted Solenex summary judgment in July 2015.  In any event, to determine whether the lease was improperly issued should take a day or two—not three months!  Thus, Defendants' suggestion that the BLM needs three months to determine whether to initiate proceedings for cancellation of the lease is a pretext for further unlawful delay.

Finally, Defendants' suggestion that the BLM needs five months, from November 30, 2015 to March 30, 2016, to complete the proceedings for cancellation of the lease is specious.  Solenex is not aware of any requirements for such "proceedings."  Nor have Defendants explained what these "proceedings" may entail.  It would seem that the BLM could write a decision cancelling the lease in one day.[3]  Thus, Defendants suggestion that the BLM needs five months to complete the "proceedings" for cancellation of the lease is a pretext for further unlawful delay.

## II.    DEFENDANTS' SUGGESTION THAT IT WILL TAKE TWO YEARS TO COMPLETE AN ADDITIONAL NEPA PROCESS IS UNREASONABLE.

If Defendants decide not to go through their purported cancellation proceedings and decide that an additional National Environmental Policy Act ("NEPA") process is required, Defendants suggest that they can complete that NEPA process by July 15, 2017.[4]  Dkt. # 53 at 2–4.  Defendants' proposed schedule for completing any additional NEPA process is unreasonable and should be rejected by this Court.[5]

---

[3] Solenex is neither suggesting that its lease was improperly issued nor that the BLM should cancel it, assuming the BLM could legally do so after 33 years.

[4] Defendants do not say what they will do if they decide not to go through their purported cancellation proceedings and decide that an additional NEPA process is *not* required.

[5] The unreasonableness of Defendants' proposed NEPA schedule is demonstrated by the speed in which they completed a NEPA process for the construction of an underground pipeline through Solenex's lease and through what Defendants now call a "traditional cultural district" ("TCD").  Plaintiff's Statement of Facts ("PSOF") ¶ 80; Dkt. # 24-2 at 21.  Defendants completed that NEPA process in one year from June 2003 to June 2004.  *Id*.  Curiously, in approving construction of that pipeline, Defendants, after consulting with the Blackfeet Tribe, "identified

First, Defendants suggestion that they need three months, until November 30, 2015, to decide whether any additional NEPA compliance is necessary is unreasonable as a matter of law. *See* Dkt. # 53 at 2–3.  Defendants have already completed four NEPA processes, which resulted in the APD being approved four times.  Why Defendants would even think about spending additional taxpayer dollars on a fifth NEPA process is a mystery.  Even if another NEPA process is necessary—which Solenex disputes—Defendants should have started that process over two years ago, after Solenex filed this case.[6]  The filing of this case apparently caused Defendants to reluctantly restart the National Historical Preservations Act ("NHPA") process, which Defendants had unlawfully placed on hold for many years.  To prevent delay, regulations implementing the NHPA and NEPA mandate that Defendants conduct the two processes concurrently, not consecutively.  36 C.F.R. § 800.3(b) (mandating that agencies "coordinate the steps of the [NHPA] process, as appropriate, with the overall planning schedule for the undertaking and with any reviews required under other authorities such as [NEPA]"); 40 C.F.R. § 1502.25(a) ("To the fullest extent possible, agencies shall prepare draft environmental impact statements concurrently with and integrated with environmental impact analyses and related surveys and studies required by the … the [NHPA] … and other environmental review laws and executive orders."); 40 C.F.R. § 1500.2(c) (mandating that agencies "[i]ntegrate the requirements of NEPA with other planning and environmental review procedures required by law . . . so that all such procedures run concurrently rather than consecutively"); *see also* Dkt # 51-1 at 1 (Defendants recognizing that the processes should be run concurrently).  If Defendants had been following the law, there would be no need for

---

no properties of traditional cultural interest to the tribe on the pipeline route or temporary construction sites." *Id*.

[6] In responding to Defendants proposed NEPA schedule, Solenex is not conceding that any of these steps are legally required and expressly reserves its right to object to any steps that Defendants may take that are unlawful.

