# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOLENEX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. Action No. 13-993 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| SALLY JEWELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## BRIEF OF PIKUNI TRADITIONALIST ASSOCIATION, ET AL., IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Timothy J. Preso (D.C. Bar No. 456531)
Earthjustice
313 E. Main St.
Bozeman, MT 59715
T: 406.586.9699
F: 406.586.9695
E: tpreso@earthjustice.org

*Attorney for Proposed Defendant-Intervenors and Proposed Amici Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.   THE SECRETARY PROPERLY EXERCISED HER AUTHORITY TO
     CANCEL THE LEASE ..................................................................................................... 1

     A.   The Supreme Court Has Recognized the Secretary's Broad Lease-
          Cancellation Authority ........................................................................................... 2

     B.   Congress Has Effectively Ratified the Lease Cancellation Authority
          Exercised by the Secretary in This Case ................................................................ 4

     C.   Solenex Cannot Avail Itself of Bona Fide Purchaser Protections under the
          MLA ........................................................................................................................ 6

     D.   Laches and Estoppel Do Not Bar the Secretary's Lease-Cancellation
          Decision .................................................................................................................. 9

          1.   The Terms of the Hall Creek Lease and BLM Regulations
               Incorporated Therein Bar Solenex from Asserting Laches or
               Estoppel ......................................................................................................... 9

          2.   Estoppel Will Cause Undue Damage to the Public Interest ...................... 12

II.  THE HALL CREEK LEASE WAS ISSUED IN VIOLATION OF NEPA AND
     THE NHPA ..................................................................................................................... 16

     A.   Issuance of the Hall Creek Lease Violated NEPA ................................................ 16

     B.   Issuance of the Hall Creek Lease Violated the NHPA .......................................... 20

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES
## FEDERAL CASES

ATC Petroleum, Inc. v. Sanders,
    860 F.2d 1104 (D.C. Cir. 1988) ...................................................................12

Bob Marshall Alliance v. Hodel,
    852 F.2d 1223 (9th Cir. 1971) ...........................................................17, 18, 19

Bob Marshall Alliance v. Lujan,
    804 F. Supp. 1292 (D. Mont. 1992) ..............................................................19

Boesche v. Udall,
    373 U.S. 472 (1963) ........................................................... 2, 3, 4-5, 5, 6

Brady Campaign to Prevent Gun Violence v. Salazar,
    612 F. Supp. 2d 1 (D.D.C. 2009), judgment entered, No. CIV.A. 08-2243
    CKK, 2009 WL 8161704 (D.D.C. July 30, 2009), and case dismissed, No. 09-
    5093, 2009 WL 2915013 (D.C. Cir. Sept. 8, 2009) ..................................... 10-11

Burton/Hawks, Inc. v. United States,
    553 F. Supp. 86 (D. Utah 1982) .....................................................................11

California Co. v. Seaton,
    187 F. Supp. 445 (D.D.C 1960), aff'd sub nom. California Co. v. Udall, 296
    F.2d 384 (D.C. Cir. 1961) .............................................................................3

Calvert Cliffs Coordinating Comm. v. U.S. Atomic Energy Comm'n,
    449 F.2d 1109 (D.C. Cir. 1971) ....................................................................17

Commodity Futures Trading Comm'n v. Schor,
    478 U.S. 833 (1986) ........................................................................................6

Conner v. Burford,
    848 F.2d 1441 (1988) ...............................................................................18, 19

Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,
    529 U.S. 120 (2000) ........................................................................................5

Grynberg v. Kempthorne,
    No. 06-cv-01878, 2008 WL 2445564 (D. Colo. June 16, 2008) ......................... 2-3

Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,
    467 U.S. 51 (1984) ........................................................................................13

Int'l Org. of Masters, Mates & Pilots v. Brown,
    698 F.2d 536, 551 (D.C. Cir. 1983) ...............................................................12

Karst Envtl. Educ. & Prot., Inc. v. EPA,
        475 F.3d 1291 (D.C. Cir. 2007) ................................................................ 20-21

Knight v. United Land Ass'n,
        142 U.S. 161 (1891) ...................................................................................... 3

Lykins v. McGrath,
        184 U.S. 169 (1902) ...................................................................................... 9

Mont. Wilderness Ass'n v. Fry,
        310 F. Supp. 2d 1127 (D. Mont. 2004) ................................................ 21, 23

Mountain States Legal Found. v. Andrus,
        499 F. Supp. 383 (D. Wyo. 1980) ............................................................ 18

Muckleshoot Indian Tribe v. U.S. Forest Serv.,
        177 F.3d 800 (9th Cir. 1999) .................................................................... 20

N.C. Wildlife Fed'n v. N.C. Dept. of Transp.,
        677 F.3d 596 (4th Cir. 2012) .................................................................... 18

Nat. Res. Def. Council, Inc. v. Hughes,
        454 F. Supp. 148 (D.D.C. 1978) ............................................................. 2-3

National Indian Youth Council v. Andrus,
        501 F. Supp. 649 (D.N.M. 1980) .............................................................. 23

New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,
        459 F. Supp. 2d 1102 (D.N.M. 2006), aff'd in part, vacated in part, rev'd in
        part on other grounds, 565 F.3d 683 (10th Cir. 2009) ............................. 21

Pit River Tribe v. U.S. Forest Serv.,
        469 F.3d 768 (9th Cir. 2006) .............................................................. 20, 23

Pub. Emps. for Envtl. Responsibility v. Beaudreau,
        25 F. Supp. 3d 67, (D.D.C. 2014), appeal dismissed sub nom. Pub. Employees
        for Envtl. Responsibility v. Cruickshank, No. 14-5117, 2014 WL 3014869
        (D.C. Cir. June 11, 2014) .......................................................................... 22

Pub. Emps. for Envtl. Responsibility v. Hopper,
        827 F.3d 1077 (D.C. Cir. 2016) ................................................................ 22

Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior,
        755 F. Supp. 2d 1104 (S.D. Cal. 2010) .................................................... 11

San Juan Citizens All. v. Norton,
        586 F. Supp. 2d 1270 (D.N.M. 2008) ............................................. 20, 21-22

Seaton v. Texas Co.,
    256 F.2d 718 (D.C. Cir. 1958) ............................................................................3, 10

Sheridan Kalorama Historical Ass'n v. Christopher,
    49 F.3d 750 (D.C. Cir. 1995) ....................................................................................22

Sierra Club v. Peterson,
    717 F.2d 1409 (D.C. Cir. 1983) ...........................................................................16, 21

Silver State Land, LLC v. Schneider,
    145 F. Supp. 3d 113 (D.D.C. 2015) .................................................................... 11-12

Sw. Petroleum Corp. v. Udall,
    361 F.2d 650 (10th Cir. 1966) ....................................................................................8

Texaco, Inc. v. Hickel,
    437 F.2d 636 (D.C. Cir. 1970) ............................................................................... 2-3

Texas Oil & Gas Corp. v. Andrus,
    498 F. Supp. 668 (D.D.C. 1980), reversed on other grounds, 683 F.2d 427
    (D.C. Cir. 1982) ..........................................................................................................2

