IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOLENEX LLC, <br><br> Plaintiff, <br><br> v. <br><br> SALLY JEWELL, *et al.* <br><br> Defendants. | Civil Case No. 13-00993 (RJL) |

**BRIEF OF <u>AMICI CURIAE</u> THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND THE MONTANA PETROLEUM ASSOCIATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

James W. Porter, III (Bar No. 999070)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
Telephone: (202) 393-7150
Facsimile: (202) 719-8332
jporter@bradley.com
*Counsel for Amici Curiae*

and

Steven P. Lehotsky
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062
Telephone: (202) 463-5337
*Counsel for The Chamber of Commerce of the United States of America*

# TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE ................................................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................................... 2

ARGUMENT ................................................................................................................................. 2

    I.    The Secretary's Unilateral Cancellation of the Plaintiff's Lease Will Discourage Socially Valuable Government Contracting. ................................................................... 2

    II.   The Secretary's Unilateral Cancellation of the Plaintiff's Lease Undermines Public Policy Favoring the Development of Federal Natural Resources. ...................................... 5

CONCLUSION ............................................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment, 477 U.S. 41 (1986) ......................... 3

Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947) .................................................................. 3

Franconia Assocs. v. United States, 536 U.S. 129 (2002) ............................................................ 4

Harvey v. Udall, 384 F.2d 883 (10th Cir. 1967) ........................................................................... 5

Lynch v. United States, 292 U.S. 571 (1934) ................................................................................ 4

Mobil Oil Expl. & Producing Se., Inc. v. United States, 530 U.S. 604 (2000) ..................... 2, 3, 4

Nat'l Res. Def. Council, Inc. v. Berklund, 609 F.2d 553 (D.C. Cir. 1979) ................................... 5

Pan Am. Petroleum Corp. v. Pierson, 284 F.2d 649 (10th Cir. 1960) .......................................... 6

Solenex, LLC v. Jewell, 156 F. Supp. 3d 83 (D.D.C. 2015) .......................................................... 3

United States v. Winstar Corp., 518 U.S. 839 (1996) ................................................................ 3, 4

**Statutes**

Energy Policy Act of 1992, 42 U.S.C. § 13401 (2012) ................................................................. 5

Energy Policy Act, Pub. L. No. 109-58, 119 Stat. 594 (2005) ...................................................... 5

Mineral Leasing Act of 1920, 41 Stat. 437 (codified as amended at 30 U.S.C. §§ 181–287 (2012)) ............................................................................................................................................ 2

Mining and Minerals Policy Act of 1970, 30 U.S.C. § 21A (2012) ..............................................5

**Other Authorities**

Bureau of Land Mgmt., Dep't of the Interior, <u>2014 Montana/Dakotas Annual Report</u> .................1

C. Peck Hayne, Jr., <u>Oil and Gas Survey</u>, 34 Tex. Tech L. Rev. 819, 832 (2002) ..........................6

<u>Restatement (Second) of Contracts § 205</u> (1981) ........................................................................3

Saul B. Suslick, et al., <u>Uncertainty and Risk Analysis in Petroleum Exploration and Production</u>, 6

Terr*Æ* 30 (2009) .............................................................................................................................6

**INTERESTS OF AMICI CURIAE**[1]

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. The Chamber represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry, and from every region of the United States. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files <u>amicus</u> briefs in cases raising issues of concern to the nation's business community.

The Montana Petroleum Association ("MPA") is a statewide, nonprofit trade association. The MPA was formally incorporated as a Montana nonprofit corporation in 1999, but its roots trace back to 1937. The MPA's members are engaged in all aspects of the oil and natural gas industry, including exploration, production, transportation, refining, and marketing. The MPA strives to maintain a positive business climate for Montana's oil and gas industry and to foster public awareness of the industry's many economic and ecological contributions to the state and nation. The Bureau of Land Management ("BLM") manages 37,755,972 acres (58,993 square miles) of federal subsurface minerals in Montana—about 40% of the state's total area.[2] Oil and gas development on federal lands therefore significantly affects Montana's oil and gas industry, as well as its economy.

This lawsuit implicates important questions regarding an administrative agency's ability to ignore and disregard the federal government's contractual obligations to private individuals and

---

[1] Plaintiffs have consented to the filing of this <u>amicus</u> brief, and Defendants take no position. No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief. No party or party's counsel has written this brief in whole or in part, and no person or entity, other than <u>amici</u>, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief.

[2] Bureau of Land Mgmt., Dep't of the Interior, <u>2014 Montana/Dakotas Annual Report</u>, available at http://www.blm.gov/mt/st/en/info/newsroom/2014_annual_report.html.

entities. Such actions threaten the integrity of contracts with the federal government and undermine the justifiable reliance interests of parties who enter into such contracts, thereby thwarting the ability of individuals and other entities to conduct valuable and economy-enhancing business.

