IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SOLENEX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. Action No. 13-993 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| SALLY JEWELL, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PIKUNI TRADITIONALIST | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**REPLY BRIEF OF PIKUNI TRADITIONALIST ASSOCIATION, ET AL., TO PLAINTIFF'S SUPPLEMENTAL BRIEF ON SUMMARY JUDGMENT**

Timothy J. Preso (D.C. Bar No. 456531)
Aurora R. Janke (Pro Hac Vice)
Earthjustice
313 E. Main St.
Bozeman, MT 59715
T: 406.586.9699
F: 406.586.9695
E: tpreso@earthjustice.org
E: ajanke@earthjustice.org

*Attorneys for Defendant-Intervenors*
*Pikuni Traditionalist Association, et al.*

# TABLE OF CONTENTS

I.    SOLENEX HAS NOT SHOWN THAT LEASE CANCELLATION WAS
IMPROPER.................................................................................................................1

    A.    Solenex's Overly Narrow Interpretation of Supreme Court Precedent
Should Be Rejected.........................................................................................1

    B.    Solenex Provides No Meaningful Response to Congress's Implicit
Approval of the Secretary's Lease Cancellation Authority ...................................5

    C.    Solenex Cannot Demonstrate Its Entitlement to Bona Fide Purchaser
Protections Under the Mineral Leasing Act..................................................6

    D.    Solenex Fails to Justify Application of Laches or Estoppel ...................................9

II.   SOLENEX'S NEPA AND NHPA ARGUMENTS ARE MERITLESS ..........................18

    A.    Issuance of the Hall Creek Lease Violated NEPA................................................18

    B.    Issuance of the Hall Creek Lease Violated NHPA .............................................22

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES[*]

## FEDERAL CASES

Am. Elec. Power Co. v. Connecticut,
    564 U.S. 410 (2011)......................................................................................8

Amber Res. Co. v. United States,
    538 F.3d 1358 (Fed. Cir. 2008).................................................................11

ATC Petroleum, Inc. v. Sanders,
    860 F.2d 1104 (D.C. Cir. 1988).................................................................12

Bangor Hydro-Elec. Co. v. FERC,
    78 F.3d 659 (D.C. Cir. 1996).......................................................................2

*Bob Marshall Alliance v. Hodel,
    852 F.2d 1223 (9th Cir. 1988) .............................................................19, 20

Bob Marshall Alliance v. Lujan,
    804 F. Supp. 1292 (D. Mont. 1992)...........................................................22

Bob Marshall Alliance v. Watt,
    685 F. Supp. 1514 (D. Mont. 1986)......................................................21–22

*Boesche v. Udall,
    373 U.S. 472 (1963)...................................................................................1–6

Bull S.A. v. Comer,
    55 F.3d 678 (D.C. Cir. 1995).....................................................................10

Calvert Cliffs Coordinating Comm., Inc. v. U.S. Atomic Energy Comm'n,
    449 F.2d 1109 (D.C. Cir. 1971)............................................................12, 20

Cannon v. Univ. of Chicago,
    441 U.S. 677 (1979).....................................................................................6

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,
    467 U.S. 837 (1984).....................................................................................7

City of Milwaukee v. Illinois,
    451 U.S. 304 (1981).....................................................................................8

Conner v. Burford,
    848 F.2d 1441 (9th Cir. 1988) ...................................................................19

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

Del. Riverkeeper Network v. FERC,
    753 F.3d 1304 (D.C. Cir. 2014) .......................................................................................20

Doe v. Gates,
    981 F.2d 1316 (D.C. Cir. 1993) .................................................................................12–13

EEOC v. Aramark Corp.,
    208 F.3d 266 (D.C. Cir. 2000) .........................................................................................2

Fed. Crop Ins. Corp. v. Merrill,
    332 U.S. 380 (1947) .....................................................................................................6, 12

Fund for Animals v. Clark,
    27 F. Supp. 2d 8 (D.D.C. 1998) .......................................................................................14

Griffin & Griffin Expl., LLC v. United States,
    116 Fed. Cl. 163 (2014) .............................................................................................10, 17

Hammond v. Norton,
    370 F. Supp. 2d 226 (D.D.C. 2005) ................................................................................21

Karst Envtl. Educ. & Prot., Inc. v. EPA,
    475 F.3d 1291 (D.C. Cir. 2007) ......................................................................................23

Lykins v. McGrath,
    184 U.S. 169 (1902) ...........................................................................................................9

Lyng v. Nw. Indian Cemetery Protective Ass'n,
    485 U.S. 439 (1988) .........................................................................................................24

Marvin M. Brandt Revocable Trust v. United States,
    134 S. Ct. 1257 (2014) .......................................................................................................3

McCarthy v. Bronson,
    500 U.S. 136 (1991) ...........................................................................................................6

Millard Refrigerated Servs., Inc. v. Sec'y of Labor,
    718 F.3d 892 (D.C. Cir. 2013) ........................................................................................10

Mobil Oil Corp. v. Higginbotham,
    436 U.S. 618 (1978) ...........................................................................................................8

Mobil Oil Exploration & Producing Southeast, Inc. v. United States,
    530 U.S. 604 (2000) .........................................................................................................11

Mont. Wilderness Ass'n v. Fry,
    310 F. Supp. 2d 1127 (D. Mont. 2004) ...........................................................................22

Moore v. Robbins
     96 U.S. 530 (1877).................................................................................................3

Nat'l Indian Youth Council v. Andrus,
     501 F. Supp. 649 (D.N.M. 1980) ........................................................................22

Nat'l Trust for Historic Pres. v. Blanck,
     938 F. Supp. 908 (D.D.C. 1996) ...................................................................23, 25

Nat'l Trust for Historic Pres. v. Blanck,
     203 F.3d 53 (D.C. Cir. 1999) ..............................................................................23

Noble v. Union River Logging R. Co.,
     147 U.S. 165 (1893)...............................................................................................3

Office of Pers. Mgmt. v. Richmond,
     496 U.S. 414 (1990)........................................................................................10, 12

Park County Res. Council v. U.S. Dep't of Agric.,
     817 F.2d 609 (10th Cir. 1987) .............................................................................18

Pit River Tribe v. U.S. Forest Serv.,
     469 F.3d 768 (9th Cir. 2006) ..........................................................................13, 23

New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,
     459 F. Supp. 2d 1102 (D.N.M. 2006) ..................................................................23

New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,
     565 F.3d 683 (10th Cir. 2009) ........................................................................13, 23

Seaton v. Texas Co.,
     256 F.2d 718 (D.C. Cir. 1958) ..............................................................................4

Sierra Club v. EPA,
     322 F.3d 718 (D.C. Cir. 2003) ..............................................................................2

*Sierra Club v. Peterson,
     717 F.2d 1409 (D.C. Cir. 1983) ....................................................12, 18–20, 23, 24

Stop H-3 Ass'n v. Coleman,
     533 F.2d 434 (9th Cir. 1976) ...............................................................................24

United States v. 92 Buena Vista Ave., Rumson, N.J.,
     507 U.S. 111 (1993)...............................................................................................9

United States v. Honeywell Int'l, Inc.,
     841 F. Supp. 2d 112 (D.D.C. 2012) .....................................................................14

