IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
SOLENEX LLC,                                         )
                                                    )
                        Plaintiff,                   )
                                                    )
            v.                                       )
                                                    )        Case No. 13-cv-993-RJL
                                                    )
S.M.R. JEWELL, Secretary                            )
U. S. Department of the Interior, *et al.*,          )
                                                    )
                        Defendants.                  )
_____)

**REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.      The Secretary is Authorized to Cancel Leases Administratively. ......................... 2

II.     Section 27(h) of the MLA (the "Bona Fide Purchaser" Provision) Is
        Inapplicable Here .................................................................................................. 6

        A.      Solenex is not entitled to bona fide purchaser protection under the
                MLA or common law ................................................................................. 6

        B.      Even if Section 27(h) Covered Violations of Statutes Other than the
                MLA, Solenex Does Not Qualify for its Protections Because it Was
                Not a Bona Fide Purchaser. .................................................................... 11

                1. Solenex Had Notice of Potential Lease Defects. ...................... 11

                2. Solenex did not pay valuable consideration for the lease ........ 15

III.    The Secretary's Lease-Cancellation Authority Is Not Time-Limited.................. 17

IV.     The Secretary's Decision to Cancel the Lease Was Not Arbitrary or
        Capricious ........................................................................................................... 20

        A.      The Original Lease Was Legally Infirm .................................................. 21

                1. The Lease Was Not Issued in Compliance with NEPA ........... 21
                2. The Lease Was Not Issued in Compliance With the NHPA.... 23

                3. The Secretary is Not Estopped from Finding that the Lease was
                Issued in Violation of NEPA and the NHPA............................... 24

        B.      The Decision to Cancel the Lease Was Not Arbitrary and
                Capricious. ............................................................................................. 26

        C.      The Decision to Deny the APD is Not Arbitrary and Capricious............. 27

CONCLUSION.................................................................................................................... 28

## ARGUMENT

In its combined opposition and reply brief, ECF No. 99 ("Reply"), Solenex restates arguments that the statutes granting the Secretary broad land-management authority and a "general administrative power of [lease] cancellation," *Boesche v. Udall*, 373 U.S. 478, 472 (1963), do not expressly and specifically authorize lease cancellation, except as provided in Section 31 of the Mineral Leasing Act ("MLA").  30 U.S.C. § 188.  Plaintiff does so despite the Supreme Court's clear pronouncement that "[Section] 31 … leaves unaffected the Secretary's traditional administrative authority to cancel on the basis of pre-lease factors."  *Boesche*, 373 U.S. at 478-79.  Effectively, Solenex asks this Court to ignore the unanimous *Boesche* decision, but the Court is bound not only by the result of *Boesche*, but also its rationale.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996).

Solenex also contends that as a "bona fide purchaser," it is protected under the MLA from lease cancellation due to invalidity.  *See* 30 U.S.C. § 184(h)(2).  The contention lacks merit because the cited statute has no application where the source of the invalidity is not the MLA but rather the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA").  Moreover, Solenex did not pay valuable consideration for the lease and had notice of its infirmities at the time of acquisition.  Finally, Solenex argues that the cancellation is ineffective and should be set aside based on the common-law doctrines of laches and estoppel.  This contention fails because these doctrines do not apply to administrative proceedings or against the sovereign United States.

As explained below, and in Defendants' opening brief, the Secretary's decision to cancel the lease was lawful and neither arbitrary nor capricious.  Accordingly, Defendants ask that the

1

Court deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary judgment.

## I.     <u>The Secretary is Authorized to Cancel Leases Administratively</u>.

In its Reply, ECF No. 99, Solenex mischaracterizes the oil and gas lease at issue in this case as an instrument conveying title to public land into private ownership.  Based on this faulty premise, and on the absence of a specific, express cancellation authority, Solenex disputes the Secretary's cancellation authority.  ECF No. 99 at 1-12.  It does so despite acknowledging that no provision of the MLA withdraws cancellation authority from the Secretary.  *Id*. at 8.  These arguments ignore the nature of Solenex's lease and misinterpret *Boesche*.

As Defendants explained in their opening brief, Congress has entrusted the Secretary with "plenary authority over the administration of public lands, including mineral lands," *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336 (1963), a principle recently reaffirmed by the D.C. Circuit.  *Silver State Land LLC v. Schneider*, No. 16-5018 at 15-16 (D.C. Cir. Dec. 16, 2016) (sustaining the Secretary's decision to cancel a sale of public land after payment of the purchase price but prior to patent issuance).  This authority over the administration of public lands includes broad power "to cancel [a mineral] lease administratively for invalidity at its inception . . . ."  *Boesche*, 373 U.S. at 476; *accord* 43 C.F.R. § 3108.3(d) (oil and gas leases "shall be subject to cancellation if improperly issued").   In particular, the "authority to cancel on the basis of *pre-lease* events is found not in Section 31 [of the MLA] but in [the Secretary's] general powers of management over lands in the public domain."  *Id*. (emphasis added).  It is these "general powers," embodied in 43 U.S.C. § 2, 43 U.S.C. § 1457, and 43 U.S.C. § 1201, that confer on the Secretary her lease cancellation authority.  373 U.S. at 477, n.6 (enumerating these statutory provisions).  The Secretary's exercise of her cancellation authority here is in complete

harmony with *Boesche*, which rejected the need for an explicit statutory grant beyond those already enacted.

This authority has been recognized in numerous factual contexts by various courts. *See Winkler v. Andrus*, 614 F.2d 707, 711 (10th Cir. 1980) (recognizing the Secretary's "broad authority to cancel oil and gas leases for violations of the Mineral Leasing Act and regulations thereunder, as well as for administrative errors committed before the lease was issued") (citations omitted); *cf. Texaco v. Hickel*, 437 F.2d 636, 641 (D.C. Cir. 1970) (recognizing the Secretary's authority to cancel a lease administratively for invalidity at its inception where, as here, "a determination required by law had not been made") (citations omitted); *Grynberg v. Kempthorne*, No. 06-cv-01878, 2008 WL 2445564, at *4 (D. Colo. June 16, 2008) (citing *Boesche* to conclude the Secretary could cancel a lease issued without required Forest Service review); *Texas Oil & Gas Corp. v. Andrus*, 498 F. Supp. 668, 675 (D.D.C. 1980) (citing *Boesche* to support cancellation of oil and gas lease improperly issued inside military base), rev'd on other grounds, 683 F.2d 427 (D.C. Cir. 1982); *Nat. Res. Def. Council v. Hughes*, 454 F. Supp. 148, 154 (D.D.C. 1978) (recognizing that the MLA "does not limit the Secretary's power to cancel administratively a permit or a non-competitive lease 'on the basis of pre-lease factors.'") (quoting *Boesche*, 373 U.S. at 478-85).

