# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOLENEX LLC, )
 )
    Plaintiff, )
 )
    v. ) Civil Case No. 13-0993 (RJL)
 )
SALLY JEWELL et al., )
 )
    Defendants. )
 )

<u>MEMORANDUM OPINION</u>

(September 24, 2018) [Dkts ## 89, 93]

FILED
SEP 24 2018
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Solenex LLC ("Solenex"), the holder of a federal oil and gas lease in Montana, brings suit against the Secretary of the Interior, the Secretary of Agriculture, the Director of the Bureau of Land Management, the Chief of the Forest Service, and several other subordinate federal officials (collectively, "federal defendants" or "the Government") relating to the Government's cancellation of its lease after suspending all oil and gas drilling and extraction activity on that lease for more than thirty years. *See* First Amend. Compl. [Dkt. # 73] ¶¶ 3–13, 99–115. Plaintiff seeks declaratory and injunctive relief, including that this Court vacate the cancellation and reinstate the lease, based on federal defendants' alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*. *See* First Amend. Compl. ¶¶ 116–158. Before this Court are the parties' Cross-Motions for Summary Judgment. *See* Pl.'s Motion for Summary Judgment [Dkt. #89] ("Pl.'s Mot."); Defs.' Cross-Motion for Summary Judgment [Dkt. # 93] ("Defs.' Mot.").

1

For the following reasons, the Court GRANTS the plaintiff's motion for summary judgment and DENIES the defendant's cross-motion for summary judgment.

## BACKGROUND

### I. Regulatory Landscape

Plaintiff Solenex seeks declaratory and injunctive relief for federal defendants' alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, by cancelling the Solenex lease after holding it in suspension for more than thirty years. Plaintiff raises several independent reasons for finding that federal defendants acted unlawfully: (1) federal defendants lack authority to cancel the lease both because the Secretary exceeded his authority and because his cancellation was arbitrary and capricious, (2) the cancellation is time barred by a statutory limitations period or, alternatively, the doctrine of laches, (3) defendants are estopped from cancelling the lease by a pattern of conduct treating the lease as valid, and (4) the lease was properly issued in compliance with NEPA and the NHPA. A brief overview of these is in order.

First, plaintiff argues that the Department of Interior's ("Interior") authority to administratively cancel a lease is limited under the Mineral Leasing Act of 1920 ("MLA"). 30 U.S.C. §§ 181–287. The MLA governs the Secretary of Interior's (hereinafter "the Secretary") authority to issue leases for "[a]ll lands subject to disposition under this Act which are known or believed to contain oil or gas deposits." *Id.* § 226(a). Pursuant to the MLA, the Secretary may also cancel those leases if the lease is (1) "in violation of the MLA, unless the current leaseholder is a bona fide purchaser," *id.* § 184(h)(1), (h)(2); (2) "when a lessee has violated the statute, regulations, or the lease itself, *id.* § 188(a); or (3)

2

"where the lessee is in violation of lease provisions after at least 30-days' notice" and the lease is a non-producing lease, *id.* § 188(b). Interior has also promulgated its own regulations allowing for administrative cancellation of leases under certain conditions. *See* 43 C.F.R. § 3108.5. Namely, that the Secretary can cancel leases for either (1) the lessee's failure "to comply with any of the provisions of the law, the regulations issued thereunder, or the lease" after notice and 30 days to cure, 43 C.F.R. § 3108.3(a), or (2) the agency's determination that the lease was "improperly issued." *Id.* § 3108.3(d).

As asserted by federal defendants, one of the ways in which a lease can be "improperly issued" and therefore subject to administrative cancellation is by non-compliance with either the National Environmental Policy Act ("NEPA") or the National Historic Preservation Act ("NHPA"). Defs.' Mot. at 27–29. NEPA requires that agencies take a "hard look" at the environmental consequences, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989), of "major Federal actions" that "significantly affect [] the quality of the human environment." 42 U.S.C. § 4332(C); 40 C.F.R. §§ 150.3, 1501.4(c).[1] Nevertheless, an "agency is not constrained by NEPA from deciding that other values outweigh the environmental costs." *Robertson*, 490 U.S. at 350. NHPA, for its part, requires that the agency "take into account the effect of [an] undertaking on any historic

