# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOLENEX LLC, | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 13-00993 (RJL) |
| | ) |
| v. | ) |
| | ) **REPLY IN SUPPORT OF MOTION FOR** |
| DAVID L. BERNHARDT, in his official capacity as Secretary, U.S. Department of the Interior, *et al.*, | ) **LEAVE TO FILE SECOND AMENDED** |
| | ) **AND SUPPLEMENTAL COMPLAINT** |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| PIKUNI TRADITIONALIST ASSOCIATION, *et al.*, | ) |
| | ) |
| Defendant-Intervenors. | ) |

Solenex's motion for leave to file a second amended complaint in this case is timely, serves the interests of judicial efficiency, and protects Solenex's legal rights while causing no material or avoidable prejudice to Federal Defendants or Defendant-Intervenors. In their responses, Defendants spend a great deal of time quoting general rules of law, but do so without analyzing the actual facts at issue in the cases they cite, which are all facially distinguishable from the situation at hand. Further, Defendants misconstrue the nature of Solenex's proposed amendment, finding delay and improper motive where none exist. For these reasons, as further demonstrated below, Solenex respectfully requests this Court grant the Motion for Leave to File Second Amended and Supplemental Complaint. ECF No. 144.

**ARGUMENT**

I.   **GRANTING LEAVE TO AMEND WOULD RESULT IN NO UNDUE DELAY**

   A.   *The two new claims are timely*

Solenex's addition of claims specifically challenging the Forest Service's final decisions regarding the area of potential effect ("APE") and the alleged inability to mitigate the purported risk to cultural resources is timely because the circumstances truly necessitating the addition of those claims as matters for the Court did not come about until 2020.  A challenge to the decision that the area of potential effect for Solenex's proposed well constituted the entire Traditional Cultural District ("TCD") and that the purported risk posed to cultural resources could under no circumstances be mitigated is timely.  These decisions, made in late 2014 or later, are both separate and closely related to the already-challenged decision to cancel Solenex's Lease and rescind Solenex's approved application for permit to drill ("APD").  Solenex's additional claims are neither unanticipated nor duplicative of already-litigated arguments, are not barred by any statute of limitations, and—far from distracting the Court's and parties' attention away from the case's central issues—serve to clarify the interrelationship between the Lease and APD and ensure Solenex's rights are protected in a judicially efficient manner.

The Forest Service issued and the Bureau of Land Management ("BLM") accepted the newly challenged decisions after Solenex filed its original complaint seeking a writ of mandamus to force Federal Defendants to end their unlawful and dilatory suspension of Solenex's APD, and thus could not have been challenged in the originally filed complaint.  When Solenex filed its First Amended Complaint in 2016, these APD-related issues may—and logically would—have been resolved by the parties without the need for a judicial intervention—had the Court of

2

Appeals upheld the reinstatement of Solenex's Lease. It was reasonable for Solenex to believe that, if the Court ordered Solenex's Lease reinstated, Solenex and Federal Defendants could have reached a settlement regarding the status of the Solenex APD (resolving the newly asserted claims without judicial intervention) and/or some other viable method for Solenex to develop its asset (mooting the newly asserted claims). It was not until this Case was remanded in July 2020, following the conclusion of summary judgment briefing and appeal and pushing Solenex against the statute of limitations for its new claims, that the need to include claims challenging the Forest Service's scope of the APE and mitigation decisions became pressing. Without including these claims, if Solenex prevails on having its Lease reinstated, Solenex's development of the Lease would be inhibited by Defendants' improper final decisions concerning the scope of APE and the inability to mitigate effects on the TCD. Solenex is entitled to challenge these decisions in a separate action,[1] but has moved to amend its complaint in this action instead in order to better serve the interests of justice and judicial efficiency.

Courts routinely grant leave to amend even years after the original complaint in an action has been filed, including following remand. *See Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 345 (D.C. Cir. 1997) (routinely suggesting plaintiff seek to amend their complaint on remand)*; Farouki v. Petra International Banking Corp.*, No. 08-2137, 2013 WL

---

[1] As a result of Defendants' opposition and in order to preserve its new claims against a statute of limitations defense, concurrently with the filing of its motion for leave to amend, Solenex was forced to file its new claims as a separate action. *Solenex v. Bernhardt*, No. 20-03511 (D.D.C. Dec. 2, 2020). Should the motion to amend be granted here, Solenex will likely move to dismiss that action without prejudice. Should the motion to amend be denied, Solenex will move to consolidate that action with this case. Defendants object to Solenex's litigation as "claim splitting." Defendants' objection, however, is misplaced. A litigant engages in improper claim splitting when, "assuming the first suit was already final, the second suit would be precluded under res judicata analysis." *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014). For the reasons stated in this section, *res judicata* would not apply to the new claims.