Defendants to spend three months to decide whether any additional NEPA is necessary. Therefore, Defendants should have to make an immediate decision whether any additional NEPA is necessary.[7]

Second, Defendants suggestion that they need seven months, from November 30, 2015 to June 30, 2016, to issue a draft supplemental environmental impact statement ("SEIS") is unreasonable. *See* Dkt. # 53 at 3. It is not like Defendants have to reinvent the wheel. Solenex's approved APD is probably the most studied APD in the history of the on-shore leasing program. *See* PSOF ¶¶ 23–60; Dkt. # 24-2 at 7–16. If Defendants prioritized their work to compensate for their 29-year unlawful delay and incorporated their earlier NEPA documents, Solenex is confident that they could issue a draft SEIS within two months.

Third, Defendants suggestion that they need four months, from August 15, 2016 until December 15, 2016, to review the public comments and to issue a Final SEIS and draft record of decision ("ROD") is unreasonable. *See* Dkt. # 53 at 3. If Defendants prioritized their work to compensate for their 29-year unlawful delay, Solenex is confident that they could review the public comments and to issue a Final SEIS and a draft ROD in two months.

Finally, Defendants have padded their proposed NEPA schedule with a vaguely explained two and one-half month period, from March 18, 2017 to May 31, 2017. Dkt. # 53 at 3. In light of Defendants failure' to cite any authority for this two and one-half month period, it should be automatically removed from Defendants' proposed schedule. *See* Dkt. # 52 at 5 (Defendants' proposed schedule "shall include (1) the defendants' proposed tasks remaining to be completed and

---

[7] Defendants seemingly try to justify their need for three months to decide whether any additional NEPA is necessary by stating that the Advisory Council on Historic Preservation ("ACHP") will not provide its comments on Solenex's approved APD until September 21, 2015. *See* Dkt. # 53 at 1. What Defendants fail to tell this Court is that the ACHP's comments were due on August 21, 2015, and that the Forest Service engaged in further delay by granting the ACHP a 30-day extension, over Solenex's timely objection. *See* Exhibits 1–3.

rationales for why those tasks are legally necessary, and (2) an accelerated timetable for completing those tasks still necessary to expeditiously resolve the issues regarding plaintiff's suspended lease.").

As the forgoing demonstrates, Defendants proposed NEPA schedule is unreasonable because Defendants can easily shorten their schedule by ten months by prioritizing their work to compensate for their 29-year unlawful delay. In addition, another two and one-half months should be eliminated because of Defendants' failure to explain the need therefor. Moreover, in light of Defendants' 29-year delay, this Court should trim another month off and require Defendants to complete, if necessary, any additional NEPA process and lift the suspension by June 1, 2016.

### III. DEFENDANTS' PROPOSED DECISION-MAKING PROCESS IS UNLAWFUL AND WILL EXPOSE SOLENEX TO FURTHER DELAY.

Defendants propose the following decision-making process:

- If an additional NEPA process is required, that the Forest Service will sign the Surface Use Plan of Operations ("SUPO") decision and the ROD for the Final SEIS by July 1, 2017.

- If an additional NEPA process is required, the BLM will sign the ROD for the Final SEIS by July 1, 2017.

- If authorized by the ROD, the BLM will issue the drilling permit and lift the suspension by July 15, 2017.

Dkt. # 53 at 4. This Court should reject Defendants' proposed decision-making process because it is unlawful and will expose Solenex to further delay.

First, Defendants have forgotten that Solenex has an approved SUPO and an approved APD. PSOF ¶¶ 47–60; Dkt. # 24-2 at 12–16. The approved SUPO was approved for the third time in 1991 and the approved APD was approved for the fourth time in 1993. *Id*. Defendants have not explained what gives the Forest Service or the BLM the authority to: (1) modify either

7

the approved SUPO or the approved APD; or (2) issue new decisions regarding the approved SUPO or the approved APD.