Udall v. Tallman,
    380 U.S. 1 (1965) ......................................................................................................18

United States v. 0.95 Acres of Land,
    994 F.2d 696 (9th Cir.1993) .....................................................................................20

United States v. Philip Morris Inc.,
    300 F. Supp. 2d 61 (D.D.C. 2004) ............................................................................12

Utah Power & Light Co. v. United States,
    243 U.S. 389 (1917) ..................................................................................................11

Wilson v. Block,
    708 F.2d 735 (D.C. Cir. 1983) ..................................................................................20

Winkler v. Andrus,
    614 F.2d 707 (10th Cir. 1980) ...............................................................................2, 8

## STATUTES AND LEGISLATIVE MATERIALS

30 U.S.C.  § 184(h) ..........................................................................................................6, 8
             § 188(b) ...............................................................................................................6
             § 226(a) .............................................................................................................18

42 U.S.C.  § 4321 ....................................................................................................... 10-11

54 U.S.C.  § 300101.......................................................................................................1

§ 306108.................................................................................20, 22

Pub. L. No. 102-486,

§§ 2507-09, 106 Stat. 2776, 102nd Cong., 2nd Sess. (1992).........................................6

Pub. L. No. 100-203,

§§ 5101-13, 101 Stat. 1330, 100th Cong., 1st Sess. (1987)..........................................5

Pub. L. No. 109-58,

§ 350, 119 Stat. 594, 109th Cong., 1st Sess. (2005) ......................................................6

Pub. L. No. 109-432,

§ 403, 120 Stat. 2922, 109th Cong. 2nd Sess. (2006)..............................................4, 14

## REGULATIONS AND ADMINISTRATIVE MATERIALS

43 C.F.R.  § 3108.3........................................................................................................5

43 C.F.R. § 3108.4 ................................................................................................... 5, 8-9

43 C.F.R.  § 1810.3.............................................................................................10, 11, 12

35 Fed. Reg. 9502 (June 13, 1970) ...............................................................................10

48 Fed. Reg. 33,648 (July 22, 1983) ...............................................................................5

## OTHER AUTHORITIES

H.R. Rep. 86-1062 at 2620 (1959)...............................................................................7, 8

68 Interior Dec. 285, 1961 WL 9168 ..............................................................................8

Clayton W. Williams, Jr.,

103 IBLA 192 (1988)....................................................................................................5

Floyd Higgins,

147 IBLA 343 (Feb. 26, 1999)....................................................................................12

v

## INTRODUCTION

Pikuni Traditionalist Association, Blackfeet Headwaters Alliance, Glacier-Two Medicine Alliance, Montana Wilderness Association, National Parks Conservation Association, and The Wilderness Society (collectively, "PTA") submit this brief to oppose summary judgment arguments advanced by Plaintiff Solenex, LLC.  Solenex challenges the Federal Defendants' cancellation of a federal onshore oil and gas lease formerly held by Solenex in the Hall Creek portion of the Badger-Two Medicine area, which is located within the Lewis and Clark National Forest in northern Montana.  PTA, et al., are non-profit organizations dedicated to the conservation of the natural and cultural environment, including the Badger-Two Medicine region at issue in this case.[1]

PTA agrees with and adopts the arguments raised by Federal Defendants in opposition to Solenex's summary judgment motion.  PTA offers the following additional points and authorities to supplement Federal Defendants' arguments in defense of canceling Solenex's lease.[2]  For the reasons stated below, in addition to the reasons stated by the Federal Defendants, Solenex's summary judgment motion should be denied.

## ARGUMENT

## I.    THE SECRETARY PROPERLY EXERCISED HER AUTHORITY TO CANCEL THE LEASE

Contrary to Solenex's arguments, the Secretary of the Interior has broad lease-cancellation authority—an authority recognized by the Supreme Court and effectively ratified by

---

[1] PTA's interest in this case is further detailed in the memorandum supporting its Second Motion to Intervene as Defendants.  See ECF No. 74-1 at 10-12.

[2] To the extent this brief is construed as an amici curiae brief, counsel for PTA states in accordance with Local Civil Rule 7(o)(5) that no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than amici curiae, their members, or their counsel made a monetary contribution to the preparation or submission of this brief.

Congress—especially when, as here, it is exercised to serve the public interest.  The bona-fide-purchaser protections of Section 27 of the Mineral Leasing Act ("MLA") do not apply to restrict that authority here.  Nor does laches or estoppel operate to bar the Secretary's lease-cancellation decision.

### A.      The Supreme Court Has Recognized the Secretary's Broad Lease-Cancellation Authority

Solenex's contention that the Secretary lacks authority to cancel an unlawfully issued oil and gas lease should be rejected.  See Solenex Br. 7-18.  PTA agrees with and adopts Federal Defendants' arguments that the Secretary has the general administrative power to cancel leases that were invalidly issued and that this authority is not limited by Section 31 of the MLA.  See Fed. Br. 15-20.  As Federal Defendants make clear, the Supreme Court recognized this broad authority more than fifty years ago in Boesche v. Udall, 373 U.S. 472 (1963).  In addition, Solenex's attempt to limit Boesche to its facts—i.e., solely to cases where a lease is claimed by competing applicants, see Solenex Br. 14-18—should be rejected.

At the outset, Solenex's attempt to limit Boesche to its facts is inconsistent with well-established case law characterizing as broad the Secretary's authority over leasing on public lands and recognizing the Secretary's lease cancellation authority in a variety of factual contexts. See Winkler v. Andrus, 614 F.2d 707, 711 (10th Cir. 1980) ("The Secretary has broad authority to cancel oil and gas leases for violations of the Mineral Leasing Act and regulations thereunder, as well as for administrative errors committed before the lease was issued.") (citations omitted); Texaco v. Hickel, 437 F.2d 636, 641 (D.C. Cir. 1970) (recognizing Secretary of the Interior's authority to cancel a lease administratively for invalidity at its inception); Grynberg v. Kempthorne, No. 06-cv-01878, 2008 WL 2445564, at *4 (D. Colo. June 16, 2008) (citing Boesche to conclude that the Secretary had authority to cancel a lease issued without Forest

2

Service review); <u>Texas Oil & Gas Corp. v. Andrus</u>, 498 F. Supp. 668, 675 (D.D.C. 1980) (citing <u>Boesche</u> to support Secretary's cancellation of oil and gas lease improperly issued inside military base), <u>rev'd on other grounds</u>, 683 F.2d 427 (D.C. Cir. 1982) (concluding that leases could be issued inside military base); <u>Nat. Res. Def. Council v. Hughes</u>, 454 F. Supp. 148, 154 (D.D.C. 1978) ("The Mineral Leasing Act does not limit the Secretary's power to cancel administratively a permit or a non-competitive lease 'on the basis of pre-lease factors.'") (quoting <u>Boesche</u>, 373 U.S. at 478-85).  Accordingly, Solenex's narrow reading of <u>Boesche</u> should be rejected.