## SUMMARY OF THE ARGUMENT

Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment (Dkt. #89-1) compellingly explains that the Secretary of the Interior's (the "Secretary's") unilateral cancellation of Federal Oil and Gas Lease M-53323 ("Lease M-53323") is unlawful. This brief aims to demonstrate that the outcome of this lawsuit threatens to radiate well beyond the parties to this case. The Secretary's unilateral and arbitrary cancellation of Lease M-53323, more than 30 years after its issuance, violates well-established principles of contract law and property rights. Moreover, although this case involves oil and gas leases, the Secretary's actions create considerable uncertainty surrounding the enforceability of government contracts. That certainty is essential to the effective and efficient delivery of systems and services to the federal government, and to effectuate the development of federal natural resources upon which many sectors of our economy rely.

## ARGUMENT

**I.  The Secretary's Unilateral Cancellation of the Plaintiff's Lease Will Discourage Socially Valuable Government Contracting.**

Where the federal government executes an oil and gas lease under the Mineral Leasing Act ("MLA") of 1920, 41 Stat. 437 (codified as amended at 30 U.S.C. §§ 181–287 (2012)), it enters into a contract. See Mobil Oil Expl. & Producing Se., Inc. v. United States, 530 U.S. 604, 607, 609 (2000) (applying "basic contract law principles" to federal oil and gas leases). "[T]he Federal

Government, as sovereign, has the power to enter contracts that confer vested rights, and the *concomitant duty to honor those rights . . . .*" Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment, 477 U.S. 41, 52 (1986) (emphasis added).

Significantly here, this "concomitant duty" includes a responsibility to act in good faith when performing contractual obligations. In Mobil Oil, the Supreme Court noted that the Restatement of Contracts "reflects many of the principles of contract law" applicable when the government enters into a contractual relationship. 530 U.S. at 607–08. One such principle repeatedly affirmed by the Restatement is that each party is subject to a duty to act in good faith. Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon *each party* a duty of good faith and fair dealing in its performance and enforcement." (emphasis added)). Indeed, "[i]t is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street." United States v. Winstar Corp., 518 U.S. 839, 886 n.31 (1996) (plurality opinion) (quoting Fed. Crop. Ins. Corp. v. Merrill, 332 U.S. 380, 387–88 (1947) (Jackson, J., dissenting)).

It can hardly be said that the federal government has acted in the required good faith when, for 30 years, it has repeatedly suspended a valid lease and delayed the exploration Solenex is entitled to perform. See Solenex LLC v. Jewell, 156 F. Supp. 3d 83, 84 (D.D.C. 2015) ("No combination of excuses could possibly justify such ineptitude or recalcitrance for such an epic period of time."). Moving from bad faith to worse, rather than comply with this Court's directive to submit an "accelerated schedule" detailing "the tasks remaining to be completed," "the rationales for their necessity" and a timetable "for those tasks to be completed expeditiously," id. at 85–86, the Secretary instead suddenly and unilaterally acted—only after an adverse court decision—to invalidate that lease outright.

Whether the obligor is "a private individual, a municipality, a state, or the United States," a valid contract is property and thus "create[s] vested rights" in the obligee. Lynch v. United States, 292 U.S. 571, 577, 579 (1934). Over eighty years ago, the Supreme Court explained that the Fifth Amendment protects "[r]ights against the United States arising out of a contract with it" and that this constitutional protection prohibits the federal government from "annulling" a valid contract unless it acts pursuant to "the federal police power or some other paramount power." Id. at 579. Indeed, when the federal government "comes down from its position of sovereignty," Winstar Corp., 518 U.S. at 895 n.39 (citation omitted), and enters into a contractual relationship with a private party, its rights and responsibilities mirror the private party's own. As the Supreme Court has repeatedly explained, "[w]hen the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." Mobil Oil, 530 U.S. at 607 (citation and internal quotation marks omitted); see also Franconia Assocs. v. United States, 536 U.S. 129, 141 (2002) (reiterating the basic principle that the federal government's contractual rights and duties "are governed generally by the law applicable to contracts between private individuals" (citation omitted)); Winstar Corp., 518 U.S. at 895; Lynch, 292 U.S. at 579.

Where the federal government can unilaterally cancel a valid contract *decades* after it is formed, "the certain result" is that it "undermin[es] the Government's credibility at the bargaining table and increas[es] the cost of its engagements." Winstar Corp., 518 U.S. at 884; cf. Lynch, 292 U.S. at 580 ("Punctilious fulfillment of contractual obligations is essential to the maintenance of the credit of public as well as private debtors."). Thus, the extraordinary action of retroactive termination of a contract clouds the ability of private entities to conduct business, as contracting often requires a significant initial investment and carries a reasonable expectation of long-term

4

gain.  Contracting, of course, involves some risk, but that risk should not include the possibility that the federal government may unilaterally and arbitrarily deprive contracting parties of the benefit of their bargain.