United States v. Oakar,
    111 F.3d 146 (D.C. Cir. 1997) ................................................................2

Utah Power & Light Co. v. United States,
    243 U.S. 389 (1917)................................................................9–10

Village of Los Ranchos de Albuquerque v. Marsh,
    956 F.2d 970 (10th Cir. 1992) ................................................................18

Wilson v. Block,
    708 F.2d 735 (D.C. Cir. 1983) ................................................................24

Winkler v. Andrus,
    614 F.2d 707 (10th Cir. 1980) ................................................................7

Winter v. Nat. Res. Def. Council,
    555 U.S. 7 (2008)................................................................14

## STATUTES AND LEGISLATIVE MATERIALS

28 U.S.C. § 1491(a)(1)................................................................18

30 U.S.C. § 184(h)(2) ................................................................6, 7

42 U.S.C. § 1996................................................................23–24

54 U.S.C. § 300320(3) ................................................................22

*54 U.S.C. § 306108 ................................................................22, 24

H.R. Rep. No. 86-1062 (1959)................................................................7, 9

Pub. L. No. 109-432, §§ 403,
    120 Stat. 2922 (2006)................................................................15

## REGULATIONS AND ADMINISTRATIVE MATERIALS

36 C.F.R. § 800.8(a)................................................................23

*43 C.F.R. § 1810.3 ................................................................10–13

43 C.F.R. § 3108.3(d) ................................................................4–5, 5, 17

Clayton W. Williams, Jr.,
    103 IBLA 192 (1988)................................................................8

Floyd Higgins,
    147 IBLA 343 (1999)...........................................................................................................13

**OTHER AUTHORITIES**

U.S. Dep't of Interior, Secretary Jewell, Senator Tester, Blackfeet Nation and
    Devon Energy Announce Cancellation of Oil & Gas Leases in Montana's
    Lewis and Clark National Forest (Nov. 16, 2016), available at
    https://www.doi.gov/pressreleases/secretary-jewell-senator-tester-blackfeet-
    nation-and-devon-energy-announce (last visited Jan. 5, 2017). .......................................16–17

The response brief filed by plaintiff Solenex LLC repeatedly asks this Court to disregard controlling precedent; ignore plain statutory, regulatory, and contractual language; and adopt outlier positions.  Solenex suggests that such extreme actions are necessary in this case to avoid injustice due to the cancellation of its federal mineral lease in the Hall Creek area of the Badger-Two Medicine region, but dismisses the injustice that would befall the public interest if Solenex's position were to prevail.  The Court should reject Solenex's arguments.

## I.    SOLENEX HAS NOT SHOWN THAT LEASE CANCELLATION WAS IMPROPER

Solenex's argument that the Secretary of the Interior lacked authority to cancel the illegally issued Hall Creek lease should be rejected as contrary to well-established precedent. This Court should hew to the weight of authority by recognizing the Secretary's authority to cancel the Hall Creek lease—an authority that is not limited by the bona-fide purchaser protections of Section 27 of the Mineral Leasing Act or by laches or estoppel.

### A.    Solenex's Overly Narrow Interpretation of Supreme Court Precedent Should Be Rejected

Solenex's contention that the Secretary of the Interior lacked authority to cancel the Hall Creek lease misreads the Supreme Court's unanimous decision in Boesche v. Udall, 373 U.S. 472 (1963), and defies a long line of cases broadly applying the Secretary's lease cancellation authority.  In Boesche, the Supreme Court concluded that the Secretary's inherent authority to administratively cancel leases, which derives from her "general powers of management over public lands," was unaffected by passage of the Mineral Leasing Act.  Id. at 476–83.  The Secretary properly exercised this authority when she canceled the Hall Creek lease.

Nevertheless, Solenex dismisses the Supreme Court's statements regarding the Secretary's authority as dicta or "extraneous statements."  Solenex Supplemental Reply to Defendant-Intervenors' Brief (ECF No. 109) ("Solenex Reply") 2.  Solenex attempts to distill

Boesche down to a few sentences, rejecting the majority of the opinion as "clearly erroneous." See id. at 2–3; Solenex Opposition to Federal Defendants' Cross Motion for Summary Judgment (ECF No. 99) ("Solenex Opp.") 9.  Solenex's narrow interpretation of Boesche ignores two fundamental underpinnings of the Supreme Court's holding:  (1) the Secretary's "general powers of management over the public lands" included the authority to administratively cancel a lease, 373 U.S. at 476, and (2) the Mineral Leasing Act "le[ft] unaffected the Secretary's traditional administrative authority to cancel on the basis of pre-lease factors," id. at 478–79.  Without first recognizing the ongoing vitality of the Secretary's inherent lease cancellation authority, the Court could not have reached its ultimate holding that the Secretary properly canceled the Boesche petitioner's lease.  Accordingly, the Supreme Court's essential conclusions about the Secretary's lease cancellation authority are not dicta.  See EEOC v. Aramark Corp., 208 F.3d 266, 272 (D.C. Cir. 2000) (rejecting agency's argument that Supreme Court discussion was dicta when the Court's "interpretation of the safe harbor was essential to its reasoning as well as to its disposition of the claims before it").

Moreover, even if the Supreme Court's essential conclusions could fairly be construed as dicta—which they cannot—they cannot be disregarded as Solenex contends.  Arguments attempting to dismiss Supreme Court reasoning as dicta "carr[y] no weight since 'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.'"  Sierra Club v. EPA, 322 F.3d 718, 724 (D.C. Cir. 2003) (quoting United States v. Oakar, 111 F.3d 146, 153 (D.C. Cir. 1997)); see also Bangor Hydro-Elec. Co. v. FERC, 78 F.3d 659, 662 (D.C. Cir. 1996) ("It may be dicta, but Supreme Court dicta tends to have somewhat greater force—particularly when expressed so unequivocally.").

Solenex responds that this Court should reject the <u>Boesche</u> reasoning because it allegedly conflicts with earlier Supreme Court precedent. <u>See</u> Solenex Reply 2–3. Solenex provides no authority for the proposition that federal district courts may reject language in Supreme Court rulings whenever the lower courts feel that the language conflicts with precedent. To adopt this proposition would run afoul of basic Article III principles and the D.C. Circuit's instruction, as discussed above.