In reply, Solenex recounts provisions of Congressional enactments establishing the General Land Office in 1812, creating the Department of the Interior and the office of the Secretary of the Interior in 1849, and codifying the Secretary's "general management duties." ECF No. 99 at 2.  It argues the Secretary lacks cancellation authority because these enactments contain no "express delegation of authority to administratively cancel a property interest after title thereto has been conclusively transferred into private ownership."  However, it is well

settled that an express delegation of authority, beyond those already enacted, is not required. Solenex' contrary contention is unavailing and cannot be reconciled with *Boesche*.

Despite this, Solenex argues that *Boesche* must be read narrowly as recognizing authority *only* under certain limited circumstances that are not present here. ECF No. 99 at 6. In support, Solenex cites the United States' response to the petition for a writ of certiorari in *Boesche*, in which the government distinguished the facts of *Boesche* from those in *Pan Am. Petroleum Corp. v. Pierson,* 248 F.2d 649 (10th Cir. 1960). In *Pan Am.*, the Tenth Circuit had concluded, three years before *Boesche*, that the Secretary lacked lease cancellation authority. ECF No. 99 at 7. Now Solenex argues that because the government sought to distinguish the two cases in its petition response, the Court must have issued "a very narrow ruling." *Id.* But the Court did not speak in narrow terms when it addressed the nature of the Secretary's lease cancellation authority. There it broadly referred to "the Secretary's traditional administrative authority to cancel on the basis of pre-lease factors," 373 U.S. at 479, an authority which allows the Secretary to "correct his own errors." *Id.* at 478. *Boesche* resolved the conflict between the Tenth Circuit and the D.C. Circuit by adopting the latter's position on the broad scope of the Secretary's cancellation authority. And it rejected any notion that the fee patent cases (or similar cases where the government has relinquished all interest in the subject property) are controlling.

Solenex further contends that any cancellation authority the Secretary may possess is inapplicable where title "has been conclusively transferred into private ownership." ECF No. 99 at 3 (citing *Moore v. Robbins*, 96 U.S. 530 (1877)). But the authorities Solenex relies on for this contention are inapplicable because they involve patented fee interests, as opposed to the lease interest at issue here. The *Boesche* court recognized this important distinction; it explained that "[u]nlike a land patent, which divests the Government of title, Congress under the [MLA] has

4

not only reserved to the United States the fee interest in the leased land, but has also subjected the lease to exacting restrictions and continuing supervision by the Secretary." *Boesche*, 373 U.S. at 477-78.  After recounting details of the Secretary's supervisory role, *id*. at 478, the Court concluded:

> [A] mineral lease does not give the lessee anything approaching the full ownership of a fee patentee, not does it convey an unencumbered interest in the minerals.  Since the Secretary's connection with the land continues to subsist, he should have the power, in a proper case, to correct his own errors.

*Id.* at 478.  This is such a case.  Given the distinct nature of MLA leases, which reserve the Secretary's title to, control of, and supervision over "the working of the land," *id*. (citing 30 U.S.C. § 189), the cases relied on by Solenex in which the United States had relinquished its power over the affected lands are simply inapposite.  The importance of continuing control over the public lands and resources was underscored most recently by the D.C. Circuit in *Silver State Land LLC*, No. 16-5018, which sustained the Secretary's administrative cancellation of a land sale, an act which occurred virtually on the eve of patent issue and with the purchaser's payment already in hand.  *Id*. at 19 (citing *Michigan Land & Lumber Co. v. Rust*, 168 U.S. 589, 596 (1897) (it was "within the power of the land department, at any time prior to the issue of a patent, of its own motion, to order a resurvey, and correct by that any mistakes in the prior survey").

Finally, Solenex argues that any cancellation authority must be limited to errors involving the MLA, because that was the statute at issue in *Boesche*, but there is no basis for so limiting the Secretary's authority. From the agency perspective, a lease issued in violation of any procedural requirement—including those found in NEPA and the NHPA—is legally deficient.  Moreover, nothing in *Boesche* suggests that the cancellation authority exists because of some particular characteristic of the MLA.  In fact, the court likened the cancellation authority in the lease context to the previously-recognized cancellation authority in the homestead context (and in

other contexts), citing seven cases as examples, and explaining that the Secretary has "long been held to possess the same authority with respect to other kinds of interests in public lands." *Id*. at 477 (citations omitted).  Thus the principle that the Secretary should be allowed to correct his own errors, in circumstances where his or her "connection with the land continues to subsist," *id*. at 478, is not confined to the MLA context.  It has been recognized in other settings and should apply with equal force here.  Solenex offers no persuasive argument to the contrary.

## II.  <u>Section 27(h) of the MLA (the "Bona Fide Purchaser" Provision) Is Inapplicable Here</u>

Solenex continues to argue that the Secretary cannot cancel the lease because the company is a "bona fide purchaser" protected by Section 27(h)(2) of the MLA, 30 U.S.C. § 184(h)(2). But that provision does not shield purchasers from lease cancellations based on violations of statutes other than the MLA. Even if it did, Solenex would not qualify for bona-fide-purchaser protection because it had notice of alleged NEPA and NHPA deficiencies when it acquired the lease, and because it did not pay valuable consideration for the lease.

### A.  Solenex is not entitled to bona fide purchaser protection under the MLA or common law

The unambiguous language in Section 27(h) of the MLA makes clear that its bona fide purchaser protections apply only to lease cancellations "for violation of any of the provisions of [the MLA]." This Court must give that language effect and find that it does not apply to Solenex.[1] "The starting point in construing any statute is the language of the statute itself, and if

---

[1] Solenex contends that Defendants cannot respond to its arguments that it qualifies for bona fide purchaser protection because any response is a "post hoc rationalization" of the decision to cancel Solenex's lease. ECF No. 99 at 14, 24. The principle prohibiting the Court's reliance on *post hoc* rationalizations has no application here because Defendants are not providing any new rationale for the Secretary's lease cancellation decision.  Rather, they have merely reiterated the point set forth by the Secretary in her decision—that Solenex does not qualify for bona fide purchaser protection under the MLA—and have done so in the course of responding, as they must, to the legal arguments raised by Solenex in its motion for summary judgment.

that language is clear, the judicial inquiry ends, for a court must give effect to a statute's unambiguous meaning." *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 220 (D.C. Cir. 1980); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("We have 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-254 (1992)). "[T]he 'strong presumption' that a statute's plain language expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' where a contrary legislative intent is 'clearly expressed.'" *Williams v. Glickman*, 936 F. Supp. 1, 4 (D.D.C. 1996) (quoting *Ardestani v. I.N.S.,* 502 U.S. 129, 135-36 (1991)).