---

[1] As our Circuit has held, "NEPA's requirements vary based on the type of agency action in question." *City of Phoenix, Arizona v. Huerta*, 869 F.3d 963, 971 (D.C. Cir. 2017), *opinion amended on reh'g*, 881 F.3d 932 (D.C. Cir. 2018). It is well settled that only "[a]ctions with significant environmental effects require a full environmental-impact statement" and that "[a]ctions with impacts that are not significant or are unknown require a briefer environmental assessment." *Id.* at 971–72.

property." 54 U.S.C. §§ 300308, 306108. This requires that the agency consult with the Advisory Council of Historic Preservation ("ACHP"). *See id.* NHPA consultation is usually considered adequate where the acting agency has "visited the site [and] consulted with the preservation authorities" before concluding there will be no adverse impact on the historic property. *Duncan's Point Lot Owners Ass'n Inc. v. F.E.R.C.*, 522 F.3d 371, 377 (D.C. Cir. 2008); *cf. Nat'l Parks Conservation Ass'n v. United States*, 177 F. Supp. 3d 1 (D.D.C. 2016) (permitting mineral development in a designated NHPA historic district after the Forest Service conducted an environmental assessment but not a full-blown environmental impact statement). Importantly, while both of these statutes require agencies to follow certain procedures to gather information to help assist with decision-making, they do not themselves impose substantive requirements with respect to the outcome of that decision-making. *See, e.g., Sierra Club v. Federal Energy Regulatory Commission*, 867 F.3d 1357, 1367 (D.C. Cir. 2017) ("NEPA directs agencies only to look hard at the environmental effects of their decisions, and not to take one type of action or another.") (internal quotation marks omitted); *id.* ("[NEPA] is primarily information-forcing"); *Delaware Riverkeeper Network v. F.E.R.C.*, 753 F.3d 1304, 1310 (D.C. Cir. 2014) ("NEPA is 'essentially procedural' and designed to ensure 'fully informed and well-considered decision[s]' by federal agencies) (quoting *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978)); *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003) ("An essentially procedural statute, [NHPA] imposes no substantive standards on agencies, but it does require them to solicit the Council's comments and to take into account the effect of their undertakings.") (internal citation omitted).

Any agency action can be set aside under the APA where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As articulated by the Supreme Court, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.* ("State Farm"), 463 U.S. 29, 43 (1983). Nevertheless, even an action that is within the agency's statutory authority may still be arbitrary and capricious if the agency fails to exhibit reasoned decision-making. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) ("'Unexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice…'"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) ("A central principle of administrative law is that, when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it."). It is through this lens that I view the Bureau of Land Management's relatively recent decision to cancel the Solenex lease for purported pre-lease violations of NEPA and NHPA after holding it in suspension for over *three decades*!

## II. Procedural History

The circumstances underlying this case date back to May 24, 1982, when the Bureau of Land Management ("BLM") approved federal oil and gas Lease M-53323 to Solenex's predecessor, Sidney M. Longwell ("Longwell"). *See* Statement of Material Facts in

Support of Pls.' Mot. for Summary Judgment ("PSOF")[2] ¶¶ 11–21. BLM issued the lease after conducting a 165-page Environmental Assessment ("1981 EA") covering nearly 200 pending leases in the Badger Two Medicine ("Badger-Two") area of the Lewis and Clark National Forest in cooperation with the United States Forest Service ("Forest Service"). *Id.* ¶¶ 1–9. The 1981 EA considered the effects on the environment of various alternatives to leasing, including "no action" alternatives. *See id.* ¶¶ 4, 5. In addition to the EA, the Forest Service also engaged in American Indian Religious Freedom Act consultation with the Blackfeet Tribe. *Id.* ¶ 4. Ultimately, the Forest Service issued a Decision Notice ("DN") and Finding of No Significant Impact ("FONSI"), *id.* ¶ 6, approving "Alternative 3" which conditionally granted leases "with surface occupancy…only for accessible areas that could be protected" and provided that "[a]fter lease issuance, any proposed oil and gas activities would be fully analyzed under NEPA." *Id.* ¶ 5.