12309520 at *3 (D.D.C. June 12, 2013) ("An amendment can be proper after remand to the district court even if . . . the claim was presented for the first time on appeal or had not been presented to the district court in a timely fashion.") (citing *City of Columbia, MO. v. Paul N. Howard Co.*, 707 F.2d 228, 341 (8th Cir. 1983)). While this case may be nearing eight years old at this point, the APA claims have only been at issue since 2016 and this case is nowhere near the late stage of litigation where amendment would become inappropriate. When one considers that the First Amended Complaint was necessitated by Defendants' decision to summarily cancel Solenex's lease based on a purported procedural defect publicly disclaimed by BLM and Forest Service officials as a legitimate reason for cancellation for decades prior to their sudden shift in position, essentially creating a new lawsuit, the proposed amendment is Solenex's first attempt to amend its APA claims. Combine this observation with the fact that this entire case was precipitated by Defendants' "extraordinary" *decades*-long delay in reviewing Solenex's APD and lifting its suspension, *Proposed Second Amended Complaint*, ECF No. 144-1 ¶ 120, and the notion that granting Solenex leave to amend its complaint would result in undue delay becomes difficult to take seriously.

    B.    *The cases cited by defendants are inapposite*

The authorities that Defendants marshal to attack Solenex's motion as untimely do no such thing. Many of Defendants' cases do, admittedly, contain general language seemingly favorable to Defendants' position, but sweeping, general statements of law—such as one often finds in Westlaw headnotes—uncoupled from the facts and holdings of the associated cases and the case under consideration, are not persuasive or binding. *See Knell v. Feltman*, 174 F.2d 662, 666 (D.C. Cir. 1949) (lamenting the way a case had been cited to support a sweeping proposition of law much broader than that actually contemplated by the issuing court, due to counsel

uncritically quoting a misleading footnote); *Reyna v. Lynch*, 631 Fed. Appx. 366, 372–73 (6th Cir. 2015) (chastising party for citing to a headnote, rather than the actual text, of a case and therefore misinterpreting the case's actual holding).  When one examines the actual facts and outcomes of the cases Defendants cite, one finds a collection of easily distinguishable decisions turning primarily on issues that are not relevant to the current dispute.

      Defendants begin by quoting a non-controversial statement of law, that undue delay can be a reason to deny leave to amend, from *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996); Fed. Def. Resp., ECF No. 147, at 9. Except Defendants fail to explain that the court in *Atchinson* denied plaintiff leave to amend a complaint not merely because two years had elapsed since the filing of the original complaint, but because plaintiff, "on the eve of trial," sought to add a claim against a police officer in his personal capacity, when the plaintiff had given no indication whatsoever of plans to do so and the officer had not been provided an opportunity to obtain legal counsel to defend himself.  *Atchninson*, 73 F.3d at 427.  Similarly, both *Hudson v. Am. Fed'n of Gov't Employees*, No. 17-1867, 2019 WL 3533602 (D.D.C. Aug. 2, 2019) and *Mowrer v. United States Dep't of Transportation*, 326 F.R.D. 350 (D.D.C. 2018), concerned serious errors or misconduct not present in this case.  In *Hudson*, the plaintiff sought to add "a bevy of claims" that were virtually identical to claims already dismissed in a separate action and the court remarked that "[a] glance at the record reveals that the factual representations underlying [plaintiff's] excuse fall far short of the veracity and candor the Court expects of those appearing before it." *Hudson*, 2019 WL 3533602, at *1.  The claim at issue in *Mowrer* was virtually identical to another claim based on the same statute that had already been brought and voluntarily dismissed by the plaintiff.  *Mowrer*, 326 F.R.D. at 351–53.  Further, the cases *Mowrer* discusses that purportedly support Defendants' position on undue delay concern a

5

motion "days before trial" that attempted to rescind an admission the party had already made and would "reshape the landscape of the litigation," *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 859–60 (D.C. Cir. 2015), and a plaintiff who failed to even "attempt to argue that the finding of undue delay was made in error." *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012).