This is especially true with respect to Defendants' suggestions that the BLM may modify the approved APD and issue a new APD. *See* Dkt. # 53 at 2, 4.  In 1992, the BLM specifically requested that the APD be approved at the secretarial level.  PSOF ¶ 57; Dkt # 24-2 at 14.  The BLM made this request because of the unreasonable delay that had already occurred and because approving the APD at the secretarial level would mean that any challenges to the approved APD would not have to go through an administrative appeals process, but could be filed directly in federal court.  *Id*.  In accordance with the BLM's request, the Assistant Secretary, Department of the Interior, approved the APD on January 14, 1993.  PSOF ¶¶ 58–60; Dkt # 24-2 at 14–16.  It is black-letter law, that a subordinate agency, *i.e*., the BLM, cannot modify or overturn a decision made by a superior official, such as the Assistant Secretary, Department of the Interior.  Therefore, Defendants' suggestions that the BLM has the authority to modify the approved APD and issue a new APD is specious.

Second, Defendants' chosen date of July 15, 2017 for completing their decision-making process is arbitrary and unnecessarily infringes upon Solenex's limited, five-month window for conducting operations.  Under the approved APD, Solenex may conduct operations only between July 1 and November 30.  PSOF ¶ 58; Dkt. # 24-2 at 14–15.  In order to drill a well, Solenex, like most operators, needs to contract for a drilling rig and other required equipment and services.  In light of Defendants' past bad acts, it would be irresponsible of Solenex to enter into those contracts until Defendants have actually lifted the suspension.  Because Solenex cannot enter into the necessary contracts until after July 15, 2017, this may not leave enough time for Solenex to complete the well before the November 30, 2017 deadline.  This is especially true because no one

knows what the rig availability may be in July 2017.  Thus, Defendants' arbitrary date of July 15, 2017, for completing their decision-making process could prevent Solenex from actually commencing operations until July 1, 2018.  In short, Defendants' arbitrary date of July 15, 2017, would not only lead to further delay it may also unnecessary waste a year of Solenex's ten-year primary term.  *See* PSOF ¶ 36; Dkt. # 24-2 at 10 (explaining that Solenex's lease has six years and eight months remaining on its ten-year primary term); PSOF ¶¶ 14–15; Dkt. # 24-2 at 5 (explaining that a well capable of production must be drilled within the ten-year primary term or Solenex's lease will automatically expire).

Finally, this Court should reject Defendants' suggestion that subordinate agencies, i.e., the Forest Service and the BLM, be allowed to issue any of the decisions.  As previously requested by Solenex, this Court should order that the Secretary of the Interior and the Secretary of Agriculture issue the decisions.  Dkt. # 24-1 at 51.  This will prevent Solenex from being further delayed by administrative appeals.  *See* PSOF ¶ 57; Dkt. # 24-2 at 14 (BLM asking that the Secretary approve the APD to avoid any further delay caused by administrative appeals).  Because Defendants did not object to Solenex's request when originally made, they have waived any objection to this relief.  *See* Dkt. # 39 at 42.

## **CONCLUSION**

Defendants have unlawfully delayed for over 29 years.  They now arrogantly ask to add at least two more years to that delay.  Solenex respectfully requests that this Court reject Defendants' proposed schedule and order Defendants to complete all of their tasks and lift the suspension by June 1, 2016.  This Court should also order that the Secretary of the Interior and the Secretary of Agriculture issue the decisions lifting the suspension and allowing operations to commence.  This will prevent Solenex from being further delayed by administrative appeals.  Finally, Solenex

requests that this Court retain jurisdiction over this matter until Solenex is able to exercise its valuable lease rights.

DATED this 28th day of August 2015.

Respectfully submitted,

MOUNTAIN STATES LEGAL FOUNDATION

/s/ Steven J. Lechner
Steven J. Lechner, D.C. Bar No. AZ 0001
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August 2015, I electronically filed the foregoing using this Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and service will be accomplished by this Court's CM/ECF system.

/s/ Steven J. Lechner
Steven J. Lechner