More fundamentally, to the extent the type of controversy giving rise to lease invalidity has any effect on the Secretary's lease-cancellation authority, that effect is to vest the Secretary with greater authority where, as here, she acts in the public interest rather than for the private interests of a competing lease applicant.  <u>See</u> <u>Seaton v. Texas Co.</u>, 256 F.2d 718, 722 (D.C. Cir. 1958) ("[T]he Secretary's latitude is not the same in all circumstances.  When the controversy is fundamentally between two private interests … his discretion is not not [sic] as great as when the controversy is between private interest on one hand and the Secretary 'as guardian of the people,' on the other"); <u>cf.</u> <u>Cal. Co. v. Seaton</u>, 187 F. Supp. 445, 453 (D.D.C 1960) ("[T]he courts have also determined that the Secretary's discretion is greater when a controversy exists between private interests on the one hand and the Secretary, as guardian of the people, on the other, than when the Secretary is involved in a dispute between two private interests.") (footnote omitted) (citing <u>Seaton v. Texas Co.</u>, 256 F.2d at 722), <u>aff'd sub nom.</u> <u>Cal. Co. v. Udall</u>, 296 F.2d 384 (D.C. Cir. 1961); <u>see also</u> <u>Knight v. United Land Ass'n</u>, 142 U.S. 161, 181 (1891) ("The secretary is the guardian of the people of the United States over the public lands.  The obligations of his oath of office oblige him to see that the law is carried out, and that none of the public domain is wasted or is disposed of to a party not entitled to it.").  As discussed in more detail below, <u>see infra</u> Part I.D, the Secretary's cancellation of the Hall Creek lease serves the public

interest by ensuring compliance with the National Environmental Policy Act ("NEPA") and the

National Historic Preservation Act ("NHPA") and preserving the ecological and cultural values

of the Badger-Two Medicine region, which have been repeatedly recognized, including through

the designation of the region as a Traditional Cultural District under the NHPA, see ECF No. 74-

2 at 123-26 (Keeper of the Nat'l Register, Determination of Eligibility, Nat'l Register of Historic

Places, Badger-Two Medicine Traditional Cultural District (May 5, 2014)) ("2014 TCD

Determination"); ECF No. 48-6 at 64-79 (Keeper of the Nat'l Register, Determination of

Eligibility Notification, Nat'l Register of Historic Places, Badger-Two Medicine Traditional

Cultural District (Jan. 31, 2002)) ("2002 TCD Determination"); Congress's 2006 withdrawal of

the Badger-Two Medicine area from further oil and gas leasing, see Tax Relief and Health Care

Act of 2006, Pub. L. 109-432 § 403, 120 Stat. 2922, 109th Cong. 2d Sess. (2006); and the

Advisory Council on Historic Preservation's recommendation to terminate the remaining leases

in the Traditional Cultural District, see ECF No. 74-2 at 96-97 (Advisory Council on Historic

Preservation, Comments Regarding the Release from Suspension of the Permit to Drill by

Solenex in Lewis & Clark Nat'l Forest, Montana (Sep. 21, 2015)) ("ACHP Comments").

Because the lease-cancellation decision in this case serves these public values instead of

Solenex's or any other lease holder's private interests, the Secretary's administrative discretion is

at its apex.  Solenex ignores this point.

     **B.**     **Congress Has Effectively Ratified the Lease Cancellation Authority
Exercised by the Secretary in This Case**

Solenex's claim that the Federal Defendants acted without authority in canceling the Hall

Creek lease also ignores a long record of congressional acceptance, and effective ratification, of

the very cancellation authority that Solenex challenges.  In Boesche, the Supreme Court

observed that, "[f]rom the beginnings of the Mineral Leasing Act the Secretary has conceived

that he had the power [to administratively cancel invalidly issued leases], and Congress has never interfered with its exercise" despite a dozen amendments to the Act.  373 U.S. at 482-83. Accordingly, the Court reasoned, "[t]he conclusion is plain that Congress, if it did not ratify the Secretary's conduct, at least did not regard it as inconsistent with the Mineral Leasing Act."  Id. at 483 (citations omitted); see also Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 144 (2000) (holding that, after Food and Drug Administration had repeatedly stated that it lacked authority to regulate tobacco, Congress "effectively ratified" that interpretation by passing other tobacco legislation without giving the agency jurisdiction).

That conclusion is even stronger today given the record of administrative and congressional action concerning the mineral leasing program in the years since Boesche was decided.  In 1983, the Interior Department promulgated 43 C.F.R. § 3108.3(d), providing that "[l]eases shall be subject to cancellation if improperly issued."  Final Rule, U.S. Bureau of Land Mgmt., Revision of the Regulations Covering Oil and Gas Leasing on Federal Lands, 48 Fed. Reg. 33,648, 33,674 (July 22, 1983) (originally promulgated as 43 C.F.R. § 3108.3(b)).  That provision "reflect[ed] the Department of the Interior's existing practice in considering specific situations," id. at 33,655—i.e., the practice approved in Boesche.  Five years later, the Interior Board of Land Appeals ("IBLA") recognized that this lease cancellation authority would apply in the case of a lease issued in violation of NEPA—i.e., precisely the situation at issue in this case.  Clayton W. Williams, Jr., 103 IBLA 192, 210 (1988) (lease issued in violation of NEPA is voidable).

Congress has had ample opportunity to limit or invalidate the Interior Department's lease cancellation authority since these agency promulgations and pronouncements, but never has done so.  Only four years after the Interior Department's promulgation of 43 C.F.R. § 3108.3(d) and six months after the IBLA's pronouncement in Clayton W. Williams, Jr., Congress amended the

MLA through enactment of the Federal Onshore Oil and Gas Leasing Reform Act of 1987 ("FOOGLRA"), Pub. L. 100-203, §§ 5101-12, 101 Stat. 1330, 100th Cong., 1st Sess. (1987). Although FOOGLRA contained a provision expressly addressing the subject of "lease cancellation" (which solely modified the first sentence of section 31(b) of the Mineral Leasing Act, 30 U.S.C. § 188(b), in a manner not relevant here), Congress did not interfere with the Interior Department's explicitly declared authority to cancel invalidly issued leases, including those issued in violation of NEPA.  See Pub. L. 100-203, § 5104.  Congress has subsequently further amended the MLA in the Energy Policy Act of 2005, Pub. L. 109-58, § 350, 119 Stat. 594, 109th Cong., 1st Sess. (2005), and the Energy Policy Act of 1992, Pub. L. 102-486, §§ 2507-09, 106 Stat. 2776, 102nd Cong., 2nd Sess. (1992), but has never limited or otherwise indicated any disapproval of the lease cancellation authority challenged by Solenex.

As Boesche itself recognized, such repeated legislative silence in the face of a "long-continued administrative practice" is a significant indicator of congressional intent.  373 U.S. at 483.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."  Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 846 (1986) (quotation and citation omitted).  Here, Congress's failure to revise or repeal the Interior Department's repeatedly stated authority to cancel invalidly issued leases constitutes a further reason to reject Solenex's challenge to that authority.