> II. **The Secretary's Unilateral Cancellation of the Plaintiff's Lease Undermines Public Policy Favoring the Development of Federal Natural Resources.**

The MLA reflects a strong national policy favoring the development of oil, gas, and mineral deposits.  The MLA was passed to "promote the orderly development of the oil and gas deposits in the publicly owned lands of the United States through private enterprise." Harvey v. Udall, 384 F.2d 883, 885 (10th Cir. 1967) (citation omitted).  And since its enactment almost 100 years ago, Congress has consistently passed legislation emphasizing that it serves the national interest to promote oil and gas development on multiple-use federal lands such as the lands that overlie Lease M-53323.  See Mining and Minerals Policy Act of 1970, 30 U.S.C. § 21A (2012) ("The Congress declares that it is the continuing policy of the Federal Government in the national interest to foster and encourage private enterprise in . . . stable domestic mining . . . [including oil and gas]."); Energy Policy Act of 1992, 42 U.S.C. § 13401 (2012) (The goal of the Act is "to strengthen national energy security by reducing dependence on imported oil."); Energy Policy Act, Pub. L. No. 109-58, 119 Stat. 594 (2005) ("An Act to ensure jobs for our future with secure, affordable, and reliable energy").  Likewise, the D.C. Circuit has noted "[t]he general purpose of all these (mineral leasing) acts has been the same, namely, to provide an enlightened method for the disposition of such mineral deposits." Nat'l Res. Def. Council, Inc. v. Berklund, 609 F.2d 553, 555 n.4 (D.C. Cir. 1979) (quoting H.R. No. 398, 66th Cong., 1st Sess. 12 (1919)).  The federal policy favoring oil, gas, and mineral development supports strict limitations on the authority of the Secretary to unilaterally cancel leases.  After all, would-be leaseholders will not make the extensive investments to develop oil and gas on federal land if the oil and gas leases are subject to arbitrary

5

and unilateral cancellation.  See, e.g., Pan Am. Petroleum Corp. v. Pierson, 284 F.2d 649, 655 (10th Cir. 1960) (describing "[c]ertainty of title" as an "elementary prerequisite" for development of natural resources).

The Secretary's unilateral cancellation of Lease M-53323 contravenes the purposes of the MLA because it discourages developers from entering into oil and gas leases with the federal government.  The lease granted Sidney Longwell (and now his successor, Solenex) the "exclusive right and privilege to drill for, mine, extract, remove and dispose of all the oil and gas deposits . . . in the lands leased. . . ."  Rec. at HC00885.  Rather than granting Longwell (or Solenex) the benefit of the lease, the Secretary deviated from the agency's own procedural norms, keeping the lease suspended for more than 30 years.  To make matters worse, the Secretary then canceled the lease decades after the initial contract was made with no regard for the rights of the leaseholder who paid for it.  When entering into the contract decades ago, Longwell (and, subsequently, his successors) had no reason to think—or even imagine—that the benefit of his bargain would be so significantly delayed and then ultimately denied.  And, importantly, it is not clear what would prevent the Secretary from engaging in similar conduct with other developers possessing long-granted federal oil and gas leases.  If anything, it seems likely that the Secretary would be emboldened to take such action against other developers were she to prevail here.

Natural resource development is high-risk and capital-intensive, requiring "important decisions regarding the allocation of scarce resources among investments that are characterized by substantial geological and financial risk."  Saul B. Suslick, et al., Uncertainty and Risk Analysis in Petroleum Exploration and Production, 6 TerrÆ 30, 30 (2009); see also C. Peck Hayne, Jr., Oil and Gas Survey, 34 Tex. Tech L. Rev. 819, 832 (2002) ("[M]any oil and gas operations are risky and dangerous business; things go wrong, and people get hurt and lose money.").  Rational

6

developers will naturally decide against making the significant investments in time, money, and capital required to develop land if, in addition to the attendant risks of oil and gas exploration, they face the additional risk that the government may unilaterally—and at any unspecified time in the future—deprive them of the benefit of their investments.  This is to say nothing about the massive, and unknowable, effect that such uncertainty will have on those who invest—directly and indirectly—in those developers and on the national and local economies to which these developers significantly contribute.  Contractual certainty is necessary to encourage developers to engage in the already risky and expensive business of oil exploration through federal leases.  Supporting the Secretary's actions in this case will signal that oil, gas, and mineral development is not welcome on federal land, a message that flatly contradicts the stated purposes of the MLA and other federal laws.

## CONCLUSION

Amici respectfully request that the Court grant Solenex's motion for summary judgment and enter the relief it has requested.

Dated this 19th day of September 2016.


Respectfully submitted,

/s/ James W. Porter, III
James W. Porter, III (Bar No. 999070)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
Telephone: (202) 393-7150
Facsimile: (202) 719-8332
jporter@bradley.com
*Counsel for Amici Curiae*

and

7

Steven P. Lehotsky
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062
Telephone: (202) 463-5337
*Counsel for The Chamber of Commerce of the United States of America*