Moreover, Solenex's claims of inconsistency rest on a point that the Supreme Court considered and rejected in <u>Boesche</u>. Solenex's main support for its contention is the Supreme Court's decision in <u>Noble v. Union River Logging R. Co.</u>, 147 U.S. 165 (1893), Solenex Opp. 10-11, which held that the Secretary of the Interior could not administratively revoke a railroad right of way. 147 U.S. at 176–77. Key to the <u>Noble</u> decision was the Court's conclusion that a right of way was akin to a land patent. <u>See id.</u> In contrast, <u>Boesche</u> rejected the petitioner's argument that relied in part on <u>Noble</u> to assert that earlier land patent decisions limited the Secretary's lease cancellation authority. <u>See</u> Brief for Petitioner at 25, <u>Boesche</u>, 373 U.S. 472 (No. 332) (arguing that <u>Noble</u> "extended the principle enunciated in <u>Moore v. Robbins</u>[, 96 U.S. 530 (1877)]"); <u>Boesche</u>, 373 U.S. at 477-78 (rejecting land patent case law, including <u>Moore</u>, as a basis for restricting the Secretary's authority). Similarly, this Court should reject Solenex's attempt to relitigate these arguments that were rejected more than 50 years ago in <u>Boesche</u>.[1]

Solenex further contends that its narrow interpretation of <u>Boesche</u> is supported by the Court's statement that it was not "open[ing] the door to administrative abuses." Solenex Reply 2, 3 (citing <u>Boesche</u>, 373 U.S. at 485). But in so stating, the Supreme Court noted that

---

[1] Given the <u>Boesche</u> Court's rejection of petitioner's argument, the Supreme Court's subsequent conclusion that railroad rights of way do not convey a fee title does not render <u>Noble</u> inconsistent with <u>Boesche</u>. <u>See</u> Solenex Opp. 11 (citing <u>Marvin M. Brandt Revocable Trust v. United States</u>, 134 S. Ct. 1257, 1264 (2014)).

administrative appeals and access to judicial review provide the necessary protection against administrative abuses. Boesche, 373 U.S. at 485–86. It did not say that essential reasoning of its opinion must be disregarded to provide such protection. See id.

Solenex's position is further undermined by a uniform body of case law recognizing the Secretary's broad authority over leasing on public lands, including her lease cancellation authority in a variety of factual contexts. See PTA Brief Opposing Solenex Motion for Summary Judgment (ECF No. 104) ("PTA Opp.") 2–3; Federal Defendants' Cross Motion for Summary Judgment (ECF No. 93-1) ("Fed. Br.") 19–20. Solenex fails to explain how its narrow reading of Boesche can be reconciled with this long line of case law supporting a much broader reading of Boesche. Instead, Solenex asks this Court to read Boesche differently than any other court. See Solenex Reply 1–5.

Further, to the extent the distinction between the Hall Creek lease cancellation and the lease cancellation in Boesche matters, it counsels in favor of a broader application of the Secretary's lease cancellation authority in this case because the Secretary acted in the public interest rather than in the interest of a competing private party. See PTA Opp. 3–4 (citing Seaton v. Texas Co., 256 F.2d 718, 722 (D.C. Cir. 1958)). As the D.C. Circuit has explained, "the Secretary's latitude is not the same in all circumstances. When the controversy is fundamentally between two private interests … his discretion is not … as great as when the controversy is between private interests on one hand and the Secretary 'as guardian of the people,' on the other." Seaton, 256 F.2d at 722. Solenex ignores Seaton.

Solenex's contention that this result means that "no prudent oil and gas developer would bid on a federal oil and gas lease," Solenex Reply 3, is overstated. The Supreme Court decided Boesche in 1963 and the Interior Secretary has declared by regulation that "[l]eases shall be

subject to cancellation if improperly issued" at least since 1983.  43 C.F.R. § 3108.3(d); see PTA

Opp. 5 (discussing § 3108.3 promulgation).  The Interior Department has successfully auctioned

thousands of federal mineral leases since that time.  Thus, a straight-forward application of

Boesche neither "defeat[s] the purpose of the MLA," Solenex Reply 3, nor dooms federal

mineral leasing, see Boesche, 373 U.S. at 485 n.14 (rejecting similar argument).

### B. Solenex Provides No Meaningful Response to Congress's Implicit Approval of the Secretary's Lease Cancellation Authority

Solenex further contends that Congress has not acquiesced in the Secretary's lease

cancellation authority, despite Congress's failure to restrict or remove that prominently asserted

authority since Boesche was decided.  Solenex argues that even if Congress has ratified the

Secretary's general lease cancellation authority, Congress has not ratified the Secretary's specific

action in this case.  Solenex Reply 4–5.  However, PTA does not argue that Congress has ratified

the precise lease cancellation in this case.  Rather, Congress's ratification is much broader.  As

the Supreme Court observed in Boesche, "Congress has never interfered with [the Secretary's]

long-continued administrative practice" of canceling permits and leases, despite amending the

Mineral Leasing Act more than twelve times between its passage and Boesche.  373 U.S. at 483.

Given Congress's inaction, the Supreme Court determined that "[t]he conclusion is plain that

Congress, if it did not ratify the Secretary's conduct, at least did not regard it as inconsistent with

the Mineral Leasing Act."  Id.  Since Boesche was decided, the record of administrative and

congressional action concerning the mineral leasing program bolsters the conclusion that

Congress has accepted, and effectively approved, the Secretary's inherent lease cancellation

authority.  See PTA Opp. 5–6.  In 1983, the Interior Department codified its existing practice of

canceling improperly issued leases as recognized in Boesche.  See PTA Opp. 5 (discussing 43

C.F.R. § 3108.3(d)).  Since then, Congress has amended the Mineral Leasing Act three times,

including amending a provision in Section 31 of the Mineral Leasing Act that expressly references lease cancellation.  See id. at 6.  Yet, Congress has not interfered with the Interior Department's lease cancellation authority.

Solenex contends that it cannot be inferred that Congress was aware of the Secretary's interpretation of her authority.  Solenex Reply 4–5.  But it is hard to imagine a more prominent way for an agency to inform Congress of its interpretation of its authority than to codify that interpretation and publish it in the Federal Register.  See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947) ("Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents"); see also Cannon v. Univ. of Chicago, 441 U.S. 677, 696–97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law ….").  Moreover, as Solenex concedes, Solenex Reply 5 n.4, it can be presumed that Congress is familiar with the Supreme Court's decision in Boesche, see McCarthy v. Bronson, 500 U.S. 136, 140 (1991).  Yet, Congress still chose not to limit or invalidate the Interior Department's lease cancellation authority in subsequent revisions of the Mineral Leasing Act.  See supra.  Congress's failure to revise or repeal the Interior Department's authority to administratively cancel invalidly issued leases further undermines Solenex's challenge to that authority.

### C.  Solenex Cannot Demonstrate Its Entitlement to Bona Fide Purchaser Protections Under the Mineral Leasing Act

Solenex claims that it is entitled to bona fide purchaser protections despite the plain language of the Mineral Leasing Act's bona fide purchaser provision limiting such protections to leases issued in violation of that Act.  30 U.S.C. § 184(h)(2) ("Section 27") ("The right to cancel or forfeit for violation of any of the provisions of this chapter shall not apply so as to affect adversely the title or interest of a bona fide purchaser of any lease ….") (emphasis added).  As

PTA demonstrated, a plain-language reading of Section 27 is supported by legislative history demonstrating that Congress intended to protect innocent purchasers from lease cancellation, forfeiture, or suspension due to violations of the Mineral Leasing Act by their predecessors in interest.  See PTA Opp. 6–8 (quoting H.R. Rep. No. 86-1062, at 2620 (1959)).  Solenex does not argue that either the plain language of the Mineral Leasing Act or the associated legislative history supports its bona fide purchaser argument.  See Solenex Reply 5–8.