Here, Section 27(h) unambiguously states that its bona fide purchaser protection applies only to cancellations for violations of the MLA: "The right to cancel or forfeit for violation *of any of the provisions of this chapter* shall not apply so as to affect adversely the title or interest of a bona fide purchaser of any lease." 30 U.S.C. § 184(h)(2) (emphasis added). Because the statute's language is clear, this Court's inquiry is at an end and its "sole function" is to "enforce [the statute] according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6 (2000)).

Solenex asks this Court to ignore the plain language of the statute—and the Supreme Court's clear instruction—and look instead to legislative history and the purpose of the MLA. But this Court may "not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) ("As the conclusion we reach today is directed by the text of § 1, we need not assess the legislative history of the exclusion provision.").

Even if this Court were to look to the legislative history of Section 27(h), however, that history clearly demonstrates that the provision was aimed at protecting bona fide purchasers from cancellations arising solely out of MLA violations.  In the 1950s, individuals and corporations were using fraudulent strawmen companies to avoid the MLA's limitations on the total acreage that a single individual or company could lease. S. Rep. No. 86-754, at 3 (1959); H. Rep. No. 86-1062 at 2-3 (1959). In January 1959, the Department of the Interior cancelled 491 leases that violated the acreage limitations. *Id.* The cancellations caused "uncertainty and confusion" for leaseholders "because of the danger that somewhere in the chain of title of a lease one of its prior holders may have been in violation of the acreage limitation or other provisions of the act." *Id.* In response, Congress enacted Section 27(h) to "protect[] bona fide purchasers who have acquired and hold such leases in good faith from the consequences of a possible violation of some provision of the leasing act by a predecessor in title." *Id.* Thus, the legislative history is clear that Section 27(h) was intended to protect bona fide purchasers from cancellations due to violations of the MLA only. It was never intended to protect a purchaser from a cancellation due to a violation of any other statute.

This understanding is in line with the Supreme Court's interpretation in *Boesche v. Udall* of a similar MLA provision that gives the Secretary authority to cancel a lease when a lessee fails to comply with the provisions of the lease unless the lease contains a well capable of producing oil or gas. 30 U.S.C. § 188(b). Plaintiffs in that case contended that the provision limited the Secretary's cancellation authority to only situations in which the lessee failed to comply with the lease and the lease did not contain a well capable of producing. *Boesche*, 373 U.S. at 475.  The Court disagreed, finding that the MLA did not alter the Secretary's broad authority to cancel leases "to correct his own errors." *Id.* at 478. The same analysis applies here.

Were Section 27(h) of the MLA read to prevent the Secretary from cancelling a lease that was issued in violation of another statute, such as NEPA or the NHPA, it would render the Secretary "wholly unable . . . to remedy such illegal action." *Id.* at 479. Because the MLA was "intended to expand, not contract, the Secretary's control over the mineral lands of the United States," it would be "surprising" to find that Congress included "a restriction on the Secretary's power to cancel leases issued through administrative error—a power which was then already firmly established." *Id.* at 481. It would be particularly surprising in the case of Section 27(h) to find that Congress intended the provision to create an exemption from every other statutory requirement so long as the current leaseholder qualified as a bona fide purchaser. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

Solenex's reliance on the MLA's broad purpose of encouraging investment in mineral development is equally unavailing. While one of the purposes of the MLA was to encourage mineral development, that broad purpose cannot overcome the plain language of the statute. As the Supreme Court has noted,

> Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action. Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises.

*Cont'l Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1451 (D.C. Cir. 1988) (quoting *Bd. of Governors v. Dimension Fin. Corp.,* 474 U.S. 361, 373-74 (1986)). The unambiguous language of Section 27(h) makes it indisputable that the provision has no bearing on a lease cancellation due to violations of NEPA and the NHPA.

The IBLA decisions cited by Solenex do not dictate otherwise.  Not one involved a challenge where the aggrieved party argued that Section 27(h) was inapplicable due to violation of some statute other than the MLA.  Because the parties never raised the issue, the IBLA had no reason or opportunity to address it.  *See Henry A. Alker*, 62 IBLA 211, 212 (1982) (explaining that except in extraordinary circumstances, the IBLA "does not review issues which have not been the subject of a decision which is before us on appeal . . . .").

In addition, two of the cases cited by Solenex involved cancellations due to violations of BLM leasing policies developed under the MLA and one involved a cancellation due to violation of MLA regulations. *See Beverly M. Harris*, 78 IBLA 251 (1984); *Champlin Petroleum Co.*, 99 IBLA 278 (1987); *Geosearch, Inc. v. Andrus*, 508 F. Supp. 839 (D. Wyo. 1981) (affirming IBLA decision in *Geosearch, Inc.*, 41 IBLA 291 (1979)). Case law has long recognized Section 27(h) to encompass these violations as they essentially arise under the MLA. *See Winkler*, 614 F.2d at 711 ("The Secretary has broad authority to cancel oil and gas leases for violations of the Mineral Leasing Act *and regulations thereunder*.") (emphasis added).[2]

Solenex is also not entitled to bona fide purchaser protection under the common law. The cases that Solenex cites to support its contention all predate the Supreme Court's 1938 decision in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), which held that "[t]here is no federal

---

[2] To the extent a single IBLA case, *Clayton W. Williams, Jr.*, 103 IBLA 192 (1988), suggests that Section 27(h) could prevent the Secretary from cancelling a lease issued in violation of a completely different statute, it directly conflicts with the plain language of the Section 27(h) and the Supreme Court's decision in *Boesche*, and should not be followed by this Court.  Nor should the Court embrace Solenex's further suggestion that because the Secretary cited *Clayton W. Williams, Jr.* in her decision cancelling the leases, Defendants cannot now challenge it.  The Secretary cited the case not for its reasoning on the bona fide purchaser issue but rather for two broad, unassailable propositions: (1) the Department of the Interior has "inherent and regulatory authority" to "cancel leases if they were issued in violation of NEPA, NHPA, or other laws," and (2) a lease issued in violation of NEPA is voidable. ECF No. 68-1 at 7.

general common law." *See* ECF No. 99 at 12-13, 18. Solenex has presented no evidence that the common law bona fide purchaser protection survived *Erie*. *See Atherton v. FDIC*, 519 U.S. 213, 218 (1997) (noting that the "'cases in which judicial creation of a special federal rule would be justified . . . are . . . "few and restricted""" and finding federal common law standards for corporate governance did not survive *Erie*) (quoting *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87 (1994)).