Longwell subsequently assigned his lease to a company called Fina in June 1983. *Id.* In November of that year, Fina submitted an Application for Permit to Drill ("APD") an exploratory well to BLM. *Id.* Two years later, after considering the adverse environmental effects of approving the APD, the Forest Service issued a 318-page EA ("1985 EA") evaluating and ultimately *approving* it. *Id.* ¶ 30. The 1985 EA expressly incorporated the earlier 1981 EA approving the lease itself. The 1985 EA also documented consultation with other agencies required by law, *id.* ¶ 29, and with the Blackfeet Tribe.

---

[2] Plaintiff's Statement of Material Facts ("PSOF") cites to the Administrative Record ("AR") [Dkt. #45]. For ease of citation, the paragraphs cited in this opinion are the relevant paragraphs in PSOF that contain undisputed facts supported by documents in the administrative record.

*See id.* ¶ 30. The Forest Service expressly found that the APD would not affect the Tribe's reserved rights in the ceded strip and that "[n]o religious sites or activities were identified in the project area..." *Id.* On an administrative appeal, the IBLA upheld the approval but remanded for further consideration of four issues. *Id.* ¶¶ 31–32. Despite the approval of the Fina APD, in 1993 BLM suspended the lease for further environmental assessments. *Id.* BLM then suspended the lease every year after that for nearly twenty years. *Id.*

Solenex brought this suit in 2013 against the Secretary of the Interior, the Secretary of Agriculture, the Director of the Bureau of Land Management, the Chief of the Forest Service, and several other subordinate federal officials relating to the suspension of all oil and gas drilling and extraction activity on that lease. *See generally* First Amend. Compl. [Dkt. # 1]. On July 27, 2015, this Court partially granted Solenex's motion for summary judgment on federal defendants' suspension of its lease, finding that defendants' 29-year delay in reviewing the suspended lease constituted unreasonable delay under the APA. *See* 7/27/15 Order Granting Partial Summary Judgment to Solenex LLP ("7/27/15 Order") [Dkt. #52]. Accordingly, I ordered defendants to submit, within 21 days, a "proposed accelerated schedule" of the remaining tasks to be completed in the administrative process. *Id.* at 5.

On August 17, 2015, defendants submitted a proposed schedule, *see* Defs.' Response to Order of the Court ("Defs.' Response") [Dkt. # 53], that I found deficient in several respects, including that: (1) it proposed that defendants have until July 15, 2017 to complete compliance under NEPA and lift the suspension on the lease; and (2) it lacked any explanation as to why this much time is necessary to determine whether—after 33

7

years and four APD approvals—the lease was "improperly issued" under 43 C.F.R. § 3108.3(d). *See* 10/8/15 Mem. Order [Dkt. # 57] at 3; *see also* Transcript of 10/6/15 Proceeding [Dkt. # 56]. As such, I rejected defendants' proposal as unreasonable and subsequently ordered defendants to determine by November 23, 2015 whether to initiate the process for cancellation of the Solenex lease. *See* 10/8/15 Mem. Order at 3.

In November of 2015, defendants informed me that they had decided to initiate the process for cancellation of plaintiff's lease. *See* Defs.' Notice of Response [Dkt. # 58]. After a period initially agreed to, where the case was stayed pending settlement discussions, *see* Joint Motion to Stay All Proceedings [Dkt. # 59], the defendants finalized their cancellation of the lease on March 17, 2016. *See generally* Defs.' Notice of Cancellation [Dkt. # 68]. As a basis for cancelling the lease, defendants concluded that the original Solenex lease, as well as other leases issued in the Badger-Two Medicine area,[3] were issued in violation of NEPA and the NHPA. *Id.* at 13. Thus, I now must review the lawfulness of defendants' cancellation of the Solenex lease.

## Analysis

### I. The Court Need Not Resolve Whether *Boesche* Grants the Secretary Unlimited Cancellation Authority

Under Federal Rule of Civil Procedure 56(a), summary judgment shall be granted to the moving party "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Because this case challenges a final agency action under the

---

[3] Also before this court is a challenge to the Secretary's cancellation of the lease previously held by plaintiff W.A. Moncrief. *See W.A. Moncrief v. Department of Interior et al.*, Civil Case No. 17-cv-609 (D.D.C.).

APA—the termination of plaintiff's lease—to determine whether summary judgment is warranted I must determine "whether the agency acted within the scope of its legal authority,... explained its decision, ... relied [on facts that] have some basis in the record, and ... considered the relevant factors." *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995). Here, I consider whether the Department of Interior, through the Secretary, acted reasonably in cancelling the Solenex lease after more than *thirty* years for an alleged pre-lease error.