Each of the authorities cited by Defendants to shore up their argument that Solenex's Motion for Leave to File a Second Amended Complaint would cause undue delay concerned plaintiffs attempting to simply restate already dismissed common law claims as statutory claims (or vice versa), *see Hudson v. American Federation of Government Employees*, No. 17-1867, 2019 WL 3533602, at *1 (D.D.C. 2019) (amendment denied because plaintiff sought to add claims "almost identical" to those already dismissed in another case two years earlier); *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 121–22 (D.D.C. 2009) (amendment denied because plaintiff sought to assert new statutory claims that "merely restate[d]" the common law claims plaintiff had already lost on); *N. American Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC, et al.*, 887 F. Supp. 2d 78, 83–84 (D.D.C. 2012) (amendment denied because plaintiff sought to add new common law claims that were duplicative of already-dismissed medical malpractice statutory claims), or concerned plaintiffs attempting to bring in entirely new statutes and theories of relief not even hinted at earlier in the litigation, *see Heller v. District of Columbia*, 290 F.R.D. 1, 5 (D.D.C. 2013) (amendment denied because plaintiff sought to add two new plaintiffs and a new, completely unrelated Americans with Disabilities Act claim to the existing and "exhaustively litigated" Second Amendment claims); *Robinson v. District of Columbia*, 283 F.R.D. 4, 7–8 (D.D.C. 2012) (amendment denied because, *inter alia*, plaintiff sought to add numerous new constitutional claims that did not state plausible claims for relief);

*Sai v. Transportation Security Administration*, 326 F.R.D. 31, 34–35 (D.D.C. 2018) (amendment denied because the moving party was a *pro se* litigant who had already buried the court with a "deluge" of excessive filings and attempted to add claims based on at least three different statutes in a seemingly desperate effort to avoid dismissal).  One of Defendants' cases involved a motion for leave to amend that was denied, not because of the amount of time that had passed between the filing of the original complaint and the motion, but because the proposed amendment would have added 140 pages of new constitutional claims and conspiracy theories likening the dispute to a "Watergate styled cover-up," with delay being tacked on at the end almost as an afterthought to the court's opinion.  *Robinson*, 283 F.R.D. at 7.

Given Defendants rely exclusively on cases that are inapplicable to the case before this Court, Defendants' arguments hold little to no weight.  Instead, Defendants cite to general statements that appear to abstractly support their position but fall apart under even modest scrutiny.  Meanwhile, as demonstrated above, Solenex has directed this Court's attention to numerous cases where plaintiffs in positions similar to Solenex were permitted to amend their complaints years after they filed their original complaints, even following remand.  *See* Mot. to Amend., ECF No. 144, at 8–9.  Here, the additional claims are neither duplicative nor so unanticipated that the claims should come as a surprise to Defendants.

II.   **DEFENDANTS FAIL TO SHOW SOLENEX'S PROPOSED AMENDMENT WOULD CAUSE PREJUDICE OR IS SOUGHT IN BAD FAITH**

  A.   *Defendants would not be prejudiced by Solenex's amendment*

As demonstrated in Solenex's motion, amendment presents no ascertainable risk of prejudice to Defendants. Solenex is not substantially changing its theory of the case—the additional claims it asserts are closely tied to existing claims and should come as no surprise to Defendants—and no discovery has occurred that would need to be revisited.  *United States ex*

7

*rel. Scott v. Pac. Architects & Engineers, Inc.*, 327 F.R.D. 17, 20–21 (D.D.C. 2018).  Outside of a general assertion that the greater the time between the filing of an original complaint and a motion for leave to file an amended complaint, the greater the chance of prejudice to the defendant, Fed. Def. Resp., ECF No. 147, at 14, Defendants point to no specific prejudice they expect to stem from granting leave to amend here.  Concerns over having to expend resources to engage in limited motions practice over the scope of the administrative record are not, standing alone, sufficient to justify rebutting the presumption in favor of allowing amendment.  *See Scott*, 327 F.R.D. at 21 ("'[A]n amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources,' for (virtually) every amendment meets that criterion.") (quoting *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013)).

    Defendants' own cited authorities recognize that something more burdensome than what Defendants allege is required for a showing of prejudice sufficient to deny amendment.  The court in *Trudel v. SunTrust Bank* denied leave to amend because the plaintiffs in that case attempted to make their motion orally, rather than in writing as required by the Federal Rules of Civil Procedure, and then had to satisfy the much more stringent standard relevant to a motion for reconsideration, which plaintiffs failed to do. 924 F.3d 1281, 1287 (D.C. Cir. 2019).  The D.C. Circuit denied the plaintiff in *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.* leave to amend because the amendment attempted to raise an entirely new issue that was "not related to the issues raised in [the] original complaint," with delay in seeking amendment being only a part of the court's reasoning. 810 F.2d 243, 247 (D.C. Cir. 1987).  And *Hoffman v. United States* concerned litigation that had been ongoing for nearly 20 years, where the motion to amend "appear[ed] to be nothing more than an unfortunate attempt to 'muddy the waters,' to divert the

8

court's attention from the resolution of defendants' dispositive motion . . . ." 266 F. Supp. 2d 27, 34 (D.D.C. 2003). Defendants have failed to present a single case where a court found a proposed amendment to be prejudicial under circumstances similar to the present controversy.