## C.  Solenex Cannot Avail Itself of Bona Fide Purchaser Protections under the MLA

Solenex is not entitled to the bona fide purchaser protections of Section 27(h)(2) of the MLA, 30 U.S.C § 184(h)(2).  PTA agrees with and adopts Federal Defendants' arguments that

Section 27(h)(2) does not apply to cancellations based on non-MLA violations and that, even if

such bona fide purchaser protections apply (and they do not), Solenex is not a bona fide

purchaser for value.  See Fed Br. 20-25.  In addition, the legislative history of Section 27(h)(2)

confirms that Congress intended to limit the bona fide purchaser protections of Section 27 to

situations where the MLA itself was violated.  These protections thus have no bearing on a

situation where, as here, lease cancellation is based on violations of NEPA or the NHPA.  The

House Report on the MLA amendment that added bona fide purchaser protection to the statute

identifies three purposes of the amendment, each of which specifically references protecting

innocent purchasers from lease cancellation, forfeiture, or suspension due to violations of the

MLA by their predecessors in interest.  Those purposes were:

> (1) "to provide that the right to cancel or declare a forfeiture of
> leases, interests in leases, and options to acquire leases or interests
> therein for violation of any provision of the act shall not be
> exercised in such a way as to affect adversely the interest of any
> bona fide purchaser who is not himself in violation of the acreage
> limitation provisions of the act;
>
> (2) "to provide that bona fide purchasers in such situations shall
> have a right to be dismissed from pending or future proceedings
> which are based only upon a violation of the act by a predecessor
> in interest; and
>
> (3) "to provide that lease terms and rental-payment obligations
> shall be tolled where drilling or lease assignment rights of a party
> are (1) administratively suspended by the secretary of the interior
> before a decision is reached in a government contest proceeding
> alleging violation of the act, or (2) voluntarily waived by the party
> during such a proceeding."

H.R. Rep. 86-1062 at 2620, 2620 (1959) (emphases added).  Nothing in these stated legislative

purposes suggests an intent to extend bona fide purchaser protections to lease cancellation based

on violations of statutes other than the MLA.

Moreover, as Solenex notes, <u>see</u> Solenex Br. 19-20, the context in which Congress enacted this amendment is significant—Congress sought to afford relief to innocent purchasers faced with actions by the Secretary of the Interior against "alleged violators of the acreage limitation provisions" of the MLA and to respond to industry concerns about "the danger that in the chain of title of a lease one of its prior holders may have been in <u>violation of the acreage limitation or other provisions of the act</u> and that the lease might be subject to cancellation for this reason."  H.R. Rep. 86-1062 at 2620, 2621 (emphasis added).  The language of Section 27(h) reflects this intent by exempting innocent purchasers from cancellation or forfeiture "for violation of any of the provisions of this chapter."  30 U.S.C. § 184(h)(2); <u>see also</u> <u>Winkler v. Andrus</u>, 614 F.2d 707, 711 (10th Cir. 1980) (explaining that this language protects bona fide purchasers "from the possible consequences of Mineral Leasing Act violations by their predecessors in title").  Thus, the context of Section 27(h)'s enactment and the purposes that Congress sought to serve by adding Section 27(h) to the MLA do not support its application where, as here, the Secretary's lease cancellation decision is based on grounds other than a violation of the MLA.[3]

Solenex contends, however, that the bona fide purchaser provisions of Section 27 "have been interpreted broadly to give full protection to all [bona fide purchasers]."  Solenex Br. 20.  But to the extent Section 27(h) has been broadly read, it has been only to encompass any violation of the MLA, not just the violations of the Act's acreage limitations at issue when Congress passed Section 27.  <u>See</u> J. PENROD TOLES, 68 Interior Dec. 285, 290, 1961 WL 9168, at *4 (1961) ("[T]he statutory language broadly refers to leases issued in violation of the

---

[3] Congress made minor changes to Section 27(h) in 1960, which do not affect the applicability of the 1959 legislative history.  <u>See</u> <u>Sw. Petroleum Corp. v. Udall</u>, 361 F.2d 650, 652 n.1, 656 (10th Cir. 1966) (showing relevant changes).

act, and the Congressional committee reports on the 1959 legislation <u>do avert to other violations of the act</u>" beyond violations of the acreage limitations) (emphasis added); 43 C.F.R. § 3108.4 ("Prompt action shall be taken to dismiss as a party to any proceedings with respect to a <u>violation by a predecessor of any provisions of the act</u>, any person who shows the holding of an interest as a bona fide purchaser without having violated any provisions of the act.") (emphasis added). Thus, even this broader reading does not support applying Section 27(h) to circumstances involving statutory violations outside of the MLA.  Accordingly, because Federal Defendants canceled the Hall Creek lease based on NEPA and NHPA violations, Solenex cannot avail itself of the bona fide purchaser protections in Section 27(h).[4]

### D.  Laches and Estoppel Do Not Bar the Secretary's Lease-Cancellation Decision

#### 1.  The Terms of the Hall Creek Lease and BLM Regulations Incorporated Therein Bar Solenex from Asserting Laches or Estoppel

Solenex erroneously contends that the Secretary's lease-cancellation decision is barred by laches and estoppel.  <u>See</u> Solenex Br. 25-29.  PTA agrees with and adopts Federal Defendants' arguments that neither laches nor estoppel restrict the Secretary's authority to cancel the Hall Creek lease.  <u>See</u> Fed. Br. 25-26, 29-31.  In addition, Solenex's laches and estoppel arguments are foreclosed by the very terms of the Hall Creek lease.  The Hall Creek lease states that it is issued "subject to all rules and regulations of the Secretary of the Interior now or hereafter in

---

[4] Further, even if the protections of Section 27 applied, which they do not, Solenex could not avail itself of bona fide purchaser protections because Solenex admits that it did not pay valuable consideration for the Hall Creek lease.  <u>See</u> Solenex Br. 21 ("Solenex did not pay money to Mr. Longwell for the assignment of the lease").  Yet, Solenex contends that the time and money it spent in initiating this lawsuit somehow constitutes valuable consideration transforming Solenex, as a giftee of the lease, into a bona fide purchaser.  <u>Id.</u> at 21-22.  Under Solenex's theory, a company that acquires a lease for free and then later expends time and money in an effort to develop the lease can transform itself into a bona fide purchaser.  Such a theory would nullify the basic principle that "[a] person who is a mere volunteer, having acquired title by gift, inheritance, or some kindred mode, cannot come within the scope of the term bona fide purchaser."  <u>Lykins v. McGrath</u>, 184 U.S. 169, 173 (1902) (quotation omitted).  Because Solenex admits that it did not pay consideration for the Hall Creek lease, it is not a bona fide purchaser.

force … ."  ECF No. 45-9 at 19.  At the time the Bureau of Land Management ("BLM") issued

the Hall Creek lease to Sidney Longwell, BLM regulations expressly provided that neither laches

nor estoppel could be asserted to restrict the authority of the United States to protect public rights

or to void an unlawful agreement:

> (a) The authority of the United States to enforce a public right or
> protect a public interest is not vitiated or lost by acquiescence of its
> officers or agents, or by their laches, neglect of duty, failure to act,
> or delays in the performance of their duties.
>
> (b) The United States is not bound or estopped by the acts of its
> officers or agents when they enter into an arrangement or
> agreement to do or cause to be done what the law does not sanction
> or permit.
>
> (c) Reliance upon information or opinion of any officer, agent or
> employee or on records maintained by land offices cannot operate
> to vest any right not authorized by law.