Solenex instead contends that this Court should ignore the plain language of the Mineral Leasing Act and its supporting legislative history because PTA's argument is allegedly a post-hoc rationalization.  See Solenex Reply 5–6.  Solenex's position lacks merit.  Although the Secretary's discussion of the bona fide purchaser issue was terse, it relied on Winkler v. Andrus, 614 F.2d 707 (10th Cir. 1980).  See ECF No. 68-1 at 1 n.2.  Winkler expressly stated that Section 27(h) was designed to protect bona fide purchasers "who acquired their holdings in good faith from the possible consequences of Mineral Leasing Act violations by their predecessors in title." 614 F.2d at 711 (emphasis added).  Winkler—and the Secretary's decision based on Winkler—thus accord with the plain language of Section 27(h) and its legislative history.

Moreover, Solenex's position should be rejected because it effectively asks this Court to ignore the plain language of the Mineral Leasing Act.  See 30 U.S.C. § 184(h)(2).  It is a basic principle of statutory interpretation that the plain language of the statute controls.  See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  Solenex fails to contest that the plain language of the statute bars its claim.  Solenex cannot advance an affirmative defense that Congress has declined to permit in the circumstances presented here.

7

Solenex further contends that this Court should reject PTA's argument because PTA cited the Interior Board of Land Appeals ("IBLA") decision in Clayton W. Williams, Jr., 103 IBLA 192, 210 (1988), to demonstrate the Interior Department's application of the Secretary's lease cancellation authority to a lease issued in violation of NEPA, a point relevant to the question of congressional awareness of the Secretary's position.  Solenex Reply 6 (citing PTA Opp. 5).  But PTA did not endorse the Clayton W. Williams, Jr. holding on the issue of Section 27(h)'s scope, see PTA Opp. 5–6, which is unpersuasive given that the IBLA applied the bona fide purchaser provision without first addressing whether the Mineral Leasing Act's statutory language made it applicable in the context of a NEPA violation.  See 103 IBLA at 211–12.  Absent any IBLA reasoning to explain how Section 27(h) may be applied beyond the limits of its plain language, the Board's decision on this point, which was never subjected to judicial review, should not trump the plain language of the Mineral Leasing Act.

Solenex claims that even if it is not entitled to bona fide purchaser protection under the Mineral Leasing Act, it still can avail itself of such protection under the common law.  Solenex Reply 6–7.  But where, as here, Congress has spoken directly on an issue, federal common law claims generally are displaced.  See Am. Elec. Power Co. v. Connecticut, 564 U.S. 410, 424 (2011) (holding that the Clean Air Act displaces federal common law nuisance claims seeking abatement of carbon-dioxide emissions); City of Milwaukee v. Illinois, 451 U.S. 304, 314 (1981) ("[W]hen Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears."); Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625–26 (1978) (concluding that the Death on the High Seas Act displaces general maritime law claims for damages).  Here, by expressly providing for a bona fide purchaser defense only for violations of the Mineral Leasing Act,

Congress displaced application of such a defense in other contexts under the common law. Indeed, the cases cited by Solenex in support of its common law argument all precede passage of the bona fide purchaser provision in Section 27(h).  See Solenex Reply 6–8; Solenex Opp. 18; H.R. Rep. No. 86-1062, at 2620 (1959) (legislative history for Section 27(h)(2)).

Even if bona fide purchaser protections applied, Solenex is not a bona fide purchaser because it failed to pay consideration for the Hall Creek lease.  Despite acquiring the lease for free from Sidney Longwell, the sole owner of Solenex, see ECF No. 93-2 at ¶ 7 n.3; ECF No. 89-2 ¶ 73, Solenex contends that its assumption of obligations and duties under the lease constitutes valuable consideration, see Solenex Reply 7.  Under Solenex's reasoning, however, every assignee of a lease would provide consideration merely by taking on the obligations and duties implicit in the lease, even if the lease were assigned as a gift.  Such an outcome runs contrary to the basic principle that a giftee "cannot come within the scope of the term bona fide purchaser."  Lykins v. McGrath, 184 U.S. 169, 173 (1902) (quotation marks omitted); see also United States v. 92 Buena Vista Ave., Rumson, N.J., 507 U.S. 111, 123 (1993) (distinguishing bona fide purchasers from innocent owners who acquire property by gift).  Accordingly, even if the plain language of Section 27(h) could be ignored—which it cannot—Solenex cannot avail itself of a bona fide purchaser defense.[2]

### D.       Solenex Fails to Justify Application of Laches or Estoppel

Solenex attacks the lease cancellation on the basis of laches, Solenex Reply 8-10, notwithstanding the U.S. Supreme Court's holding that "laches or neglect of duty on the part of

---

[2] Solenex further claims that a 1993 lawsuit challenging both the Hall Creek lease and an associated drilling permit was arguably dismissed with prejudice.  Solenex Opp. 23 n.11 (citing ECF No. 45-9 at 44–64).  To the contrary, the Montana lawsuit was administratively terminated "without prejudice to the rights of the parties to reopen the proceedings for good cause shown." See ECF No. 45-5 at 38–39 (emphasis added).

officers of the government is no defense to a suit by it to enforce a public right or protect a public interest," <u>Utah Power & Light Co. v. United States</u>, 243 U.S. 389, 409 (1917).  Similarly, Solenex asks this Court to estop federal defendants, notwithstanding that the U.S. Supreme Court has "reversed every finding of estoppel" against the government that it has reviewed, <u>Office of Pers. Mgmt. v. Richmond</u>, 496 U.S. 414, 422 (1990), and that controlling case law directs that the bar for any such estoppel—to the extent estoppel applies at all, <u>see</u> <u>id.</u> at 423 (declining to resolve this issue)—is "high," <u>Millard Refrigerated Servs., Inc. v. Sec'y of Labor</u>, 718 F.3d 892, 897–98 (D.C. Cir. 2013), and its use "must be rigid and sparing," <u>Bull S.A. v. Comer</u>, 55 F.3d 678, 681 (D.C. Cir. 1995) (quotation marks and citation omitted).

As set forth in PTA's opening brief, the reasons to reject these Solenex arguments include not just the foregoing authorities, but also the terms of the Hall Creek lease itself, which incorporates "all rules and regulations of the Secretary of the Interior now or hereafter in force … ."  ECF No. 45-9 at 19; <u>see</u> PTA Opp. 9–12.  Those rules and regulations include 43 C.F.R. § 1810.3, which precludes application of laches to prevent enforcement of a public right or protection of a public interest, or application of estoppel to achieve a result that the law does not sanction or permit.  Accordingly, the very terms of Solenex's contract with federal defendants preclude application of the laches and estoppel theories that Solenex now advances.  <u>See</u> <u>Griffin & Griffin Expl., LLC v. United States</u>, 116 Fed. Cl. 163, 176–77 (2014) (holding that federal government's lease cancellation did not breach its oil and gas lease contracts with the plaintiffs because the leases expressly incorporated the Secretary of the Interior's regulations, which included the regulation authorizing cancellation of improperly issued leases).