### B.  Even if Section 27(h) Covered Violations of Statutes Other than the MLA, Solenex Does Not Qualify for its Protections Because it Was Not a Bona Fide Purchaser.

A bona fide purchaser is one who has "acquired his interest in good faith, for valuable consideration, and without notice of" any alleged defects in the lease.  *Winkler*, 614 F.2d at 711; *Sw. Petroleum Corp. v. Udall*, 361 F.2d 650, 655 (10th Cir. 1966). Because Solenex had notice of the NEPA and NHPA issues surrounding the lease when it acquired the lease and did not pay valuable consideration for the lease, it would not be eligible for bona fide purchaser protection even if such protection were available for non-MLA violations.

### 1.  Solenex Had Notice of Potential Lease Defects.

Because Solenex had notice of potential NEPA and NHPA deficiencies in the lease in 2004 when it first acquired the lease, it cannot be a bona fide purchaser. First, Solenex does not, and cannot, rebut the fact that Mr. Longwell's knowledge regarding the lease can be imputed to Solenex. Solenex is a creation of Mr. Longwell, who has been involved with this lease in various capacities since its issuance in 1981. Indeed, the filings in this case demonstrate that Mr. Longwell and Solenex are essentially the same entity: Mr. Longwell is the manager and sole voice of Solenex in its correspondence with the government, and Solenex has no employees. ECF No. 77-1 at 2 (Mr. Longwell is "the Manager of Solenex" and "Solenex has never had any

employees."); ECF No. 24-2 at 36 (Mr. Longwell estimates "that Solenex and I have spent over $35,000 in seeking to develop the lease."); FS002935 (correspondence by Mr. Longwell on behalf of Solenex), FS002947 (same).[3]

Second, Mr. Longwell, and therefore Solenex, was well aware in 2004 that the lease suffered from NEPA and NHPA defects that could lead to its cancellation.[4] In 1985 and 1986, the District of Montana held in two cases that BLM and the Forest Service violated NEPA by failing to prepare an EIS for leases located on National Forest lands in Montana. *Conner v. Burford*, 605 F. Supp. 107 (D. Mont. 1985); *Bob Marshall Alliance v. Watts*, 685 F. Supp. 1514 (D. Mont. 1986). In 1988, the Ninth Circuit affirmed that holding in both cases. *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988); *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223 (9th Cir. 1988). On remand, the district court in *Bob Marshall Alliance* determined that the proper remedy was lease cancellation because the federal agencies had failed to consider a no-leasing alternative at the lease issuance stage. *Bob Marshall Alliance v. Lujan,* 804 F. Supp. 1292, 1297 (D. Mont. 1992). The agencies acknowledged that these cases raised questions about the validity of Solenex's lease in various NEPA documents related to the lease. *See* FS002316 (ECF No. 45-6 at 22); HC01938. Because Mr. Longwell was aware of the contents of those NEPA documents,

---

[3] The fact that Mr. Longwell assigned his interest to Solenex for no consideration further demonstrates that the two are one and the same.

[4] While Mr. Longwell assigned his interest in the lease to Fina Oil and Chemical Company in 1983, Mr. Longwell does not dispute that he remained involved in the lease, as is evidenced by his reservation of a percentage of all oil and gas produced on the lease and his correspondence with the government on behalf of Fina regarding the lease. *See* ECF No. 89-2 ¶ 22; ECF No. 24-2 at 33; FS002747; FS002794. Fina assigned the interest back to Mr. Longwell in 1999. ECF No. 89-2 ¶ 68; ECF No. 24-2 at 33.

he—and therefore Solenex—was on notice of the possibility of NEPA defects in the lease arising from the lack of an EIS.[5]

Even if these events were insufficient to put Mr. Longwell and Solenex on notice of a defect in the lease, the 1993 lawsuit, *Nat'l Wildlife Fed'n v. Robertson*, No. 93-CV-00044 (D. Mont. April 24, 1993), would have made a reasonably prudent person aware. That lawsuit alleged that the specific lease at issue here violated NEPA because no EIS was prepared for it. HC01174-75 (ECF No. 45-9 at 56-57). While neither Mr. Longwell nor Fina were named defendants in the lawsuit, a reasonable lessee would have been aware of a lawsuit challenging the validity of its lease.

Further, even if Mr. Longwell lacked actual knowledge of the lawsuit, "assignees of federal oil and gas leases who seek to qualify as bona fide purchasers are deemed to have constructive notice of all of the BLM records pertaining to the lease at the time of the assignment." *Winkler v*, 614 F.2d at 713. In 2004, when Solenex was assigned the lease by Mr. Longwell, BLM's records would have included information regarding the 1993 lawsuit, as well as substantial correspondence with Mr. Longwell regarding NEPA issues. *See, e.g.*, FS002829. The records would also have lacked an EIS, putting Solenex on notice that the requisite NEPA

---

[5] Solenex argues that Mr. Longwell was entitled to rely on BLM's determination in its January 1993 Record of Decision for an APD on the lease that the lease remained valid. ECF No. 99 at 22. However, that decision specifically premised its finding that the lease remained valid on the lack of any litigation challenging the NEPA analysis for the lease and any administrative action taken against the lease. ECF No. 45-6 at 22. When *National Wildlife Federation* was filed three months later, it would have alerted Mr. Longwell that the lease was potentially in jeopardy. Moreover, Solenex's argument—that Mr. Longwell was entitled to rely on BLM's statements in a 1993 Record of Decision for an APD on the lease, ECF No. 99 at 21—demonstrates that Mr. Longwell was aware of the contents of BLM's NEPA documents for the lease, including those issued between 1983 and 1999 during the assignment to Fina. It also demonstrates that Mr. Longwell was aware of cited 1993 Record of Decision, in particular, its lengthy explanation of the NEPA issues surrounding the lease. FS002316 (ECF No. 45-6 at 22). If Mr. Longwell was aware of the Record of Decision, he would have also been aware of the NEPA issues.

review was never conducted. Thus, at the very least, the records would have raised sufficiently significant questions regarding the adequacy of the NEPA analysis for the lease to "put an ordinarily prudent man on inquiry." *See Udall*, 361 F.2d at 657.  If Solenex had then exercised "reasonable diligence" and followed up on those questions with BLM, it would have discovered the longstanding history of NEPA issues surrounding the lease. *Id.* Because BLM's records for the lease would have demonstrated a longstanding "climate of adversity surrounding" the lease, Solenex cannot claim that it had no notice of a potential NEPA violation. *Home Petroleum Corp.*, 54 IBLA 194, at 209 (1981).