As a preliminary matter, the parties disagree on the legal basis and scope of the Secretary's authority to administratively cancel leases. Defendants argue that 43 U.S.C. § 2 authorizes the Secretary to "perform...all executive duties...in anywise respecting ...public lands," including to "correct [an] error []" of her predecessor. *See* Defs.' Mot. at 23 (quoting *Boesche v. Udall*, 373 U.S. 472, 478 (1963)). In other words, defendants argue, the Secretary has the inherent authority to administratively cancel leases. Defendants base this argument on the Supreme Court's decision in *Boesche* to uphold the Secretary's cancellation of a lease that was "defective because it failed to include an adjoining 40-acre tract under application by another party." *Id.* at 484. Reviewing the legislative history of the MLA, the *Boesche* court observed that "[i]t would thus be surprising to find in the Act, which was intended to expand, not contract, the Secretary's control over the mineral lands of the United States, a restriction on the Secretary's power to cancel leases issued through administrative error—a power which was then already firmly established." *Id.* at 481. As such, defendants read into *Boesche* a recognition by the

9

Supreme Court of the Secretary's broad lease-cancellation authority, at lease for pre-lease errors.

Plaintiff, on the other hand, argues that the MLA does not grant such broad cancellation authority, *see* Pl.'s Mot. at 9, nor does *Boesche* sanction the authority to "cancel a lease for alleged mistakes made by the BLM decades earlier." *Id.* at 14. Plaintiff represents that the Secretary in *Boesche* argued only for the "authority to forfeit or cancel leases for violations occurring *after lease issuance*," not for pre-lease violations. *Id.* at 15. And the Secretary's post-lease cancellation authority, plaintiff maintains, would still require that the Secretary institute a judicial proceeding for lease cancellation pursuant to 30 U.S.C. § 188(a) rather than cancel the lease administratively. *Id.*

Not surprisingly, this topic has been both debated in lower courts across the country, and has never been squarely resolved by our Circuit.[4] To be sure, "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014). But at the same time, "Congress…undoubtedly can limit an agency's discretion to reverse itself" with statutory language. *Id.* (quoting *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008)).[5] Thankfully, I need not resolve the scope of

---

[4] *But cf. Silver State Land, LLC v. Scheider*, 843 F.3d 982, 990 (D.C. Cir. 2016) (upholding the Secretary's authority to terminate a land sale *before* the land patent was issued observing in dicta that the Supreme Court had condoned the authority to cancel a patent post-issuance as well).

[5] Lower courts remain split on whether or not Congress has indeed limited the scope of the Secretary's authority under the MLA. *Compare Griffin & Griffin Expl., LLC v. United States*, 116 Fed. Cl. 163, 176 (2014) ("The Secretary of the Interior has the authority to cancel any oil and gas lease issued in violation of the Mineral Leasing Act and

the Secretary's authority here because this case turns on its unique facts. And the undisputed facts are these: the Secretary of Interior canceled Solenex's lease after 33 years *without* notice and based on a supposed pre-lease violation of NEPA and NHPA which had never been disclosed to Solenex as a leaseholder. Additionally, the Secretary cancelled Solenex's 27-year old APD after twice approving it and similarly giving *no* indication that the underlying lease was invalid. As such, even assuming the authority to administratively cancel leases, the failure to consider the reliance interests at stake in cancelling plaintiff's lease and the accompanying APD after three decades is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA for all of the reasons below. 5 U.S.C. § 706(2)(A); *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (courts must review "whether the agency acted arbitrarily or capriciously").

### III. The Secretary's Decision to Cancel the Solenex Lease Was Arbitrary and Capricious

An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the

---

implementing regulations or for administrative errors committed prior to the issuance of the lease.") *and Grynberg v. Kempthorne*, No. 06-cv-01878, 2008 WL 2445564, at *4 (D. Colo. June 16, 2008) ("[I]n *Boesche* [], the Supreme Court confirmed that the Secretary's 'general powers of management over the public lands' gives him 'authority to cancel [a] lease administratively for invalidity at its inception.'") (internal citation omitted) *with Douglas Timber Operators, Inc. v. Salazar*, 774 F. Supp. 2d 245 (D.D.C. 2011) (Bates, J.) (Noting that "[*Boesche's*] ruling was expressly limited to 'the exigencies of the general situation and the circumstances of this particular case' and noted that judicial safeguards were in place to 'not open the door to administrative abuses.'") (internal citation omitted).