### B. *Solenex is acting in good faith*

Defendants hardly attempt to argue that Solenex's proposed amendment was made in bad faith, instead simply repeating conclusory statements regarding Solenex's purported delay in seeking amendment. For reasons already stated, *see* Part I, *infra*, Solenex's motion is timely and will result in no undue delay. That Solenex seeks to amend its complaint immediately, at its first opportunity post-remand, when no motions or other court deadlines are pending, belies any allegations of dilatory motive, particularly when frustration over Defendants' numerous delays over the years is what precipitated this lawsuit in the first place. The sort of delay courts have found to constitute adequate reason to deny leave to amend has neither been shown nor alleged. *Cf. Knight*, 808 F.3d at 860 (bad faith delay when motion to amend filed only "days before trial"); *Williams v. Savage*, 569 F. Supp. 2d 99, 103–04, 107 (D.D.C. 2008) (bad faith found when plaintiffs moved to amend complaint *after* case was dismissed for failure to state a claim and plaintiffs failed to respond to those exact issues when raised in Defendant's motion to dismiss).

Further, no other indicia of bad faith or dilatory motive are present here, nor are any alleged by Defendants. Solenex has not repeatedly failed to cure defects in earlier filings, nor has Solenex ever been admonished by this Court for causing unreasonable delays, making frivolous filings, or otherwise engaging in unprofessional or strategically underhanded methods. Solenex has never sought an extension of time that was opposed by Defendants. Granting leave to amend would cause no undue delay to this litigation, especially when measured against the

9

delays perpetrated by Defendants against Solenex over the years—Solenex's founder and managing member Sidney Longwell died last April still awaiting a resolution on the oil and gas lease he purchased from the federal government in 1982.  And since an allegation of undue delay is the only thing underlying Defendants' assertion that Solenex seeks to amend its complaint in bad faith, Defendants' argument fails.

**III.   ABSENT A SHOWING OF UNDUE DELAY, PREJUDICE, OR BAD FAITH, JUSTICE FAVORS GRANTING SOLENEX LEAVE TO AMEND ITS COMPLAINT**

Amendment pursuant to Rule 15 is governed by a generous standard, and leave to amend should be 'freely give[n] … when justice so requires.'" *United States ex rel. Scott v. Pac. Architects & Engineers, Inc.*, 327 F.R.D. 17, 19 (D.D.C. 2018) (quoting Fed. R. Civ. P. 15(a)(2)).  There is a presumption in favor of liberal amendment, and the non-moving party bears the burden of demonstrating that leave to amend should be denied—there is no affirmative burden on the party seeking amendment to show that "good cause" exists. *Shea v. Clinton*, 288 F.R.D. 1, 4 (D.D.C. 2012).  In the absence of such a showing by Defendants that amending Solenex's complaint would be futile, result in undue delay, prejudice Defendants, or is sought in bad faith, this Court should grant leave to amend if "justice so requires." *Id.*  It does so require here.  The APA and the interests of justice empower Solenex to challenge the Defendants' additional erroneous final agency actions and do not require Solenex to waive or otherwise forfeit those challenges.

In contrast to the relatively minor burden of engaging with some additional motion practice that granting leave to amend will place on Defendants, Solenex would be prejudiced were the Court deny leave to amend.  If Solenex is unable to assert these two additional claims regarding mitigation and the scope of the APE, even a victory in this case finding the cancellation of its lease to be unlawful could leave Solenex without a full remedy.  Moreover, if

Solenex is forced to pursue its two new claims in a separate lawsuit, all parties and the Court would be needlessly burdened by the reassertion of many overlapping facts in the new complaint, new motions, and the relodging of a largely duplicative expansive administrative record. While the decision to cancel Solenex's lease is related to the earlier APE and mitigation decisions, they were in fact distinct final agency actions, and an invalidation of one does not necessarily invalidate the others. In order for a decision favorable to Solenex on lease cancellation to actually make Solenex whole, the legality of the decisions regarding mitigation and the scope of the APE must be addressed.

## CONCLUSION

For these reasons, Solenex respectfully requests the Court grant it leave to file its Second Amended Complaint.

DATED this 8th day of January 2021.

Respectfully submitted,

*/s/ David C. McDonald*
David C. McDonald, D.C. Bar No. CO0079
Zhonette M. Brown, D.C. Bar No. 463407
MOUNTAIN STATES
 LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
dmcdonald@mslegal.org
zhonette@mslegal.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January 2021, I electronically filed the foregoing using this Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and service will be accomplished by this Court's CM/ECF system.

                                                         */s/ David C. McDonald*
                                                        David C. McDonald