43 C.F.R. § 1810.3.  This provision was in effect at the time the Hall Creek lease issued in 1982.

See Bureau of Land Mgmt., Dep't of the Interior, Reorganization and Revision of the Chapter,

35 Fed. Reg. 9502, 9513 (June 13, 1970); ECF No. 45-9 at 19 (Hall Creek lease).  Accordingly,

its terms were part of the fundamental bargain struck between Solenex and the federal

government.

      As a result, the Hall Creek lease recognizes and incorporates the terms of this regulation,

which defeat both Solenex's laches claim and its estoppel claim.  To support its laches argument,

Solenex contends that the Secretary's delay in canceling the lease bars her from taking that

action now.  Solenex Br. 25-26.  But the terms of Section 1810.3(a), incorporated into the lease

agreement, foreclose this argument by providing that the laches of federal officers or agents does

not defeat the Secretary's authority to "protect a public interest," 43 C.F.R. § 1810.3(a), as the

"guardian of the people," Seaton, 256 F.2d at 722.  Here, the Secretary's cancellation of the Hall

Creek lease protects the public interest by ensuring compliance with NEPA, a statute designed

10

"to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man," 42 U.S.C. § 4321, and with the NHPA, which seeks to ensure federally owned historic properties, such as the Badger-Two Medicine Traditional Cultural District, are administered "in a spirit of stewardship for the inspiration and benefit of present and future generations," 54 U.S.C. § 300101(3).  See Brady Campaign to Prevent Gun Violence v. Salazar, 612 F. Supp. 2d 1, 26 (D.D.C. 2009), judgment entered, No. CIV.A. 08-2243 CKK, 2009 WL 8161704 (D.D.C. July 30, 2009), and case dismissed, No. 09-5093, 2009 WL 2915013 (D.C. Cir. Sept. 8, 2009) ("There is no question that the public has an interest in having Congress' mandates in NEPA carried out accurately and completely."); Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior, 755 F. Supp. 2d 1104, 1122 (S.D. Cal. 2010) ("[I]n enacting NHPA Congress has adjudged the preservation of historic properties and the rights of Indian tribes to consultation to be in the public interest.").  Moreover, lease cancellation ensures protection of the broadly recognized environmental and cultural values of the Badger-Two Medicine region.  See infra Part I.D.2.  In such situations, "laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest."  Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917).  This is precisely the principle that is codified and incorporated by reference into the Hall Creek lease terms pursuant to 43 C.F.R. § 1810.3.

Section 1810.3 similarly forecloses Solenex's estoppel argument.  Solenex bases its estoppel argument on its claim that the Secretary and the BLM "repeatedly represented—through their actions and their official documents that the lease was valid and properly issued …."  See Solenex Br. 27.  But Section 1810.3(b) and (c) bars reliance on such information to make valid an invalid lease or to estop the Secretary from canceling an invalidly issued lease.  See Burton/Hawks, Inc. v. United States, 553 F. Supp. 86, 92 (D. Utah 1982) ("Section 1810.3

11

establishes the principle that plaintiff's reliance on the erroneous statements of the district engineer could not estop the IBLA from denying a two-year extension of the lease where the lease did not qualify for the extension under the terms of the agreement or the MLLA."); see also Silver State Land, LLC v. Schneider, 145 F. Supp. 3d 113, 133 n.16 (D.D.C. 2015) (citing Section 1810.3(b) for the principle that "[t]he agency's own regulations reflect the Secretary's authority to review, revise and reverse actions of DOI employees determined to be contrary to the law").  As discussed below, infra Part II, in Federal Defendants brief, Fed. Br. 27-31, and in the lease-cancellation decision, ECF No. 68-1 at 8-12, the Hall Creek lease was issued in violation of NEPA and NHPA.  Given the underlying illegality of the lease, Solenex cannot rely on subsequent representations by government agents to estop the Secretary from canceling the lease when such estoppel would grant Solenex a right not authorized by Solenex's own lease contract, given its incorporation of 43 C.F.R. § 1810.3, nor by governing law.[5]

2.     Estoppel Will Cause Undue Damage to the Public Interest

Even if Solenex were not barred from raising an estoppel claim by the terms of the lease, which it is, Solenex still could not show that estoppel is appropriate here given the substantial public interests at stake.  Application of estoppel against the federal government must be "rigid and sparing" and estoppel may not apply if there will be "undue damage to the public interest." ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (quoting Int'l Org. of Masters, Mates & Pilots v. Brown, 698 F.2d 536, 551 (D.C. Cir. 1983)); United States v. Philip Morris Inc., 300 F. Supp. 2d 61, 70 (D.D.C. 2004) (same).  Here, in addition to the arguments

---

[5] Solenex cites Floyd Higgins, 147 IBLA 343 (Feb. 26, 1999), for the proposition that estoppel applies against the federal government.  Solenex Br. 26.  But "while estoppel may lie where reliance on Governmental statements deprived an individual of a right which he could have acquired, estoppel does not lie where the effect of such action would be to grant an individual a right not authorized by law."  Floyd Higgins, 147 IBLA at 347, 351.

raised by Federal Defendants, Fed. Br. 30-31, Solenex's estoppel claim must fail because it has not and cannot show that estoppel would not unduly damage the public interest—indeed, Solenex ignores this element of its estoppel claim, see Solenex Br. 27-29.

In fact, the public has a strong and compelling interest in upholding the Secretary's lease cancellation decision in this case.  First, as noted above, see supra Part I.D.1, the public has an interest in the proper implementation of both NEPA and the NHPA, statutes designed to preserve the environmental and cultural values of the United States.  If the Secretary were estopped from canceling the Hall Creek lease, then the Secretary would be barred from ensuring proper compliance with these laws.  Such a result would undermine the public interest in the fair and proper administration of the law.  See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 60 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined.").

Second, the public has an interest in maintaining the environmental and cultural values of the Badger-Two Medicine region.  The public interest is served by maintaining the ecological integrity of the Badger-Two Medicine region, including the Hall Creek lease site, which is located three miles into the backcountry of a region that the U.S. Forest Service has described as "wild" and "remote."  ECF No. 37-1 at 13 (U.S. Forest Serv., Rocky Mountain Ranger District Travel Management Plan, Record of Decision for Badger-Two Medicine (March 16, 2009) ("2009 ROD") (recognizing "the value people placed on the wild, remote setting" of the Badger-Two Medicine region).  Indeed, in his 2009 decision prohibiting motorized vehicle use across nearly all of the Badger-Two Medicine region—a decision encouraged by "[t]he vast majority of public comments"— the former Forest Supervisor for the Lewis and Clark National Forest described the region as "a magnificent area to enjoy solitude, wildlife viewing, hiking, hunting,

13

fishing, stock use, snowshoeing and cross-country skiing," where elk, grizzly bears, lynx, wolves, and wolverines roam.  Id. at 13-14, 22-26.  Congress has also recognized the natural and public value of the Badger-Two Medicine region by permanently withdrawing an area inclusive of the Badger-Two Medicine region from future mineral leasing.  See Tax Relief & Health Care Act of 2006, § 403.  Due in part to these protections, the Badger-Two Medicine area "retains integrity and is a landscape virtually unmarred by modern development and intrusions."  ECF No. 74-2 at 94 (ACHP Comments).