Solenex's arguments to the contrary are unavailing:

First, Solenex claims that the relevant lease provision "merely incorporated into the lease those regulations promulgated to implement the MLA." Solenex Reply 8. However, the language of the lease term contains no such limitation. See ECF No. 45-9 at 19. Further, Solenex's claim that it would be "unreasonable" to read the Hall Creek lease to incorporate 43 C.F.R. § 1810.3, Solenex Reply 8–9, relies on authorities that actually demonstrate the opposite. The Supreme Court in Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000), held that an offshore mineral lease's "catchall" term subjecting lease rights to "all other applicable statutes and regulations" was limited only in that it "must include only statutes and regulations already existing at the time of the contract" as opposed to later-enacted authorities. Id. at 616; accord Amber Res. Co. v. United States, 538 F.3d 1358, 1368 (Fed. Cir. 2008). Not only did the Mobil Court's analysis offer nothing to support Solenex's contention that such a lease term must be read to incorporate only those regulations promulgated to implement the relevant mineral leasing act, but the temporal limitation recognized by Mobil offers no help to Solenex because the Interior Department promulgated 43 C.F.R. § 1810.3 in 1970, well before issuance of the Hall Creek lease. See PTA Opp. 10. Accordingly, the lease's incorporation of 43 C.F.R. § 1810.3 was part of the fundamental bargain that Solenex's predecessor struck with the government when it signed the Hall Creek lease contract.

Second, Solenex argues that 43 C.F.R. § 1810.3 is inapplicable "because Solenex is not seeking to revive a void lease." Solenex Reply 9–10. Solenex attempts to derive this limitation on 43 C.F.R. § 1810.3 from the language of section 1810.3(b), which prevents application of estoppel when it would "cause to be done what the law does not sanction or permit." Yet the range of actions that the law does not sanction or permit extends well beyond revival of a void lease. Most importantly for this case, controlling Circuit authority establishes that such unlawful

actions include violation of the National Environmental Policy Act ("NEPA") through issuance of a federal onshore mineral lease without full analysis of post-leasing environmental consequences in a pre-leasing environmental impact statement ("EIS"), see Sierra Club v. Peterson, 717 F.2d 1409, 1415 (D.C. Cir. 1983), and without legitimate pre-leasing consideration of the no-action alternative of forgoing mineral leasing, see Calvert Cliffs Coordinating Comm., Inc. v. U.S. Atomic Energy Comm'n, 449 F.2d 1109, 1114 (D.C. Cir. 1971).  Both of these unlawful actions occurred with respect to the Solenex lease.  Application of estoppel, as requested by Solenex, would effectively excuse these unlawful actions in violation of 43 C.F.R. § 1810.3(b) and, through its incorporation into the Hall Creek lease, in contravention of Solenex's contract with federal defendants.

This conclusion is not altered by Solenex's invocation of past statements by federal officials that erroneously asserted the validity of the Hall Creek lease.  Solenex Reply 10. Misleading statements by government officials are inherently present in any case in which estoppel against the government has been considered.  Yet the Supreme Court steadfastly has concluded that "not even the temptations of a hard case" justified application of estoppel against the government given the public interest that underlies enforcement of statutory and regulatory requirements.  Richmond, 496 U.S. at 420 (quotations omitted); see also ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988) ("[W]e are aware of no case in which this court has applied [estoppel] against the government.").  Rather, "[w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."  Fed. Crop Ins. Corp., 332 U.S. at 384.  Accordingly, "when

government employees offer assurances that conflict with federal law, they do not speak for the United States." Doe v. Gates, 981 F.2d 1316, 1321 (D.C. Cir. 1993).

As for Solenex's citation of Floyd Higgins, 147 IBLA 343 (1999) (cited in Solenex Reply 9), that ruling, which received no judicial review, is not inconsistent with 43 C.F.R. § 1810.3(b) because the IBLA expressly found that "this is not a situation where estoppel will result in [the appellants] being granted a right not authorized by law," id. at 351; compare 43 C.F.R. § 1810.3(b) (precluding application of estoppel to "cause to be done what the law does not sanction or permit"). For reasons already stated, the same conclusion does not apply here.

Third, Solenex asserts that no significant public interest would be harmed by estopping federal defendants in this case. Solenex Reply 10–14. Solenex contends that any public interest in enforcing NEPA and the National Historic Preservation Act ("NHPA") is insufficient to preclude estoppel because these "are merely procedural statutes" and therefore cannot trump mineral lease rights. Id. at 12. Yet federal appellate courts have repeatedly subjected federal mineral leasing to the requirements of NEPA and NHPA, including by invalidating or prohibiting development of such leases based on violations of these statutes—a result that is irreconcilable with Solenex's contention that NEPA and NHPA cannot trump "contract rights," id.; see, e.g., New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 716–19 (10th Cir. 2009) (holding that issuance of mineral lease absent pre-leasing analysis of reasonably foreseeable site-specific development impacts violated NEPA); Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768, 788 (9th Cir. 2006) (holding that geothermal lease extensions "must be undone" to remedy NEPA and NHPA violations); see also Part II, infra.

To be sure, as Solenex observes, Solenex Reply 12, courts have held that the public interests underlying NEPA and NHPA do not automatically override every other consideration in

13

every case, see, e.g., Winter v. Nat. Res. Def. Council, 555 U.S. 7, 32–33 (2008) (holding that national security interests trumped environmental concerns in NEPA case)—nor, contrary to Solenex's argument, does PTA contend otherwise.  However, as set forth infra, in this case there is no basis for this Court to determine that the public interest favors excusing NEPA and NHPA violations because the countervailing mineral development interests that Solenex invokes are not significantly implicated.  Moreover, Solenex ignores that Winter and similar decisions reflect judicial balancing of the equities on the clean slate of an injunction determination, not in determining whether applying the disfavored doctrine of estoppel against the federal government would damage the public interest.  See United States v. Honeywell Int'l, Inc., 841 F. Supp. 2d 112, 114 (D.D.C. 2012) (holding that standard for applying estoppel against government "is an exacting one"; "'There is a clear presumption in this Circuit against invoking the doctrine [of equitable estoppel] against government actors in any but the most extreme circumstances.'") (quotation marks omitted).  Where courts confront the estoppel context, the rule is established that estoppel against the government, if available at all, must not cause undue damage to the public interest.  See PTA Opp. 12 (citing cases).  Here, the nullification of NEPA and NHPA protections that would attend such an estoppel precludes a finding that the established public interests underlying these statutes will not be unduly harmed.  See, e.g., Fund for Animals v. Clark, 27 F. Supp. 2d 8, 15 (D.D.C. 1998) ("[T]he public interest would be served by having the federal defendants address the public's expressed environmental concerns, as encompassed by NEPA, by complying with NEPA's requirements.").

Application of Solenex's requested estoppel would also harm the public's interest in maintaining the environmental and cultural values of the Badger-Two Medicine region of the Lewis and Clark National Forest.  This public interest has been repeatedly recognized in a series

14

of federal agency and congressional decisions spanning the past 15 years.  See PTA Opp. 14–15.
Solenex does not significantly contest this point, but argues that the Tax Relief & Health Care
Act of 2006, which withdrew the Badger-Two Medicine area from future mineral leasing,
implicitly recognized the legitimacy of existing mineral leases in the area by preserving "valid
existing rights" and making tax benefits available for existing leaseholders who voluntarily
relinquished their holdings.  Pub. L. No. 109-432, §§ 403(b)(1), 403(c), 120 Stat. 2922, 3050–53
(2006) (discussed in Solenex Reply 12–13).  However, a more reasonable reading of this
legislation is that Congress passed no judgment regarding which existing rights in the area might
be "valid," but instead left that determination to independent processes—especially given that
nothing in the legislation addresses the validity of then-existing mineral rights.