Mr. Longwell and Solenex would also have been aware of NHPA deficiencies in the lease. In 1995, BLM extended the suspension of the lease annually to allow the Forest Service to complete its historic property review under the NHPA. ECF No. 68-1 at 4. Then, in 1998, BLM determined that the suspension would remain in effect until the completion of the review. *Id.* The suspension continued until the lease was cancelled. *Id.* Thus, when Mr. Longwell reacquired the lease from Fina in 1999 and when he assigned it to Solenex in 2004, the lease was suspended because it did not comply with NHPA. In addition, BLM's records would have contained substantial correspondence with Mr. Longwell regarding NHPA issues. *See, e.g.*, FS002829; FS002765; FS002814. Therefore, both Mr. Longwell and Solenex were well aware that the lease suffered from NHPA deficiencies.

Solenex asks this Court to assume that it—a creation of and essentially the same entity as Mr. Longwell—would not have been aware of 30+ years of strife regarding NEPA and NHPA issues surrounding the lease. That request belies reason where the record clearly demonstrates Mr. Longwell's consistent involvement in the lease since its issuance in 1981.

14

## 2. Solenex Did Not Pay Valuable Consideration for the Lease.

Solenex also cannot qualify as a bona fide purchaser because it paid no consideration for the lease. Solenex does not dispute that it paid nothing to Mr. Longwell in exchange for the assignment of the lease. Instead, Solenex claims that its valuable consideration consisted of (1) "assum[ing] all obligations under the lease" and (2) "expend[ing] valuable time and money in a good faith effort to fulfill its lease obligations, which included the posting of a $10,000 bond." ECF No. 99 at 24. First, the cases that Solenex cites to argue that "valuable consideration" can consist of "acts . . . done after the conveyance" rely on federal common law and pre-date *Erie*. Solenex has provided no evidence that the cited federal common law surrounding the definition of "valuable consideration" survived *Erie*. *See supra*. In addition, none of the cases involved a determination of whether consideration was valuable for purposes of bona fide purchaser protection. In contrast, cases examining what constitutes "valuable consideration" for purposes of Section 27(h) have only ever found that a payment of money constitutes "valuable consideration." *See, e.g., Raymond G. Albrecht Fred L. Engle d/b/a Res. Serv. Co.*, 92 IBLA 235, 281 (1986) (holding that heirs and devisees who acquire a property interest without payment are not "purchasers" for purposes of Section 27(h) and thus do not qualify for bona fide purchaser protection); *Frank M. Youngblood*, 78 IBLA 162, 166 (1984) (instructing ALJ on remand to investigate the amount paid in consideration for a lease to determine if Section 27(h) applied to an assignee).

Second, even if acts done after the conveyance could constitute consideration for purposes of Section 27(h), the assumption of all obligations under the lease is not valuable consideration because acquisition of the lease necessarily includes assumption of obligations under the lease. That is, assumption of obligations under the lease provides nothing in exchange

for the lease. *See, e.g., Gellatly v. Wetmore*, 177 F.2d 73, 74 (D.C. Cir. 1949) (finding "assumption of future necessary obligations for the maintenance and care" of an art collection did not constitute consideration).

Third, Solenex's claim that it has expended "valuable time and money" on the lease is completely unsupported. The only evidence that Solenex has provided of the money spent on the lease is an affidavit by Mr. Longwell stating that "Since [the lease] was issued, I estimate that Solenex and I have spent over $35,000 in seeking to develop the lease. This does not include the $10,000 bond that Solenex and I have posted since Fina assigned the lease back to me." ECF No. 24-2 at 36. Solenex has provided no evidence that it, rather than Mr. Longwell, provided the referenced funds. It has also provided no evidence that those funds were actually spent on the lease. In addition, the record shows that the $10,000 bond had been posted prior to the assignment to Solenex. HC00032 ("There is a $10,000 bond # MT 1104 backed by certificate # 718987 issued by Hibernia National Bank on deposit with the State BLM office in Billings. Hibernia has change[d] the name on certificate to Solenex, LLC."). That is, Solenex effectively inherited the bond from Mr. Longwell. While Solenex had to agree to post an additional $95,000 bond should it commence drilling operations, it has never posted that bond. *See* HC00034. Thus, even if money spent on the lease after assignment counted as "valuable consideration," there is no evidence that Solenex itself has put any money toward the lease.

Nor can Solenex rely on Fina's bona fide purchaser protection. Even assuming that Fina was a bona fide purchaser in 1983 when it acquired the lease, Solenex is not an innocent third party purchaser who can inherit that protection. Solenex did not acquire the lease directly from Fina. It acquired it from Mr. Longwell, the original owner of the lease, who had notice of the potential NEPA and NHPA deficiencies. *See supra.* As the caselaw quoted by Solenex clearly

16

states, the exception to the general doctrine that bona fide purchaser protection passes from one

buyer to the next is that:

> [A] title, cannot be conveyed, free from the prior equities, back to a former owner
> who was charged with notice. If A, holding a title affected with notice, conveys to
> B, a bona fide purchaser, and afterwards takes reconveyance to himself, all the
> equities revive and attach to the land in his hands . . . .

ECF No. 99 at 26 (quoting *Brown v. Sheets*, 148 S.E. 233, 235 (N.C. 1929)). Thus, when Mr.

Longwell reacquired the lease from Fina, he was not entitled to bona fide purchaser protection

because he was the original owner of the lease, had remained involved with the lease during

Fina's assignment, and was well aware of possible NEPA and NHPA deficiencies. Because Mr.

Longwell did not have bona fide purchaser protection, he could not have conveyed that

protection to Solenex.

In sum, Solenex—a company that consists solely of Mr. Longwell, the original lessee—is

not the sort of purchaser that Section 27(h) was intended to protect. Congress enacted Section

27(h) to prevent innocent purchasers from losing out on an investment due to the unknown bad

acts of prior leaseholders. *Winkler*, 614 F.2d at 711. But Solenex is not an innocent, third party

purchaser. As the creation of Mr. Longwell, the company was well-aware of the tortured history

of this lease since its issuance in 1981 and it has no investments to lose as it paid nothing for the

lease. Allowing Solenex to benefit from bona fide purchaser protection here would have

sweeping consequences: a person could manufacture the protection by assigning a lease to a third

party and then directing that third party to assign it back to himself. This Court should not set

such a precedent.