11

evidence before the agency." *State Farm*, 463 U.S. at 43. "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* "In other words, the question is not what [the Court] would have done, nor whether [the Court] agree[s] with the agency action," but "whether the agency action was reasonable and reasonably explained." *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 726 (D.C. Cir. 2017) (internal quotation marks omitted).

The reasonableness of an agency's decision to rescind a lease must be judged in light of the time that has elapsed and the resulting reliance interests at stake.[6] As I previously noted in my order granting partial summary judgment to Solenex for the 30-year suspension of its lease, Courts in our Circuit have long-held that unreasonable agency delay violates the APA. *See* 7/27/15 Order at 3 (quoting *Nader v. F.C.C.*, 520 F.2d 182, 206 (D.C. Cir. 1975)) ("[t]here comes a point when relegating issues to proceedings that go on without conclusion in any kind of reasonable time frame is tantamount to refusing to address the issues at all and the result is a denial of justice"). The same logic applies here. Even if agencies have the power to rescind decisions made by their predecessors, they must still exercise that power within a reasonable amount of time. An unreasonable amount of time to *correct* an alleged agency error, especially where the record shows that error was readily discoverable from the beginning, violates the APA. Here, I find that the Secretary's

---

[6] Indeed, "federal courts are generally less likely to accord an agency the inherent power to reconsider...when the agency has not reconsidered its decision within a reasonable time period..." Daniel Bress, *Administrative Reconsideration*, 91 Va. L. Rev. 1737, 1748 (2005).

"eleventh-hour interpretation of his duty is owed no great degree of deference." *Texas Oil and Gas Corp v. Watt*, 683 F.2d 427, 431 (D.C. Cir. 1982).

In *Watt*, our Circuit reversed the district court's approval of the Secretary of Interior's decision to cancel leases issued on military lands, reasoning that the cancellation was arbitrary and capricious. *Id.* The court reasoned that the Secretary could not rescind the leases based on newly-discovered violations of a later-in-time law passed by Congress. *Id.* While the issue in *Watt* was the Secretary's mistaken belief that he was *required* to cancel the lease for pre-lease errors, rather than *permitted* to do so as defendants argue here, the circumstances are similar insofar as the court refused to sanction "a retroactive exercise of discretion to which it is impossible to ascribe any rational purpose." *Id.* at 434. In particular, our Circuit emphasized the reliance interests at stake, observing that:

> "Persons affected by statutes implemented by agency discretion would not know where to look to determine when and to what extent the status quo had been altered. And we cannot allow an agency to ignore a statutory amendment for a time and later claim, as here, that regulations based on the unamended statute render void any actions taken in accordance with the clear language of the amended statute. An agency possessed of discretion may exercise it or not; but it may not exercise it and then take back its action on the ground that, based on the duty to adhere to its own regulations irrespective of what the statute says, it lacked the discretion in the first place."

*Id.* at 433–34.

As I noted in my previous order granting partial judgment to Solenex for the multi-decade suspension of its lease, "I could not find a single example where agency action was as egregiously delayed as the 29 years at issue here." *See* 7/27/15 Order at 3 n.1. Agency delay of course has a practical effect: it creates reliance interests. This is particularly true in the context of agency *reconsideration* of its decision to grant plaintiff certain interests,

13

and "such reconsideration must be timely." *Prieto v. United States*, 655 F. Supp. 1187, 1191 (D.D.C. 1987) (finding that agency rescission of trust status to an Indian land grant after nine months was arbitrary and capricious); *see also Am. Wild Horse Pres. Campaign*, 873 F.3d at 928 (finding that agency rescission of wild horse territory designation after twenty years without explanation was arbitrary and capricious).