The public interest is further served by maintaining the cultural and historic integrity of the Badger-Two Medicine region.  The people of the Blackfeet Nation have long held sacred the Badger-Two Medicine region.  John Murray, Tribal Historic Preservation Officer for the Blackfeet Tribe and chairman of the PTA, an association of cultural leaders of the Blackfeet Nation, describes the Badger-Two Medicine region as "the last spiritual and cultural stronghold that remains for the Blackfoot people."  ECF No. 74-3 ¶¶ 4-6 (Declaration of John Murray); see also ECF No. 74-2 at 86 (Proclamation of the Blackfoot Confederacy: Badger-Two Medicine (Nov. 16, 2004)) ("The Badger-Two Medicine is one of the most culturally and religiously significant areas to all Blackfeet people.").  Federal agencies have recognized the cultural and historic import of this area.  In 2002 and 2014, the U.S. Interior Department's Keeper of the National Register declared 165,588 acres encompassing the Badger-Two Medicine region and additional lands to the south eligible for listing in the National Register of Historic Places as a Traditional Cultural District pursuant to the NHPA, meaning that the area has an "association with cultural practices or beliefs of a living community that (a) are rooted in that community's history, and (b) are important in maintaining the continuing cultural identity of the community."  ECF No. 74-2 at 101 (U.S. Dep't of the Interior, Nat'l Register Bulletin, Guidelines for Evaluating and Documenting Traditional Cultural Properties (1998)); id. at 124-26 (2014 TCD

Determination); ECF No. 48-6 at 64-80 (2002 TCD Determination).  In restricting motorized

travel to the Badger-Two Medicine region in 2009, the Forest Service also recognized that the

area "is very significant culturally and spiritually to the Blackfeet Tribe."  ECF No. 37-1 at 14

(2009 ROD).  And in September 2015, the Advisory Council on Historic Preservation

recognized that "[t]he Badger-Two Medicine TCD is of premier importance to the Blackfeet

Tribe in sustaining its religious and cultural traditions" and recommended cancellation of the

Solenex lease and all remaining leases in the TCD to preserve the area's cultural and historical

value.  ECF No. 74-2 at 93, 96 (ACHP Comments).  In reaching this conclusion, the ACHP

noted that "the public at large is overwhelmingly in support of the preservation of the TCD."  Id.

at 96.

Applying estoppel to override the Secretary's lease cancellation would improperly

elevate Solenex's private, commercial interest over the public's longstanding and well-

documented interest in maintaining the environmental and cultural integrity of the Badger-Two

Medicine region.  As a remedy for its claims, Solenex seeks to immediately begin oil and gas

development activities on the Hall Creek lease site.  See ECF No. 73 at 44-45 (First Amended

and Supplemental Complaint).  This Court has previously recognized that such development

"would impair" cultural and environmental interests in the lease area.  See ECF No. 21 at 2-3

(Memorandum Order).  The Advisory Council on Historic Preservation agrees that "[t]he

proposed gas exploration and development would introduce activities and intrusions

incompatible with the TCD and its unique qualities."  ECF No. 74-2 at 94 (ACHP Comments).

Thus, if Solenex were to succeed in estopping the Secretary's lease-cancellation decision, the

public interest in the wild and culturally irreplaceable qualities of the Badger-Two Medicine

region would be unduly and irreparably damaged.

Indeed, this case offers a powerful example of the sound reasons why estoppel may not be applied against the federal government at the cost of such undue damage to the public interest. Pikuni Traditionalist Association, Blackfeet Headwaters Alliance, Glacier-Two Medicine Alliance, Montana Wilderness Association, National Parks Conservation Association, and The Wilderness Society, together with their members, other conservation groups, people of the Blackfeet Nation, and other members of the public, have fought for decades to protect the Badger-Two Medicine region from oil and gas development, including through cancellation of the unlawfully issued leases in the area.  See ECF No. 74-2 at 157-68 (Letter from Timothy J. Preso on behalf of Am. Rivers, et al., to Sally Jewell, Sec'y of U.S. Dep't of Interior, and Tom Vilsack, Sec'y of U.S. Dep't of Agric. (Oct. 28, 2014)); ECF No. 74-3 ¶¶ 9-11 (Declaration of John Murray); ECF No. 74-4 ¶¶ 2, 7 (Declaration of Jack Gladstone); ECF No. 74-5 ¶¶ 2, 4 (Declaration of Lou Bruno); ECF No. 74-6 ¶¶ 2-3, 6 (Declaration of Donna Caruso-Hirst); ECF No. 74-7 ¶¶ 3, 4 (Declaration of Jennifer Ferenstein); ECF No. 74-8 ¶¶ 2, 9 (Declaration of Kendall Flint); ECF No. 74-9 ¶¶ 12-17 (Declaration of Michael Jamison); ECF No. 74-10 ¶¶ 3-5 (Declaration of Casey Perkins); ECF No. 74-11 ¶ 6 (Declaration of Gene Sentz).  Their efforts seek to vindicate the public interests discussed above.  As a matter of basic equity, these longstanding advocacy efforts should not be nullified because Federal Defendants' delayed in taking the lease cancellation action that these advocates had long requested and that the public interest demanded.

## II.     THE HALL CREEK LEASE WAS ISSUED IN VIOLATION OF NEPA AND THE NHPA

### A.      Issuance of the Hall Creek Lease Violated NEPA

Solenex erroneously contests the Secretary's finding that issuance of the Hall Creek lease violated NEPA.  See Solenex Br. 29-38.  PTA agrees with and adopts Federal Defendants'

argument that issuance of the Hall Creek lease without preparation of a pre-leasing

environmental impact statement ("EIS") violated NEPA under the controlling D.C. Circuit ruling

in Sierra Club v. Peterson, 717 F.2d 1409, 1415 (D.C. Cir. 1983).  See Fed. Br. 27-28.  In

addition, as the Interior Department determined in its lease cancellation decision, see ECF No.

68-1 at 9, issuance of the Hall Creek lease violated NEPA because the limited environmental

analysis prepared by the U.S. Forest Service to analyze the lease issuance decision failed to

include and consider a no-action alternative.

      NEPA requires that "each agency decision maker has before him and takes into proper

account all possible approaches to a particular project (including total abandonment of the

project) which would alter the environmental impact and the cost-benefit balance."  Calvert

Cliffs Coordinating Comm. v. U.S. Atomic Energy Comm'n, 449 F.2d 1109, 1114 (D.C. Cir.

1971) (emphasis added); accord Bob Marshall Alliance v. Hodel, 852 F.2d 1223, 1228 (9th Cir.

1988).  However, the environmental assessment ("EA") for the Hall Creek leasing decision did

not consider the alternative of "total abandonment of the project" as required by the controlling

Calvert Cliffs decision.  The so-called "no-action" alternative in the EA did not consider the

option of not issuing any oil and gas leases.  Rather, this alternative merely "would delay

recommendations on leasing until completion of the Forest Plan."  ECF No. 45-10 at 48 (U.S.