Solenex also contends that PTA is somehow disqualified from asserting the public's
interest in the environmental and cultural values of the Badger-Two Medicine region because no
appeals were filed in connection with issuance of the Hall Creek lease in 1982.  Solenex Reply
13–14.  To support this argument, Solenex invokes case law requiring parties to raise their
arguments before an agency or face waiver in subsequent litigation challenging the agency's
decision.  See id.  However, this case does not present PTA's challenge to the 1982 Hall Creek
lease issuance decision, but rather Solenex's challenge to the federal defendants' 2016 lease
cancellation decision.  Accordingly, PTA's satisfaction of exhaustion requirements is not at
issue.  What is at issue is the harm to the public interest if estoppel were applied to reverse the
federal defendants' lease cancellation decision, and, as intervenors, PTA is entitled to specify for
this Court the environmental and cultural interests at stake.  Indeed, this Court recognized that
intervenors "have environmental and cultural interests in the lease area stemming from their use
of the land" and necessarily reaffirmed that conclusion in its recent order granting PTA's

15

intervention.  ECF No. 21 at 2–3; see also Minute Order (Nov. 28, 2016) (granting PTA intervention).  Solenex has identified no legitimate reason why PTA now "cannot be heard to complain," Solenex Reply 14, about Solenex's bid to estop federal defendants in derogation of these established public interests.[3]

To counter the public interests that would suffer harm by Solenex's requested estoppel, Solenex asserts a public interest in "development of the country's oil and gas resources and … related national security benefits."  Solenex Reply 11.  However, the likely impact of this case on such interests has always been minimal given the BLM's conclusion that the odds that Solenex's desired exploratory well on the Hall Creek lease "will be a 'dry hole' ranges from 84:1 to 98:1," 1990 EIS at IV-1 (FS 1366), and the probability that any test well would "lead to additional producing wells is about 1 percent," id.  Events that have occurred since the submission of PTA's opening brief further undermine Solenex's argument.  On November 16, 2016, Devon Energy, one of the nation's leading independent oil and natural gas exploration and production companies, joined with Interior Department officials to announce its agreement to the cancellation of 15 mineral leases encompassing more than 32,000 acres of public lands within the Badger-Two Medicine region.[4]  This development underscores that the public interest weighs against Solenex's position; as Devon's CEO explained:  "We know how important this is to the Blackfeet people, and we appreciate the work the Interior Department has done to make it possible.  For Devon, cancellation of these leases at this time is simply the right thing to do."[5]  It

---

[3] The same response applies to Solenex's invocation of this same exhaustion/waiver argument in the NEPA context.  See Solenex Reply 19.

[4] See U.S. Dep't of Interior, Secretary Jewell, Senator Tester, Blackfeet Nation and Devon Energy Announce Cancellation of Oil & Gas Leases in Montana's Lewis and Clark National Forest (Nov. 16, 2016), available at https://www.doi.gov/pressreleases/secretary-jewell-senator-tester-blackfeet-nation-and-devon-energy-announce (last visited Jan. 5, 2017).

[5] Id.

also demonstrates that significant oil and gas development and any related energy security benefits are not at stake in this case.  This is because cancellation of the Devon leases leaves only two remaining mineral leases in the Badger-Two Medicine region.[6]  Accordingly, even if the Solenex lease were reinstated—which it should not be—the remaining scattered lease parcels in the Badger-Two Medicine region do not provide a land base for the infrastructure that BLM projected would be associated with potential oil and gas field development in the area.  See 1990 FEIS IV-3 (FS 001368) (map depicting potential oil and gas field sites and development corridors in Badger-Two Medicine region).  Further, given that Congress withdrew the Badger-Two Medicine region from mineral leasing in 2006, no new leases may be issued.  Therefore, the energy development interests invoked by Solenex are not significantly implicated, and cannot outweigh the public interests in enforcement of NEPA and NHPA and maintenance of the environmental and cultural values of the Badger-Two Medicine region.

This does not mean, as Solenex contends, that Solenex's lease is not "worth the paper it is written on."  Solenex Reply 11.  To the contrary, the Court of Federal Claims has held that a party who fails to receive a valid leasehold due to the Interior Department's improper conveyance of a federal mineral lease may pursue a claim for a breach "of the express terms of the contract[]" granting the exclusive right to drill on the lease parcel, "as well as the implied warranty of title" that is inherent in such a conveyance—including in the situation where the lease was lawfully canceled by the Department pursuant to 43 C.F.R. § 3108.3(d).  Griffin & Griffin Expl., LLC, 116 Fed. Cl. at 175–77.  Accordingly, Solenex may have a cause of action against the government for contractual damages under such a theory, although jurisdiction over any such claim would be vested in the U.S. Court of Federal Claims under the Tucker Act, rather

---

[6] Id.

17

than this Court.  See 28 U.S.C. § 1491(a)(1).  Solenex's assertion that estoppel must apply to prevent the Secretary of the Interior from acting, without legal consequence, to "destroy valuable property interests and contract rights with a mere stroke of her pen," Solenex Reply 10, ignores the apparent opportunity to pursue such a contractual remedy.

## II.     SOLENEX'S NEPA AND NHPA ARGUMENTS ARE MERITLESS

Solenex offers a series of arguments in an effort to demonstrate that issuance of the Hall Creek lease complied with NEPA and NHPA.  None has merit.

### A.     Issuance of the Hall Creek Lease Violated NEPA

Solenex's NEPA argument again asks this Court to disregard controlling authority.  Solenex ignores the D.C. Circuit's ruling in Sierra Club v. Peterson, 717 F.2d at 1413–15, which held that NEPA requires a pre-leasing EIS to consider the environmental impacts of federal mineral leasing for surface occupancy.  Solenex contends that this Court should instead follow the contrary Tenth Circuit decision in Park County Resource Council v. U.S. Department of Agriculture, 817 F.2d 609, 623–24 (10th Cir. 1987), overruled in other part by Village of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970, 973 (10th Cir. 1992),  Solenex Reply 17.  However, the D.C. Circuit—in which Solenex filed this case—has held that, "[t]o comply with NEPA, the [government] must either prepare an EIS prior to leasing or retain the authority to preclude surface disturbing activities until an appropriate environmental analysis is completed."  Peterson, 717 F.2d at 1415.  The Interior and Agriculture Departments failed to prepare an EIS prior to issuing the Hall Creek lease, yet that lease purported to authorize surface occupancy and development of the leasehold.  See ECF No. 45-12 at 1–10 (Hall Creek lease).  Thus, Peterson establishes that these agencies violated NEPA in issuing the Hall Creek lease.