### III.     The Secretary's Lease-Cancellation Authority Is Not Time-Limited

The Secretary's authority to cancel a lease exists absent explicit withdrawal by statute

and Solenex' argument that "the passage of time" erodes that authority is wrong. Although

Solenex advances policy arguments as to why laches should be applied here, it offer no authority that a common law defense applies to this administrative action.

First, Solenex suggests that the statute of limitations in 30 U.S.C. § 226-2 is relevant here.  It is not.  Section 226–2 provides that "[n]o action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter."  By its plain terms, Section 226-2 applies to an action contesting a decision of the Secretary; it does not limit the Secretary's cancellation authority either directly or indirectly.  *See Naartex Consulting Corp. v. Watt*, 542 F. Supp. 1196, 1205 (D.D.C. 1982).  And contrary to Solenex's assertions, Section 226-2 does not articulate the timeframe by which the Secretary must bring a cancellation decision.  ECF No. 99 at 27. In short, Solenex cannot credibly argue that Section 226-2 limits the Secretary's authority to cancel its lease.

Second, Solenex again contends that the Secretary cannot cancel its lease because 28 U.S.C. § 2462 bars "an action, suit, or proceeding for the enforcement of any civil fine, penalty or forfeiture" brought more than 5 years after the accrual date.  ECF No. 99 at 29.  Other than the general statement that this provision must apply here, Solenex offers no authority supporting the application of this provision to an administrative decision, nor could it.  This provision is inapplicable because the Secretary's administrative decision to cancel Solenex' lease is neither an enforcement proceeding nor was it punitive in nature.  And while it is true that the cancellation decision occurred many years after lease issuance, the Secretary based that decision on the fact that the lease was improperly issued in the first place, not on Solenex' conduct. While Solenex may contend otherwise (ECF No. 99 at 29), delay in and of itself does not evince a punitive decision.

18

Further, the precedent Solenex cites in support of its position is inapposite. Contrary to Solenex's argument, the court in *Orion Reserves Ltd. P'ship v. Norton* said nothing about the contours of a forfeiture claim, as that issue was not in dispute. No. CIV.A.04-0791 RCL, 2006 WL 1126810, at *3 (D.D.C. Mar. 31, 2006), *rev'd sub nom. Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697 (D.C. Cir. 2009). In short, the limitations in 28 U.S.C. § 2462 do not apply to the Secretary's cancellation authority.

Finally, laches is inapplicable here. Laches is a common-law defense to a claim brought in court, not a weapon with which a plaintiff can challenge administrative action. As noted in our opening brief, Solenex does not point to any precedent holding that *agency action* (as opposed to *a claim in a lawsuit*) is barred by laches. More importantly, the United States here is in acting in a sovereign capacity and its agencies are not subject to the equitable defense of laches when acting in a sovereign capacity. *See, e.g., United States v. Beebe*, 127 U.S. 338, 344 (1888) (it has been established "past all controversy or doubt" that the "United States are not . . . barred by any laches of their officers, however gross, in a suit . . . to enforce a public right, or to assert a public interest."); *see also, e.g., Guaranty Trust Co. v. United States*, 304 U.S. 126, 132-33 (1938); *United States v. Summerlin*, 310 U.S. 414 (1940).

Solenex suggests that because this case involves a leasing decision, the United States is acting in a proprietary capacity, and therefore it cannot assert a defense of laches qua sovereign. ECF No. 99 at 31. However, the precedent that Solenex cites makes plain that even if the United States' conduct is "outrageous and inexcusable…. [n]o rule is better established than that the United States are not bound by limitations or barred by laches where they are asserting a public right." *Orion Reserves*, 2006 WL 1126810, at *3 (citing Illinois C.R. Co. v. Rogers, 253 F.2d 349, 353 (D.C. Cir. 1958)). Solenex's argument ignores this principle and the important

19

circumstances of this case: specifically, that the government has retained a fee interest in the land

and is required by law to subject it to "exacting restrictions and continuing supervision."

*Boesche*, 373 U.S. at 478.

The cases Solenex relies on do not suggest that laches may apply to the government when

it is acting in this sovereign capacity, as guardian of the public interest.  And in *Mobil Oil Expl.*

*& Producing Se., Inc. v. United States*, 530 U.S. 604 (2000), the court did not even discuss

laches, nor the distinction between the United States acting as sovereign and the United States

acting in a proprietary capacity.  Nonetheless, Solenex cites the case for the proposition that

when the government issues a lease, it does so in its proprietary capacity.  Solenex's further

reliance on *United States v. Gen. Petroleum Corp. of Cal.*, 73 F. Supp. 225 (S.D. Cal. 1946),

*aff'd sub nom. Cont'l Oil Co. v. United States,* 184 F.2d 802 (9th Cir. 1950) is also unavailing

because it predates and contravenes *Boesche* (in particular, the latter's recognition of the

Secretary's responsibility as steward of the public lands) and it declined to conclude that the

laches and estoppel defenses were applicable.  Solenex fails to meet its burden of showing that

laches could be used in this case to defeat the Secretary's cancellation of the lease.

## IV.   The Secretary's Decision to Cancel the Lease Was Not Arbitrary or Capricious.

Solenex contends that the Secretary's decision cancelling its lease was arbitrary and

capricious because the company argues that the original lease was issued in compliance with

both NEPA and the NHPA (and that the Secretary is estopped from arguing otherwise); the

Secretary had discretion to correct legal infirmities stemming from the lease's issuance; and the

Secretary violated the APA and department regulations by cancelling the APD.  All three

arguments lack merit.

A.      **The Original Lease Was Legally Infirm**

1.      **The Lease Was Not Issued in Compliance with NEPA**

Solenex contends that there were no NEPA violations in the issuance of the lease, citing the size of the 1981 EA and other environmental documents prepared by the agency from 1985 to 1990.  ECF No. 99 at 37-40.  But the length or the sheer number of NEPA documents is not an appropriate proxy of whether previous environmental analyses complied with NEPA.  As discussed below, they did not.

First, the Secretary must prepare an EIS before issuing a mineral lease "if the [agency] chooses not to retain the authority to preclude all surface disturbing activities."  *Sierra Club v. Peterson*, 717 F.2d 1409, 1415 (D.C. Cir. 1983); *accord Bob Marshall All.*, 852 F. 2d 1223; *Conner*, 848 F.2d 1441   Here, the agency in 1981 prepared an EA even though the lease allows surface occupancy subject to applicable lease stipulations *without* an explicit prohibition on surface-disturbing activities.  Thus, the Secretary thus made an "irrevocable commitment to allow *some* surface disturbing activities . . . without fully assessing the possible environmental consequences."  *Sierra Club*, 717 F.2d at 1414-15.  Solenex does not dispute that the agency made an irreversible commitment of resources,[6] but rather contends that an EIS is not always required upon lease approval.  This misses the mark: Defendants do not argue that an EIS is always required, but rather that it was required here because the agency did not preclude all surface disturbing activities on the leasehold.  *See Supra.* [7]

---

[6] An agency's NEPA obligations mature once it reaches a "critical stage of a decision which will result in irreversible and irretrievable commitments of resources to an action that will affect the environment." *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 480 (D.C. Cir. 2009) (internal citations and quotations omitted).