In *Prieto*, the district court considered the rescission of a land grant after nine months under both APA and estoppel claims. The Court found that the agency action was unreasonable under both legal theories: (1) the agency "abused its discretion and acted arbitrarily and capriciously in upholding the revocation of plaintiff's trust status," and (2) "the Department of Interior is estopped by its own conduct from revoking this trust status." *Id.* at 1188.[7]

Here, federal defendants not only failed to consider the reliance interests at stake, they dismissed them out of hand. Federal defendants appear to argue that no time-period, *however long*, would prove too attenuated to reconsider the issuance of a lease under newly discovered legal theories. Defs.' Mot. at 7–9. Horsefeathers! Even putting aside the thirty years defendants supposedly spent trying to discover the lawfulness or unlawfulness of

---

[7] In viewing the estoppel argument, the *Prieto* court found that plaintiff had met the six-element test necessary for a Government estoppel claim by demonstrating that agency error in issuing the land grant had created reliance interests that prevented the Department of Interior from revoking the trust status of the land after nine months. *Id.* at 1188–95. As the court put it, "[w]hether it is asserted against a private party or the government, the essence of equitable estoppel is fairness. In the instant case...the Department of Interior has dealt far less than fairly with plaintiff." *Id.* at 1195. While I need not reach plaintiff's estoppel argument here, this case certainly presents similar concerns with the basic fairness which citizens should expect from federal agencies.

14

their own actions, this "wait and see" approach—though convenient from a policy perspective—wreaks havoc on the interests of individual leaseholders. "In administrative law, as elsewhere, two wrongs do not make a right." *Am. Wild Horse Pres. Campaign*, 873 F.3d at 928. As such, the defendants' failure here to consider plaintiff's reliance interests constituted "arbitrary and capricious" agency action.[8]

Moreover, the Secretary's cancellation of Solenex's lease, *without notice*, is precisely the sort of action which "undermine[es] the Government's credibility at the bargaining table and increase[es] the cost of its engagements." *United States v. Winstar Corp.*, 518 U.S. 839, 884 (1996) (plurality opinion). As plaintiff notes, it is well-established that the federal government, when it executes an oil and gas lease under the MLA, enters into a contract which is governed by the same "basic contract principles" as

---

[8] I also note that defendants apparently ignored the discretion with which agencies apply procedural statutes like NEPA and NHPA as part of the consultation process. *See, e.g., Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (noting that the issuance of a detailed, 293-page EA served the same purpose as an EIS of taking a "hard look at environmental consequences"); *Myersville Citizens for a Rural Cmty., Inc. v. F.E.R.C.*, 783 F.3d 1301, 1322–26 (D.C. Cir. 2015) (upholding "[the] Commission's consideration of the [proposed] alternative in its Environmental Assessment [as] adequate"); *Duncan's Point*, 522 F.3d at 377 (noting that our Circuit "has upheld agency determinations not to prepare an EIS" in several instances); *City of Grapevine, Tex. v. Dep't of Transp.*, 17 F.3d 1502, 1509 (D.C. Cir. 1994) (finding no violation of the NHPA where agency approved a project before consulting with the ACHPA because the project "was expressly conditioned upon completion of the § 106 process"). However, I need make no finding on whether there was in fact compliance with NEPA or NHPA. Regardless of the lawfulness of the lease's issuance thirty years ago, the agency's rescission of the lease must still comply with the APA. *See, e.g., Am. Wild Horse Pres. Campaign*, 873 F.3d at 928 ("we cannot condone the correction of one error by the commitment of another") (quoting *Gray v. Mississippi*, 481 U.S. 648, 663 (1987)) (internal quotation marks omitted).

private contracting parties. *Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607, 609 (2000). As such, the Government's contractual duties "are governed generally by the law applicable to contracts between private individuals." *Id.* at 607; *see also Franconia Assocs. v. United* States, 536 U.S. 129, 141 (2002). The Government's fulfillment of its contractual duties requires it to act in good faith. It did not do so here!

Because I find a violation of the APA on the grounds above, I need not reach Solenex's additional arguments that the Secretary's cancellation was equitably estopped or was time barred by the statute of limitations. I also need not reach the issue of whether Solenex was a bona fide purchaser for purposes of protection under the MLA.

## CONCLUSION

For the reasons outlined in this opinion, I find that defendants' decision to cancel the Solenex lease was arbitrary and capricious. Thus, for all of the reasons outlined in this opinion, plaintiff's Motion for Summary Judgment [Dkt. # 89] is GRANTED, defendants' Cross-Motion for Summary Judgment [Dkt. # 93] is DENIED, and this case is remanded to the Department of Interior with the order that the Solenex lease be reinstated.

RICHARD J. LEON
United States District Judge