Forest Serv., Envtl. Assessment, Oil and Gas Leasing, Nonwilderness Lands (Feb. 18, 1981)).

As the EA explained, "this alternative would be a delay prior to implementation" of action

alternatives that called for leasing and development of the Badger-Two Medicine area.  Id. at 62.

Accordingly, the EA projected that "[t]he long-term effect for this [no-action] alternative would

probably be the same as [for two leasing alternatives]" and stated that the "no-action"

alternative's long-term satisfaction of criteria for evaluating environmental impacts "is assumed

to be the same as for [the two leasing alternatives]."  Id. at 75.  Based on this reasoning, the EA

17

asserted that its so-called "no-action" alternative would match or even exceed some leasing alternatives in its detrimental impact on such resources as "[p]ristine or undeveloped areas," threatened and endangered species and their habitat, and "[r]ecreation and visual quality." Id. at 76 (Table 5).

Because the EA did not consider the alternative of "total abandonment of the project" as a baseline against which to evaluate the impacts of new oil and gas leasing, the environmental analysis for the Hall Creek leasing decision violated NEPA. Calvert Cliffs Coordinating Comm., 449 F.2d at 1114; see N.C. Wildlife Fed'n v. N.C. Dep't of Transp., 677 F.3d 596, 603 (4th Cir. 2012) ("[C]ourts not infrequently find NEPA violations when an agency miscalculates the 'no build' baseline or when the baseline assumes the existence of a proposed project.").

Solenex nevertheless contends that the EA's alternative of delayed leasing "was equivalent to a 'no-lease' alternative," relying on a Wyoming district court decision holding that a federal agency's failure to process mineral lease applications amounted to an unlawful withdrawal of lands from leasing. Solenex Br. 33 (citing Mountain States Legal Found. v. Andrus, 499 F. Supp. 383 (D. Wyo. 1980)). However, the Ninth Circuit correctly deemed the Wyoming district court's holding in Mountain States Legal Foundation unpersuasive in Bob Marshall Alliance, noting its inconsistency with the well-established principle that "the Mineral Leasing Act gives the Interior Secretary discretion to determine which lands are to be leased under the statute." 852 F.2d at 1230 (citing 30 U.S.C. § 226(a)); see Udall v. Tallman, 380 U.S. 1, 4 (1965) (holding that MLA "left the Secretary discretion to refuse to issue any lease at all on a given tract").

Solenex also argues that any NEPA violation associated with issuance of the Hall Creek lease "was subsequently corrected," citing various post-leasing NEPA analyses undertaken by the Forest Service and BLM. Solenex Br. 34-35. PTA agrees with and adopts Federal

18

Defendants' argument that none of these post-leasing analyses considered any alternative that would reconsider or rescind any previously issued leases and therefore none was calculated to correct the leasing agencies' original failure to consider the no-leasing option.  Fed. Br. 27-28 & n.14.  In addition, Solenex wrongly relies on the BLM's 1993 assertion that an EIS prepared in 1990 was intended to remedy any prior NEPA violation, consistent with the remedial order issued by the Ninth Circuit in Conner v. Burford, 848 F.2d 1441, 1461 (1988).  Solenex Br. 35.  Solenex ignores the fact that the BLM's 1993 assertion disregarded the Ninth Circuit's post-Conner decision in Bob Marshall Alliance, which recognized that the defendant agencies' failure to consider a no-action alternative in that case constituted "an additional factor not present in Conner" that implicated different remedial considerations.  852 F.2d at 1230.  Accordingly, the Ninth Circuit remanded the Bob Marshall Alliance case to the Montana district court to clarify the appropriate remedy.  Id.  On remand, the Montana district court held that "this additional factor … compels the utilization of a more comprehensive remedy" than was applied in Conner.  Bob Marshall Alliance v. Lujan, 804 F. Supp. 1292, 1297 n.8 (D. Mont. 1992).  As the Montana court explained:

> Cancellation of the leases is, in this court's opinion, the only remedy which will effectively foster NEPA's mandate requiring informed and meaningful consideration of alternatives to leasing the Deep Creek area, including the no-leasing option.  Cancellation of the leases is the only remedy which will effectively ensure the goal envisioned by NEPA, particularly 42 U.S.C. § 4332(2)(E) (1982), by guaranteeing, to the fullest extent possible, that the defendant agencies have studied, developed and described alternatives, including the no-action alternative.  …  The court is of the opinion that full and meaningful consideration of the no-action alternative can be achieved only if all alternatives available with respect to utilization of the Deep Creek Further Planning Area are developed and studied on a clean slate.  In this manner, the mandate of NEPA will remain effective.

Id. at 1297-98.  The same reasoning applies here to rebut the BLM's 1993 assertion cited by Solenex.

**B.      Issuance of the Hall Creek Lease Violated the NHPA**

Solenex also erroneously contends that the Secretary improperly found that issuance of the Hall Creek lease violated the NHPA.  See Solenex Br. 38-40.  PTA agrees with and adopts Federal Defendants' argument that issuance of the Hall Creek lease violated the NHPA because the Forest Service and the BLM unlawfully deferred their review of the lease's impact on cultural resources.  See Fed. Br. 28-29.  In addition, Solenex's argument that the issuance of a lease does not trigger NHPA Section 106 review should be rejected.  Solenex Br. 39-40.

Section 106 of the NHPA requires that a federal agency with "authority to license any undertaking, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property."  54 U.S.C. § 306108.[6]  "In general, the NHPA requires that a federal agency take into account any adverse effects on historical or culturally significant sites before taking action that might harm such sites."  San Juan Citizens All. v. Norton, 586 F. Supp. 2d 1270, 1280 (D.N.M. 2008); see also Wilson v. Block, 708 F.2d 735, 754 (D.C. Cir. 1983) (explaining that Section 106 and its implementing regulations "require federal agencies approving land use projects to identify all properties within and about the project area that are eligible for listing in the National Register and that may be affected by the project").  "When an undertaking may affect properties of historic value to an Indian tribe on non-Indian lands, the consulting parties shall afford such tribe the opportunity to participate as interested persons."  Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768, 787 (9th Cir. 2006) (quoting Muckleshoot Indian Tribe v. U.S. Forest Serv., 177 F.3d 800, 806 (9th Cir. 1999)).  "NHPA is similar to NEPA except that it requires consideration of historic sites, rather than the environment."  Id. (quoting United States v. 0.95 Acres of Land, 994 F.2d 696, 698 (9th Cir.1993)); see also Karst Envtl. Educ. & Prot.,

---

[6] Section 106 was formerly codified at 16 U.S.C. § 470f.

Inc. v. EPA., 475 F.3d 1291, 1295-96 (D.C. Cir. 2007) (major federal action under NEPA similar to federal undertaking under NHPA).