This result does not "elevate[] form over function," Solenex Reply 17, but instead addresses an important practical concern.  Peterson arose from the same post-1980 federal mineral leasing initiative that yielded the Hall Creek lease.  The federal government asserted in connection with that initiative that leasing was a mere paper transaction posing "'no significant adverse effects on the human environment,'" and that, for this reason, an EIS presenting a thorough analysis of the environmental impacts of oil and gas development in the leased areas could be postponed until a specific drilling project was proposed.  Peterson, 717 F.2d at 1413 (quoting agency NEPA determination in that case).  The D.C. Circuit rejected that approach for reasons that are eminently practical:

> Even assuming, arguendo, that all lease stipulations are fully enforceable, once the land is leased the Department no longer has the authority to preclude surface disturbing activities even if the environmental impact of such activity is significant.  The Department can only impose "mitigation" measures upon a lessee who pursues surface disturbing exploration and/or drilling activities.  None of the stipulations expressly provides that the [Interior] Department or the Forest Service can prevent a lessee from conducting surface disturbing activities.  Thus, with respect to [leases authorizing surface occupancy], the decision to allow surface disturbing activities has been made at the leasing stage and, under NEPA, this is the point at which the environmental impacts of such activities must be evaluated.

Id. at 1414 (footnote omitted) (emphasis in original).   The Ninth Circuit adopted the Peterson holding in Conner v. Burford, 848 F.2d 1441, 1449 (9th Cir. 1988), and applied it again in Bob Marshall Alliance v. Hodel, 852 F.2d 1223, 1227–28 (9th Cir. 1988).

The federal defendants' pre-leasing NEPA analysis for the Hall Creek lease reflects the same agency errors that animated Peterson and its progeny.  Like the unlawful NEPA determination rejected in Peterson, the pre-leasing environmental assessment ("EA") signed in February 1981 for the Hall Creek lease erroneously asserted that no EIS was warranted because "[l]ease issuance is an action which does not directly result in effects on the environment," and

19

wrongly claimed that "a leasing decision does not irreversibly commit the Forest Service to permit activity which would result in unacceptable effects."  ECF No. 45-10 at 10, 46.  Based on this flawed reasoning, the EA offered only generic descriptions of environmental impacts that may be associated with oil and gas development and did not even attempt to consider the impacts of development on specific parcels, see id. at 63–71, or the cumulative effects of the proposed leasing decision together with other mineral activity in the surrounding area, see id. at 28 ("The cumulative effects of oil and gas activity on National Forest and adjacent lands are impossible to predict at this time … because they depend on the approval or denial of specific industry proposals submitted in the future[.]"); cf. Del. Riverkeeper Network v. FERC, 753 F.3d 1304, 1319 (D.C. Cir. 2014) (holding that NEPA requires meaningful analysis of cumulative impacts).  In sum, far from exhibiting the "comprehensive nature" that Solenex claims, Solenex Reply 17, the pre-leasing EA for the Hall Creek leasing decision exhibited the same deficiencies that prompted the D.C. Circuit to find a NEPA violation in Peterson.

Solenex equally errs in claiming that the pre-leasing EA for the Hall Creek lease adequately considered the no-action alternative of "total abandonment of the project," as required by NEPA.  Calvert Cliffs, 449 F.2d at 1114.  Solenex claims that Alternative 1 in the EA constituted the no-action alternative.  Solenex Reply 18.  But Alternative 1 did not embody "the option of not issuing any oil and gas leases."  Bob Marshall Alliance, 852 F.2d at 1228.  Rather, Alternative 1 proposed merely to "delay recommendations on leasing until completion of the Forest Plan."  ECF No. 45-10 at 48.  Further, completion of the forest plan was not "speculation," Solenex Reply 20, but was imminently expected in October 1981.  See ECF No. 45-10 at 48.  While the Forest Service said Alternative 1 was "interpreted as having no effects," id. at 62 (emphasis added) (quoted in part in Solenex Reply 18), this agency interpretation was

belied by the EA's own analysis concluding that the "long-term" environmental effects of Alternative 1—meaning simply those anticipated after October 1981—"would probably be the same as" alternatives proposing immediate leasing.  Id. at 75.  In fact, the Forest Service concluded in the EA that this so-called no-action alternative would inflict equal or even more severe impacts than leasing alternatives on "[p]ristine or undeveloped areas," threatened and endangered species and their habitat, and "[r]ecreation and visual quality" in the period after October 1981.  Id. at 76 (Table 5).  This analysis therefore failed to allow decision makers or the public to legitimately compare the environmental consequences of leasing versus no-leasing options.  See Hammond v. Norton, 370 F. Supp. 2d 226, 241 (D.D.C. 2005) (holding that NEPA requires consideration of no-action alternative to enable meaningful comparison of taking versus forgoing proposed activity).[7]

　　　　Nor is Solenex correct to argue that even this deficient approach to the no-action alternative was available as a policy option for agency officials at the time they decided to issue the Hall Creek lease.  Solenex Reply 18–19.  Rather, the Forest Service asserted that Alternative 1's proposal for delayed leasing was "in conflict with National and Regional Forest Service policy" and rejected it on that basis.  See ECF No. 45-10 at 48, 78.  Contrary to Solenex's argument, Solenex Reply 18 n.14, this agency rationale offers no meaningful distinction from the Forest Service's position in Bob Marshall Alliance, where the court found a NEPA violation because the Forest Service dismissed a no-leasing alternative on the basis that then-"current policy" required its rejection, Bob Marshall Alliance v. Watt, 685 F. Supp. 1514, 1520–21 (D.

---

[7] Solenex suggests that Alternative 4 in the EA was also a substitute for the no-leasing option. Solenex Reply 19–20.  However, Alternative 4 contemplated activities on the surface of the leasehold that would not occur under a legitimate no-leasing option and would result in no leasing only if lease applicants rejected the no-surface-occupancy condition.  ECF No. 45-10 at 49.  In any case, the Forest Service said it lacked authority to implement Alternative 4 so it could not function as a meaningful no-action alternative.  Id. at 78.

Mont. 1986).  Thus, even the alternative of delaying lease issuance—which was not a legitimate

no-leasing alternative anyway—was merely listed by the Forest Service "without any meaningful

consideration," which "will not suffice to satisfy the mandate of NEPA." Id. at 1521.[8]

### B.    Issuance of the Hall Creek Lease Violated NHPA

Solenex's NHPA arguments are equally misguided.  The NHPA defines an

undertaking—the federal action triggering NHPA review, see 54 U.S.C. § 306108—as "a

project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of

a Federal agency including … those requiring a Federal permit, license, or approval," id.

§ 300320(3).  Federal mineral leases are undertakings requiring NHPA review prior to issuance.

Mont. Wilderness Ass'n v. Fry, 310 F. Supp. 2d 1127, 1152 (D. Mont. 2004).  It is undisputed

that no such review occurred before issuance of the Hall Creek lease.  See Solenex Reply 23

(noting that full NHPA compliance was deferred until after lease issuance); ECF No. 55-1 at 7.

Nevertheless, Solenex contends, based on a single district court case, that issuance of the

Hall Creek lease was not an "undertaking" requiring NHPA review.  Solenex Reply 21–23

(citing Nat'l Indian Youth Council v. Andrus, 501 F. Supp. 649 (D.N.M. 1980)).  Instead,

Solenex contends that only subsequent approval of the Application for Permit to Drill ("APD")

on the Hall Creek lease triggered NHPA review because the APD (and not the lease) allowed

surface disturbing activities.  Solenex's position cannot be reconciled with Circuit precedent

---

[8] Solenex also attempts to distinguish the remedial lease cancellation order in the Bob Marshall Alliance case on the basis that the remaining lessee advocated for such a result.  Solenex Reply 18–19 n.14.  However, the district court in that case canceled leases issued in violation of NEPA because cancellation was "the only remedy which will effectively foster NEPA's mandate requiring informed and meaningful consideration of alternatives to leasing the Deep Creek area, including the no-leasing option," Bob Marshall Alliance v. Lujan, 804 F. Supp. 1292, 1297 (D. Mont. 1992)—not because of lessee acquiescence.

concluding that lease issuance is "an irrevocable commitment to allow <u>some</u> surface disturbing activities." <u>Peterson</u>, 717 F.2d at 1414–15 (emphasis in original); <u>see also</u> <u>supra</u> Point II.A.