[7] Solenex cites *Park Cty. Res. Council, Inc. v. U.S. Dep't of Agric.* for the proposition that the agency can issue a lease by relying on an EA. *Park County Resource Council, Inc. v. U.S. Dep't of Ag.,* 817 F.2d 609 (10th Cir.1987). As an initial matter, the case is distinguishable because the

Solenex next contends that an EIS is not required because the 1981 EA—which spanned 162 pages—is the "functional equivalent" of an EIS.  But the mere size of the EA does not render it compliant with NEPA.  The EA here lacked the required "no lease" alternative and the Finding of No Significant Impact prepared in connection with the EA erroneously concluded that lease issuance was an action that would not directly result in effects on the environment.  FONSI at 2.  Moreover, as Solenex notes, the agency completed three additional NEPA analyses after the 1981 EA, suggesting that the 1981 EA did not have an analysis that was in any way equivalent to an EIS, with its more rigorous public notice and public participation requirements.  In sum, the 1981 EA did not credibly substitute for an EIS.  Rather it served its traditional role— to determine if an EIS is needed. *See* 40 C.F.R. § 1508.9(a)(1) (1992).

Nor did any subsequent NEPA analysis correct this deficiency.  Solenex argues that in the 1993 decision to approve an APD, the agencies found that any NEPA violation had been cured by an EIS prepared in 1990.  But the agency cannot cure the fact that it made an irrevocable and irretrievable commitment of resources without the necessary environmental analysis at the time those resources were committed — that is, when it published the EA.  Moreover, the agency never implemented the 1993 decision.  After numerous groups challenged the 1993 APD decision on NEPA and other grounds, the Secretary suspended the 1993 APD approval.  Plaintiff's Statement of Material Facts ¶ 60.  The 1993 decision does not represent the final official position on the part of the Secretary that the lease was properly issued.  Instead, the

---

Tenth Circuit found that there was not sufficient information about whether and where lease development would occur, rendering development no more than "an extremely tentative possibility."  *Id.* at 623.  Solenex here does not argue that development here is a "tentative possibility." But more importantly, *Park County* is not authoritative in this jurisdiction, regardless of whether it is distinguishable.

Secretary has determined that the legal defects associated with the original lease decision, as identified by the D.C. Circuit in *Peterson*, have not been corrected, and that the lease is voidable.

### 2. The Lease Was Not Issued in Compliance With the NHPA

Solenex argues that the Forest Service and BLM complied with the NHPA prior to the issuance of the lease because the Forest Service consulted with the Blackfeet Tribe before issuing the 1981 EA and at the APD stage ECF No. 99 at 40-43. Solenex is wrong. As discussed in Federal Defendants' opening brief, although the Forest Service did engage in some tribal consultation at the leasing stage, it deferred full consultation until surface disturbing activities were authorized. ECF No. 93-1 at 28. Solenex ignores this deferral, emphasizing instead the agencies' "good faith effort." ECF No. 99 at 42.

But even if Solenex is correct that the agencies made a "good faith effort," such a deferral was nonetheless improper. BLM's issuance of the lease did not comply with Section 106's mandate that cultural impacts must be considered "prior to" the agency's issuance of a license or an undertaking. *See Mont. Wilderness Ass'n. v. Fry*, 310 F. Supp. 2d 1127, 1153 (D. Mont. 2004) ("BLM violated NHPA by failing to follow the prescribed NHPA process prior to selling the oil and gas leases"). And while Solenex argues that events occurring after lease issuance were the basis for the Secretary's finding that the NHPA had been violated, that argument mischaracterizes the Secretary's decision. Specifically, prior to the issuance of the lease and before the irretrievable commitment of resources, the Forest Service did not consult with the Tribe to locate and record cultural resources and guarantee access and preservation of religious sites. The Secretary's determination, therefore, that the leasing decision did not comply with the NHPA, is not arbitrary and capricious.

### 3.    The Secretary is Not Estopped from Finding that the Lease Was Issued in Violation of NEPA and the NHPA.

Solenex again presses that the Secretary is prohibited from cancelling the lease under the doctrine of equitable estoppel, citing that fact that it "will suffer a serious injustice".  ECF No. 99 at 32-37.  But the test of whether a claim of estoppel against the government depends on more than alleged injustice; a movant must show: "(1) the Government engaged in "affirmative misconduct"; (2) the Government's conduct threatens to result in a serious injustice; and (3) estoppel would not unduly damage the public interest. *See Pierce v. SEC*, 786 F.3d 1027, 1037 (D.C. Cir. 2015); *Keating v. FERC*, 569 F.3d 427, 434 (D.C. Cir. 2009). Contrary to Solenex's suggestions, this test is not disjunctive: a movant must rather prove all three prongs.  *See Keating*, 569 F.3d at 434 n.1 ("As Keating's claim to estoppel fails at this first step, we need not consider the remaining estoppel elements . . .").  The application of equitable estoppel against "the government must be rigid and sparing." A*TC Petroleum Inc. v. Sanders,* 860 F.2d 1104, 1111 (D.C.Cir.1988), and "while theoretically permissible, is rarely justified." *Genesis Health Ventures, Inc. v. Sebeliu*s, 798 F. Supp. 2d 170, 183 (D.D.C. 2011); *see also Int'l Union v. Clark,* Civil Action No. 02–1484(GK), 2006 WL 2598046, at *12 (D.D.C. Sept. 11, 2006) (stating that "[t]here is a clear presumption in this Circuit against invoking the [estoppel] doctrine against government actors in any but the most extreme circumstances.").