The issuance of the Hall Creek lease did not comply with Section 106's mandate that cultural impacts must be considered "prior to" the agency's issuance of a license or authorization of an undertaking.  See Mont. Wilderness Ass'n v. Fry, 310 F. Supp. 2d 1127, 1153 (D. Mont. 2004) ("BLM violated NHPA by failing to follow the prescribed NHPA process prior to selling the [oil and gas] leases.").  Solenex does not meaningfully dispute that issuance of a lease is an undertaking within the meaning of Section 106, but nevertheless contends that, even if the issuance of a lease is an undertaking, lease issuance "did not, and cannot, have an impact on historic properties."  Solenex Br. 39.  This argument merely recycles a contention rejected by the D.C. Circuit in Sierra Club v. Peterson, which recognized, in the NEPA context, that, "once the land is leased the Department no longer has the authority to preclude surface disturbing activities even if the environmental impact of such activity is significant."  717 F.2d at 1414 (emphasis original).  For this reason, "the decision to allow surface disturbing activities has been made at the leasing stage and, under NEPA, this is the point at which the environmental impacts of such activities must be evaluated."  Id.  Given "the 'operational similarity' between NEPA and NHPA," Karst Envtl. Educ. & Prot., Inc., 475 F.3d at 1295, it is not surprising that courts have applied the same reasoning in addressing NHPA Section 106 compliance, see New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 459 F. Supp. 2d 1102, 1125 (D.N.M. 2006), aff'd in part, vacated in part, rev'd in part on other grounds, 565 F.3d 683 (10th Cir. 2009) ("In sum, as is the case with NEPA, the Court finds that the most significant point in the process as far as NHPA is concerned … is the point at which BLM makes an irrevocable commitment of resources and thereby surrenders its ability to prevent any development on a particular parcel of land.  As with NEPA, this point is the time at which a lease is issued."); San Juan Citizens All.,

21

586 F. Supp. 2d at 1292 (holding that preparation of a resource management plan and final environmental impact statement "triggers Section 106 consultation requirements" because it restricts BLM's "ability to condition or deny future development proposals affecting historic properties and traditional cultural properties").

Further, Solenex's argument ignores plain statutory language demanding Section 106 review whenever a federal agency engages in an undertaking or issues a license. See 54 U.S.C. § 306108.  When this occurs, an agency must "take into account the effect of the undertaking on any historic property" "prior to" the undertaking. Id; see also Sheridan Kalorama Historical Ass'n v. Christopher, 49 F.3d 750, 754 (D.C. Cir. 1995) (explaining that "Section 106 requires each federal agency to 'take into account the effect of [a proposed] undertaking' upon historic properties …prior to the agency's funding or licensing it."); Pub. Emps. for Envtl. Responsibility v. Beaudreau, 25 F. Supp. 3d 67, 119 (D.D.C. 2014), appeal dismissed sub nom. Pub. Emps. for Envtl. Responsibility v. Cruickshank, No. 14-5117, 2014 WL 3014869 (D.C. Cir. June 11, 2014) (holding that agency satisfied Section 106 by beginning its consultation process "well before" the decision to issue a lease);[7] cf. San Juan Citizens All. v. Norton, 586 F. Supp. at 1294 (resource management plan requires Section 106 consultation despite the fact it "cannot currently have a negative impact on cultural resources" because it "does not authorize any specific activities").  The relevant question is thus whether the issuance of a lease constitutes an "undertaking" or the "issuance of any license" triggering the NHPA's requirement to comply

---

[7] This decision was later affirmed in part, reversed in part, and remanded in Pub. Employees for Envtl. Responsibility v. Hopper, 827 F.3d 1077 (D.C. Cir. 2016).  In that case, the D.C. Circuit determined that NEPA, the NHPA, and other federal laws did not require energy providers to submit geological surveys to the BLM before it could approve a construction plan. Id. at 1084-85.  The Court did not consider the separate issue of the timeliness of the BLM's Section 106 consultation process with respect to the lease.  See id.; see also Pub. Employees for Envtl. Responsibility v. Beaudreau, 25 F. Supp. 3d at 119 (explaining that the Section 106 consultation process began five years before the BLM decided to issue a lease).

with Section 106 procedures—including consultation—<u>prior to</u> issuing the lease.  Courts have

routinely held that it does.  See <u>Pit River Tribe</u>, 469 F.3d at 787 (holding that the extension of

geothermal steam leases by BLM and the Forest Service "was a federal undertaking requiring

review" under the NHPA); <u>Mont. Wilderness Ass'n</u>, 310 F. Supp. 2d at 1152 (rejecting argument

that a lease sale is not an undertaking).  Accordingly, deferral of Section 106 review until after

the lease issued was unlawful.[8]

> <u>National Indian Youth Council v. Andrus</u>, 501 F. Supp. 649 (D.N.M. 1980), cited by

Solenex, Solenex Br. 39, does not support a different result.  In that case, the court considered

whether the Interior Department's approval of a mining lease issued by the Navajo Nation for

mining within the Navajo Reservation constituted an "undertaking" under Section 106.  <u>Id.</u> at

653-54, 676.  The court concluded that approval of the lease was not an undertaking because it

was the Navajo Tribe and not the Department of the Interior that had jurisdiction over issuing the

lease.  <u>Id.</u> at 676.  As a result, it was the Department's approval of the proposed mining plan,

over which the Department had jurisdiction, that constituted a "license" and "required <u>prior</u>

compliance with Section 106."  <u>Id.</u> at 676 (emphasis added).  Thus, <u>National Indian Youth</u>

<u>Council</u> stands for the same proposition as the cases above: an agency must comply with Section

106 "prior to" issuing a license, which in this case encompasses the Hall Creek lease.

> Solenex's claim that subsequent agency review in 1985 and 1990 cured the NHPA

deficiencies prior to lease issuance, <u>see</u> Solenex Br. 39, is also meritless.  As with NEPA, failure

to comply with the NHPA before lease issuance cannot be cured by subsequent review that does

not consider whether the land should have been leased at all.  <u>Pit River Tribe</u>, 469 F.3d at 787.

---

[8] Solenex appears to imply that its lease stipulations provided some compliance with NHPA, <u>see</u>
Solenex Br. 39, but lease stipulations "cannot replace the BLM's duties under NHPA," <u>Mont.</u>
<u>Wilderness Ass'n</u>, 310 F. Supp. 2d at 1152.

No such review occurred in either the 1985 EA or the 1990 FEIS. <u>See</u> Fed Br. 27 n.14 (1990 FEIS did not consider a no leasing alternative); HC06949 (describing the range of alternatives considered in the 1985 EA).

<b>CONCLUSION</b>

For the foregoing reasons, Pikuni Traditionalist Association, Blackfeet Headwaters Alliance, Glacier-Two Medicine Alliance, Montana Wilderness Association, National Parks Conservation Association, and The Wilderness Society respectfully request that this Court deny Solenex's motion for summary judgment and grant Federal Defendants' motion for summary judgment.

Respectfully submitted this 10th day of October, 2016.

/s/ Timothy J. Preso
Timothy J. Preso (D.C. Bar No. 456531)
Earthjustice
313 E. Main St.
Bozeman, MT 59715
T: 406.586.9699
F: 406.586.9695
E: tpreso@earthjustice.org

*Attorney for Proposed Defendant-Intervenors and Proposed Amici Curiae*

<b>CERTIFICATE OF SERVICE</b>

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

/s/ Timothy J. Preso
Timothy J. Preso

24