Moreover, by asking this Court to interpret actions triggering NHPA review more narrowly than those triggering NEPA review, Solenex disregards case law "treat[ing] 'major federal actions' under NEPA similarly to 'federal undertakings under NHPA.'" <u>Karst Envtl. Educ. & Prot., Inc. v. EPA</u>, 475 F.3d 1291, 1295–96 (D.C. Cir. 2007) (citations omitted); <u>see also</u> <u>Pit River Tribe</u>, 469 F.3d at 787  ("NHPA is similar to NEPA except that it requires consideration of historic sites, rather than the environment.") (quotation marks omitted); <u>Nat'l Trust for Historic Pres. v. Blanck</u>, 938 F. Supp. 908, 919 (D.D.C. 1996) (examining NEPA decisions to determine whether agency action constituted an "undertaking" under NHPA), <u>aff'd</u>, 203 F.3d 53 (D.C. Cir. 1999); 36 C.F.R. § 800.8(a) (encouraging coordination of NHPA Section 106 and NEPA procedures).  As with NEPA, the triggering event for NHPA review in the mineral development context "is the point at which [the agency] makes an irrevocable commitment of resources and thereby surrenders its ability to prevent any development on a particular parcel of land."  <u>New Mexico ex rel. Richardson v. Bureau of Land Mgmt.</u>, 459 F. Supp. 2d 1102, 1125 (D.N.M. 2006), <u>aff'd in part, vacated in part, rev'd in part on other grounds</u>, 565 F.3d 683.  Here, that irrevocable commitment of resources occurred at the leasing stage.  <u>See</u> <u>Peterson</u>, 717 F.2d at 1414.

Solenex responds that even if lease issuance were an "undertaking," federal defendants made a "good faith effort to identify cultural resources."  Solenex Reply 23.  But in so arguing, Solenex cites to a portion of the 1981 EA addressing efforts to comply with the American Indian Religious Freedom Act ("AIRFA"), not the NHPA.  <u>Id.</u> (citing ECF No. 45-10 at 45).  The AIRFA consists of a statement of general federal policy with no enforceable mandate.  <u>See</u> 42

U.S.C. § 1996; Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 455 (1988).

AIRFA therefore does not duplicate, and AIRFA activities do not substitute for, compliance with

the mandatory consultation and cultural resource protection requirements of the NHPA.  See 54

U.S.C. § 306108 (NHPA section 106).  As to compliance with the NHPA itself, the 1981 EA

states only that such compliance "will be required at the time soil disturbing activities are

proposed," ECF No. 45-10 at 71, thereby again invoking the deferred-analysis approach that the

D.C. Circuit's Peterson decision rejected in the parallel NEPA context, see 717 F.2d at 1414.[9]

Solenex further contends that failure to comply with the NHPA was harmless because

certain guidance and statutory directives about traditional cultural properties and areas of tribal

significance were not in place before 1982.  See Solenex Reply 23–24.  But at the time of lease

issuance, the NHPA and its implementing regulations required "federal agencies approving land

use projects to identify all properties within and about the project area that are eligible for listing

in the National Register and that may be affected by the project," including sites of historic and

cultural significance to tribes.  Wilson v. Block, 708 F.2d 735, 754 (D.C. Cir. 1983); Stop H-3

Ass'n v. Coleman, 533 F.2d 434, 438, 444 (9th Cir. 1976) (affirming Secretary of the Interior's

listing of certain properties as eligible for the National Register that were historically and

culturally significant to native Hawaiians); 54 U.S.C. § 306108 (requiring federal agencies to

take into account the effect of an undertaking on any historic property).  Accordingly, had

federal defendants complied with the NHPA prior to lease issuance, they would have analyzed

whether the area was eligible for inclusion in the National Register—the same question

---

[9] Nothing in the 1981 EA supports Solenex's contention that Forest Service cultural analysis
efforts were "stymied" by the Blackfeet Tribe.  Solenex Reply 23.  While the EA states that the
Blackfeet "prefer" to identify culturally important areas "on a project-by-project basis," ECF No.
45-10 at 45, there is no indication that federal officials pressed for a different approach given that
federal officials themselves sought to defer NHPA analysis until "soil disturbing activities are
proposed," id. at 71.

addressed during the subsequent NHPA review that led to the identification of the Traditional Cultural District as a property eligible for inclusion in the Natural Register and the Advisory Council on Historic Preservation's recommendation for lease cancellation.  See ECF No. 68-1 at 5; ECF No. 55-1 at 4, 8.  As a result, federal defendants' failure to comply with the NHPA before lease issuance was not harmless.  See Nat'l Trust for Historic Pres., 938 F. Supp. at 926 ("Merely because it is impossible for us to know with any degree of certainty just what the end result of the NHPA process would be, it would be inappropriate to … relieve an agency from its obligation to engage in the process.") (quotation marks and alteration omitted).

Solenex's contention that the Blackfeet Tribe waited until "years after lease issuance" to express concern about the lease's impact on cultural sites is also meritless.  Solenex Opp. 42–43. Contrary to Solenex's assertion, the Tribe asserted the cultural significance of the Badger-Two Medicine area well before issuance of the lease, see attached Exhibit (1973 Tribal Business Council resolution declaring the Badger-Two Medicine area sacred), and repeatedly voiced concerns about the impacts of the lease on Tribal cultural resources shortly after lease issuance, see Amicus Brief of Blackfeet Tribe (ECF No. 106) 12–15.  Solenex's attempt to blame the Blackfeet people for federal defendants' failure to comply with the NHPA should be rejected.[10]

## CONCLUSION

For the foregoing reasons, Pikuni Traditionalist Association, Blackfeet Headwaters Alliance, Glacier-Two Medicine Alliance, Montana Wilderness Association, National Parks Conservation Association, and The Wilderness Society respectfully request that this Court deny Solenex's motion for summary judgment and grant federal defendants' motion for summary judgment.

---

[10] PTA offers this extra-record evidence solely to rebut the extra-record evidence submitted by Solenex.  See ECF No. 99 at 61 (Ex. 1).

Respectfully submitted this 6th day of January, 2017.

/s/ Timothy J. Preso
Timothy J. Preso (D.C. Bar No. 456531)
Aurora Janke (Pro Hac Vice)
Earthjustice
313 E. Main St.
Bozeman, MT 59715
T: 406.586.9699
F: 406.586.9695
E: tpreso@earthjustice.org
E: ajanke@earthjustice.org

*Attorneys for Defendant-Intervenors Pikuni Traditionalist Association et al.*

26

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

/s/ Timothy J. Preso
Timothy J. Preso