Even if the court found those "most extreme circumstances" present here (which they are not), Solenex has not established that estoppel is appropriate.  First, Solenex cannot show that the Secretary engaged in "affirmative misconduct."  Rather, the Secretary has endeavored since 1985 to comply with all applicable statutes and regulations governing the lease and its operations. Solenex gives this effort short shrift, contending that the Secretary "falsely represented that the lease" was valid over a protracted period of time and that any such efforts by the Secretary were,

in any event, to secure approval of the APD.   But there is nothing to preclude a federal agency

from changing its mind, especially when it reexamines an erroneous decision and provides

reasons why that previous decision was flawed.  *See WorldCom, Inc*. v. FCC, 238 F.3d 449, 460

(D.C. Cir. 2001); *see also CF Indus., Inc. v. FERC*, 925 F.2d 476, 480 (D.C. Cir. 1991). The

mere fact that the agency changed course is not "affirmative misconduct" as Solenex argues.

Because Solenex' estoppel argument "fails at the first step," it should be rejected outright.

*Keating*, 569 F.3d at 434 n.1.

Second, Solenex cannot show that it will suffer "serious injustice." Lease operations have

been suspended since 1985.  Solenex has thus been under no legal or financial obligation to take

action to develop the lease.  And, because the lease is cancelled, Solenex is entitled to a refund of

amounts paid for the lease so the decision to cancel the lease would not cause serious injustice.

*See* ECF No. 68-1 at 14.  To the extent Solenex complains about the time and money it invested

in developing the lease (ECF No. 99 at 34), this is not the forum for Solenex to complaint about

lease-related damages, if cognizable damages exist.  *See* 28 U.S.C. § 1491 ("The United States

Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the

United States founded . . . upon any express or implied contract with the United States, or for

liquidated or unliquidated damages in cases not sounding in tort.")

Finally, Solenex's argument that leasing of public oil and gas reserves is necessarily in

the public interest under the MLA relies on too broad a brush.  Under the MLA, the Secretary is

the "statutory guardian of [the] public interest." *Cal. Co. v. Udall*, 296 F.2d 384, 388 (D.C. Cir.

1961).  And, as discussed in Defendants' opening brief and statement of facts (ECF Nos. 93-1

and 93-2 at 8), Congress has withdrawn this area from leasing and has thus itself established a

policy of protecting the abundant natural and cultural values in this area, regardless of the area's

potential oil and gas reserves.  This Congressional policy is strong evidence of the public's interest in keeping the leased area undeveloped.  *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497–98 (2001).[8]

In sum, Solenex has not shown the extraordinary circumstances that would warrant invoking the doctrine of equitable estoppel here.

### B.      The Decision to Cancel the Lease Was Not Arbitrary and Capricious.

Solenex argues that the Secretary abused her discretion by not correcting the legal infirmities stemming from the lease's issuance.  ECF No. 99 at 43-44.  The Secretary, however, determined that engaging in further NEPA analysis would be futile.

Since Congress has permanently prohibited the issuance of new oil and gas leases in the Badger-Two Medicine area, the Secretary reasonably concluded that the "Congressional prohibition renders such additional [NEPA] analysis immaterial" and it would "be illegal to validate *and in effect reissue*" Solenex' lease.  ECF No. 68-1 at 13 (emphasis added).  In addition, the Section 106 consultation process showed that there was no satisfactory mitigation for the impacts of mineral development in the Badger-Two Medicine area.  *Id.*  That led both the Advisory Council on Historic Preservation and the Forest Service to recommend cancelling the lease.  Considering these factors, among others, the Secretary concluded that administrative lease cancellation under her statutory authority to manage public lands is the most appropriate course of action.  These facts confirm the reasonableness of the cancellation decision.

---

[8] Solenex implies that its "reliance interests" should suffice to prove estoppel because it shows that the Secretary's decision to cancel the lease was arbitrary and capricious. ECF No. 99 at 36-37.  Even assuming that Solenex properly raised this argument in its opening brief (which it did not), reliance is the not the *sine qua non* of the equitable estoppel doctrine.  Rather, Solenex appears to conflate its arguments about the *reasonableness* of the Secretary's cancellation decision under the APA with the three prongs it must establish to prove equitable estoppel.

C.      **The Decision to Deny the APD is Not Arbitrary and Capricious**

Solenex contends that the Secretary violated the APA and Interior regulations by cancelling the APD because of the passage of time and Solenex' reliance interests.  ECF No. 99 at 44-45.  These arguments restate arguments previously raised by Solenex, but they do so under the arbitrary and capricious standard.  For the reasons discussed above, they lack merit.  Solenex also raises two additional arguments.  First, Solenex' contends that the 35-day timeframe in 43 C.F.R. § 3163.2-1(h)(2) applies here because it was an approved APD but Solenex offers no credible explanation as to why.  Specifically, 43 C.F.R. § 3162.3-1(h) governs "initiation" of the APD process and provides timeframes for approval or disapproval of such APDs. Because the lease here has been suspended since 1998, the 35-day timeframe for APD disapproval in 43 C.F.R. § 3162.2-1(h)(2) cannot logically apply. Moreover, lease cancellation moots any question about the agency's conduct in regard to the APD.

Second, Solenex reprises its argument that the APD is akin to a license and that it was denied "an opportunity to be heard" under 5 U.S.C. § 558(c).  But Solenex still has failed to cite any authority extending this Section 558 provision to a mineral lease or a remotely analogous interest.  ECF No. 99 at 45.  And while the only judicial authority Solenex cites notes that 5 U.S.C. § 558(c) is broad, it dealt with a wholly inapposite interest, relating to air transportation. *Air N. Am. v. Dep't of Transp.*, 937 F.2d 1427, 1439 (9th Cir. 1991) (holding that a certificate revoking an airline's certificates of authority to provide air transportation was a license).  Put simply, the mere fact that Section 558 uses broad language does not mean it applies here. Finally, Section 558 exempts cases involving the public interest.  5 U.S.C. § 558 (c).  In a clear expression of the strong public interest at stake, Congress suspended the entire Badger-Two

Medicine area from lease development.  Consistent with this Congressional purpose, the

Secretary exercised the cancellation authority granted by statute, 43 U.S.C. § 2, 43 U.S.C. § 1457,

and 43 U.S.C. § 1201, and explicitly codified in agency regulations.  43 C.F.R. § 3108.3(d) (oil and

gas leases "shall be subject to cancellation if improperly issued").  In sum, Solenex has not shown

that the Secretary's disapproval of the APD was arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Court should grant the Secretary's cross-motion for

summary judgment and deny Solenex's motion for summary judgment.

Dated January 6, 2016

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

 /S/ John S. Most
JOHN S. MOST
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-616-3353 (voice)
202-305-0506 (fax)
John.Most@usdoj.gov

MARISSA A. PIROPATO
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-305-0470 (voice)
Marissa.Piropato@usdoj.gov

CLARE BORONOW
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-305-0492 (voice)
Clare.Boronow@usdoj.gov

*Counsel for Defendants*

28